**NO COPY OF THIS TRANSCRIPT MAY BE MADE PRIOR TO JULY 31, 2012

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

```
* * * * * * * * * * * * * * * *
                              *
IN RE:  COLGATE-PALMOLIVE      *
SOFTSOAP ANTIBACTERIAL HAND    *  12-md-02320-PB
SOAP MARKETING AND SALES       *  April 27, 2012
PRACTICES LITIGATION           *  2:10 p.m.
                              *
                              *
* * * * * * * * * * * * * * * *
```

TRANSCRIPT OF PRETRIAL STATUS CONFERENCE
BEFORE THE HONORABLE PAUL J. BARBADORO

APPEARANCES:

For the Plaintiffs:    Lucy J. Karl, Esq.
                       Shaheen & Gordon, P.A.

                       Eric D. Holland, Esq.
                       Holland, Groves, Schneller & Stolze

                       Adam J. Levitt, Esq.
                       Wolf, Haldenstein, Adler, Freeman
                       & Herz, LLC

                       Charles E. Schaffer, Esq.
                       Levin, Fishbein, Sedran & Berman

                       John A. Peca, Esq.
                       Climaco, Wilcox, Peca, Tarantino
                       & Garofoli, CO., L.P.A.

                       Richard J. Arsenault, Esq.
                       Neblett, Beard & Arsenault

                       Jordan L. Chaikin, Esq.
                       Parker Waichman, LLP

                       James C. Shah, Esq.
                       Shepherd, Finkelman, Miller
                       & Shah, LLP

PLAINTIFFS APPEARANCES CONTINUED:


                              David Charles Rash, Esq.
                              Alters Law Firm, P.A.



For the Defendant:    Shon Morgan, Esq.
                      Quinn, Emanuel Urquhart & Sullivan



Court Reporter:        Susan M. Bateman, LCR, RPR, CRR
                       Official Court Reporter
                       United States District Court
                       55 Pleasant Street
                       Concord, NH 03301
                       (603) 225-1453

1              P R O C E E D I N G S

2              THE CLERK:  Court is in session and has for

3    consideration a status conference in In Re:

4    Colgate-Palmolive Softsoap Antibacterial Hand Soap

5    Marketing and Sales Practices Litigation, MDL number

6    12-md-02320-PB.

7              THE COURT:  All right.  Good afternoon.

8    Before we begin, let me just make one thing clear.

9    Although I am a member of the judicial panel on

10   multi-district litigation, I did not seek this case out.

11   I was not trying to get it assigned to me.  I don't need

12   to go into the circumstances of how it ended up here,

13   but I'm certainly willing to take on the assignment, but

14   it isn't something that I actively sought out.

15             All right.  So I thought we could cover a

16   number of things here.  First, I want to get a sense of

17   the number of lawsuits, whether there are any other

18   anticipated cases out there.  I want to talk to you

19   about counsel issues, class certification issues,

20   discovery, motion practice and settlement.

21             Let me begin by asking, do the plaintiffs have

22   someone who they've agreed upon should be the primary

23   speaker for the plaintiffs' interests today?

24             MS. KARL:  Yes, your Honor.  We have done

25   private organizing among ourselves, and we have a

1    proposed structure for your Honor.

2         THE COURT:  All right.  Who is going to be

3    speaking today primarily?

4         MS. KARL:  I will primarily be speaking for

5    today, your Honor.

6         THE COURT:  For the plaintiffs.  Okay.  Let me

7    just get a sense from you very quickly -- and then I'll

8    probably turn to the defendant because they may have

9    more information about this.  My quick take on these

10   actions is that they are, for the most part, statewide

11   class actions using the state's Consumer Protection Act

12   and unjust enrichment and breach of warranty, and some

13   of them have negligent misrepresentation claims in them.

14        There's one action that is -- at least with

15   respect to some claims seeks to have a nationwide class

16   certified.  That the cases arise out of the alleged

17   marketing practices of the defendant and particularly

18   claiming that the product has some chemical in it that

19   has antibacterial properties, and the plaintiffs claim

20   that that is not a correct claim and therefore it's

21   deceptive to market the product with those kinds of

22   claims.  Is that essentially what we're dealing with?

23        MS. KARL:  You've summarized it far more

24   eloquently than I would have, yes.

25        THE COURT:  All right.  Thank you.  I'll come

1   back to you.

2            Let me ask the defendant.  Are there any other

3   actions out there, tagalongs, that may end up being

4   brought in here that we know about yet?

5            MR. MORGAN:  Not that we're aware of.  I'm

6   sure the plaintiffs would have much more information

7   about potential actions.

8            THE COURT:  Let me ask you then.  Do you have

9   any thought that there may be other cases being brought

10  here?

11           MS. KARL:  We believe there may be an

12  additional action from South Carolina.

13           THE COURT:  Okay.  I guess, obviously, it's in

14  my interests, and I think everybody's interests, that if

15  it's going to get filed that we get it filed and get it

16  up here as quickly as possible so that we don't have

17  problems with people running behind and being concerned

18  about not participating in early decision making and so

19  on and so forth.

20           So then -- I mean, Ms. Karl knows me very

21  well.  I'm sure you've checked me out in terms of my

22  reputation.  I want to be clear about this.  If I feel

23  lawyers are working together well and making progress, I

24  will tend to be very deferential to efforts by lawyers

25  to manage themselves, conduct their cases their own way,

1    in their own way, and will be very deferential to your

2    suggestions as to how we ought to manage this case.

3         If I at any point become concerned that the

4    case isn't being managed effectively, that my time is

5    not being used productively, that we're not making

6    sufficient progress, then I can become very

7    interventionist and very difficult to deal with.

8         So we'll start out hoping that you will all

9    get along well, manage things effectively, and with the

10   idea that I will be substantially deferential to your

11   desires, and we'll see how it goes.  I mean, I fully

12   expect that you won't need me to become difficult to

13   deal with, but I assure you I can become very difficult

14   to deal with if I'm not happy with the way things are

15   going.  Okay?

