UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| IN RE COLGATE-PALMOLIVE SOFTSOAP ANTIBACTERIAL HANDSOAP MARKETING AND SALES PRACTICES LITIGATION | CASE NO.  12-MD-2320-PB (MDL DOCKET NO. 2320) (ALL CASES) |

## CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

**Dated:** June 26, 2012

This Consolidated Amended Class Action Complaint (the "Consolidated Complaint"), is brought by individual consumers residing, respectively, in the states of California, Florida, Illinois, Nevada, New Jersey, and South Carolina, on behalf of themselves and on behalf of statewide classes comprised of similarly-situated consumers residing in each of the foregoing respective states (the "Classes"), alleging claims against Defendant, Colgate-Palmolive Company ("Colgate" or "Defendant"), under those states' consumer protection/unfair and deceptive trade practices statutes and the respective statutory and common law warranty and unjust enrichment laws (as applicable) of each of those states.   The allegations in this Consolidated Complaint are based upon the personal knowledge of each of the Plaintiffs named herein (collectively, "Plaintiffs") as to themselves and their own actions, and upon information and belief as to all other matters.

## I.  NATURE OF THE ACTION

1.     This action alleges that Colgate, throughout the below-defined Class Period, deceptively and misleadingly marketed its Softsoap Antibacterial branded soaps, including but not limited to Softsoap Antibacterial Handsoap (all such Softsoap Antibacterial branded soap products are collectively referred to herein as "Softsoap Antibacterial" or the "Product") in a uniform manner, to Plaintiffs and the other members of the proposed Classes.

2.     Through its uniform, extensive, and comprehensive nationwide marketing campaign, Colgate intentionally represents to consumers that washing their hands with Softsoap Antibacterial – which contains the active ingredient triclosan – is more effective at killing or eliminating germs than washing with ordinary or conventional liquid hand soaps, which do not contain triclosan. In fact, washing with Softsoap Antibacterial is not any more effective than washing with ordinary soap and water; or ordinary, and less expensive, liquid hand soap.

1

Colgate also deceptively and unfairly represents that using Softsoap Antibacterial provides special health benefits, including, but not limited to, that Softsoap Antibacterial is "clinically proven to eliminate 99% of germs your family encounters," "kills 99% of common germs," "dermatologist tested," "offers antibacterial protection," "Goodbye Germs – Hello World," and is "America's most trusted handsoap."

3.      Unlike ordinary liquid hand soap, Softsoap Antibacterial contains "triclosan" as its active ingredient at a concentration of between 0.115% and 0.15%.   Triclosan is a chlorophenol that can function as an antibacterial and antifungal agent in certain circumstances. However, the United States Food and Drug Administration ("FDA") has not received evidence that triclosan added to hand soap provides an extra benefit to health and has further stated that "the agency does not have evidence that triclosan in antibacterial soap and body washes provides any benefit over washing with regular soap and water."

4.      In fact, due to studies showing that triclosan alters hormone regulation in animals and may contribute to making bacteria resistant to antibiotics, the FDA has engaged in an ongoing scientific and regulatory review of the safety of triclosan in regulated products, including hand soaps.   There are no reliable studies showing that triclosan provides any of Defendant's claimed purported benefits by hand-washing with Softsoap Antibacterial over conventional soaps.

5.      By falsely claiming that Softsoap Antibacterial is more effective than conventional liquid hand soap, and by disseminating these false claims to consumers nationwide through television commercials, Internet websites, print advertisements, Product packaging, and through other forms of promotional media, Defendant intended to induce – and did induce – unsuspecting consumers to purchase triclosan-containing Softsoap Antibacterial or to pay more

for Softsoap Antibacterial than they otherwise would have, resulting in millions of dollars of revenue for Defendant.

6.      Colgate's omissions and representations about the greater effectiveness and special health benefits of Softsoap Antibacterial, however, are deceptive and misleading and Colgate has taken no meaningful steps to correct consumer misconceptions regarding the Product.

7.      Indeed, there is no competent or reliable evidence that demonstrates that Softsoap Antibacterial provides any of the results Colgate promises and represents when used in community or "real world" settings in which the amount of soap used and amount of time used for washing are not strictly controlled.  Indeed, in April 2010, the FDA stated that there is no evidence that soap containing triclosan is superior to soap without the ingredient.

8.      Furthermore, there have been several studies suggesting that use of triclosan-containing consumer hand soaps, like Softsoap Antibacterial, may actually have a negative effect.  Softsoap Antibacterial thus has no substantiation for the claims it makes regarding the "clinically proven" nature of its product or the greater effectiveness of its Product. Defendant also fails to disclose those Products' risks.

9.      As a consequence of Colgate's misrepresentations and/or omissions regarding the greater effectiveness, special health benefits, and risks of Softsoap Antibacterial – perpetuated through Colgate's substantially uniform and extensive nationwide marketing campaign – Plaintiffs and the other members of the Classes have purchased Softsoap Antibacterial under the false impression that the Product provides a benefit over washing with regular soap and water or with other liquid soaps that do not contain triclosan.

10.    As a result of Colgate's extensive and substantially uniform marketing campaign, every consumer who has purchased Softsoap Antibacterial has been exposed – and continues to be exposed – to substantially the same material misrepresentations and/or omissions, the majority of which are included and prominently displayed on the packaging of all Softsoap Antibacterial products sold as well as in other forms of mass market advertising, prior to purchasing the Product.

11.    As a result of Colgate's misrepresentations and/or omissions regarding Softsoap Antibacterial, Plaintiffs and other members of the Classes were induced into purchasing a product which they believed provided them with heightened antibacterial protection, thus substantially overpaying for the Product.  Had Plaintiffs and the other members of the Classes been made aware that the Softsoap Antibacterial does not provide the promised benefit, they would not have substantially overpaid for their purchases of Softsoap Antibacterial, but, instead, would have paid substantially less for the Product, not purchased the Product at all, or purchased ordinary, less expensive, soaps that did not contain triclosan.  Instead, Defendant relied upon their express and implied representations to induce consumers into purchasing Softsoap Antibacterial and thus capitalizing on a large market share in the industry.

12.    Plaintiffs bring this action on behalf of themselves and on behalf of classes of similarly-situated consumers in their respective states of California, Florida, Illinois, Nevada, New Jersey, and South Carolina, to halt Colgate's dissemination of false and misleading advertising, to correct the false and misleading perception Colgate creates in the minds of consumers and the general public, and to obtain redress for Softsoap Antibacterial purchasers, including Plaintiffs and other members of the Classes.  Plaintiffs allege violations of the

4

consumer protection laws, breach of express and implied warranty, and unjust enrichment laws of each of the states in which they respectively reside.

## II.   JURISDICTION AND VENUE

13.     This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2).   The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and Plaintiffs and other members of the Classes are citizens of states different from Defendant.

14.     Venue is proper in this Court pursuant to 28 U.S.C. §1391 because many of the acts and transactions giving rise to this action occurred in this District and because Colgate is authorized to conduct business in this District, has intentionally availed itself of the laws and markets within this District through the promotion, marketing, distribution and sale of its products in this District; does substantial business in this District; and is subject to personal jurisdiction in this District.

15.     By Order dated March 7, 2012, the Judicial Panel for Multidistrict Litigation issued an Order transferring all related Softsoap Antibacterial cases to this Court for coordinated or consolidated pretrial proceedings, further making venue proper in this district pursuant to 28 U.S.C. § 1407.

16.     By their Joint Discovery Plan pursuant to Federal Rule of Civil Procedure 26(f) dated May 11, 2012, the parties agreed to file this Consolidated Amended Class Action Complaint as the operative Complaint in the transferred matter.

## III.   PARTIES

*Plaintiffs*

17.     Valerie Donohue is, and at all times relevant to this action has been, a resident of Marlton, New Jersey.   As such, Plaintiff Donohue is a New Jersey citizen.   Prior to purchasing

Softsoap Antibacterial starting in 2006, Plaintiff was exposed to and saw Colgate's packaging and advertising for Softsoap Antibacterial, described more fully below, and purchased the Softsoap Antibacterial at various retail stores in the Marlton, New Jersey area, in reliance on those packaging and advertising claims.

18.    Jeff Dyke is, and at all times relevant to this action has been, a resident of Pahrump, Nye County, Nevada.  As such, Plaintiff Dyke is a Nevada citizen.  Prior to purchasing Softsoap Antibacterial for the last several years, Plaintiff was exposed to and saw Colgate's packaging and advertising for Softsoap Antibacterial, described more fully below, and purchased the Softsoap Antibacterial at various retail stores in the Nye County area, in reliance on those packaging and advertising claims.

19.    Shari Elstein is, and at all times relevant to this action has been, a resident of Palm Beach County, Florida.  As such, Plaintiff Elstein is a Florida citizen.  Prior to purchasing Softsoap Antibacterial over the last several years, Plaintiff was exposed to and saw Colgate's packaging and advertising for Softsoap Antibacterial, described more fully below, and purchased the Softsoap Antibacterial at various retail stores in the Palm Beach County area, in reliance on those packaging and advertising claims.