16        So having said that, you've apparently talked.

17   Let me hear from the plaintiffs first as to how are you

18   proposing to organize yourselves, and then we can talk

19   with the defendant about how we're going to deal with

20   the litigation.

21        Ms. Karl, or if you have anybody else that you

22   want to have speak, go ahead.

23        MS. KARL:  We have a proposed structure of a

24   plaintiffs' executive committee which would be comprised

25   of Mr. Holland, Mr. Levitt, Mr. Arsenault, Mr. Shaffer

1   and Mr. Climaco.

2          As you may well be aware, Judge McAuliffe has

3   a similar case pending in his court and that is the same

4   PEC structure as in the Dial litigation.

5          THE COURT:  Okay.

6          MS. KARL:  In addition, for the plaintiffs'

7   steering committee we'll have Jordan Chaikin, David

8   Rash, Jim Shah, Matt Butler and Larry King.  Messrs.

9   Chaikin, Rash and Shah are also on the plaintiffs'

10  steering committee in the other pending litigation.

11         So that's the structure that we would envision

12  at this point.  We have worked with opposing counsel and

13  sent over a draft discovery plan.  He's only just

14  received it so --

15         THE COURT:  You're not proposing to have one

16  lead counsel?

17         MS. KARL:  Oh, with myself as lead counsel.

18  I'm sorry, your Honor.

19         THE COURT:  Okay.  I was unclear about that.

20  All right.  So lead counsel and the committee structure

21  that you're proposing.

22         MS. KARL:  Correct.

23         THE COURT:  And all plaintiffs are in

24  agreement with respect to that structure.  Okay.  And

25  again, I'm inclined to defer to these parties' efforts

1    to organize themselves as long as it makes sense.

2              One of the concerns that I have, because I

3    frequently -- when things come to the very end the

4    problems that develop -- one problem is if I'm asked to

5    approve a request for fees as a part of a resolution of

6    the case, I want to ensure at the outset that the

7    plaintiffs manage the case in a way that's efficient and

8    that we're not building up a loadstar or building up

9    hourly rates.  In this case most of your state statutes

10   probably have an attorney's fee provision attached to

11   them, don't they?

12             MS. KARL:  Yes.

13             THE COURT:  So that in the event you're

14   ultimately prevailing, you would be seeking to recover

15   your fees on an hourly rate basis, I assume, as part of

16   the recovery.

17             MR. LEVITT:  I'm Adam Levitt, your Honor.

18   It's not necessarily on an hourly basis, per se.  The

19   fee shifts in a number of states.  They do permit the

20   multiplier, but we can deal with that down the road.  So

21   it's not --

22             THE COURT:  Help me understand the

23   relationship then, because say, for example, if this

24   were a -- just say a standard New Hampshire Consumer

25   Protection Act claim, one plaintiff bringing claim

1   against the defendant here for a Consumer Protection Act

2   violation and they recovered, they would be able to

3   recover their attorney's fees as a part of their

4   recovery.  I assume that most states work that way,

5   don't they?

6           MR. LEVITT:  That's correct, yes.

7           THE COURT:  So building into the total amount

8   that's available for recovery here would be attorney's

9   fees that were incurred in prosecuting the action,

10  right?

11          MR. LEVITT:  That's correct, your Honor, but I

12  thought I understood your Honor to be saying that that

13  would be a straight hourly rate fee.

14          THE COURT:  Right.

15          MR. LEVITT:  And I don't believe that under

16  the jurisprudence of each of the states in question

17  necessarily that they award a straight hourly without a

18  multiplier perhaps or anything of the sort.  I'm just

19  saying that it's not as open and shut of an issue as

20  that.  And also, for example, if this case resolves

21  itself in a common fund format, whether we would ask for

22  a percentage of the fund or something like that.  So I'm

23  saying there's a number of issues that could be at play

24  at that point.

25          But to answer the first concern that your

1    Honor has, it's in all of our interests to be as

2    efficient as possible in these cases, and that's always

3    our goal.

4              THE COURT:  Well, I mean -- and I'm not in any

5    way questioning anyone's integrity or something and I'm

6    not saying you would do that in this case, but because

7    I'm involved in a lot of this kind of litigation and I

8    have had -- I've issued one of the largest attorneys'

9    fee awards in the history of the United States in the

10   Tyco litigation where I awarded $496 million to the

11   plaintiff class.  I had to do a lot of work on

12   understanding fee awards.  And in fact if we are going

13   to get into a percentage of the fund kind of award, I

14   might be asked at some point to do a loadstar

15   cross-check.  And to the extent the plaintiffs seek to

16   defend an award, having a bigger loadstar makes having

17   the percentage of the fund award -- a higher percentage

18   of the fund award more likely to be approved.  There is

19   a -- I'm not saying people would consciously expend

20   funds unnecessarily -- seek time unnecessarily, but

21   there is a potential to be less than completely

22   efficient to maximize the chance that your total

23   recovery at the end on a percentage of the fund basis

24   would be great.

25              Another problem when you have multiple

1    lawyers -- lawyers' committees working is that each firm

2    is going to want to be able to justify their argument

3    for their allocation of the ultimate fee award, and

4    oftentimes that's done off a base of how much work that

5    they put into it and therefore there's an incentive for

6    each firm to try to get as big a piece of the pie as

7    possible and there's a potential for inefficiency

8    because people need to be demonstrated to have had

9    significant roles in producing the results through the

10   expenditure of time.  Do you see what I'm saying?

11              MR. LEVITT:  We understand the moral hazards,

12   your Honor, yes.

13              THE COURT:  And that is something that I

14   think, based on my experience, it's better to address

15   upfront.