20.    Adam Emery is, and at all times relevant to this action has been, a resident of Williamson County, Illinois.  As such, Plaintiff Emery is an Illinois citizen.  Prior to purchasing Softsoap Antibacterial over the last several years, Plaintiff was exposed to and saw Colgate's packaging and advertising for Softsoap Antibacterial, described more fully below, and purchased the Softsoap Antibacterial at various retail stores in the Williamson County area, in reliance on those packaging and advertising claims.

21.     Angela Johnson is, and at all times relevant to this action has been, a resident of Charleston County, South Carolina.[1]   As such, Plaintiff Johnson is a South Carolina citizen. Prior to purchasing Softsoap Antibacterial most recently in or about April 2012, Plaintiff was exposed to and saw Colgate's packaging and advertising for Softsoap Antibacterial, described more fully below, and purchased the Softsoap Antibacterial at Family Dollar in North Charleston, South Carolina, in reliance on those packaging and advertising claims

22.     Tracy Nieblas is, and at all times relevant to this action has been, a resident of San Diego County, California.  As such, Plaintiff Nieblas is a California citizen.  Prior to purchasing Softsoap Antibacterial over the last several years, Plaintiff was exposed to and saw Colgate's packaging and advertising for Softsoap Antibacterial, described more fully below, and purchased the Softsoap Antibacterial at various retail stores in the Southern California area, in reliance on those packaging and advertising claims.

23.     Kristina Pearson is, and at all times relevant to this action has been, a resident of Cook County, Illinois.  As such, Plaintiff Pearson is an Illinois citizen.  Prior to purchasing Softsoap Antibacterial most recently in or about March 2011, Plaintiff was exposed to and saw Colgate's packaging and advertising for Softsoap Antibacterial, described more fully below, and purchased the Softsoap Antibacterial at a Walgreen's store in Streamwood, Illinois, in reliance on those packaging and advertising claims.

24.     Irene Porter is, and at all times relevant to this action has been, a resident of Lee County, Florida.  As such, Plaintiff Porter is a Florida citizen.  Prior to purchasing Softsoap Antibacterial over the last several years, Plaintiff was exposed to and saw Colgate's packaging

---

[1] Plaintiff Johnson filed her complaint in the District of South Carolina on June 5, 2012.  On June 21, 2012, the Judicial Panel on Multidistrict Litigation filed a conditional transfer order transferring Plaintiff Johnson's action to the District of New Hampshire under 28 U.S.C. §1407.

and advertising for Softsoap Antibacterial, described more fully below, and purchased the Softsoap Antibacterial at various retail stores in the Lee County area, in reliance on those packaging and advertising claims.

25.     Jeffrey Rosen is, and at all times relevant to this action has been, a resident of Weston, Florida.  As such, Plaintiff Rosen is a Florida citizen.  Prior to purchasing Softsoap Antibacterial most recently in or about May 2010, Plaintiff was exposed to and saw Colgate's packaging and advertising for Softsoap Antibacterial, described more fully below, and purchased the Softsoap Antibacterial from a Publix store located in Weston, Florida, in reliance on those packaging and advertising claims.

26.     As a result of reviewing Colgate's pervasive advertising and packaging of the Product, Plaintiffs each believed and understood that using Softsoap Antibacterial would provide benefits above and beyond washing with regular soap and water.

27.     Based on Colgate's representations, Plaintiffs each viewed the package and thereafter purchased the Product for more than they would have purchased it for should they have known the true facts, and/or in excess of the price of other similar soap products – to the extent they would have purchased it at all.  As a result of those purchases, Plaintiffs each suffered injury in fact and lost money and/or property as a result of the conduct described herein.

28.     In making their purchasing decisions, Plaintiffs each relied upon Colgate's uniform national marketing campaign, including, among other things, the packaging; advertising and/or other promotional materials which were prepared and approved by Colgate and/or its agents and disseminated through its packaging, advertising, marketing and/or through local and national advertising media, including Colgate's Internet website; media and in-store advertisements; and packaging seen at retail outlets containing the misrepresentations and/or

omissions alleged herein. Had Plaintiffs known the truth about the Product, they would have paid less for Softsoap Antibacterial, purchased ordinary soap, or would not have purchased the Product at all.

*Defendant*

29.     Colgate is incorporated in the State of Delaware and has its principal place of business and corporate headquarters in New York City. Colgate is a leading consumer products company whose products are marketed in over 200 countries and territories throughout the world. Colgate promotes, markets, distributes, and sells a broad range of well-known branded products, including toothpastes, tooth brushes, liquid hand soaps, bar soaps, shower gels, deodorants, antiperspirants, dishwashing liquids, household cleaners, and pet foods throughout the United States.

### IV.   <u>SUBSTANTIVE ALLEGATIONS</u>

*Triclosan – The Active Ingredient in Softsoap Antibacterial*

30.     The active ingredient in Softsoap Antibacterial is a compound known as triclosan. Triclosan was first patented as an herbicide. Later, it was found that triclosan had antimicrobial properties useful for hygiene but limited antiviral and antifungal efficacy. Triclosan was used in some soaps and deodorants since the 1960's and was first used in surgical scrub for medical professionals in the early 1970's. In more recent years, it has been added to many consumer products, including a wide variety of soaps and body washes, toothpaste, clothing, kitchenware, furniture, and toys.

31.     In 1994 the FDA classified triclosan as a Class III chemical, meaning that the agency could not determine whether triclosan was safe and effective due to insufficient data. The mechanism of action by which triclosan is believed to have antimicrobial properties when

present in sufficient concentration is by blocking the enoyl-acyl carrier protein reductase enzyme (ENR), which is an essential enzyme in the fatty acid synthesis of bacteria. By doing so, triclosan prevents the bacteria from synthesizing the fatty acid necessary for bacterial reproduction.

32.     Triclosan is a chlorophenol, a class of chemicals which is suspected of causing cancer in humans. While the companies that manufacture products containing triclosan claim that it is safe, the Environmental Protection Agency (EPA) has registered it as a pesticide. The EPA gives triclosan high scores both as a human health risk and as an environmental risk.

33.     Reports have suggested that triclosan can combine with chlorine in tap water to form chloroform, which the United States Environmental Protection Agency classifies as a probable human carcinogen. As a result, triclosan was the target of a UK cancer alert, even though the study showed that the amount of chloroform generated was less than amounts often present in chlorinated drinking waters.

34.     Triclosan also reacts with the free chlorine in tap water to produce lesser amounts of other compounds, like 2,4-dichlorophenol. Most of these intermediates convert into dioxins upon exposure to UV radiation from the sun or other sources. Although small amounts of dioxins are produced, there is a great deal of concern over this effect, because some dioxins are extremely toxic and are very potent endocrine disruptors.

35.     Colgate's comprehensive advertising campaign also fails to advise and/or warn consumers that repeated use of Softsoap Antibacterial may cause the development of bacteria that can easily tolerate the concentration of triclosan in the soap and that triclosan kills only some types of bacteria while allowing others to thrive.

36.    As early as 2000, the American Medical Association ("AMA") began questioning the effectiveness of antibacterial soaps containing triclosan.  At its 2000 Annual Meeting, the AMA summarized the available data on the effectiveness of antimicrobial ingredients, such as triclosan, in consumer products. At that time the AMA stated that there was no evidence to support a claim that triclosan was an effective antimicrobial agent when used in consumer products, and concluded that the use of common antimicrobials, like triclosan – for which acquired resistance has been demonstrated in bacteria – as ingredients in consumer products should be discontinued, unless data emerge to conclusively show that such resistance has no impact on public health and that such products are effective at preventing infection.

37.    In 2000, the Center for Disease Control ("CDC") presented a study by Stuart B. Levy of Tufts University School of Medicine entitled *Antibacterial Household Products: Cause for Concern*.  The study poignantly addressed the reality that consumers purchase antibacterial products because they believe these products offer health protection to them and their families. Dr. Levy's study proved that triclosan was not demonstrably useful at achieving this goal.  The time, temperature, and amount of triclosan needed in order to effectively kill common bacteria far exceeded that which is present in the common triclosan soap used during the average 5-second hand wash performed by most people.

38.    A 2002 study by the National Institutes of Health agreed that "[a]ntibacterial soaps are no better at killing germs than regular soap." The American Medical Association and Canadian Pediatric Society among other groups also concluded that antibacterial soaps and washes are no more effective than regular soap and water in everyday use for fighting infection.

39.    In 2004, a study published in *Emerging Infectious Diseases*, entitled "Antibacterial Cleaning Products and Drug Resistance," warned that "more extensive use of

11

triclosan might provide a suitable environment for emergence of antimicrobial drug-resistant species in the community setting."