16              And finally, I've had the situation where

17   after the case has settled and I thought I was done with

18   the case the plaintiffs come back to me and one law firm

19   is dissatisfied with the way the fee award has been

20   whacked up amongst the lawyers, and we get into

21   collateral litigation over whose time is best spent.

22   That, to me, is a situation that I want to avoid at all

23   costs here.

24              So I think it's important, from my

25   perspective, that the plaintiffs understand.  If I'm at

1   some point asked to approve a settlement, and in having

2   to approve that settlement I have to make an

3   investigation into say, for example, if some measure of

4   the settlement is based on a percentage that would be

5   allocated to an attorney fee award, I might have to look

6   into the expenditure of effort by the plaintiffs.

7          If I'm asked to approve a percentage of the

8   fund settlement, I may be asked to undertake a loadstar

9   cross-checking, at which point I have to look at the

10  fees.  And I want to tell you that right now -- to

11  essentially warn you that if you don't have in place an

12  adequate plan to ensure that your time is expended as

13  efficiently as possible, I am warning you that I would

14  be very willing and likely to substantially cut any

15  loadstar cross-check by what I consider to be the

16  inefficient use of time.

17         So I commend you for organizing yourselves.

18  I'm sure you will do your best.  But I just want to give

19  you the warning upfront that in how you allocate work

20  amongst yourselves I don't expect multiple people from

21  multiple firms to be attending every deposition and

22  every single document having to be reviewed by every

23  single law firm associated with the case, and people

24  aren't going to be able to whack their time up by

25  reviewing work that other people are doing.

1           Certainly when you work on a committee there

2    has to be some oversight, but it doesn't involve simply

3    one person reading everything that -- everybody in the

4    group reading everything that's going to be submitted.

5           So I just wanted to make clear upfront today

6    that you need to be mindful of that from the beginning

7    of the case.  To the extent that -- even if you're not

8    going to be seeking attorney's fees on an hourly rate

9    basis, to the extent I'm going to be asked to do a

10   loadstar cross-check, you're going to have to have

11   contemporaneously maintained time records.  So you need

12   to be attentive to that in maintaining and collecting

13   them and doing them in a way that will allow for that

14   process to occur in an efficient way at the end.

15           MR. LEVITT:  We hear you loud and clear, your

16   Honor, and we understand.

17           THE COURT:  Okay.  Good.  Another issue -- and

18   again, a lot of it is just because of nightmare problems

19   that I have had.  If you are asking me to approve a

20   settlement, at some point I am going to ask you to

21   disclose all fee agreements any of you have had with any

22   of your clients.  So if you have fee agreements be

23   mindful that they're going to end up being disclosed to

24   me at the end, because if they aren't -- and I'm dealing

25   with this right now in Tyco even though it's been closed

1    for several years.  One of the firms in a consortium

2    that served as lead counsel it's alleged had a fee

3    agreement with its client for a rate that was lower than

4    what I actually approved, and some member of the class

5    has gotten a lawyer to come in and try to argue to me

6    that the fee award should be -- they should be required

7    to disgorge, essentially, a percentage of the fee award

8    because it is not in accordance with an agreement that

9    had been previously reached and not disclosed to me at

10   the time of the settlement.

11           So please be mindful of that.  That when

12   you're putting together your final package, if you are

13   able to resolve the case and you are seeking fees, that

14   you will be required to disclose any fee agreements that

15   anybody participating in the fee award portion of the

16   case has, to disclose any of those agreements.

17           MR. LEVITT:  Sure.  Thank you.

18           THE COURT:  Let me see if I've got anything

19   else on the counsel issues.

20           So I assume defendant has no position on any

21   issues with respect to counsel?

22           MR. MORGAN:  No, your Honor.  We don't object

23   to the way they have chosen to order themselves

24   internally with, I guess, two caveats.  I mean,

25   consistent with the comments of the Court.

1          Approval of that doesn't mean that when it

2    comes to any fee award that we're not going to object to

3    what we perceive as unnecessarily duplicative work.

4          Second, a more practical concern.  During the

5    litigation, which I don't think we need to address now

6    but only if it arises -- because I'm having this happen

7    in other cases -- is, you know, for instance on

8    discovery issues you're negotiating with one group of a

9    committee and get very far down the line on certain

10   issues and then at the end somebody else comes in and

11   plays bad cop and the whole thing gets upset, and so

12   hopefully that won't be an issue.

13          THE COURT:  Yeah, I don't think it will.  Ms.

14   Karl, in accepting appointment of lead counsel, I don't

15   mean that to be a position without power or

16   responsibility.  Lead counsel is lead counsel, and she's

17   going to speak for the group.

18          MR. MORGAN:  And I'm certainly not even

19   suggesting she has to deal with every issue and there

20   can't be other avenues.  There are a lot of people on

21   this list, and I want to make sure we don't get into

22   situations where people are coming into --

23          THE COURT:  No.  I mean, there's certainly the

24   ability for lead counsel to apportion responsibilities

25   for specific issues to people, but in the end of the day

1    the way I deal with lead counsel is I think of them as

2    the lawyer for the case, and I think you're entitled to

3    think of them that way, too, and I'm going to hold her

4    responsible for ensuring that things move in an

5    appropriate way.

6              MR. MORGAN:  And the issues may never arise,

7    so it's not an issue right now.

8              THE COURT:  Okay.  Well, I certainly agree

9    with you and I underscore the point.  To the extent

10   people seek compensation and they want to demonstrate

11   that their time incurred should be taken into account

12   when measuring the result that they receive, if the

13   structure isn't efficient it's going to be discounted to

14   the extent it's inefficient.  So they've been advised

15   upfront about that.

16             Okay.  All right.  What I'm anticipating is

17   that we will receive a motion for appointment of lead

18   counsel and the committees that you'll draft and submit

19   and I will in all likelihood approve.

20             MS. KARL:  Your Honor, would you like us to

21   file a full motion, or would you like us to do a

22   stipulation?