40.     In October 2005, the FDA's Non-Prescription Drug Advisory Committee (the "Committee") convened to discuss the potential risks and benefits associated with antiseptic products marketed for consumer use, including soaps labeled as "antibacterial."  The Committee was comprised of eleven doctors and scientists tasked with examining the current evidence on the effectiveness of antibacterial products as compared to products which do not contain antibacterial chemicals.  The focus of this meeting was the use of antibacterial soaps which contain triclosan as their active antibacterial ingredient.  In a clear message, which was later echoed by the CDC, the Committee concluded unanimously "that there was a lack of evidence supporting the benefit of consumer products including handwashes, bodywashes, etc., containing antibacterial additives over similar products not containing antibacterial additives."

41.     The CDC affirmed the FDA Committee's findings in October 2005, when they published a study entitled Antibacterial Cleaning Products and Drug Resistance in their peer reviewed, open access journal Emerging Infectious Diseases.  This study confirmed earlier research done by the CDC which showed that the use of antibacterial hand soap containing triclosan was not more effective than plain soap at reducing bacterial counts or infectious illness symptoms.

42.     In 2007, University of Michigan, Columbia University, and Tufts University scientists determined that soaps containing triclosan in liquid soap do not show a benefit above and beyond conventional soap in a consumer environment. The study, entitled "Consumer Antibacterial Soaps: Effective or Just Risky," was a systematic literature review designed to assess the studies examining the efficacy of products containing triclosan, compared with that of

conventional soap.  The review, which included published studies between January 1980 and July 2006, concluded that the available data did not "support the effectiveness of triclosan for reducing infectious disease symptoms or bacterial counts on the hands when used at the concentrations commonly found in consumer antiseptic hand soaps."  In fact, triclosan hand soaps performed similarly to plain soaps in the majority of studies reviewed.  The review further concluded that available studies show that consumer products containing triclosan are not effective against the most common infectious illnesses. The health utility of triclosan, as a measure of added protection beyond that afforded by plain soap use, had not been shown. Simply put, "efficacy studies strongly suggest that concentrations of triclosan used in consumer liquid hand soaps do not provided a benefit over plain soap for reducing bacterial levels found on the hands."  In closing, the study specifically called into "question the marketing of soaps containing triclosan as a product providing efficacy beyond the use of plain soap."

43.     A 2007 study entitled "Proteomic Analysis of triclosan Resistance in *Salmonella enterica* Serovar Typhimurium" showed that *Salmonella enterica* could develop resistance to triclosan.  Similar studies have shown that other types of bacteria, including *Pseudomonas* and *Mycobacterium* species, can also become resistant to triclosan.

44.     As early as 2008, Colgate began publicly acknowledging to its shareholders that use of triclosan presented a risk.  Indeed, in its 2008 and 2009 annual reports (Form 10-K), which it filed with the United States Securities and Exchange Commission, Colgate acknowledged a "risk factor" associated with the use of triclosan, stating:

> "**In 2005, the FDA established an advisory panel to examine the use of certain anti-microbials, including Triclosan, in anti-microbial hand soaps, wipes and hand sanitizers.** Also, the European Commission (EC) is examining the use of Triclosan in consumer products. A finding by the FDA, the EC or another overseas regulatory authority that Triclosan should not be used in certain consumer products or should otherwise be regulated could have an adverse impact on our business, as could negative reactions to Triclosan from consumers, our trade customers or nongovernmental organizations."

45.     Although the FDA advisory panel was convened in 2005, Colgate failed to reference the panel in its 2006 or 2007 annual reports.  Moreover, Colgate removed the FDA advisory panel disclosure from its 2010 and 2011 annual reports.

46.     Other than those two annual reports references to the FDA advisory committee in its 2008 and 2009 annual reports, Colgate continued its aggressive, uniform marketing scheme that Softsoap Antibacterial was "clinically proven to eliminate 99% of germs your family encounters", "kills 99% of common germs", and "offers antibacterial protection."

47.     In January 2010, the United States House of Representatives, Committee on Energy and Commerce, petitioned the FDA and EPA for updated information on the oversight and regulation of triclosan.  In response to this inquiry the FDA again confirmed that it was unaware of any evidence that antibacterial washes were superior to conventional soap.   The heightened political awareness of triclosan resulted in the FDA initiating a formal reevaluation of the chemical.

48.     In 2010, the U.S. Food & Drug Administration issued a press release advising consumers that it was reviewing both the safety and effectiveness of products containing triclosan.  The agency said it had no evidence that triclosan in antibacterial soaps and body washes provides any benefit over washing with regular soap and water.  *See* FDA Consumer Health Information, *triclosan: What Consumers Should Know* (April 2010) *available at* http://www.fda.gov/downloads/ForConsumers/ConsumerUpdates/UCM206222.pdf   ("At   this time, the agency does not have evidence that triclosan in antibacterial soaps and body washes provides any benefit over washing with regular soap and water.").

49.     In its April 2010 press release, the FDA also emphasized that animal studies have shown that triclosan alters hormone regulation and may contribute to making bacteria resistant to

antibiotics.  *Id*. ("Animal studies have shown that triclosan alters hormone regulation.  However, data showing effects in animals don't always predict effects in humans. Other studies in bacteria have raised the possibility that triclosan contributes to making bacteria resistant to antibiotics.").

50.     The FDA has not been alone in their efforts to warn consumers about triclosan. The European Union banned triclosan from items expected to come into contact with food and set limits on the amount of triclosan that can be in cosmetics.  Furthermore, countries including Canada, Norway, Germany, Sweden, Finland, and Japan have restricted, required warnings, or advised consumers against use of products containing triclosan.  In August 2009, the Canadian Medical Association asked the Canadian government to ban triclosan use in household products under concerns of creating bacterial resistance and producing dangerous side products (chloroform).  Moreover, in October 2008, Norway's Pollution Control Authority ("PCA") recommended a ban of production, imports, exports and trade of consumer products containing triclosan.  In supportive documents provided by the PCA, it was noted that "[t]riclosan has no necessary function in most products."   In 2009, Germany's Federal Institute for Risk Assessment, which reports to the Federal Ministry of Food, Agriculture and Consumer Protection, issued a statement supporting the ban of triclosan except when absolutely necessary.

***The Product and Colgate's Advertising***

51.     Colgate's false, misleading, and deceptive marketing campaign begins with the name of the product at issue: "Softsoap *Antibacterial*."  This product name implies that Softsoap Antibacterial will destroy more bacteria than ordinary hand soap.  Colgate's exhaustive advertising campaign builds on this deception.  In truth, Colgate has no independent, competent, and reliable support for these claims.

15

52.     Throughout the below-defined class period, Colgate deceptively and unfairly promoted Softsoap Antibacterial to consumers as having different, special health benefits compared to ordinary liquid hand soap, including, but not limited to, being clinically proven to eliminate 99% of the germs your family encounters, and that it is dermatologist-tested.

53.     Colgate repeats its false and deceptive claims regarding greater effectiveness than ordinary liquid hand soap on the packaging for Softsoap Antibacterial, by prominently indicating that Softsoap Antibacterial "eliminates 99% of germs" and that Softsoap Antibacterial Hand Soap is "clinically proven to eliminate 99% of the germs your family encounters."  Examples of Softsoap Antibacterial's packaging and label are reproduced below:



16



**ELIMINATES
99% OF GERMS***

# Softsoap®
brand

ANTIBACTERIAL HAND SOAP

**REFILL
TWO
80 FL OZ (2.5 QT)
2.36 L BOTTLES
TOTAL 160 FL OZ (5 QT) 4.73 L**

S9789

# Softsoap®
brand

**Wash away the germs, feel the softness®**
Softsoap® Brand Antibacterial Hand Soap
contains light moisturizers to help leave your hands
feeling soft and is *clinically proven to eliminate 99% of the
germs your family encounters. Dermatologist tested.

## Drug Facts

| Active ingredient | Purpose |
|---|---|
| Triclosan 0.115% . . . . . . . . . . . . . . . . . . . . . . . . | Antibacterial |

**Use** helps eliminate germs on hands

### Warnings
**When using this product,** avoid contact with eyes. In case of contact, flush with water.
**Keep out of reach of children,** except under adult supervision. If swallowed, get medical help or contact a Poison Control Center right away.

**Directions** wash hands and rinse

**Inactive ingredients** water, sodium laureth sulfate, cocamidopropyl betaine, decyl glucoside, fragrance, DMDM hydantoin, sodium chloride, PEG-120 methyl glucose dioleate, tetrasodium EDTA, sodium sulfate, polyquaternium-7, citric acid, poloxamer 124, PEG-7 glyceryl cocoate, D&C Red No. 33, FD&C Blue No. 1

**Questions or comments?** Call toll-free **1-800-255-7552**

Dist. by:
**COLGATE·PALMOLIVE** COMPANY New York, NY 10022

0  74182 29122  8

Visit www.softsoap.com
Recyclable
Bottle

MADE IN
USA

9857790

54.     Colgate further repeats its false and deceptive claims regarding Softsoap Antibacterial on its webpage for Softsoap Antibacterial: http://www.colgate.com/app/Softsoap/US/EN/Liquid-Hand-Soap/Classics.cvsp.     Particularly, Colgate states on the website that Softsoap Antibacterial Hand Soap is "clinically proven to eliminate 99% of the germs your family encounters." *See* http://www.colgate.com/app/Softsoap/US/EN/Liquid-Hand-Soap/Classics.cvsp.