23             THE COURT:  It doesn't matter to me whether

24   it's a motion or a stipulation.  You've provided your

25   justification orally, but something that sets forth

1    specifically what the structure is so it is memorialized

2    and we'll then have a margin order from me approving it.

3    So it should be sufficient to the extent that I can

4    merely write granted, and it will be clear to everyone

5    what everyone's assigned roles and responsibilities are.

6    Okay?

7              MS. KARL:  Excellent.  We will.  Thank you,

8    your Honor.

9              THE COURT:  Okay.  Let's talk class

10   certification here.  I don't know, Ms. Karl, if you or

11   other members of the group have thought this through

12   yet.  How do you intend to proceed structurally here?  I

13   mean, clearly the discovery is going to be identical for

14   all of the individual classes, but structurally speaking

15   here we aren't in a position where we can have one

16   consolidated complaint.  It seems to me like we have to

17   maintain the structure of individual statewide classes,

18   so we do have to maintain separate class actions, but I

19   haven't thought that through and I'm interested in any

20   of your thoughts about that.

21             MR. LEVITT:  I can address that, your Honor.

22   Adam Levitt, once again.

23             Not unlike what we've done in the case

24   involving Dial, we would anticipate putting up a

25   consolidated master complaint with individual statewide

1   classes after a set of master allegations, and then we

2   would have the claims for each of the states right after

3   that as well, but it would all be in a single pleading.

4          THE COURT:  Well, I mean that's the way it

5   works when you have -- clearly when you have multiple

6   nationwide classes that's -- to me it seems easy.  Like

7   we did in Tyco, we had one consolidated complaint.  In

8   Tyco we had it filed in the New Hampshire action so I

9   could keep the case for the whole time.  Here we don't

10  have a New Hampshire action, I understand.

11         MR. LEVITT:  That's correct.

12         THE COURT:  So if these cases do not settle,

13  they ultimately are going to have to be remanded.  If

14  they are remanded, they're going to have to be remanded

15  back to the jurisdictions where the actions were filed.

16  The way I'm thinking of it -- and in Tyco we had so many

17  different kinds of actions.  We had a consolidated

18  securities fraud complaint, a consolidated ERISA, a

19  consolidated derivative action complaint, and then we

20  also had things that really didn't fit within that.  We

21  had three or four other complaints, class actions, that

22  didn't fit into that three-part structure.  Ultimately

23  certain things didn't settle, and I remanded those cases

24  back.

25         If you have one consolidated complaint with

1    subclasses, in effect, and you don't settle the case,

2    how do you deal with the issue of remand at that point?

3           MR. LEVITT:  One of two ways, your Honor.  The

4    first one is we can deal with the issue of the lexicon

5    waivers at the appropriate time.  We may simply want

6    everything here, your Honor.  That's item one.

7           Item number two.  In terms of the

8    structural -- the physical remand, the fact is you would

9    be sending back those state's claims and that state's

10   class and those state's allegations.  Obviously, if we

11   sent back the Illinois case they wouldn't be expected to

12   also hear and adjudicate the South Carolina claims.  So

13   it would be that portion of the master --

14          THE COURT:  That sever those out of the

15   complaint and remand those to those states?

16          MR. LEVITT:  Yes.

17          THE COURT:  So the structure then you're

18   envisioning is you take -- in the MDL docket you file a

19   consolidated complaint --

20          MR. LEVITT:  Yes.

21          THE COURT:  -- that would have separate

22   subclasses for each statewide class.

23          MR. LEVITT:  Not subclasses, per se, because

24   they're not sub of anything.  They're separate statewide

25   classes.

1           THE COURT:  All right.  But I think of a class

2    action as a complaint.  It may be semantical, but you're

3    basically saying -- what are you going to do with your

4    nationwide class claim?  Are you going to try to

5    maintain that?

6           MR. LEVITT:  If we have a nationwide claim on

7    the amended complaint, yes.  At that point then we would

8    have the state subclass issue.  But if we don't go with

9    a single nationwide class, at that point all we have are

10   these statewide classes.  We'll cross that bridge in the

11   next period when we consider what to do with the

12   consolidated complaint.

13          THE COURT:  My initial view -- and again, I

14   haven't studied the matter, but it's somewhat

15   problematic to try to successfully maintain a nationwide

16   class action in these kind of cases and they, I think,

17   are better thought of as an aggregation of statewide

18   classes, and I don't have any objection to the idea of a

19   consolidated complaint in which all of them are

20   asserted; with the idea that unless there's a lexicon

21   waiver, that if the cases don't settle we would then

22   break it back up and remand the pieces to the individual

23   jurisdictions where they were originally brought.  Does

24   that make sense to you?

25          MR. LEVITT:  Yes, it does, your Honor.

```
 1          THE COURT:  Okay.  All right.  That makes
 2    sense to me.  Does the defendant have any objection to
 3    that as a way of proceeding?
 4          MR. MORGAN:  No.  We don't have a problem with
 5    it in general.  The way we've handled that in similar
 6    cases is that procedure, and then when it came to
 7    briefing class cert. is to have a master certification
 8    brief and then shorter briefs that address the
 9    particularities of the various state law --
10          THE COURT:  Whether we proceed -- I mean, an
11    alternative structure would be to maintain separate
12    dockets and complaints, but whether we did that or not
13    we would definitely have an organized singular approach
14    to motion practice because the last thing I want are
15    people filing motions in individual dockets that are
16    largely duplicative of each other.
17          So I think since you're willing to do it and
18    there isn't objection, it makes sense to me.  We'll set
19    a schedule for filing of a master consolidated complaint
20    and that will be filed in one docket, but that it's
21    clear to everybody here that unless there's a lexicon
22    waiver, or unless the case is resolved at my level, if
23    remand is required the net result would be an agreement
24    to sever the state actions and remand to the
25    jurisdictions where they were originally filed.  Okay?
```

1          MR. LEVITT:  Yes.

2          MR. MORGAN:  Yes, and I do think the

3    consolidated complaint is beneficial because right now

4    there are factual nuances and it would be nice to take

5    those off the table.