55.     Furthermore, Colgate repeats these false and deceptive claims on its publicly accessible commercial products webpage for Softsoap Antibacterial, claiming that Softsoap Antibacterial Hand Soap is "clinically proven to eliminate 99% of germs" and "offers antibacterial protection." *See* http://www.colgatecommercial.com/Softsoap®-brand-Antibacterial-Hand-Soap-with-Light-Moisturizers-01901.aspx

56.     Colgate reinforces the false and deceptive claims that Softsoap Antibacterial is more effective than ordinary liquid hand soap in that it is "clinically proven to eliminate 99% of germs" and "offers antibacterial protection" by stating "Goodbye germs. Hello world" on Colgate's webpage for Softsoap. *See* http://www.colgate.com/app/LatherUpForGoodHealth/US/EN/home.cwsp.

57.     Colgate further reinforces these false and deceptive claims regarding Softsoap Antibacterial on Colgate's webpage for Softsoap Antibacterial by stating that Softsoap Antibacterial is "America's most trusted hand soap." *See* http://www.colgate.com/app/LatherUpForGoodHealth/US/EN/home.cwsp.

58.     Thus, Colgate deceptively and unfairly implies that Softsoap Antibacterial's active ingredient – triclosan – enables Softsoap Antibacterial to outperform other soap products.

59.     Colgate deceptively and unfairly claims and implies in its statements about Softsoap Antibacterial's greater effectiveness and superiority are backed by a competent, credible, and reliable clinical study.  But the advertising for Softsoap Antibacterial fails to disclose which clinical studies Colgate purports to rely on for substantiation of its claims.  Nor has Colgate otherwise indicated how it has substantiated its claims that Softsoap Antibacterial is "clinically proven to eliminate 99% of germs."  In fact, Colgate's product was never clinically proven to provide any benefit greater than that provided by using conventional soap.

60.     Colgate's nationwide advertising campaign for Softsoap Antibacterial has been extensive and comprehensive.  Colgate-Palmolive spent millions of dollars to convey the deceptive messages outlined above to consumers throughout the United States.  Colgate conveyed, and continues to convey, deceptive claims about Softsoap Antibacterial through a variety of media, including television, newspapers, Internet, promotional placements, point-of-sale displays, and on Softsoap Antibacterial labels and packaging.

61.     Colgate's advertising and marketing campaign sends the unmistakably clear, but unconscionably deceptive and unfair message, that Softsoap Antibacterial is more effective at eliminating germs, protecting the consumer from germs, and thus preventing illness and promoting good health, than washing with ordinary liquid hand soaps that do not carry the risks associated with triclosan.

62.     Colgate's advertising and marketing campaign is designed to cause consumers to buy Softsoap Antibacterial on the basis that it is more effective than washing with regular soap and water and, thus, is worth purchasing at all or is worth purchasing for a higher price than consumers would otherwise pay.  As a result of this false and misleading campaign, Colgate has

elevated Softsoap Antibacterial to the number one seller in the antibacterial hand soap product category.

63.     But despite the ubiquity of Colgate's claims and advertisements regarding the superior effectiveness of Softsoap Antibacterial, Softsoap Antibacterial does not eliminate more germs and is not any more effective than ordinary, at times less expensive, non-triclosan containing liquid hand soap.

**Softsoap Antibacterial is NOT More Effective**
**Than Ordinary Liquid Hand Soap**

64.     Colgate's advertising message ignores the well-supported fact that washing with ordinary liquid hand soap is just as effective as washing with Softsoap Antibacterial regardless of Softsoap Antibacterial's triclosan content.

65.     Colgate's claims about Softsoap Antibacterial's effectiveness and superiority are false, deceptive, unfair, and unconscionable because there is not sufficient, competent, and/or reliable scientific evidence and/or substantiation for Colgate's effectiveness and superiority claims concerning its Softsoap Antibacterial products.

66.     Specifically, Colgate has no competent, credible, and reliable scientific evidence that is sufficient in quality and quantity based on standards generally accepted in the relevant scientific fields, when considered in light of the entire body of relevant and reliable scientific evidence, to substantiate its claims regarding the superior effectiveness of Softsoap Antibacterial.

67.     Rather, numerous scientific studies have reached the opposite conclusion – that triclosan containing soaps that are available in the consumer setting, such as Softsoap Antibacterial, are no more effective than ordinary liquid hand soaps that do not contain triclosan.

68.     The Journal of the Annual Meeting of the AMA in 2000 concluded that "the use of common antimicrobials [*i.e.* triclosan] for which acquired resistance has been demonstrated in

bacteria as ingredients in consumer products should be discontinued, unless data emerge to conclusively show that such resistance has no impact on public health and that such products are effective at preventing infection."

69.     For example, the AMA's Council on Scientific Affairs noted in 2002 that "[d]espite the recent substantial increase in the use of antimicrobial ingredients in consumer products, the effects of this practice have not been studied extensively.  No data support the efficacy or necessity of antimicrobial agents in such products, and a growing number of studies suggest increasing acquired bacterial resistance to them.  Studies also suggest that acquired resistance to the antimicrobial agents used in consumer products may predispose bacteria to resistance against therapeutic antibiotics, but further research is needed.  Considering available data and the critical nature of the antibiotic-resistance problem, it is prudent to avoid the use of antimicrobial agents in consumer products."  *See* Tan, Litjen, *et al.*, *Use of Antimicrobial Agents in Consumer Products, Abstract*, Archives of Dermatology 2002; 138: 1082-1086 (August 2008), *available at* http://archderm.ama-assn.org/cgi/content/abstract/138/8/1082/.

70.     In March 2004, a study published in the American Journal of Infection Control concluded that, after testing the efficacy of fourteen different hand hygiene agents including a hand wash with 1% triclosan, washing with plain soap and water was more effective than triclosan after one wash.  Sicket-Bennett, Weber, Gergen-Teague, Sobsey, Samsa, Rutala. *American Journal of Infection Control,* pp. 67-77.

71.     Several studies have been published regarding hand cultures in houses using liquid hand soap containing 1.2% triclosan to observe the presence of bacteria.  These studies found that little evidence supported the notion that triclosan soap affords any benefit in the reduction of infectious symptoms, bacterial counts, or types of bacteria on the hands of

21

individuals within the household setting in the developed world. *See* Allison E. Aiello et al.*, Relationship between Triclosan and Susceptibilities of Bacteria Isolated from Hands in the Community*, 48 Antimicrob. Agents & Chemother. 2973 (Aug. 2004), available at http://aac.asm.org/content/48/8/2973.full.; Allison E. Aiello, *et al.*, *Consumer antibacterial soaps: Effective or just risky?*, Clinical Infectious Diseases. 45 Suppl 2:S137-47 (2007); and Elaine L. Larson et al., *Effect of Antibacterial Home Cleaning and Handwashing Products on Infectious Disease Symptoms*, Annals of Internal Medicine, Vol. 140, No. 5 (March 2004).

72.     Another double-blinded, randomized clinical trial involving more than 200 inner city households by Columbia University researchers measured the effects of handwashing with a plain or antimicrobial (containing 0.2% Triclosan) soap on bacterial counts of the hands before and after a single wash and before and after handwashing following a year of product use concluded that "there was very little measurable effect of handwashing on microbial counts on hands. In fact, following a single wash (i.e. the baseline sample) there was no significant reduction in CFU [(Colony Forming Units, a microbial metric)] for persons using an antimicrobial soap" and "found little difference in microbial counts on hands of those using either product[.]"  *See* Larson, *et al.*, *Short- and Long-Term Effects of Handwashing with Antimicrobial or Plain Soap in the Community*, J. Community Health, Vol. 28, No. 2, pp. 145, 148 (April 2003).

73.     Similarly, the FDA noted that it "does not have evidence that triclosan in antibacterial soaps and body washes provides any benefit over washing with regular soap and water" and "does not have evidence that triclosan added to antibacterial soaps and body washes provides extra health benefits over soap and water."  FDA Consumer Health Information,

*Triclosan: What Consumers Should Know*, (April 2010) *available at* http://www.fda.gov/downloads/ForConsumers/ConsumerUpdates/UCM206222.pdf.

74.     In this same consumer update, the FDA further noted that "several scientific studies have come out since the last time FDA reviewed [triclosan] that merit further review," that "Animal studies have shown that triclosan alters hormone regulation" and that "In light of questions raised by recent animal studies of triclosan, FDA is reviewing all of the available evidence on this ingredient's safety in consumer products.  FDA will communicate the findings of its review to the public in spring 2011."  *Id.*  Although the FDA indicated it would communicate new findings in spring 2011, it has delayed doing so.