6          THE COURT:  All right.  That's fine.  I'm all

7    for simplification if we can possibly achieve it.

8          Tell me about your initial position on class

9    certification.  Are you going to be thinking that you

10   might mount a kind of significant challenge to class

11   certification, or can we get right down to business

12   here?

13         MR. MORGAN:  Oh, I would be fired if I

14   said we're not going to, your Honor.  Of course we are.

15         THE COURT:  Well, I've got people who are

16   willing to acknowledge what appears to be a reality,

17   that regardless of the merits of this case the chances

18   are very slim that you're going to be able to avoid

19   class certification.

20         MR. MORGAN:  Well, I understand your comments,

21   although we've had very good luck in similar consumer

22   cases.

23         THE COURT:  What would be the theory of not --

24   I can certainly see not certifying a nationwide class,

25   but what would be the theory of not certifying a

1    statewide class action?

2            MR. MORGAN:  Disclosures on the various

3    products.  They're in a line of antibacterial products

4    that the plaintiffs are challenging, a statement about

5    99 percent germs appears on the front, some it appears

6    on the back, and some it's very prominent and some it's

7    not.  We're going to have consumer surveys that say, I

8    bought this because it's purple.  I bought it because

9    it's lavender.  Those are going to be the issues.  That

10   people weren't purchasing --

11           THE COURT:  Is reliance going to be an

12   individual element here that's not subject to any kind

13   of a presumption of proof?

14           MR. MORGAN:  Well, a couple things.  I mean,

15   states all vary on the extent to which they really

16   require reliance.  A lot of them require causation.

17   Their representation is being challenged.  It plays some

18   role in the transaction, and that's where it comes into

19   play.  For instance, if this representation only came on

20   the back of the label and we have survey evidence saying

21   ultimately only one percent of the people look at the

22   back of the label, then we're going to have -- we're

23   going to say, no, there can't be any presumption of

24   classwide causation.

25           THE COURT:  Okay.  Well, certainly where I

1   have -- if you've looked at my record, I'm not an always

2   certify/never certify person.  There are occasions where

3   I don't certify class actions and there are cases where

4   I do.  And certainly to the extent that there are

5   individual questions of causation or reliance that

6   overwhelm the common issues I've declined to certify a

7   class.  So if you have an argument here that you need

8   some discovery to pursue, that's fine.

9          MR. MORGAN:  Yeah, I think in terms of our

10  discovery it's probably going to just be depositions of

11  the main plaintiffs.  We'll do our internal work on

12  survey evidence, et cetera, but I don't think we're

13  going to need lots of discovery.

14         THE COURT:  So you're not going to be in a

15  position to respond to a motion for class certification

16  until you've had a chance to do discovery; is that going

17  to be your position?

18         MR. MORGAN:  And after deposing the main

19  plaintiffs; yes, your Honor.

20         THE COURT:  All right.  So we're going to have

21  some discovery issues associated with class

22  certification, and we might have an aggressively

23  litigated motion to oppose the class certification.

24         MR. MORGAN:  And I'm confident the plaintiffs

25  will want discovery from us on the class issues as well.

1          THE COURT:  Okay.  All right.  Well, then

2     let's assume that I'm not going to just have an

3     agreement to certify classes here.  I'm going to have

4     some potential opposition.

5          I don't like to waste time, spin wheels.  If

6     you think you have a legitimate argument on something

7     like reliance or causation that really has a chance of

8     winning, I fully understand.  On the other hand, to the

9     extent it seems to me that somebody is doing something

10    just to string things out, it's going to be problematic

11    for me.  It's great if you've got a good faith basis to

12    proceed and have a meritorious reason for opposing it.

13    If you don't, please don't make your client pay for you

14    to work, please don't make the plaintiffs work, and

15    don't make me work unnecessarily because I've got a lot

16    of other things to do.

17          MR. MORGAN:  Of course, your Honor.  And

18    another issue -- and we'll see if this comes out in the

19    amended complaint, but part of their theory is that a

20    price premium is charged for the antibacterial.  That's

21    been an issue that's come up in lots of consumer cases.

22    The Second Circuit had one with Snapple.  California had

23    one with Kraft.  Both of those, whether there was a

24    price premium, the extent to which it was common across

25    different jurisdictions, it was almost the sole basis on

1    which those courts denied certification.  So we think

2    there's also going to be significant issues there.

3              THE COURT:  All right.  So you're going to be

4    needing some discovery from them, maybe depositions of

5    main plaintiffs.

6              MR. MORGAN:  Correct.

7              THE COURT:  The discovery you need from them

8    is sort of obvious, and I don't foresee discovery being

9    a huge problem that requires intervention of the Court.

10   Are you anticipating issues with respect to discovery?

11             MS. KARL:  No, your Honor.  We're anticipating

12   cooperation between counsel that we'll exchange

13   documents.  We'll make the plaintiffs available for

14   single depositions and move forward on that basis.

15             THE COURT:  How are you proposing to handle

16   the document discovery and the maintenance of a database

17   for discovery, things like that?  How are you proposing

18   to handle electronic discovery?

19             MR. LEVITT:  I could speak to that, your

20   Honor.  To the extent that we're getting everything in

21   electronic format, which I'm not sure we are, that's not

22   a conversation we've had yet.  But as we've all done in

23   a number of our cases, both in the past and now, a

24   number of us have very sophisticated internal computer

25   systems and document management systems.  We assumed we

1    would use one of the off-the-shelf packages, be it the

2    Summation package perhaps, or something like that, and

3    we would manage everything on there.  And we would do

4    the review either on-site or a remote review with the

5    off-site licenses we all have.  So there's a way to

6    manage it.