75.     Furthermore, on April 8, 2010, Representative Edward J. Markey, chairman of the House Energy and Commerce Subcommittee on Energy and the Environment urged a ban on many applications of triclosan, including in consumer soaps and hand washes, stating that "There is clear evidence that many consumer products that contain [triclosan] are no more effective than those that do not.  However, triclosan continues to be used in products that saturate the marketplace.  Consumers – especially parents – need to know that many of these products are not only ineffective, they may also be dangerous."

76.     On May 21, 2010, Andrew D. Hendry, Colgate-Palmolive's Senior Vice President, issued a response to Representative Edward J. Markey's concerns.  Mr. Hendry stated that Colgate-Palmolive does not specifically market products that contain triclosan to children.  Further, Mr. Hendry stated that Colgate-Palmolive plans to introduce antibacterial dishwashing formula that does not contain triclosan as a result of consumer preference.

77.     Despite this growing anti-triclosan consumer preference and the above mentioned studies, Colgate-Palmolive continues to sell and market Softsoap Antibacterial Hand Soap.

78.     Moreover, despite the overwhelming scientific evidence contrary to Colgate's false claims regarding the superior effectiveness of Softsoap Antibacterial, Colgate continued to make these claims in order to induce consumers, including Plaintiffs and the other Class members, to purchase Softsoap Antibacterial at all or to have purchased Softsoap Antibacterial for a greater price than they otherwise would have paid.

79.     Although Colgate was, and is, aware of this lack of substantiation as well as the questions as to the safety and efficacy of Softsoap Antibacterial, Colgate, nevertheless, made false and misleading representations to consumers – including Plaintiffs and the other members of the Classes – about the Product.

80.     Absent such substantiation, Colgate's claims regarding the Product are deceptive and misleading.  Had Plaintiffs and the other members of the Classes been aware of the truth about Softsoap Antibacterial, they would not have substantially overpaid for their purchases of Softsoap Antibacterial, but, instead, would have paid substantially less for the Product, not purchased the Product at all, or purchased conventional soaps that did not contain triclosan.

81.     At all times relevant to this action, Plaintiffs and the other members of the Classes, heard, saw, and relied upon various claims, promotions, commercials, and advertisements for Softsoap in making the decision to purchase the Product.  In particular, every Plaintiff saw at least the claims and representations on the Product's packaging, which is a form of advertisement and marketing, when they saw the Product in the retail stores from which they purchased it and when they saw the Product in their homes.

82.     In reliance on the false, unfair, deceptive and/or unconscionable and unfair promotional, package and advertising claims and omissions, Plaintiffs and each of the other members of the Classes purchased Softsoap Antibacterial.  Unbeknownst to Plaintiffs and the

other members of the Classes at the time of purchase, however, there was and still is no reasonable basis in fact or substantiation for Colgate's claims that Softsoap Antibacterial is "clinically proven to eliminate 99% of germs your family encounters," "kills 99% of common germs," is "dermatologist tested," "offers antibacterial protection," "Goodbye Germs – Hello World," and is "America's most trusted handsoap."

83.     Colgate's false statements of product quality and effectiveness concerning Softsoap Antibacterial would cause a reasonable person to believe such statements, and did, in fact, cause the Plaintiffs and the other members of the Classes to believe and rely upon such statements in making their decisions to buy Softsoap Antibacterial.

84.     Despite the reasonable expectations of consumers created by its marketing, advertising, and sale of Softsoap Antibacterial, Colgate engaged in the following routine, albeit wrongful, course of conduct, wherein Colgate:

      a.     Represented expressly or by implication that the Product is more effective, when it knows that those representations are false;

      b.     Failed to disclose to consumers the reasonably foreseeable risks of using Softsoap Antibacterial and the material defects in the Product;

      c.     Failed to disclose the nature of the defects to consumers;

      d.     Improperly warranted, represented and claimed, or implicitly warranted, represented and claimed, in its advertisements to possess and rely upon clinical and/or scientific data to support its claims that Softsoap Antibacterial is as effective and superior in quality as Colgate represents, and Colgate cannot and has not substantiated its representations, advertising claims, or assertions it has made  on the Product packaging in connection with its marketing, advertising, promotion, and sale of Softsoap Antibacterial;

      e.     Failed to take action to correct its omissions or false or misleading implied or express representations about the use, efficacy, qualities, and benefits of its Products; and

      f.     Falsely represented and claimed in its advertisements to possess and rely upon clinical and/or scientific data, despite the overwhelming evidence that negates Colgate's claims regarding Softsoap.

85.     By engaging in the foregoing course of conduct, Colgate caused consumers –
including Plaintiffs and the other members of the Classes – to be aggrieved and suffer
ascertainable losses, in that, among other things, Colgate's course of conduct systematically:

      a.     Caused Plaintiffs and the other members of the Classes to substantially
overpay for a Product that did not work as promised; and

      b.     Caused reasonable consumers like Plaintiffs and the other members of the
Classes to spend money for a product that they would not have spent but-for Colgate's
common course of conduct.

86.     To this day, Colgate continues to conceal material information from consumers of
its Softsoap products – including Plaintiffs and the other members of the Classes – that: (a)
Softsoap has no greater efficacy than soaps that do not contain triclosan; and (b) there is no
clinical support for Colgate's advertising and packaging claims concerning the Product.

## V.  <u>CLASS ACTION ALLEGATIONS</u>

87.     Plaintiffs bring this action on behalf of themselves and as a class action, pursuant
to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, on
behalf of the following separate statewide classes[2] that they respectively seek to represent, and
which are comprised of consumers in the states of California, Florida, Illinois, Nevada, New
Jersey, and South Carolina, categorized by substantial similarities in substantive state law and
defined as:

### <u>The Consumer Protection States Class</u>

All persons who reside in the Consumer Protection States[3] and who have
purchased Softsoap Antibacterial any time from the date of its commercial launch

---

[2] Plaintiffs reserve the right to amend all Class definitions at class certification based on
additional research and/or changes in state law.

[3] The Consumer Protection States are defined hereinafter to include the states of California,
Florida, Illinois, Nevada, and New Jersey.  Thus, the Consumer Protection States include the
states of residence of all Plaintiffs individually named in this action except for those Plaintiffs

through the final disposition of this and any and all related actions (the "Consumer Protection Class").

### The Non-Privity Breach of Express Warranty States Class

All persons who reside in the Non-Privity Breach of Express Warranty States[4] and who have purchased Softsoap Antibacterial any time from the date of its commercial launch through the final disposition of this and any and all related actions (the "Breach of Express Warranty Class").

### The Non-Privity Breach of Implied Warranty States Class

All persons who reside in the Non-Privity Breach of Implied Warranty States[5] and who have purchased Softsoap Antibacterial any time from the date of its commercial launch through the final disposition of this and any and all related actions (the "Breach of Implied Warranty Class").

### The Unjust Enrichment States Class

All persons who reside in the Unjust Enrichment States[6] and who have purchased Softsoap Antibacterial any time from the date of its commercial launch through the final disposition of this and any and all related actions (the "Unjust Enrichment Class").

---

residing in the state of South Carolina. These individually named Plaintiffs are referred to hereinafter as the "Consumer Protection Plaintiffs."

[4] The Non-Privity Breach of Express Warranty States are defined hereinafter to include the states of California, Florida, Illinois, Nevada, New Jersey, and South Carolina. Thus, the Non-Privity Breach of Express Warranty States include the states of residence of all Plaintiffs individually named in this action. These individually named Plaintiffs are referred to hereinafter as the "Non-Privity Breach of Express Warranty Plaintiffs."

[5] The Non-Privity Breach of Implied Warranty States are defined hereinafter to include the states of California, Florida, Nevada, New Jersey, and South Carolina. Thus, the Non-Privity Breach of Implied Warranty States include the states of residence of all Plaintiffs individually named in this action except for those Plaintiffs residing in the state of Illinois. These individually named Plaintiffs are referred to hereinafter as the "Non-Privity Breach of Implied Warranty Plaintiffs."

[6] The Unjust Enrichment States are defined hereinafter to include the states of Florida, Illinois, Nevada, New Jersey, and South Carolina. Thus, the Unjust Enrichment States include the states of residence of all Plaintiffs individually named in this action other than California. These individually named Plaintiffs are referred to hereinafter as the "Unjust Enrichment Plaintiffs."

**The Injunctive Relief States Class**

All persons who reside in the Injunctive Relief States[7] and who have purchased Softsoap Antibacterial any time from the date of its commercial launch through the final disposition of this and any and all related actions (the "Injunctive Relief Class").

88.     The Consumer Protection States Class, the Breach of Express Warranty States Class, the Breach of Implied Warranty States Class, the Unjust Enrichment States Class, and the Injunctive Relief States Class are collectively referred to herein as the "Classes," unless otherwise identified.