7          THE COURT:  If everybody is cooperating

8    together from the plaintiff's side, there won't be any

9    issue of certain representatives having access to the

10   discovery and not others.

11         MR. LEVITT:  No.  They'll be on a single

12   document server.  The reviewers will all have the

13   required access and they'll all be able to see the

14   documents, and we'll all move it forward in the uniform

15   way that we think the private ordering sets forth the

16   right manner of doing it in this case.

17         THE COURT:  And you have not yet broached the

18   subject with defense counsel over how you're going to

19   handle discovery; is it going to be electronic, to what

20   extent it is going to be paper?

21         LEVITT:  What we've done so far, your Honor --

22   as Ms. Karl said, we sent the other side yesterday a

23   proposed scheduling order.  They just got it yesterday

24   so they still need time to review it, but we haven't

25   gotten down to the format of document production yet.

1    That would have to come in the form of an ESI order

2    perhaps, or a preservation order, and that's one of the

3    things -- or two of the things that we're going to work

4    out with the other side hopefully, and then we'll have

5    that conversation.

6            Again, as I'm sure you can tell, it's not the

7    first rodeo for any of us in this room and we'll get it

8    worked out.

9            THE COURT:  Again, a lot of my comments stem

10   from problems that I've had over the course of my

11   career.  Another problem I had in Tyco with -- I had

12   some of the best lawyers in the United States in that

13   case, as far as I'm concerned, and the principal lawyer

14   for Tyco said to me in a conference at about this stage

15   of the Tyco proceedings, don't worry about electronic

16   discovery, Judge.  I will throw myself in front of a bus

17   if the Court has to become involved in these discovery

18   disputes.  And then three years later after it was --

19   after the plaintiffs' group had spent many millions of

20   dollars trying to manage a document database and there

21   were huge arguments between plaintiff and defendant as

22   to who was responsible for this charge or that charge, I

23   had a conference with counsel and I said, all right,

24   it's time to get out on the street and throw yourself in

25   front of the bus.  You made your promise and you didn't

1    fulfill it.

2              I certainly -- I understand that counsel are

3    experienced, sophisticated and will work in good faith,

4    but I don't want to become involved in discovery

5    disputes.  If I have to become involved in discovery

6    disputes, things will get unpleasant for you quickly

7    because I don't like to do that.  I expect people to

8    work in good faith and be reasonable.

9              With respect to discovery in almost all cases,

10   skilled lawyers can anticipate what a likely ruling from

11   the Court is going to be, and so I expect them to

12   anticipate that and adjust to it rather than to put the

13   Court to the trouble of having to immerse itself in what

14   seems to me to be silly little disputes.  And so I don't

15   want to get involved with them unless absolutely

16   necessary.

17             MR. LEVITT:  I think Mr. Morgan and I would be

18   in complete agreement that the only people who like that

19   kind of a discovery fight less than the Court would be

20   the lawyers involved.

21             THE COURT:  Okay.  Good.

22             MR. LEVITT:  We'll do our best.

23             THE COURT:  Just don't promise to throw

24   yourselves in front of a bus.

25             MR. LEVITT:  I didn't do that, your Honor, and

1    I won't do that, your Honor.

2         MR. MORGAN:  Clients, on the other hand, seem

3    to embrace these fights.

4         THE COURT:  Yeah, I understand.  There may be

5    privilege issues, and I understand that sometimes there

6    are very important legal issues imbedded in a discovery

7    dispute that require the Court's involvement.  What I

8    don't expect to be involved in is, this is unduly

9    burdensome and oppressive, this is unfair, why aren't

10   you giving me this, because those kind of things

11   reasonable people should be able to resolve without

12   intervention of the Court.

13        So I will leave you to propose, in the first

14   instance, a plan for discovery, and assuming it's agreed

15   and reasonable I'll likely approve it.  But I just warn

16   you, I expect you to move and work together

17   cooperatively, and to the extent you don't it's going to

18   become unpleasant for me and therefore for you.

19        MR. MORGAN:  I understand, your Honor.

20        THE COURT:  Do you have anything that you want

21   to say about discovery?

22        MR. MORGAN:  Your Honor, no.  As Mr. Levitt

23   mentioned, we've already talked about in principle

24   stipulating to any SI orders, stipulating to a

25   protective order, and so we'll have all of the pieces in

1   place when it comes time for production.  As always,

2   there may be quibbles around the edges, but we'll do our

3   best to work those out.

4          THE COURT:  Okay.  Then let's talk about

5   motion practice.  We've talked about the likelihood of

6   litigation over class certification.  Is there going to

7   be a challenge -- likely to be a 12(b)(6) challenge to

8   this consolidated amended complaint?

9          MR. MORGAN:  Yeah, we'll of course take a look

10  at it.  In fact, there are several pending motions to

11  dismiss in the constituent cases.  As your Honor may

12  know, there's one pending in the Dial cases and we'll

13  probably be --

14         THE COURT:  Well, my proposal is to deny all

15  outstanding motions to dismiss without prejudice, and

16  we'll file a consolidated amended complaint and a single

17  renewed motion at that time.

18         MR. MORGAN:  Yeah, and there were various

19  motions -- not only motions to dismiss, but other

20  motions for certification in the constituent cases.

21         THE COURT:  All pending motions should be

22  denied without prejudice.

23         MR. MORGAN:  And I think we're all on the same

24  page on that.

25         THE COURT:  Okay.  All right.  Let me just --

1    I mean, I think people in your position had some great

2    hope for Iqbal and Twombley, and we're going to have

3    this renewed and reinvigorated 12(b)(6) practice.  I

4    don't think it's materialized, frankly, and I -- not to

5    say that there aren't claims that can be selectively

6    knocked out, but a piece of advice I would offer if you

7    want to be effective in front of me is to be selective

8    about your attacks at the 12(b) stage.

9            MR. MORGAN:  The arguments we intend to make

10   are not those type of arguments.