89.     Excluded from each of the Classes are Colgate and its subsidiaries and affiliates; all persons who make a timely election to be excluded from the Classes; governmental entities; the judges to whom this case is assigned and any immediate family members thereof; anyone who purchased Softsoap for the purpose of resale; and anyone asserting claims for personal injury.

90.     Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

91.     **Numerosity – Federal Rule of Civil Procedure 23(a)(1).**  The members of each of the Classes are so numerous that individual joinder of all members of each of the proposed Classes is impracticable.   There are hundreds of thousands, if not millions, of individual purchasers of Softsoap Antibacterial products.   The precise number of the members of these Classes and their addresses are unknown to Plaintiffs, but may be ascertained from Colgate's

---

[7] The Injunctive Relief States are defined hereinafter to include the states of California, Florida, Illinois, Nevada, New Jersey, and South Carolina.  Thus, the Injunctive Relief States include the states of residence of all Plaintiffs individually named in this action.  These individually named Plaintiffs are referred to hereinafter as the "Injunctive Relief Plaintiffs."

books and records.  Members of the Classes may be notified of the pendency of this action by

recognized, Court-approved notice dissemination methods, which may include U.S. Mail,

electronic mail, Internet postings, and/or published notice.

92.     **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2)**

**and 23(b)(3).**  This action involves common questions of law or fact, which predominate over

any questions affecting individual members of the Classes.  All members of the Classes were

exposed to Colgate's deceptive and misleading advertising and marketing claims concerning its

Softsoap Antibacterial products.  Furthermore, common questions of law or fact include:

> a.      whether Colgate engaged in the conduct alleged herein;

> b.      whether Colgate's practices violate applicable law;

> c.      whether Plaintiffs and the other members of the Classes are entitled to actual, statutory, or other forms of damages, and other monetary relief; and

> d.      whether Plaintiffs and the other members of the Classes are entitled to equitable relief, including but not limited to injunctive relief and restitution.

93.     Colgate engaged in a common course of conduct giving rise to the legal rights

sought to be enforced by Plaintiffs individually and on behalf of the other members of the

Classes.  Similar or identical statutory and common law violations, business practices, and

injuries are involved.  Individual questions, if any, pale by comparison, in both quality and

quantity, to the numerous common questions that dominate this action.

94.     **Typicality – Federal Rule of Civil Procedure 23(a)(3).**  Plaintiffs' claims are

typical of the claims of the other members of the Classes because, among other things, all

members of the Classes were comparably injured through the substantially uniform misconduct

described above, were subject to Colgate's false, deceptive, misleading, and unfair advertising

and marketing practices concerning its Softsoap Antibacterial products.  Plaintiffs herein are

advancing the same claims and legal theories on behalf of themselves and all members of the Classes and there are no defenses available to Colgate that are unique to the Plaintiffs.

95. **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiffs are adequate representatives of the proposed Classes because their interests do not conflict with the interests of the other members of the Classes they seek to represent; they have retained counsel competent and experienced in complex class action litigation; and Plaintiffs will prosecute this action vigorously. The Classes' interests will be fairly and adequately protected by Plaintiffs and their counsel.

96. **Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** Colgate has acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the Classes, thereby making appropriate final injunctive relief, as described below, with respect to the members of the Classes as a whole. Specifically, injunctive relief is necessary and appropriate to require Colgate to, among other things: (a) discontinue advertising, marketing, packaging and otherwise representing its Softsoap Antibacterial products as being superior to conventional soap products; (b) undertake an immediate public information campaign to inform members of the proposed Classes of the truth about Colgate's products and Colgate's prior practices relating thereto; and (c) to correct any erroneous impression consumers may have derived concerning the nature, characteristics, or qualities of Softsoap Antibacterial, including, without limitation, the placement of corrective advertising and providing written notice to the public.

97. **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.

30

The damages or other financial detriment suffered by Plaintiffs and the other members of the Classes are relatively small compared to the burden and expense that would be required to individually litigate their claims against Colgate, so it would be impracticable for members of the Classes to individually seek redress for Colgate's wrongful conduct.  Even if the members of the Classes could afford individual litigation, the court system could not.  Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.  Given the similar nature of the members of the Classes' claims and the absence of material differences in the statutes and common laws upon which the members of the Classes' claims are based when such claims are grouped as proposed above and below, the Classes will be easily managed by the Court and the parties.

## VI.  COLGATE IS ESTOPPED FROM ASSERTING STATUTE OF LIMITATIONS-BASED DEFENSES

98.     Colgate knew or reasonably should have known that Softsoap Antibacterial was no more effective than washing with regular soap and water or with other liquid soaps that do not contain triclosan prior to the time of sale, and intentionally concealed that material information and the truth concerning their product from Plaintiffs and the general public, while continually marketing Softsoap Antibacterial as a superior product.  Colgate's acts of fraudulent concealment include failing to disclose that Softsoap Antibacterial is no more effective than washing with regular soap and water or with other liquid soaps that do not contain triclosan.

99.     Plaintiffs had no reasonable way to discover or detect Colgate's misrepresentations and omissions about the efficacy of Softsoap Antibacterial until shortly before Plaintiffs filed their respective Complaints.

100.     Colgate had a duty to disclose that Softsoap Antibacterial is no more effective than washing with regular soap and water or with other liquid soaps that do not contain triclosan.

## VII.   CLAIMS FOR RELIEF

### COUNT I
**Violation of State Consumer Protection Laws**
**(Brought on Behalf of the Consumer Protection States Class)**

101.     Plaintiffs Valerie Donohue, Jeff Dyke, Shari Elstein, Adam Emery, Tracy Nieblas, Kristina Pearson, Irene Porter, and Jeffrey Rosen (the "Consumer Protection Plaintiffs" for purposes of this Count I), incorporate by reference Paragraphs 1-100 of this Consolidated Complaint as though fully stated herein.

102.     The Consumer Protection Plaintiffs bring this claim individually and on behalf of the other members of the Consumer Protection States Class.  Each of the Consumer Protection Plaintiffs respectively brings this claim on their own behalf under the law of the state in which they reside and purchased Softsoap Antibacterial products and on behalf of each of the other members of the Consumer Protection States Class residing in and having purchased Softsoap Antibacterial products in the same state as they do.

103.     Each of the Consumer Protection Plaintiffs and each of the other members of the Consumer Protection States Class is a consumer, purchaser, or other person entitled to the protection of the consumer protection laws of the state in which they reside and purchased Softsoap Antibacterial products.

104.     The consumer protection laws of the state in which each of the Consumer Protection Plaintiffs and each of the other members of the Consumer Protection States Class

resides and purchased Softsoap Antibacterial products declares that unfair or deceptive acts or practices in the conduct of trade or commerce are unlawful.

105.    All of the Consumer Protection States have enacted statutes designed to protect consumers against unfair, deceptive, fraudulent, and unconscionable trade and business practices and false advertising that further allow consumers to bring private and/or class actions.  These statutes are found at:

      a.    California Consumer Legal Remedies Act, Civil Code § 1750, *et seq.*;

      b.    False Advertising Law, California Business and Professions Code § 17500, *et seq.*;

      c.    California Business & Professions Code §17200, *et seq.*;

      d.    The Florida Deceptive and Unfair Trade Practices Act, *Fla. Stat.* § 501.204(1), *et seq.*;

      e.    Florida Statute Section 817.41, *et seq.*;

      f.    Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505, *et seq.*;

      g.    Nevada Deceptive Practices Act, Nev. Rev. Stat. Ann. §598.0915(5), (7), and (15); and

      h.    New Jersey Consumer Fraud Act, N.J.S. §56:8-1, *et seq.*

106.    Plaintiffs have satisfied all conditions precedent.  To the extent required, the Consumer Protection Plaintiffs have provided Colgate notice under each of the above listed statutes, have otherwise provided reasonable notice, or are excused from providing notice.

107.    In the conduct of trade or commerce regarding the marketing and sale of Softsoap Antibacterial, Colgate engaged in the unfair and deceptive acts or practices described above and incorporated herein.

108.   Colgate's representations and advertisements of its Softsoap Antibacterial products are deceptive and likely to deceive consumers, including the Consumer Protection Plaintiffs and the other members of the Consumer Protection States Class.

109.   Colgate knew or should have known that its representations and advertisements of its Softsoap products, as described above, were untrue or misleading.

110.   Colgate used or employed such deceptive and unlawful acts or practices with the intent that the Consumer Protection Plaintiffs and other members of the Consumer Protection States Class rely thereon or otherwise be deceived.

111.   The Consumer Protection Plaintiffs and the other members of the Consumer Protection States Class relied on Colgate's misrepresentation and/or omissions and were deceived thereby.

112.   The Consumer Protection Plaintiffs and the other members of the Consumer Protection States Class would not have purchased Colgate's Products at the prices they paid, or would not have purchased such products at all, had they known the truth and are thus entitled to a full or partial refund as allowed under each of the several state laws alleged herein.