11           THE COURT:  Okay.  You can bury a few good

12   arguments in a very broadly drafted motion that just

13   wastes time and the Court can miss the good arguments

14   amidst all of the bad ones.  So what I'm saying to

15   you -- and you know this as an experienced lawyer, that

16   you in effect educate your opponent and give your

17   opponent a chance to amend around -- which I'm likely to

18   grant -- any deficiencies you point out at the 12(b)

19   stage.  So I would urge you to be very selective about

20   what kind of approach you take.

21           MR. MORGAN:  Understood.  I'm not anticipating

22   particularity claims, for instance.

23           THE COURT:  All right.  So we're likely to

24   get -- so you're probably going to try to do a 12(b)

25   first and then come in with a class certification and

1   then have summary judgment motions.

2            MR. MORGAN:  Correct.  Unless, for whatever

3   reason, a particular plaintiff's testimony gives us

4   reason to think we have very good grounds for an SJ, we

5   may bring that ahead of certification, but we would

6   certainly discuss scheduling with the plaintiffs.

7            THE COURT:  Okay.  When we build up a plan

8   here, we ought to build in deadlines for the filing of

9   these kinds of motions.  Okay?  So we're going to get

10  probably three rounds of motions.  We're going to get

11  12(b).  We're going to get a class certification.  We're

12  going to get summary judgment.

13           It sounds like, Ms. Karl, that you've already

14  anticipated -- or someone had said this -- what I want

15  to do with respect to motions, which is I only want one

16  motion being filed by the -- one motion with one

17  principal brief being filed by the plaintiffs for all

18  arguments that are being raised.

19           So each time if they file a motion we're going

20  to have one memorandum of law filed.  That's the

21  principal memorandum of law.  To the extent that there

22  are specific issues that you need a supplemental brief

23  for something on, we can talk about that, but I don't

24  want to have any duplication of legal argument presented

25  to me.  So one time.  One response to each thing that

1    they do.  And to the extent you need to do something

2    supplemental or you need an extension of the page

3    deadlines, I understand that you've got multiple class

4    actions here and multiple lawyers who are maybe more

5    interested in seeing their particular nuance of their

6    state law emphasized in a particular way, but it just

7    has to be done in a non-duplicative way.  That's what

8    I'm most concerned about.

9         MS. KARL:  Your Honor, that's our full intent.

10   You raised the one issue, and that would be that we will

11   most likely always be asking for an increased page

12   limit, because when you're dealing with the state law in

13   various jurisdictions it grows the brief, but we will

14   only be filing one brief.

15        THE COURT:  And I'm fine with that as long as

16   your brief doesn't duplicate -- you have the main brief

17   with the main arguments and then you have a special

18   section on Florida law --

19        MS. KARL:  Correct.

20        THE COURT:  -- that has an unusual feature

21   where you say, in addition to what we say in the main

22   brief Florida has something unusual, and this is the

23   unusual thing about it and this is where you need to pay

24   attention to it.  As long as you're doing it that way,

25   you're not going to have any problem.

1          MS. KARL:  That's the way we do it, yes.

2          THE COURT:  All right.  That's fine.  Okay.

3    Just a sense, have you any interest in trying to resolve

4    this earlier rather than later?  Have you had any

5    settlement discussions?  Do you intend to have them?  If

6    you don't feel you can comment publicly about it right

7    now, I understand, but is there anything you can tell me

8    about that?

9          MR. MORGAN:  We had a mediation in one of the

10   constituent actions last year.  I think we got fairly

11   close, but that was before all of the new entrants.  So

12   the case had been filed sometime before and the dynamic

13   has changed, and I think it's unlikely that right now is

14   the right juncture.  We're always happy to revisit it

15   when it makes sense.  And certainly I'm always in

16   contact with our in-house people about this and they

17   usually tell me when it makes sense, but I don't think

18   we're there yet.

19         THE COURT:  Well, from your perspective,

20   assume you deal with these people today, announced a

21   settlement, wouldn't you just have another 34 state

22   class actions filed the next day?

23         MR. MORGAN:  Well, typically in that scenario

24   the amended complaint would be nationwide and it will

25   wipe the slate clean, but I don't think that's the

1    hang-up right now.

2              THE COURT:  All right.  What would you like to

3    say on that?

4              MR. HOLLAND:  Eric Holland for the plaintiffs,

5    your Honor.

6              I wasn't a party to the early discussions, but

7    we had been made privy to it by counsel.  We did speak

8    with them in some detail early on as the MDL process was

9    getting ramped up, and the early discussions were for

10   one state only that counsel was having with one group of

11   lawyers that since folded into our group here.

12             At that time we did express an interest and

13   continue to have an interest in any kind of a process or

14   any kind of dialogue that counsel would like, and we

15   would just reassure the Court that we have expressed

16   that in the past and continue to express that interest

17   at any time that we would be happy to mediate or any

18   other process that makes sense.

19             THE COURT:  Okay.  Well, obviously we're very

20   early on in this case.  I'm sure there are things that

21   you want from them and things that they're going to need

22   to explore in terms of avenues for defense, and so I

23   fully understand that we may need to take sometime

24   before we move on to the next step.

25             All right.  Those were the main issues on my

1    agenda.  Now, how do we realize this -- get all of these

2    into the form of action items?  I already suggested I

3    need a motion for appointment of lead counsel and the

4    proposed committee structure.  That can be filed.

5    That's one of the things that we can do.  What else?

6    Yes, counsel.

7              MR. MORGAN:  Plaintiffs said that they had

8    mentioned -- proposed last night a joint Rule 26(f)

9    report, and there's some back and forth we're going to

10   need to do on that and also modify it in light of your

11   Honor's comments this afternoon.

12             We had talked about trying to propose

13   something to the Court within 14 days.