113.   Further, as a result of Colgate's misrepresentations, as alleged herein, the Consumer Protection Plaintiffs and other members of the Consumer Protection States Class did not receive the benefit of their bargain in purchasing Softsoap Antibacterial products.  As a result of Colgate's conduct, the Consumer Protection Plaintiffs and other members of the Consumer Protection States Class were damaged in an amount to be proven at trial.

114.   The Consumer Protection Plaintiffs and other members of the Consumer Protection States Class are entitled to actual compensatory and/or statutory damages, as well as

attorneys' fees and costs of suit, to the fullest extent permitted pursuant to the various state laws implicated by this Claim.

### COUNT II
### Breach of Express Warranty
### (Brought on Behalf of the Breach of Express Warranty States Class)

115.    Plaintiffs Valerie Donohue, Jeff Dyke, Shari Elstein, Adam Emery, Angela Johnson, Tracy Nieblas, Kristina Pearson, Irene Porter, and Jeffrey Rosen (the "Breach of Express Warranty Plaintiffs" for purposes of this Count II), incorporate by reference Paragraphs 1-100 of this Consolidated Complaint as though fully stated herein.

116.    The Breach of Express Warranty Plaintiffs bring this claim individually and on behalf of the other members of the Breach of Express Warranty States Class. Each of the Breach of Express Warranty Plaintiffs respectively brings this claim on their own behalf under the law of the state in which they reside and purchased Softsoap Antibacterial products and on behalf of each of the other members of the Breach of Express Warranty States Class residing in and having purchased Softsoap Antibacterial in the same state as they do.

117.    The Breach of Express Warranty Plaintiffs, and each of the other members of the Breach of Express Warranty States Class, formed a contract with Colgate at the time they purchased Softsoap Antibacterial products. The terms of that contract include the promises and affirmations of fact Colgate makes on Softsoap Antibacterial's packaging and through marketing and advertising, as more fully described above. This marketing and advertising constitute express warranties and became part of the basis of the bargain, and are part of the standardized contract between each of the Breach of Express Warranty Plaintiffs and each of the other members of the Breach of Express Warranty States Class, and Colgate.

118.    In addition or in the alternative, Colgate made each of its above-described representations to induce the Breach of Express Warranty Plaintiffs and each of the other members of the Breach of Express Warranty States Class, to rely on such representations concerning the purported benefits and efficacy of its Softsoap Antibacterial products as a material factor in their decision(s) to purchase those Softsoap Antibacterial products.

119.    All conditions precedent to Colgate's liability under this contract have been performed by between the Breach of Express Warranty Plaintiffs and each of the other members of the Breach of Express Warranty States Class, when they purchased the Softsoap Antibacterial products.  At all times relevant to this action, Colgate breached its express warranties about its Softsoap Antibacterial products because Softsoap Antibacterial products are not more effective than washing with regular soap and water or with other liquid soaps that do not contain triclosan., in violation of state express warranty laws, including:

        a.      Cal. Comm. Code §2313;

        b.      Fla. Stat. Ann. §672.313;

        c.      810 Ill. Comp. Stat. 5/2-313;

        d.      Nev. Rev. Stat.  §104.2313;

        e.      N.J. Stat. Ann. §12A:2-313; and

        f.      S.C. Code Ann. §36-2-313.

120.    The above states do not require privity of contract to recover for breach of express warranty.

121.    As a result of Colgate's breaches of its express warranty, the Breach of Express Warranty Plaintiffs, and each of the other members of the Breach of Express Warranty States

Class, were damaged in the amount of the purchase price they paid for Softsoap Antibacterial products, in an aggregate amount to be proven at trial.

122.    The Breach of Express Warranty Plaintiffs, on behalf of themselves and the other members of the Breach of Express Warranty States Class, demand judgment against Colgate for compensatory damages for themselves and each of the other Class members, as well as attorneys' fees, interest, and costs.

123.    Within a reasonable time after they knew or should have known of such breach, the Breach of Express Warranty Plaintiffs, on behalf of themselves and the other members of the Breach of Express Warranty States Class, placed Colgate on notice thereof.

**COUNT III**
**Breach of Implied Warranty**
**(Brought on Behalf of the Breach of Implied Warranty States Class)**

124.    Plaintiffs Valerie Donohue, Jeff Dyke, Shari Elstein, Angela Johnson, Tracy Nieblas, Irene Porter, and Jeffrey Rosen (the "Breach of Implied Warranty Plaintiffs" for purposes of this Count III), incorporate by reference Paragraphs 1-100 of this Consolidated Complaint as though fully stated herein.

125.    The Breach of Implied Warranty Plaintiffs bring this claim individually and on behalf of the other members of the Breach of Implied Warranty States Class.  Each of the Breach of Implied Warranty Plaintiffs respectively brings this claim on their own behalf under the law of the state in which they reside and purchased Softsoap Antibacterial products and on behalf of each of the other members of the Breach of Implied Warranty States Class residing in and having purchased Softsoap Antibacterial in the same state as they do.

126.    The Breach of Implied Warranty Plaintiffs and the other members of the Breach of Implied Warranty States Class purchased Softsoap Antibacterial products on the basis that the Product was of merchantable quality and fit for the use for which it was intended.

127.    By representing that Softsoap Antibacterial was more effective than washing with regular soap and water or with other liquid soaps that do not contain triclosan in its marketing and advertising, as described herein, Colgate impliedly warranted that that the Product was of merchantable quality and fit for the use for which it was intended and that it conformed to promises or affirmations of fact made on the container or label of Softsoap Antibacterial.

128.    Colgate breached the warranty implied at the time of sale in that the Breach of Implied Warranty Plaintiffs and the other members of the Breach of Implied Warranty State Class did not receive goods that were more effective than washing with regular soap and water or with other liquid soaps that do not contain triclosan as represented and thus, the goods were unfit for their intended use and not of merchantable quality as promoted, marketed, advertised, packaged, or sold and further failed to conform to promises or affirmations of fact made on the container or labels of Softsoap Antibacterial.

129.    At all times relevant to this action, Colgate has breached its implied warranties concerning its Softsoap Antibacterial products because Softsoap Antibacterial is not more effective than washing with regular soap and water or with other liquid soaps that do not contain triclosan, in violation of state implied warranty laws, including:

        a.      Cal. Comm. Code §2314;

        b.      Fla. Stat. Ann. §672.314;

        c.      Nev. Rev. Stat.  §104.2314;

        d.      N.J. Stat. Ann. §12A:2-314; and

        e.      S.C. Code Ann. §36-2-314.

130.     The above states do not require privity of contract to recover for breach of implied warranty.

131.     As a result of Colgate's breach of its implied warranties, the Breach of Implied Warranty Plaintiffs and the other members of the Breach of Implied Warranty States Class have been damaged in the amount of the price they paid for Softsoap Antibacterial products in an amount to be proven at trial.

132.     Plaintiffs, individually and on behalf of the other members of the Breach of Implied Warranty States Class demand judgment against Colgate for compensatory damages for themselves and each of the other members of the Breach of Implied Warranty States Class, plus attorneys' fees, interest, and costs.

133.     Within a reasonable time after they knew or should have known of such breach, the Breach of Implied Warranty Plaintiffs, on behalf of themselves and the other members of the Breach of Implied Warranty States Class, placed Colgate on notice thereof.

**COUNT IV**
**Unjust Enrichment**
**(Brought on Behalf of the Unjust Enrichment States Class)**

134.     Plaintiffs Valerie Donohue, Jeff Dyke, Shari Elstein, Adam Emery, Angela Johnson, Kristina Pearson, Irene Porter, and Jeffrey Rosen (the "Unjust Enrichment Plaintiffs" for purposes of this Count IV), incorporate by reference Paragraphs 1-100 of this Consolidated Complaint as though fully stated herein.

135.     The Unjust Enrichment Plaintiffs bring this claim individually and on behalf of the other members of the Unjust Enrichment States Class.  Each of the Unjust Enrichment Plaintiffs respectively brings this claim on their own behalf under the law of the state in which they reside and purchased Softsoap Antibacterial products and on behalf of each of the other

39

members of the Unjust Enrichment States Class residing in and having purchased Softsoap Antibacterial in the same state as they do.

136.    Plaintiffs conferred a tangible economic benefit upon Colgate by purchasing Softsoap Antibacterial products. Plaintiffs would have expected remuneration from Colgate at the time this benefit was conferred had they known that the Product did not perform as promised and has been widely criticized by government officials and scientists.

137.    As a result of Colgate's deceptive, fraudulent, and misleading packaging, advertising, marketing, and sales of its Softsoap Antibacterial products, Colgate was enriched, at the expense of the each of the Unjust Enrichment Plaintiffs and the other members of the Unjust Enrichment States Class, through the payment of the purchase price for Colgate's Softsoap Antibacterial products.