14             THE COURT:  Yeah, I'm fine with that.  What I

15   suggest you do is you actually submit a proposed case

16   management order with your submission if it's agreed

17   upon, and then to the extent I need to modify it if I

18   think there are things I can't accept, I will address

19   them, but you should -- so you're going to set up a

20   discovery schedule.  You're going to set up a motion

21   filing schedule.

22             I'm flexible with you regarding motion and

23   response and reply dates in these kind of cases.  I'm

24   flexible with you with regard to page limits on

25   dispositive motions.  So if you could reach agreement on

1    those -- I recognize in these kind of cases you

2    sometimes need to do more than the page limit, and as

3    long as what you're giving me seems credible -- if I

4    find you're wasting my time, I may unilaterally cut down

5    the page limits, but if you're using your space

6    efficiently and not burying me in unnecessary work, I'm

7    inclined to defer to you.

8            So what I would suggest you do is meet and

9    confer.  Is 14 days sufficient time to submit a case

10   management plan with a proposed order addressing all

11   these issues of discovery and motion practice?

12           MS. KARL:  Your Honor, I think we can address

13   most of them.  What our one thought is, is that we would

14   set the deadline for the summary judgment motion at a

15   later date after you've ruled on class certification.

16           THE COURT:  I'm okay on leaving it flexible.

17   In a complex case you need to sometimes adapt to what's

18   going on.  That's reasonable to me.

19           I think we should set deadlines for the

20   12(b)(6) motion, and I think it's reasonable -- after

21   you've figured out what classwide discovery, you should

22   be able to agree on a date for filing the class

23   certification motion.

24           So you're going to need a deadline for filing

25   a consolidated complaint, a deadline for answering or

1   otherwise responding to the consolidated complaint.

2   You'll file your motion to dismiss at that deadline.

3   You need to work out your timelines for when answers --

4   are you going to agree to a reply.  I really don't want

5   to have surreplies.  I'll give you -- in an MDL case

6   I'll give people, anybody who wants it, oral argument on

7   any dispositive motions, so if you just make a request

8   for oral argument.  That way you won't need to feel like

9   you need to have a surreply in.  You can come in for

10  oral argument if you determine that you want it.

11          I'm happy to decide most things on the papers.

12  Unless people request a conference, I'll give you an

13  opportunity to argue.  If I need argument, I'll just

14  schedule it on something.

15          But that's fine with me.  You can set those

16  three deadlines and set up your own rules with regard to

17  how long to respond.  I mean, if you want to take 30

18  days rather than 14 to respond to the motion to dismiss,

19  that's okay with me.  30 days on the class cert., that's

20  okay.

21          I want to see things moving along though.

22  What I want to see is committed progress, not delay.  So

23  as long as you have a schedule that seems reasonable to

24  me and you're in agreement over it, I'm likely to

25  approve it.

1            Are there any specific issues that might come

2    up now that you want my advice on about that case

3    management order, or do you feel you've got what you

4    need from me to go about trying to negotiate it and file

5    it?  Is there anything?

6            MS. KARL:  Your Honor, from the plaintiffs'

7    side, I think we're all set.  Yes, gentlemen?  Yes.

8            THE COURT:  Anything else?

9            MR. MORGAN:  I think that's it, your Honor.

10           THE COURT:  All right.  Those are the main

11   things on my agenda.  What is on your -- are there any

12   other things on your agenda that we haven't yet worked

13   out?

14           MS. KARL:  No, your Honor.  I think the hard

15   work on our side is just getting in place an ESI and

16   protective orders, and we hope to work collegially with

17   opposing counsel in getting those done in a cooperative

18   way for your Honor's review.

19           THE COURT:  Okay.  Great.  What I'll propose

20   to do then is I'll -- did we agree on 14 days for this

21   case management order?  Did we talk about that?

22           MR. MORGAN:  Yes.

23           MS. KARL:  Yes.

24           THE COURT:  So I'll look for that.  I'll look

25   for your motion where I can approve you as appointment

1   of lead counsel, and then I'll -- we'll calendar the

2   dates and keep track of things.

3          I probably won't -- unless I see something in

4   the papers you file that's problematic, I probably won't

5   set up another conference with you immediately.  To save

6   your time and money, I will try to do status type

7   conferences in the future by telephone so that people

8   don't have to travel, but I reserve the right to bring

9   you in if I feel we're having trouble because I think --

10  that's why -- I know it's expensive for you to come here

11  today, but I did want to see everybody here so that they

12  could hear and see me and I can hear and see them and we

13  can get an understanding amongst ourselves as to how

14  we're going to proceed.

15         Beyond that, I don't expect you will have to

16  show up here every time.  If you want oral argument, you

17  can send whatever person you're going to have present

18  the argument.  And hopefully you won't need to have a

19  lot of contact with me.  If things are going well, you

20  probably won't.  If I think things aren't going well or

21  if some of you don't think they're going well, I'm very

22  willing to do weekly or every other week telephone

23  conferences.  I'm willing to become more actively

24  involved, but I have confidence in you that you know

25  what you're doing and are experienced.  As long as you

1    don't lose that confidence, I'll stay out of your way.

2    Okay?

3              Is there anything else that we need to take up

4    today.

5              MR. MORGAN:  Nothing from me, your Honor.

6              MS. KARL:  Nothing from the plaintiffs.  Thank

7    you.

8              THE COURT:  Okay.  Thank you for coming.

9              MR. LEVITT:  Thank you very much, your Honor.

10             (Conclusion of hearing at 3:00 p.m.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

43

```
 1                 C E R T I F I C A T E

 2

 3

 4            I, Susan M. Bateman, do hereby certify that

 5   the foregoing transcript is a true and accurate

 6   transcription of the within proceedings, to the best of

 7   my knowledge, skill, ability and belief.

 8

 9
     Submitted: 5-2-12
10                              SUSAN M. BATEMAN, LCR, RPR, CRR
                                LICENSED COURT REPORTER, NO. 34
11                              STATE OF NEW HAMPSHIRE

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```