138.    Under the circumstances, it would be against equity and good conscious to permit Colgate to retain the ill-gotten benefits that it received from the Unjust Enrichment Plaintiffs and the other members of the Unjust Enrichment States Class in light of the fact that the Softsoap Antibacterial products purchased by the Unjust Enrichment Plaintiffs and the other members of the Unjust Enrichment States Class were not as Colgate purports them to be, as set forth more fully above.

139.    It would thus be unjust or inequitable for Colgate to retain the benefit without restitution or disgorgement of monies paid to Colgate for Softsoap Antibacterial products, or such other appropriate equitable remedy as appropriate, to the Unjust Enrichment Plaintiffs and the other members of the Unjust Enrichment States Class.

## COUNT V
### Injunctive Relief
### (Brought on Behalf of the Injunctive Relief States Class)

140.    Plaintiffs Valerie Donohue, Jeff Dyke, Shari Elstein, Adam Emery, Angela Johnson, Tracy Nieblas, Kristina Pearson, Irene Porter, and Jeffrey Rosen (the "Injunctive Relief Plaintiffs" for purposes of this Count V), incorporate by reference Paragraphs 1-100 of this Consolidated Complaint as though fully stated herein.

141.    Colgate has acted or refused to act on grounds generally applicable to the Injunctive Relief Plaintiffs and the other members of the Injunctive Relief States Class, thereby making final injunctive relief appropriate.

142.    Colgate's conduct, as more fully set forth herein, both in the past and through the present day, has demonstrated a willful disregard for proven scientific facts in a clear attempt to sell a product that is no more effective than other products which do not contain triclosan.

143.    Colgate persists in its deceptive and unfair marketing and sales practices concerning the Product to the detriment of consumers across the country, including the Injunctive Relief Plaintiffs and the other members of the Injunctive Relief States Class.

144.    If Colgate is allowed to continue with these practices, consumers – the Injunctive Relief Plaintiffs and the other members of the Injunctive Relief States Class – will be irreparably harmed in that they do not have a plain, adequate, speedy, or complete remedy at law to address all of the wrongs alleged in this Consolidated Amended Complaint, unless injunctive relief is granted to stop Colgate's improper conduct concerning its marketing and sale of the Product.

145.    The Injunctive Relief Plaintiffs and the other members of the Injunctive Relief States Class, are, therefore, entitled to an injunction requiring Colgate remedy its unfair and

deceptive practices relating to the marketing sale of the Product, as alleged herein, including the effects thereof.

146.    The Injunctive Relief Plaintiffs seek a Court Order requiring Colgate to do the following:

(a)  discontinue advertising, marketing, packaging, and otherwise representing its Softsoap Antibacterial product as being superior to conventional soap products;

(b)  undertake an immediate public information campaign to inform the Injunctive Relief Plaintiffs and the other members of the Injunctive Relief States Class, of the truth about Colgate's products and Colgate's prior practices relating thereto; and

(c)  correct any erroneous impression the Injunctive Relief Plaintiffs and the other members of the Injunctive Relief States Class, may have derived concerning the nature, characteristics, or qualities of Softsoap Antibacterial, including, without limitation, the placement of corrective advertising and providing written notice to the general public.

## VIII.   <u>REQUEST FOR RELIEF</u>

WHEREFORE, Plaintiffs, individually and on behalf other members of the Classes described in this Consolidated Complaint, respectfully request that the Court grant judgment in their favor and against Colgate and:

A.    the Court certify the Classes pursuant to Fed. R. Civ. P. 23(b)(2), and 23(b)(3), and adjudge Plaintiffs and their counsel to be adequate representatives thereof;

B.    the Court enter an Order requiring Colgate to pay Plaintiffs' and the other members of the Classes' economic, monetary, actual damages (including multiple damages), consequential, compensatory, or statutory damages, whichever is greater; and, awarding

Plaintiffs and the other members of the Classes exemplary damages, to the extent permitted under the laws of each of the states implicated in this action;

C.       the Court enter an Order awarding restitution and disgorgement of Colgate's revenues arising from its conduct alleged above, or any other appropriate remedy in equity, to Plaintiffs and the other members of the Classes;

D.       the Court enter an Order awarding injunctive relief as permitted by law or equity, including: enjoining Colgate from continuing the unlawful practices set forth above; directing Colgate to cease its deceptive and misleading marketing campaign concerning its Softsoap Antibacterial products, and to disgorge all monies Colgate acquired by means of any act or practice declared by this Court to be wrongful;

E.       the Court enter an Order awarding Plaintiffs, individually and on behalf of the other members of the Classes, their expenses and costs of suit, including reasonable attorneys' fees and reimbursement of reasonable expenses, to the extent provided by law;

F.       the Court enter an Order awarding to Plaintiffs individually and on behalf of the other members of the Classes, pre- and post-judgment interest, to the extent allowable; and

G.       for such other and further relief as may be just and proper.

## IX.  **JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of all claims in this Consolidated Complaint so triable.

Dated:  June 26, 2012

Respectfully submitted,

/s/ Lucy J. Karl
Lucy J. Karl
NH Bar No. 5547
**SHAHEEN & GORDON, P.A.**
107 Storrs Street
Concord, New Hampshire  03302
Telephone: (603) 225-7276
Facsimile: (603) 225-5112
lkarl@shaheengordon.com

*Plaintiffs' Interim Lead Counsel*

*Plaintiffs' Executive Committee*

Richard J. Arsenault
Douglas E. Rushton
**NEBLETT, BEARD & ARSENAULT**
2220 Bonaventure Court
P.O. Box 1190
Alexandria, Louisiana  71309
Telephone: (216) 621-8484
Facsimile: (216)771-1632
rarsenault@nbalawfirm.com

Adam J. Levitt
Edmund S. Aronowitz
**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLC**
55 West Monroe Street, Suite 1111
Chicago, Illinois  60603
Telephone: (312) 984-0000
Facsimile: (312) 984-0001
levitt@whafh.com

John A. Peca
**CLIMACO, WILCOX, PECA, TARANTINO & GAROFOLI CO., L.P.A.**
55 Public Square, Suite 1950
Cleveland, Ohio  44113
Telephone: (216) 621-8484
Facsimile: (216) 771-1632
jrclim@climacolaw.com

Charles E. Schaffer
Brian F. Fox
**LEVIN, FISHBEIN, SEDRAN & BERMAN**
510 Walnut Street, Suite 500
Philadelphia, Pennsylvania  19106
Telephone: (215) 592-1500
Facsimile: (215) 592-4663
cschaffer@lfsblaw.com

Eric D. Holland
R. Seth Crompton
**HOLLAND GROVES SCHNELLER**
**  & STOLZE, LLC**
300 North Tucker Boulevard, Ste. 801
St. Louis, Missouri  63101
Telephone: (314) 241-8111
Facsimile: (314) 241-5554
eholland@allfela.com

*Plaintiffs' Steering Committee*

Matthew B. Butler
**NICHOLAS & BUTLER, LLP**
225 Broadway, 19th Floor
San Diego, California  92101
Telephone: (619) 325-0492
Facsimile: (619) 325-0496
mbutler@nblaw.org

David C. Rash
**ALTERS LAW FIRM, P.A.**
4141 Northeast 2nd Avenue
Miami, Florida  33137
Telephone: (305) 571-8550
Facsimile: (305) 571-8558
david@alterslaw.com

Laurence D. King
**KAPLAN  FOX  &  KILSHEIMER**
**LLP**
350 Sansome Street, Suite 400
San Francisco, California  94104
Telephone: (415) 772-4700
Facsimile: (415) 329-4707
lking@kaplanfox.com

James C. Shah
**SHEPHERD, FINKELMAN,**
**MILLER & SHAH, LLC**
35 East State Street
Media, Pennsylvania  19063
Telephone: (610) 891-9880
Facsimile: (610) 891-9883
jshah@sfmslaw.com

Jordan L. Chaikin
**PARKER & WAICHMAN LLP**
3301 Bonita Beach Road, Suite 101
Bonita Springs, Florida  34134
Telephone: (239) 390-1000
Facsimile: (239) 390-0055
jchaikin@yourlawyer.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that, on June 26, 2012, she caused this document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of filing to counsel of record for each party.

Undersigned counsel further certifies that on June 26, 2012 she caused the document to be forwarded to counsel below by First Class United States Mail, proper postage prepaid.

<u>Conventionally Served:</u>

Angela L. Harris, Esquire
Quinn, Emanuel, Urquhart & Sullivan, LLP
51 Madison Avenue, 22nd Floor
New York, New York  10010

Jill Garcia, Esquire
Ogletree Deakins Nash Smoak & Stewart PC
Wells Fargo Tower
3800 Howard Hughes Parkway, Suite 1500
Las Vegas, Nevada  89169

Randall E. Appleton
Shapiro Lewis & Appleton PC
1294 Diamond Springs Rd
Virginia Beach, VA 23455

Dated:  June 26, 2012

By:      /s/ Lucy J. Karl
         Lucy J. Karl
         NH Bar #5547

46