**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

| | | |
|---|---|---|
| IN RE: COLGATE-PALMOLIVE | ) | MDL Docket No. 12-md-2320-PB |
| SOFTSOAP ANTIBACTERIAL HAND | ) | |
| SOAP MARKETING AND SALES | ) | ALL ACTIONS |
| PRACTICES LITIGATION (MDL No. 2320) | ) | |
| | ) | |

**PLAINTIFFS' MEMORANDUM OF LAW IN**
**<u>OPPOSITION TO DEFENDANT'S MOTION TO DISMISS</u>**

**Dated:**  September 21, 2012

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................1

II.  STANDARD OF REVIEW ................................................................................3

III. ARGUMENT ......................................................................................................4

A.   APPLICATION OF THE PRIMARY JURISDICTION DOCTRINE IS
     INAPPROPRIATE HERE..............................................................................4

     1.   The "*AAMA* Factors" Weigh Against Applying The Primary
          Jurisdiction Doctrine. ..........................................................................6

          a.   The FDA has not been tasked with determining the
               issues in this case.....................................................................7

          b.   An FDA determination is not required to unravel the
               facts of this case.....................................................................10

          c.   An FDA determination would not materially aid this
               Court. ......................................................................................12

     2.   Referral to the FDA Will Unreasonably Delay Adjudication of Plaintiffs'
          Claims ..................................................................................................15

B.   PLAINTIFFS' CLAIMS ARE NOT TIME-BARRED...................................18

     1.   The Discovery Rule Tolls Application of the Statute of Limitations....................20

     2.   Defendant's Fraudulent Concealment Tolls Otherwise Applicable
          Statutes of Limitations........................................................................22

C.   COLGATE'S MOTION TO DISMISS SHOULD BE DENIED BECAUSE
     PLAINTIFFS HAVE SUFFICIENTLY STATED A CLAIM UPON WHICH RELIEF
     CAN BE GRANTED PURSUANT TO FED.R.CIV.P 12(b)(6) ......................23

     1.   The Non-Privity Breach of Express Warranty Plaintiffs State a Claim
          for Breach of Express Warranty .........................................................24

     2.   The Non-Privity Breach of Implied Warranty Plaintiffs State a Claim

for Breach of Implied Warranty. ...........................................................................30

3.    The Consumer Protection Plaintiffs State a Claim Under the Applicable
      Consumer Protection Statutes...............................................................................32

4.    The Unjust Enrichment Plaintiffs Sufficiently Plead Their Unjust
      Enrichment Claims. .............................................................................................37

      a.   Plaintiffs' Breach of Warranty Claims Do Not Void
           Their Unjust Enrichment Claims..................................................................37

      b.   Plaintiffs Will Voluntarily Dismiss Their New Jersey Unjust Enrichment.....38

5.    Plaintiffs' Injunctive Claim May be Pleaded in the Alternative
      and Should Not be Dismissed...............................................................................39

IV. <u>CONCLUSION</u> ....................................................................................................39

# TABLE OF AUTHORITIES

## Cases

*Accord Clark v. Time Warner Cable,* 523 F.3d 1110, 1114 (9th Cir. 2008)...................................5

*Ackerman v. Coca-Cola Co.,*
  No. CV-09-0395 (JG) (RML), 2010 WL 2925955 (E.D.N.Y. July 21, 2010)................5, 11, 13

*Alloway v. Gen. Marine Indus., L.P.,*
  695 A.2d 264 (N.J. 1997)...................................................................................................27

*Alpharma, Inc. v. Pennfield Oil Co.,*
  411 F.3d 934 (8th Cir. 2005)................................................................................................5

*Alvarado Aguilera v. Negrón,*
  509 F.3d 50 (1st Cir. 2007) ..................................................................................................3

*Am. Auto. Mfrs. Ass'n v. Mass. Dept. of Envtl. Prot.,*
  163 F.3d 74 (1st Cir. 1998) ................................................................................7, 15, 16, 18

*Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.,* 390 F. Supp. 2d 1170, 1174 (M.D. Fla.
  2005)...................................................................................................................................38

*Ashcroft v. Iqbal,*
  129 S. Ct. 197 (2009) ...........................................................................................................3

*Astra USA, Inc. v. Santa Clara County, Cal.,*
  131 S. Ct. 1342 (2011) ...................................................................................................5, 18

*Bassett v. Nat'l Collegiate Athletic Ass'n,*
  528 F.3d 426 (6th Cir. 2008).................................................................................................3

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 554 (2007) ..............................................................................................................3

*Benak ex rel. Alliance Premier Growth Fund v. Alliance Capital Mngt. L.P.,*
  435 F.3d 396 (3rd Cir. 2006)...............................................................................................21

*Bosland v. Warnock Dodge, Inc.,* 933 A.2d 942, 944 (App.Div. 2007)........................................38

*Brown v. MCI WorldCom Network Servs., Inc.,*
  277 F.3d 1166 (9th Cir. 2002).............................................................................................10

*Canadian Pac. Ry. Co. v. Williams-Hayward Protective Coatings, Inc.*,
02 C 8800, 2005 WL 782698 (N.D. Ill. Apr. 6, 2005)................................................................27

*Castrol Inc. v. Pennzoil Co.*,
987 F.2d 939 (3d Cir. 1993).........................................................................................................28

*Cayuga Harvester, Inc. v. Allis-Chalmers Corp.*,
95 A.D.2d 5, 465 N.Y.S. 2d 606 (4th Dept.1983) ......................................................................37

*Chatham v. Sears, Roebuck & Co. (In re Sears, Roebuck & Co.)*, MDL-1703, Case No. 05 C
4742, No. 05 C 2623, 2006 U.S. Dist. LEXIS 92169 (N.D. Ill. Dec. 18, 2006) ........................38

*Chavez v. Blue Sky Natural Beverage Co.*,
268 F.R.D. 365 (N.D. Cal. 2010) ................................................................................................14

*Cheshire Medical Center v. W. R. Grace & Co.*,
764 F. Supp. 213, *vacated in part, on recons.* 767 F. Supp. 369 (D.N.H. 1991).......................22

*Clark v. Time Warner Cable*,
523 F.3d 1110 (9th Cir. 2008)........................................................................................................5

*Cook, Perkiss & Liehe v. Northern Cal. Collection Serv., Inc.*,
911 F.2d 242 (9th Cir. 1990).........................................................................................................29

*Copeland v. Desert Inn Hotel*,
673 P.2d 490 (Nev. 1983) ............................................................................................................22

*Costa v. Kerzner Intern. Resorts, Inc.*,
2011 WL 2519244 (S.D. Fla. June 23, 2011). .............................................................................33

*County of Santa Clara v. Astra USA, Inc.*,
588 F.3d 1237 (9th Cir. 2009)................................................................................................5, 18

*Cutler v. Kennedy*, 475 F. Supp. 838, 855 (D.D.C. 1979)...............................................................8

*Davel Communs., Inc. v. Qwest Corp.*,
460 F.3d 1075 (9th Cir. 2006).........................................................................................5, 15, 18

*Dewey v. Volkswagen AG*,
558 F.Supp.2d 505 (D.N.J. 2008) ...............................................................................................20

*Distrigas of Massachusetts Corp. v. Boston Gas Co.*,
693 F.2d 1113 (1st Cir. 1982). ....................................................................................................13

*Estate of Parr v. Buontempo Ins. Servs.*,
   No. A-4784-06T1, slip op, 2008 WL 2492164 (N.J. Super. Ct. App. Div. June 24, 2008) ......20

*Feheley v. LAI Games Sales, Inc.*, No. 08-23060-CIV,
   2009 WL 2474061 (S.D. Fla. Aug. 11, 2009)....................................................................34

*Freeman v. State*,
   788 A.2d 867 (N.J. Super. Ct. App. Div. 2002)...................................................................23

*Freeman v. Time, Inc.*,
   68 F.3d 285 (9th Cir. 1995)...........................................................................................35

*Gillette Co. v. Wilkinson Sword, Inc.*,
   No. 89 Civ. 3686 (KMW), slip op. (S.D.N.Y. Jan. 9, 1991)....................................................28

*Gordon v. Church & Dwight Co.*
   No. C 09-5585 PJH, 2010 WL 1341184 (N.D. Cal. Apr. 2, 2010)..........................................11

*Guinn v. Hoskins Chevrolet*, 836 N.E.2d 681, 704 (Ill. App. Ct. 1st Dist. 2005) ........................38

*Hermitage Corp. v. Contractors Adjustment Co.*,
   651 N.E.2d 1132 (Ill. 1995) .........................................................................................20

*Hiles Co. v. Johnston Pump Co. of Pasadena, Cal.*,
   560 P.2d 154 (Nev. 1977) ............................................................................................27

*Hill v. Roll Intern. Corp.*,
   195 Cal. App. 4th 1295 (Cal Ct. App. 2011) ....................................................................35

*In re All Terrain Vehicle Litig.*,
   771 F. Supp. 1057 (C.D. Cal. 1991)...............................................................................29

*In re Bayer Corp. Combination Aspirin Products Mktg. & Sales Practices Litig.*,
   701 F. Supp. 2d 356 (E.D.N.Y. 2010)........................................................................34, 37

*In re: Celexa & Lexapro Mktg. & Sales Practices Litig.*, 751 F. Supp. 2d 277, 297 (D. Mass.
2010)....................................................................................................................37

*In re Mass. Diet Drug Litig.*,
   338 F. Supp. 2d 198 (D. Mass. 2004) .............................................................................21

*In re Pharmaceutical Indus. Average Wholesale Price Litig.*,
   491 F. Supp. 2d 20 (D. Mass. 2007) ........................................................................21

*In re Trasylol Prods. Liab. Litig.*,
   No. 08-MD-01928, 2010 WL 6098571 (S.D. Fla. Mar. 16, 2010) ....................................20, 21

*Indevus Pharms. Inc.* No. CIV. A. 04-10911-GAO, 2004 WL 1 1739405, at *12-16
   (Mass. Super. Ct. July 26, 2004). ...............................................................................22

*IPF Recovery Co. v. Ill. Ins. Guar. Fund*,
   826 N.E.2d 943 (Ill. App. Ct. 2005)...............................................................................23

*Janda v. T-Mobile USA, Inc.*,
   378 F. App'x 705 (9th Cir. 2010) ...............................................................................35

*Keegan v. Am. Honda Motor Co., Inc.*,
   No.CV 10-09508 MMM(AJWx), 2012 WL 2250040 (C.D. Cal. June 12, 2012) ...................20

*Light Cigarettes Mktg. Sales Practice Litig.*,
   751 F. Supp. 2d 183 (D. Me. 2010) ...............................................................................38

*Lockwood v. Conagra Foods, Inc.*,
   597 F. Supp. 2d 1028 (N.D. Cal. 2009) .......................................................5, 11, 13, 16

*Locust Cartage Co. v. Transam. Freight Lines, Inc.*,
   430 F.2d 334 (1st Cir. 1970), *cert. denied*, 400 U.S. 964 (1970).........................5, 16

*Lucey v. Prudential Ins. Co. of Am.*, 783 F. Supp. 2d 207, 214 (D. Mass. 2011) .........................3

*Martinez v. Weyerhaeuser Mortg. Co.*, 959 F. Supp. 1511, 1519 (S.D. Fla. 1996) ....................38

*Mayor's Jewelers, Inc. v. Meyrowitz*,
   No. 12-80055-CIV, slip op., 2012 WL 2344609 (S.D. Fla. June 20, 2012) ............................20

*McNell v. Hugel*,
   No. CIV. 93-462-JD, 1994 WL 264200 (D.N.H. May 16, 1994) ..........................................22

*Mills v. Forestex Co.*,
   134 Cal. Rptr. 2d 273 (Cal. Ct. App. Apr. 14, 2003) ....................................................20

*N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale*,
   567 F.3d 8 (1st Cir. 2009). ...............................................................................4

*N.H. Motor Transp. Ass'n v. Flynn*,
  751 F.2d 43 (1st Cir. 1984) ............................................................................16

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
  591 F.3d 250 (4th Cir. 2009)..........................................................................29

*New Jersey Citizen Action v. Schering-Plough Corp.*,
  842 A.2d 174 (N.J. App. Div. 2003) ...............................................................34

*Newell v. Newell*,
  942 N.E.2d 776 (Ill. App. Ct. 2011)................................................................20

*NRDC v. FDA*, No 10 Civ. 5690 (S.D.N.Y. Sept. 24, 2010)...................................18

*Pelzer v. State*,
  662 S.E.2d 618 (S.C. 2008).............................................................................22

*PHC, Inc. v. Pioneer Healthcare, Inc.*,
  75 F.3d 75 (1st Cir. 1996) ...............................................................................15

*Picus v. Wal-Mart Stores, Inc.*,
  256 F.R.D. 651, 657-58 (D. Nev. 2009)..........................................................36

*Pom Wonderful LLC v. Ocean Spray Cranberries, Inc.*,
  642 F. Supp. 2d 1112 (C.D. Cal. 2009)....................................................13, 16

*Premium Mng't, Inc. v. Walker*,
  648 F.2d 778 (1st Cir. 1981) ...........................................................................22

*Prignano v. Prignano*, 934 N.E.2d 89, 108 (Ill. App. Ct. 2d Dist. 2010) ...................38

*Pro Tech Monitoring, Inc. v. State, Dept. of Corrections*,
  72 So.3d 277 (Fla. Dist. Ct. App. 2005).........................................................23

*Quatela v. Stryker Corp.*,
  820 F. Supp. 2d 1045 (N.D. Cal. 2010) ..........................................................27

*Reiter v. Cooper*,
  507 U.S. 258 (1993). ...................................................................................5, 15

*Republic Contracting Corp. v. S.C. Dept. of Highways and Pub. Transp.*,
  503 S.E.2d 761 (S.C. Ct. App. 1998)..............................................................20

*Ruiz v. Bally Total Fitness Holding Corp.*,
   496 F.3d 1 (1st Cir. 2007)) ....................................................................................... 3

*Ryan v. Chemlawn Corp.*,
   935 F.2d 129 (7th Cir. 1991) ..................................................................................... 13

*Sagehorn v. Engle*,
   46 Cal.Rptr.3d 131 (Cal. Ct. App. 2006) ................................................................. 22

*Santana-Castro v. Toledo-Davila*,
   579 F.3d 109 (1st Cir. 2009) ..................................................................................... 23

*Sawyer v. Indevus Pharms., Inc.*,
   No. CIV.A.04-10911-GAO, 2004 WL 1739405 (Mass. Super. Ct. July 26, 2004) .................. 21

*Scheuer v. Rhodes*,
   416 U.S. 232 (1974) ..................................................................................................... 3

*SEC v. Patel*,
   2008 DNH 053, 12, 2008 WL 782483 (D.N.H. Mar. 24, 2008) .................................. 4

*Shaw v. Hyatt Int'l Corp.*, 461 F.3d 899, 902 (7th Cir. Ill. 2006) ................................ 38

*Shillady v. Elliot Community Hospital*,
   320 A.2d 637 (N.H. 1974) ......................................................................................... 22

*Sinclair v. Brill*,
   857 F. Supp. 132 (D.N.H. 1994) ............................................................................... 20

*Smith v. WM. Wrigley Jr. Co.*,
   663 F. Supp. 2d 1336 (S.D. Fla. 2009) ..................................................................... 27

*Smith, Allen, Mendenhall, Emons & Selby, Inc. v. Thomson Corp.*,
   862 N.E.2d 1006 (Ill. App. 2006) ............................................................................. 37

*Smith–Victor Corp. v. Sylvania Electric Products, Inc.*,
   242 F. Supp. 302 (N.D.Ill.1965) ............................................................................... 29

*Sobel v. Hertz Corp.*,
   698 F. Supp. 2d 1218 (D. Nev. 2010) ....................................................................... 36

*Thompson v. Metropolitan Life Ins. Co.*,

149 F.Supp.2d 38 (S.D.N.Y.2001) .......................................................................21

*Toro Co. v. Textron, Inc.*,
499 F. Supp. 241 (D. Del. 1980) ........................................................................28

*Torres-Hernandez v. CVT Prepaid Solutions, Inc.*,
3:08-CV-1057-FLW, 2008 WL 5381227 (D.N.J. Dec. 17, 2008) ........................................9, 10

*Trenkler v. U.S.*,
268 F.3d 16 (1st Cir. 2001) ...............................................................................23

*Tylka v. Gerber Products Co.*,
1999 WL 495126 (N.D. Ill. July 1, 1999) ...............................................................33

*U.S. Pub. Interest Research Grp. V. Atl. Salmon of Me., LLC.*,
257 F. Supp. 2d 407 (D. Me. 2003) *aff'd*, 339 F.3d 23, 34 (1st Cir. 2003). ........................16, 18

*United States v. W. Pac. Rail. Co.*
352 U.S. 59 (1956) ...........................................................................................6

*Weiss v. Johansen*,
898 So. 2d 1009 (Fla. Dist. Ct. App. 2005) ...............................................................27

*Williams v. Gerber Products Co.*,
552 F.3d 934, 938 (9th Cir. 2008)........................................................................35

*Wyeth v. Levine*,
555 U.S. 555, 577 (2009) ...................................................................................14

*Yusuf Mohamad Excavation, Inc. v. Ringhaver Equip., Co.*,
793 So.2d 1127 (Fla. Dist. Ct. App. 2001) ...............................................................20

*Ziemba v. Cascade Int'l, Inc.*,
256 F.3d 1194 (11th Cir. 2001).............................................................................3

*Zlotnick v. Premier Sales Group, Inc.*,
480 F.3d 1281 (11th Cir. 2007)..........................................................................33

## Statutes

21 U.S.C. § 355 ........................................................................................................7

21 U.S.C. § 393(2)(B) .............................................................................................7

810 Ill. Comp. Stat. 5/2-313 ................................................................................24

Cal. Comm. Code § 2313 ....................................................................................24

Cal. Comm. Code § 2314 ....................................................................................30

Fla. Stat. Ann. § 672.313 ....................................................................................24

Fla. Stat. Ann. § 672.314 ....................................................................................30

N.J. Stat. Ann. § 12A:2-313 ...............................................................................24

N.J. Stat. Ann. § 12A:2-314 ...............................................................................30

Nev. Rev. Stat. § 11.190(2)(d) ...........................................................................20

Nev. Rev. Stat. § 104.2725(1) ............................................................................20

Nev. Rev. Stat. § 104.2313 .................................................................................24

Nev. Rev. Stat. § 104.2314 .................................................................................30

S.C. Code Ann. § 36-2-313 .................................................................................24

S.C. Code Ann. § 36-2-314 .................................................................................30

S.C. Code Ann. § 36-2-318 .................................................................................27

## **Regulations**

21 C.F.R. § 330.10..........................................................................................7, 8

43 Fed. Reg. 1210.............................................................................................17

59 Fed. Reg. 31402............................................................................................9

## **Treatises**

2 Davis & Pierce, *Administrative Law Treatise* § 14.6. ..............................................15

## **Other Authorities**

U.C.C. § 2-313...........................................................................................24, 31

U.C.C. § 2-314...........................................................................................30, 32

## I.  INTRODUCTION

For nearly twenty years, the Colgate-Palmolive Company ("Colgate" or "Defendant") deceived and misled the American public – including Plaintiffs and the other members of the proposed statewide classes they respectively seek to represent ("Plaintiffs" and the "Classes," respectively) – into purchasing or paying more for a product that they did not need and that did not perform as expressly and impliedly marketed through a false, national advertising campaign. That product was the "Softsoap Antibacterial" line of liquid hand soaps, all of which contained as their "active" ingredient the antimicrobial chemical agent "triclosan."

Colgate marketed Softsoap Antibacterial as being "clinically proven to eliminate 99% of germs your family encounters." This statement simply is not true. In fact, there is no clinical proof that Softsoap Antibacterial eliminates viruses, which any reasonable consumer would consider, and which the Centers for Disease Control consider, as included among the "germs" families encounter. Furthermore, Colgate's statement implies that Softsoap Antibacterial will help protect families from illness better than other soaps that do not contain triclosan. This implied claim, as has been repeatedly shown, is false. There is no evidence that triclosan-containing hand soaps as used by consumers protect them from disease or illness better than ordinary hand soaps that do not contain triclosan. In fact, as Plaintiffs allege in their Consolidated Amended Class Action Complaint (Dkt. No. 24) (hereinafter "CAC"), and as supported by scientific research continuously emerging from a variety of credible sources, not only do triclosan-containing soaps such as Softsoap Antibacterial offer no health benefits greater than those obtained by washing with conventional soap and water, but that the wide use of triclosan in consumer antibacterial hand soaps is proving harmful to both consumers and the environment.

1

Colgate is aware of the fact that no valid health reason exists to include triclosan in its liquid hand soap products. In fact, just before Plaintiffs commenced the instant litigation, Colgate began the process of withdrawing Softsoap Antibacterial from the market.[1] Today, while Colgate no longer sells liquid hand soaps containing triclosan, it refuses to refund consumers for their past purchases or even disgorge profits unjustly earned as a result of their prior false representations, necessitating Plaintiffs' continued prosecution of this multidistrict proceeding.

Colgate's motion to dismiss must be denied. First, the application of the primary jurisdiction doctrine is inappropriate here, because an agency determination would not address the issues raised in this litigation. Moreover, the FDA has failed to finally address the safety and efficacy of triclosan-containing hand soaps (an issue related to Plaintiffs' claims here) for almost forty years, thus, deferral to the FDA would result in an inexcusable, and perhaps permanent, delay in addressing issues related to Plaintiffs' claims.

Second, each named plaintiff timely filed his/her complaints within any potentially applicable limitations period after their claims accrued as a result of their deceptively induced Softsoap Antibacterial purchases.  Furthermore, any applicable statutes of limitation have been equitably tolled as a result of Colgate's fraudulent concealment of the facts alleged in the CAC through its affirmative misrepresentations to the contrary.

Third, the CAC exhaustively pleads facts sufficient to state Plaintiffs' specific state law claims in all respects – Colgate plainly deceived consumers in violation of state consumer protection laws through its marketing with measurable statements that go beyond mere puffery;

---

[1] Andrew Martin, *Popular Antibacterial Chemical Raises Safety Issues*, N.Y. TIMES, August 20, 2011, at B1, available at http://www.nytimes.com/2011/08/20/business/triclosan-an-antibacterial-chemical-in-consumer-products-raises-safety-issues.html?pagewanted=all (citing 'changing consumer preferences,' Colgate-Palmolive replaced triclosan with lactic acid in Palmolive Antibacterial Dish Liquid, **and its Softsoap liquid hand soap has been reformulated without the chemical.**") (emphasis added).

Colgate expressly and impliedly warranted that Softsoap Antibacterial had properties it does not, in fact, have through express and implied statements on the Product's labels, thereby breaching those warranties; and, as an equitable alternative to Plaintiffs' legal claims, Colgate was unjustly enriched as a result of the wrongful and deceptive conduct alleged throughout the CAC.

## II.  <u>STANDARD OF REVIEW</u>

A motion to dismiss for "failure to state a claim upon which relief can be granted," under Fed. R. Civ. P. 12(b)(6), only requires the court to conduct a limited inquiry, focusing not on "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). When considering a motion to dismiss under Rule 12(b)(6), the court "must assume the truth of all well-plead facts and give the plaintiff[s] the benefit of all reasonable inferences therefrom." *Alvarado Aguilera v. Negrón*, 509 F.3d 50, 52 (1st Cir. 2007) (quoting *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007). The factual allegations need only be enough to "nudge[] their claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The court's inquiry is limited to the content of the complaint, matters of public record, orders, and exhibits attached to the complaint. *See Bassett v. Nat'l Collegiate Athletic Ass'n,* 528 F.3d 426, 430 (6th Cir. 2008). The facts must be read in light most favorable to plaintiff. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1940 (2009). The complaint must allege clear factual statements that give rise to a plausible claim for recovery against the defendant. *Bell Atlantic v. Twombly*, 550 U.S. 554, 556 (2007). In determining whether a complaint states a plausible claim is context-specific, requiring the reviewing Court to draw on its experience and common sense. *Id*. at 556.[2]

---

[2] Colgate, in a footnote, cites one Eleventh Circuit case to support its claim that Rule 9(b) should apply here because the CAC "sounds in fraud." Def.'s Mem. Supp. Mot. Dismiss at 29-30 n.22, Dkt. No. 26-1, [hereinafter "Def.'s Mem."] (citing *Ziemba v. Cascade Int'l, Inc*., 256 F.3d 1194, 1202 (11th Cir. 2001)). However, in the First Circuit, the sounds-in-fraud doctrine traditionally has been applied in the securities

# III. ARGUMENT

## A. APPLICATION OF THE PRIMARY JURISDICTION DOCTRINE IS INAPPROPRIATE HERE

Plaintiffs ask this Court, and a jury, to determine whether Colgate's marketing claims, including the claim that Softsoap Antibacterial "eliminates 99% of the germs your family encounters," deceives and misleads consumers into purchasing or paying more for the Product because, as Plaintiffs allege in the CAC, washing your hands with Softsoap Antibacterial is not any more effective than washing with ordinary soap and water.  Thus, this case is about whether Colgate's specific marketing practices are false and misleading, ***not*** whether all triclosan-containing soaps are safe and effective *at all*. More broadly, Plaintiffs seek a determination as to: (1) whether Colgate's conduct regarding its marketing of Softsoap Antibacterial is deceptive and misleading; (2) whether Colgate's allegedly wrongful conduct concerning its Softsoap Antibacterial marketing violates various states' consumer protection statutes, warranty statutes, and unjust enrichment common laws; and (3) whether, as a result of Colgate's conduct, Plaintiffs and the other members of the proposed Classes are entitled to damages, equitable relief, and other remedies. Making such determinations are "not a technical area in which the FDA has greater technical expertise than the courts – every day courts decide whether conduct is

---

fraud context, where a complaint basically is a "wholesale adoption" of the securities fraud allegations. *SEC v. Patel*, 2008 DNH 053, 12, 2008 WL 782483, at *5 (D.N.H. Mar. 24, 2008); *see also N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale*, 567 F.3d 8, 15 (1st Cir. 2009). Regardless, the CAC provides Colgate with the specificity required under Rule 9(b) to place it on notice and enable it to prepare a meaningful defense. The CAC sufficiently alleges the "time, place, and content" of Colgate's misleading marketing of Softsoap Antibacterial by identifying specific statements that Colgate made throughout the class period on its packaging (including pictures) and on its website (with hyperlinks). *See* CAC ¶¶ 51-86.  Thus, Plaintiffs necessarily also meet the more lenient Rule 8(a) pleading standard.

misleading," *Lockwood v. Conagra Foods, Inc.*, 597 F. Supp. 2d 1028, 1035 (N.D. Cal. 2009),[3] and therefore application of the primary jurisdiction doctrine is not appropriate here.

The primary jurisdiction doctrine "should **seldom be invoked** unless a factual question requires both expert consideration and uniformity of resolution." *Locust Cartage Co. v. Transamerican Freight Lines, Inc.*, 430 F.2d 334, 340 n.5 (1st Cir. 1970) (emphasis added), *cert. denied*, 400 U.S. 964 (1971).[4] Primary jurisdiction is a "doctrine specifically applicable to claims properly cognizable in court that contain some issue within the special competence of an administrative agency." *Reiter v. Cooper*, 507 U.S. 258, 268 (1993).

In "determining whether to invoke primary jurisdiction," at the motion to dismiss juncture, courts should "apply a standard derived from Rule 12(b)(6) jurisprudence: whether the complaint plausibly asserts a claim that would *not* implicate the doctrine." *County of Santa Clara v. Astra USA, Inc.*, 588 F.3d 1237, 1252 (9th Cir. 2009) *rev'd on other grounds sub nom. Astra USA, Inc. v. Santa Clara County, Cal.*, 131 S. Ct. 1342 (2011). Particularly, the "question is whether any set of facts could be proved which would avoid application of the doctrine." *Davel Communs., Inc. v. Qwest Corp.*, 460 F.3d 1075, 1088 (9th Cir. 2006). Thus, where "the allegations of the complaint do not necessarily require the doctrine's applicability, then the primary jurisdiction doctrine may not be applied on a motion to dismiss . . . ." *Id.* Colgate's

---

[3] *See also Ackerman v. Coca-Cola Co.*, No. CV-09-0395 (JG) (RML), 2010 WL 2925955, at *14 (E.D.N.Y. July 21, 2010) ("The question whether defendants have violated FDA regulations and marketed a product that could mislead a reasonable consumer is one courts are well-equipped to handle, and is not an appropriate basis for invoking the primary jurisdiction doctrine.").

[4] *Accord Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008) (primary jurisdiction "applies in a limited set of circumstances."); *Alpharma, Inc. v. Pennfield Oil Co.*, 411 F.3d 934, 938 (8th Cir. 2005) (Primary jurisdiction "is to be invoked sparingly, as it often results in added expense and delay.").

motion to dismiss was made "under Federal Rules of Civil Procedure 12(b)(6) and 9(b)," and therefore this Court should review this motion under the 12(b)(6) standard.[5]

As detailed below, because the allegations in the CAC do not necessarily require the doctrine's applicability, the primary jurisdiction doctrine should not be applied. Here, the First Circuit factors weigh against applying the primary jurisdiction doctrine.  Moreover, the factors highlight the inadequacy of relying on the possibility that the FDA might act on issues related to Plaintiffs' claims in the CAC. Also, as is the case here, where the agency to which referral is sought has had a reasonable opportunity to address issues related to the litigation – but has failed to make a final determination – courts generally have refused to apply the primary jurisdiction doctrine. The FDA has had nearly *forty years* to address issues related to this case, but has failed to do so, and referral to the FDA will result in an indefinite, perhaps permanent, and unreasonable delay in adjudicating Plaintiffs' claims. In fact, if this Court dismisses this action in deference to the FDA, the history of the FDA's inaction in this area will almost certainly ensure that Colgate is virtually insulated from liability for making false claims about its Softsoap Antibacterial – perhaps the exact result Colgate seeks with this motion.  Accordingly, applying the primary jurisdiction doctrine is inappropriate in this case.

1.      The "*AAMA* Factors" Weigh Against Applying The Primary
        Jurisdiction Doctrine.

"No fixed formula exists for applying the doctrine of primary jurisdiction." *United States v. W. Pac. Rail. Co.* 352 U.S. 59, 64 (1956). However, the First Circuit has provided the following factors to help to guide a court's decision of whether to apply the doctrine:

---

[5] Plaintiffs' research found no authority on point in the First Circuit regarding the standard of review of a motion to dismiss under the primary jurisdiction doctrine, and Colgate takes no position on the standard in its motion to dismiss.

(1) whether the agency determination lies at the heart of the task assigned the agency by Congress;
(2) whether agency expertise is required to unravel intricate, technical facts; and
(3) whether, though perhaps not determinative, the agency determination would materially aid the court.

*Am. Auto. Mfrs. Ass'n v. Mass. Dept. of Envtl. Prot.*, 163 F.3d 74, 81 (1st Cir. 1998) [hereinafter "*AAMA*"]. As explained below, this case implicates ***none*** of these factors.

### a.    The FDA has not been tasked with determining the issues in this case.

Whether Colgate's conduct regarding its marketing of Softsoap Antibacterial is deceptive and misleading and whether such conduct violates various states' consumer protection statutes, warranty statutes, and common law is not a determination that the FDA routinely makes, nor does such a determination lie at the heart of the FDA's tasks as assigned by Congress. Conversely, any determination within the FDA's usual purview regarding triclosan-containing hand soaps will not be dispositive of the issues in *this* case.

The FDA, pursuant to the Federal Food, Drug, and Cosmetic Act ("FFDCA"), 21 U.S.C. § 355, is tasked with "protect[ing] the public health by ensuring that . . . drugs are safe and effective." 21 U.S.C. § 393(2)(B). The FDA regulates the safety and effectiveness, as well as labeling accuracy (referred to as "misbranding"), of over-the-counter drugs through a monograph procedure. 21 C.F.R. § 330.10.

Under the monograph procedure, the FDA appoints a panel of qualified experts that reviews data submitted by interested parties and recommends a proposed monograph, which recommends the conditions under which the drugs would be generally recognized as safe, effective, and not misbranded. *See id.* § 330.10(a)(2)–(5). After reviewing those recommendations, the FDA publishes a proposed order containing: (1) a monograph establishing conditions under which the drugs are generally considered safe, effective, and not misbranded

7

("Category I"); (2) a statement of conditions excluded from the monograph because they would result in a drug not being generally recognized as safe and effective or would result in misbranding ("Category II"); and (3) a statement of conditions excluded from the monograph because there are insufficient data to classify their safety, effectiveness, or accuracy of branding ("Category III"). *Id.* § 330.10(a)(6)(i)–(iii). The proposed order also includes a reasonable time period within which Category III conditions may remain on the market while the FDA evaluates further information. *Id.* § 330.10(a)(6)(iv).

After considering public comments and any new information, the FDA publishes a tentative order establishing conditions under which a category of over-the-counter drugs is generally recognized as safe and effective and not misbranded. *Id.* § 330.10(a)(7)(i). After reviewing further comments and objections, the FDA typically publishes a final monograph. *Id.* § 330.10(a)(9). Following publication of a final monograph, the agency prohibits over-the-counter drug products containing non-monograph conditions – Category II and III drugs – from being introduced into interstate commerce after a specified date. *See Cutler v. Kennedy*, 475 F. Supp. 838, 855 (D.D.C. 1979).

Here, Softsoap Antibacterial, as a triclosan-containing hand soap, is a drug subject to the FDA monograph procedure. Indeed, such hand soaps are categorized as "health-care antiseptics." Colgate argues in its motion to dismiss memorandum that the analysis should stop there – because the product is subject to FDA regulation, the issues raised in this litigation must necessarily lie at the heart of the FDA's tasks. However, the FDA has tentatively classified "triclosan (up to 1 percent, with the lower limit to be determined) . . . as Category III for use in health-care antiseptic drug products as a patient preoperative skin preparation, antiseptic handwash or health-care personnel handwash, and surgical hand scrub" – meaning that the FDA

had insufficient data to determine the safety and effectiveness of triclosan as the active antiseptic agent in hand washes for daily use, such as consumer soaps. *See* FDA, Tentative Final Monograph for Health-Care Antiseptic Drug Products, 59 Fed. Reg. 31402, 31428 (June 17, 1994) [hereinafter "1994 TFM"]. To this day, the FDA has not taken, nor has it established a schedule to take, final action regarding these products.

Regardless of whether the FDA ever publishes a final order regarding the use of triclosan in health-care antiseptics, the FDA will not determine whether Colgate misled consumers with its marketing claims regarding Softsoap Antibacterial's extraordinary health benefits and efficacy. For example, if the FDA were to determine that triclosan-containing hand soaps are unsafe or ineffective, this Court would still have to determine whether Colgate's marketing campaign was misleading based on Colgate's research and product knowledge from the time the campaign was launched up to the FDA's final monograph. If, however, the FDA were to determine that triclosan-containing hand soaps are safe and effective, this Court would still need to resolve whether Softsoap Antibacterial is *as effective* as Colgate claims in its marketing.

Here, Colgate (apparently) argues that because the FDA has the authority to regulate triclosan, a point Plaintiffs do not contest, its marketing claims regarding its triclosan-containing products are free from judicial scrutiny or state laws protecting consumers from false or misleading marketing. Such a broad application of the doctrine is incorrect. The primary jurisdiction doctrine "is not an alternate route for federally regulated businesses to take as a way to avoid civil litigation with consumer plaintiffs." *Torres-Hernandez v. CVT Prepaid Solutions, Inc.*, 3:08-CV-1057-FLW, 2008 WL 5381227, at *5 (D.N.J. Dec. 17, 2008). Nor is it an avenue, as Colgate seems to suggest, to avoid the restrictions of consumer protection statutes and other state laws regarding products and marketing. The primary jurisdiction doctrine "does not require

that all claims within an agency's purview be decided by the agency. Nor is it intended to 'secure expert advice' for the courts, from regulatory agencies every time a court is presented with an issue conceivably within the agency's ambit." *Brown v. MCI WorldCom Network Servs., Inc.*, 277 F.3d 1166, 1172 (9th Cir. 2002).

Colgate's position, like the position of the defendants in *Torres-Hernandez*, "taken to its logical extreme, . . . would permit a . . . company to avoid negligence claims in federal court by invoking the [FDA's] authority (putting aside any preemption issues), or force a state court to defer consumer fraud actions against a commercial bank due to Federal Reserve oversight." 3:08-CV-1057-FLW, 2008 WL 5381227, at *5. "Primary jurisdiction is an exceptional doctrine reserved for those technical cases that *would* conflict with specific federal regulations or pending agency hearings." *Id.* Here, because there are no specific regulations nor pending agency hearings where the FDA will make a final determination regarding triclosan-containing hand soaps, any decision by this Court *cannot* conflict with the FDA's regulation and Colgate's protestations to the contrary are misguided.

An FDA determination regarding triclosan would be related to the issues here, however such a determination will not resolve the issues in this litigation – whether Softsoap Antibacterial is *as efficacious* as Colgate's marketing claims it to be, not whether all triclosan-containing soaps are safe and effective *at all*. Thus, the issues raised in this case do not lie at the heart of the tasks assigned to the FDA, and whether the FDA ever makes a final determination regarding health-care antiseptics does not determine the issues raised here.

> **b.    An FDA determination is not required to unravel the facts of this case.**

This Court does not need agency expertise to "unravel intricate, technical facts" to resolve Plaintiffs' claims pertaining to the marketing of Softsoap Antibacterial. These claims

depend upon a determination that Colgate's advertisements deceive Plaintiffs and Class they purport to represent, all of whom are reasonable consumers.   "[T]his is not a technical area in which the FDA has greater technical expertise than the courts – every day courts decide whether conduct is misleading." *Lockwood*, 597 F. Supp. 2d at 1035 (declining to apply the primary jurisdiction doctrine in false advertising case concerning the definition and deceptive use of the term "natural").[6]

Here, Plaintiffs' claims are well within this Court's competence. Courts and juries are regularly asked to review the evidence presented, including consumer surveys, anecdotal evidence, scientific literature, and expert testimony to determine if advertised claims were misleading. These issues are of the type that courts and juries decide every day. Plaintiffs and the other members of the proposed Classes should be allowed to have their claims heard through the judicial process – a process free from the complex political considerations and other extraneous issues that the FDA must consider when addressing triclosan generally.

Colgate also claims that dismissal is appropriate here because the case involves an ongoing public health issue, citing *Gordon v. Church & Dwight Co.* No. C 09-5585 PJH, 2010 WL 1341184, at *1 (N.D. Cal. Apr. 2, 2010). Def.'s Mem. at 11. However, in *Gordon* – unlike in this case – the claims revolved around whether the defendant's claims that latex condoms help reduce the spread of sexually-transmitted diseases, including AIDS, were false and misleading. The court, in *Gordon*, noted that the FDA had been actively involved in the regulation of condom labeling, even "mandating the specific substance of warnings, instructions, and statements of use." *Id.* at *2. Similarly, Colgate cites numerous prescription drug labeling cases,

---

[6] *See also Ackerman*, No. CV-09-0395 (JG) (RML), 2010 WL 2925955, at *14 ("The question whether defendants have violated FDA regulations and marketed a product that could mislead a reasonable consumer is one courts are well-equipped to handle, and is not an appropriate basis for invoking the primary jurisdiction doctrine.").

an area where the FDA also has been active in its regulation. Def.'s Mem. at 11. Here, the FDA has not been actively involved in the regulation of what statements, warnings, and instructions are required or forbidden with regard to health-care antiseptics using triclosan, such as Softsoap Antibacterial. In fact, the FDA has not issued a final monograph regarding triclosan in health-care antiseptics and has no concrete plans to do so.

Colgate also argues that dismissing Plaintiffs' claims would promote uniformity in the regulation of triclosan, and any ruling by this Court could give a competitive advantage to its competitors. Def.'s Mem. at 12-13. This argument is particularly specious, considering that Colgate has removed Softsoap Antibacterial from the market, thereby mooting its "competitive advantage" argument. Even if the Court elects to substantively consider this now-mooted "competitive advantage" argument, it nonetheless fails. If consumers are stripped of their ability to pursue their claims in court, and the FDA continues its almost forty-year failure to finalize regulations regarding triclosan, manufacturers of triclosan-containing products will benefit from a uniform absence of regulation *and* freedom from judicial intervention regarding any extraordinary efficacy claims they choose to make or continue to make about their products.[7]

### c.   An FDA determination would not materially aid this Court.

In the event the FDA were to make a final determination concerning triclosan in health-care antiseptics, it would not materially aid this Court in adjudicating Plaintiffs' claims. In fact – despite Colgate's unsupported and aspirational claims that such regulation is imminent – because the FDA has failed to make a final determination regarding these types of products for nearly forty years, dismissal of this litigation out of deference to the FDA likely would ensure that

---

[7] Again, however, due to Colgate's decision to remove Softsoap Antibacterial from the market, this argument is irrelevant to the present analysis.

Plaintiffs' claims are *never* addressed. Ordinarily, claims are referred to an agency under the primary jurisdiction doctrine only if the agency alone "can adequately resolve the complex issues of fact and policy that underlie the . . . case." *Distrigas of Massachusetts Corp. v. Boston Gas Co.*, 693 F.2d 1113, 1119 (1st Cir. 1982). Implicit in this statement is the presumption that the agency *will* resolve the issues underlying the case. That is not the case here.

Courts often decline to apply the doctrine when the case is based on state law or legal questions that would not be finally resolved by the agency. *See, e.g.*, *Ryan v. Chemlawn Corp.*, 935 F.2d 129, 131 (7th Cir. 1991).[8] Colgate, in an effort to recast the CAC as pleading more to its liking (or more consonant with its legally unsupported attacks), creates its own list of six claims it thinks this Court need resolve. *See* Def.'s Mem. at 14-16. Despite what Colgate wants this litigation to be about, at the dismissal motion stage this Court is bound to determine whether the CAC states claims upon which relief can be granted, based upon the allegations contained therein – and not upon unsupported ruminations and suppositions of Colgate's own creation.

Thus, as set forth in the CAC, this litigation requires determination of whether Softsoap Antibacterial is *as efficacious* as Colgate claims it to be and whether Colgate's specific marketing practices are false and misleading, ***not*** whether all triclosan-containing soap are safe and effective *at all*. That is, while Plaintiffs claims are related to the questions the FDA has failed to finalize through its monograph procedure, if the FDA were to take final action the determination would not conclude this litigation. Plaintiffs' claims arise out of Colgate's deceptive marketing of Softsoap Antibacterial, specifically its claims of purportedly extraordinary germ-eliminating efficacy. Indeed, Colgate fails to cite a *single* case where a court

---

[8] *Lockwood*, 597 F. Supp. 2d at 1035 ("even if the FDA were to formally define 'natural,' federal law would not dispose of plaintiff's state law [§17200] claims"); *Pom Wonderful LLC v. Ocean Spray Cranberries, Inc*., 642 F. Supp. 2d 1112, 1123 (C.D. Cal. 2009) (noting that plaintiff's state law false advertising claims "would not necessarily be resolved in the event of an FDA ruling"); *Ackerman*, No. CV-09-0395 (JG) (RML), 2010 WL 2925955, at *13–14.

has dismissed an action under the primary jurisdiction doctrine where the relevant agency had failed to issue any final regulations or guidelines at all.

Even where an agency has published guidelines, courts do not automatically refer cases requiring interpretation of those guidelines to the agency. As one court aptly noted, "the FDA has traditionally regarded state law as an additional layer of consumer protection that complements FDA regulation." *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 375 (N.D. Cal. 2010) (citing *Wyeth v. Levine*, 555 U.S. 555, 577 (2009)). In *Chavez*, the plaintiffs claimed that Blue Sky's labels misled consumers about the geographic origin of its beverages. Even though the FDA had published regulations regarding labeling of geographic origins, the court held that there was "no basis for applying the primary jurisdiction doctrine to stay or dismiss this action," because the "plaintiff's state law claims do not require an FDA ruling as to whether the FDCA had been violated, nor does adjudication of those claims require the FDA's particular expertise or uniformity in administration of labeling requirements." *Id.* at 374–75.

FDA regulations set a floor – a minimum standard – for safety and efficacy of products subject to its authority. However, when a manufacturer's marketing touts false or misleading claims of clinical efficacy, state consumer protection law should be allowed to complement the FDA's regulations.[9] Assuming the FDA had promulgated such regulations, as was the case in *Chavez*, those regulations would not be disrupted or undermined by the enforcement of consumer protection statutes and warranty law. Indeed, Plaintiffs here do not allege any violations of any FDA regulations by Colgate. Rather Plaintiffs allege that Colgate's representations concerning the purported increased efficacy of its Softsoap Antibacterial products over washing with plain

---

[9] Of course, here, unlike *Chavez*, there are no final federal regulations by the FDA concerning triclosan-containing hand soaps, and the FDA's tentative conclusions are that, at least as of 1994, it lacked sufficient data to classify triclosan containing hand soaps as safe or effective, thus strengthening Plaintiffs' argument on this point even further.

14

soap and water are false and misleading. *See* CAC ¶¶ 5-7. Thus, even if the FDA were (or even had concrete plans) to make a final determination regarding the safety and efficacy of triclosan-containing hand soaps, such a determination would be related to Plaintiffs' claims, but it would not materially aid the resolution (and certainly not be determinative) of the issues raised here.

The *AAMA* factors weigh against applying the primary jurisdiction doctrine here – and in fact highlight the inadequacy of relying on the FDA to determine Plaintiffs' claims. At a minimum, "the allegations of the complaint do not necessarily require the doctrine's applicability [and thus] the primary jurisdiction doctrine may not be applied [here] on a motion to dismiss," *Davel*, 460 F.3d at 1088, and Colgate's argument should be rejected.

### 2. Referral to the FDA Will Unreasonably Delay Adjudication of Plaintiffs' Claims.

The FDA has now had just over 38 years to make a determination regarding triclosan in hand washes since it first took up the issue on or about September 13, 1974 – yet it has failed to take final action on this issue. Thus, dismissing Plaintiffs' claims out of deference to the FDA will jeopardize whether their claims ever will be resolved. According to the First Circuit, even in cases where the *AAMA* factors favor agency determination, the factors "must be balanced against the potential for delay inherent in the decision to refer an issue to an administrative agency." *AAMA*, 163 F.3d at 81–82.[10] The doctrine requires only that "the parties [are afforded] reasonable opportunity to seek an administrative ruling." *Reiter*, 507 U.S. at 268. Where the agency has had a reasonable opportunity to address issues related to the litigation, but failed to make a final determination, courts generally refuse to apply the primary jurisdiction doctrine.

---

[10] *See also PHC, Inc. v. Pioneer Healthcare, Inc.,* 75 F.3d 75, 80–81 (1st Cir. 1996); *see generally* 2 Davis & Pierce, *Administrative Law Treatise* § 14.6.

For example, in 2003, the First Circuit affirmed the district court's conclusion that, although the *AAMA* factors favored agency referral, "deferring the injunctive relief aspects of this case on the basis of primary jurisdiction is not warranted given the history of the administrative agencies' ***inexcusable delay*** in effectively addressing the issues raised by Defendants' past methods of operating . . . ." *U.S. Pub. Interest Research Grp. V. Atl. Salmon of Me., LLC.*, 257 F. Supp. 2d 407, 425 (D. Me. 2003) *aff'd*, 339 F.3d 23, 34 (1st Cir. 2003). Similarly, the First Circuit noted that the district courts are free "to use the 'flexible tool' of primary jurisdiction to require their use of the agency first where doing so ***will expedite*** just resolution of the controversy." *N.H. Motor Transp. Ass'n v. Flynn*, 751 F.2d 43, 51 (1st Cir. 1984) (emphasis added) (citing *Locust Cartage Co. v. Transam. Freight Lines, Inc.,* 430 F.2d 334, 340 n.5 (1st Cir. 1970), *cert. denied*, 400 U.S. 964 (1970)).

In *Flynn*, the First Circuit held that application of the primary jurisdiction doctrine was inappropriate because, among other things, "to obtain [the agency's] views would require significant additional delay; and [the agency] has adequate legal power in any event to alter the result." *Id.* Likewise, in *Lockwood*, the court did not refer the matter to the FDA because the agency had indicated that the issue was not a priority and because the FDA has limited resources. 597 F. Supp. 2d at 1035.[11]

In its opening brief, not only does Colgate ignore the near 40 years of FDA inaction on this issue, but actually turns it on its head – incredibly contending that the "FDA's *40 years* of experience regulating triclosan . . . weighs in favor of applying primary jurisdiction." Def.'s Mem. at 9. In its revisionist efforts, Colgate mischaracterizes Plaintiffs' allegations, contending

---

[11] Other courts have cited an unreasonable delay in addressing the plaintiffs' claims as justification for not applying the doctrine. *See, e.g.*, *Pom Wonderful*, 642 F. Supp. 2d at 1123 (declining to apply the primary jurisdiction doctrine when the party seeking agency referral did not provide evidence that "the FDA has actually taken any interest in investigating the claims or issues presented here.").

that Plaintiffs' reference to the ongoing review of triclosan products somehow constitutes an admission that the FDA action on this issue is "imminent." *See* Def.'s Mem. at 5. The CAC says nothing of the sort – and a plain reading of CAC and the Federal Register paints a drastically different picture: a picture of close to forty years of agency inaction on this precise issue. On September 13, 1974, the FDA first made its recommendations and proposed order regarding triclosan and other antimicrobial ingredients. FDA, Proposal to Establish a Monograph for OTC Topical Antimicrobial Prods, 39 Fed. Reg. 33,103 (Sept. 13, 1974). At that time, triclosan used in antimicrobial soap was designated a Category III product (insufficient data for classification). *See* Proposal, 39 Fed. Reg. at 33,115. In January 1978, the FDA published its first tentative monograph, again designating the soaps as Category III products and proposing that they be removed from the market within six months of the order being finalized. FDA, OTC Topical Antimicrobial Products: Tentative Final Order, 43 Fed. Reg. 1210 (Jan. 6, 1978). However, the FDA took no further action until 1994, when it published a second tentative final order, which again found that triclosan-containing hand soaps lacked substantiating safety and efficacy data and recommended that such products be removed from the market within one year. *See* 1994 TFM at 31,436, 31,403.

Yet, after the 1994 TFM, the FDA again inexplicably failed to finalize the order and took no further action until 2003, when it merely reopened the administrative record for comments and data. *See* FDA, Health-Care Antiseptic Drug Products: Reopening of the Administrative Record, 68 Fed. Reg. 32,003 (May 29, 2003). The FDA now claims that it intends to communicate its findings in the winter of 2012. Def.'s Mem. at 9. However, despite three requests and a lawsuit from the Natural Resources Defense Counsel, and a Congressional inquiry from Representative Edward Markey, the FDA has failed to establish a timeline for when it

expects to publish a final monograph. Mem. Supp. Plaintiff's Mot. Summ. J. at 10, *NRDC v. FDA*, No 10 Civ. 5690 (S.D.N.Y. Sept. 24, 2010) (available at http://www.hpm.com/pdf/Triclosan%20-%20NRDC%20MSJ.pdf).

Thus, for nearly four decades, the FDA has failed to finalize an order concerning triclosan-containing hand soaps. Over thirty-eight years passed since the FDA published its initial order (as well as over thirty-four years since its first proposed order, and over eighteen years since its second proposed order) and, to this day, has not established a concrete timeframe for publishing a final order. The FDA now states it will propose yet another *tentative* order, which does little to substantiate Colgate's claim that *final* FDA action is imminent, and should be of no moment in the Court's analysis here. Indeed, the FDA has "sat overlong on their hands in this respect," *Atl. Salmon*, 257 F. Supp. 2d at 426, and has been afforded a (more than) reasonable opportunity to act.

Here, dismissing Plaintiffs' claims in deference to the FDA would result in an indefinite, perhaps permanent, and unreasonable delay in adjudicating Plaintiffs' claims, and the *AAMA* factors weigh against application of the primary jurisdiction doctrine. Therefore, because the CAC asserts "facts [that] could be proved, which would avoid application of the doctrine," *Davel*, 460 F.3d at 1088, which "plausibly asserts [claims] that would *not* implicate the doctrine," *County of Santa Clara v. Astra USA, Inc.*, 588 F.3d at 1252, and which would demonstrate that applying the doctrine would cause an unreasonable delay, Colgate's argument should thus be rejected.

## B.   PLAINTIFFS' CLAIMS ARE NOT TIME-BARRED

Despite the fact that Colgate continuously made false representations concerning its Softsoap Antibacterial products from the day it commercially launched those products until the

day Colgate finally withdrew that entire product line from the market – and continues to conceal the truth concerning the lack of efficacy of Softsoap Antibacterial to this day – Colgate incredibly contends that Plaintiffs' claims are time-barred. Not only does Colgate's argument contradict established case law, but its contention also directly ignores its own argument that the FDA should have primary jurisdiction. On the one hand, Colgate argues that the FDA has primary jurisdiction because "for decades [it] has evaluated the safety, efficacy, and labeling of triclosan-containing products such as Softsoap Antibacterial" and that Plaintiffs filed their claims "in the midst of the FDA's ongoing evaluation." Def.'s Mem. at 2-3. On the other hand, Colgate argues that Plaintiffs' claims are time barred because they allege "multiple examples of publicly available documents that put them on notice of their potential claims as early as 2000," claiming dismissal is appropriate because the facts were "clear." *Id.* at 17. It is ironic that "facts" which the FDA has grappled with for over 38 years and which Colgate only recognized in limited form in its 2008 and 2009 Form 10-Ks are "facts" which should have been known to Plaintiffs and other members of the proposed Classes from 2000 and onward. As discussed below, Plaintiffs' claims are not time-barred and this Court should reject Colgate's arguments to the contrary.

Moreover, Colgate does not, and cannot, dispute in its motion to dismiss that each of the individually named Plaintiffs in the CAC had last purchased Softsoap Antibacterial, and thereby accrued the injury alleged in the CAC, at times well within each state's limitations periods. *See* CAC ¶¶ 17-25 (specifying each named Plaintiffs' purchases starting on certain dates, repeated purchases over the last several years, or most recent purchases of the Product on dates well within applicable statutes of limitations periods).

**1.      The Discovery Rule Tolls Application of the Statute of Limitations.**

In New Hampshire, under the discovery rule, "[a] cause of action will not accrue … until the plaintiff discovers or in the exercise of reasonable diligence should have discovered not only that he has been injured but also that his injury may have been caused by the defendant's conduct." *Sinclair v. Brill*, 857 F. Supp. 132, 135 (D.N.H. 1994) (citation omitted).[12]

Plaintiffs' CAC alleges that Colgate's deceptive marketing of Softsoap Antibacterial caused Plaintiffs to purchase a product they would not have otherwise bought, or to pay more for it than they otherwise would have paid. The six (6) news articles and five (5) scientific publications cited in Plaintiffs' CAC did not saturate the media, but were created over a thirteen (13) year span and did not address Softsoap Antibacterial in particular. Colgate offered no articles that would have put a reasonably diligent consumer on notice that they were deceived into purchasing a falsely advertised Product or paid a premium for a product that does not perform as advertised.

Further, Colgate's argument that two scientific articles triggered accrual of claims in 2000 is simply not supported by its cited case law. Rather these cases support that Plaintiffs here were <u>not</u> on notice of accrual of their claims. In *In re Trasylol Prods. Liab. Litig.*, the Florida

---

[12] New Jersey, Illinois, Nevada, and California apply the discovery rule to consumer protection claims. *See e.g. Keegan v. Am. Honda Motor Co., Inc.*, No.CV 10-09508 MMM(AJWx), 2012 WL 2250040, at *34 (C.D. Cal. June 12, 2012); Nev. Rev. Stat. Ann. § 11.190(2)(d); *Hermitage Corp. v. Contractors Adjustment Co.*, 651 N.E.2d 1132, 1136 (Ill. 1995); *Estate of Parr v. Buontempo Ins. Servs.*, No. A-4784-06T1, slip op., 2008 WL 2492164, at *3 (N.J. Super. Ct. App. Div. June 24, 2008). Florida does not apply the discovery rule to consumer protection claims. *See e.g. Yusuf Mohamad Excavation, Inc. v. Ringhaver Equip., Co.*, 793 So.2d 1127, 1128 (Fla. Dist. Ct. App. 2001). New Jersey, Illinois, South Carolina, and California allow for the extension of the statute of limitations for warranty claims under a variety of circumstances. *See, e.g., Dewey v. Volkswagen AG*, 558 F.Supp.2d 505, 518 (D.N.J. 2008); *Newell v. Newell*, 942 N.E.2d 776, 782 (Ill. App. Ct. 2011); *Mills v. Forestex Co.*, 134 Cal. Rptr. 2d 273, 287 (Cal. Ct. App. Apr. 14, 2003); *Republic Contracting Corp. v. S.C. Dept. of Highways and Pub. Transp.*, 503 S.E.2d 761, 766-67 (S.C. Ct. App. 1998). Nevada and Florida do not allow for the extension of the statute of limitations under some circumstances for warranty claims. *See e.g.* Nev. Rev. Stat. 104.2725(1); *Mayor's Jewelers, Inc. v. Meyrowitz*, No. 12-80055-CIV, slip op., 2012 WL 2344609, at *3 (S.D. Fla. June 20, 2012).

Court found that a plaintiff, who was pursuing a personal injury claim and had suffered a physical injury as a result of a major surgery, was on notice that Trasylol had caused his injuries because (1) plaintiff knew he was injured from his surgery; (2) plaintiff actively investigated his doctors regarding his injuries; (3) plaintiff brought suit against his treating physicians for medical malpractice; (4) there was a warning on the Trasylol box that expressly listed plaintiff's injury as a potential adverse effect; and (5) during plaintiff's investigation of his injury a news article was published in various national and local papers specifically naming Trasylol as being tied to injuries identical to those he had incurred in the surgery. No. 08-MD-01928, 2010 WL 6098571, at *13 (S.D. Fla. Mar. 16, 2010).

Moreover, in *Benak ex rel. Alliance Premier Growth Fund v. Alliance Capital Mngt. L.P.*, an action based on securities claims, the court found that plaintiffs, active investors in the Alliance mutual fund that had over-invested in Enron and suffered significant losses on Enron's collapse, were on notice of the over-investment due to the many news reports regarding Enron in the fall of 2001, Enron's highly-publicized bankruptcy, the publicity specifically referencing Alliance's Enron-related losses, and the filing of a complaint that alleged Alliance was over-invested in Enron. 435 F.3d 396, 401–03 (3rd Cir. 2006). Unlike *Benak* and *Trasylol*, the news articles at issue here did not specifically name Softsoap Antibacterial and were published only intermittently over a thirteen-year span.[13]

---

[13] Indeed, cases dealing with this very issue come down almost entirely in Plaintiffs' favor. *See, e.g.*, *In re Pharmaceutical Indus. Average Wholesale Price Litig.*, 491 F. Supp. 2d 20, 78–80 (D. Mass. 2007) (noting that individual consumers are not equipped to make the same determinations as sophisticated corporate entities); *In re Mass. Diet Drug Litig.*, 338 F. Supp. 2d 198, 205-10 (D. Mass. 2004) (deferring until trial the issue of whether widespread publicity over several years including the manufacturer itself contacting approximately 450,000 doctors and purchasing advertisements in many national and regional newspapers regarding the potential danger and withdrawal from the market of diet drugs was sufficient to put plaintiff consumers on notice of their claims); *Thompson v. Metropolitan Life Ins. Co.*, 149 F. Supp. 2d 38, 50-53 (S.D.N.Y. 2001) (denying summary judgment because twenty-four articles over a sixty year period and a segment telecast on 60 Minutes was insufficient to find that a class action of African-American insureds had constructive notice of discriminatory overcharges by defendant insurer); *Sawyer v.*

## 2.     Defendant's Fraudulent Concealment Tolls Otherwise Applicable Statutes of Limitations.

Under the fraudulent concealment doctrine, "[w]hen facts essential to the cause of action are fraudulently concealed from a plaintiff by a defendant, the statute of limitations is tolled until the plaintiff discovers or reasonably should have discovered those facts." *McNell v. Hugel*, No. CIV. 93-462-JD, 1994 WL 264200, at *3 (D.N.H. May 16, 1994) (citing *Cheshire Medical Center v. W. R. Grace & Co.*, 764 F. Supp. 213, 216, *vacated in part, on recons.* 767 F. Supp. 369 (D.N.H. 1991); *see also Premium Mgm't, Inc. v. Walker*, 648 F.2d 778, 782 n.5 (1st Cir. 1981) (noting that the fraudulent concealment doctrine "is based on the unfairness which would result to a plaintiff blamelessly ignorant of her injury whose action would be cut off before she was aware of its existence.") (quoting *Shillady v. Elliot Community Hospital*, 320 A.2d 637, 638 (N.H. 1974), additional citations omitted).

Here, Colgate concealed – and to this day fails to acknowledge – that its marketing of Softsoap Antibacterial was false, deceptive, and misleading. Rather than reveal the content of the testing behind Colgate's marketing claims with respect to Softsoap Antibacterial or simply admit that its old marketing claims were false, Colgate has concealed these facts to allow it to deceive consumers into purchasing the product in the first place, or to pay more for Softsoap Antibacterial than they would have had they not been misled.[14] In fact, as Plaintiffs allege in the

---

*Indevus Pharms., Inc.*, No. CIV.A.04-10911-GAO, 2004 WL 1739405, at *12-16 (Mass. Super. Ct. July 26, 2004) (denying summary judgment because widespread coverage of problems with diet drugs was not sufficient as a matter of law to put plaintiffs on notice of their injuries).

[14] Cases Colgate cites actually support Plaintiffs' claim that the fraudulent concealment doctrine tolls the statute of limitations. *See Pelzer v. State*, 662 S.E.2d 618, 621 (S.C. 2008) ("equitable tolling applies principally if the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his or her rights. However, it has also been held that the equitable tolling doctrine does not require wrongful conduct on the part of the defendant, such as fraud or misrepresentation."); *Copeland v. Desert Inn Hotel*, 673 P.2d 490, 492 (Nev. 1983) (adopting the application of estoppel and equitable tolling to the statute of limitations); *Sagehorn v. Engle*, 46 Cal. Rptr. 3d 131, 133 (Cal. Ct. App. 2006) (noting that "equitable tolling suspends the running of the statute of

CAC, this case is about Colgate's material misrepresentations regarding the superior efficacy of Softsoap Antibacterial, a misrepresentation Colgate has yet to correct to this day, and a misrepresentation Colgate made throughout the proposed class period until Colgate finally withdrew its falsely advertised product from the market.

## C.   COLGATE'S MOTION TO DISMISS SHOULD BE DENIED BECAUSE PLAINTIFFS HAVE SUFFICIENTLY STATED A CLAIM UPON WHICH RELIEF CAN BE GRANTED PURSUANT TO FED. R. CIV. P. 12(b)(6)

Colgate's dismissal motion should be denied because Plaintiffs sufficiently state their claims in the CAC in a manner that satisfies all applicable pleading standards. Colgate devotes a material portion of its dismissal memorandum (more than six pages) attempting to distinguish, justify, or otherwise explain away the claims it made in its Softsoap Antibacterial advertising, marketing, labeling, and promotional materials, contending that it did not intend to imply that that Product was superior to other "ordinary soaps." *See, e.g.*, Def.'s Mem. at 24-30.  Further, Colgate conflates Plaintiffs' breach of implied warranty claims with their breach of express warranty claims. *See id.* at 24-25. Colgate also attempts to disclaim the factual statements it made directly on the packaging of Softsoap Antibacterial as non-actionable puffery to overcome Plaintiffs' well-pled consumer protection claims, and tries to frame the CAC as focusing on lack

---

limitations during the period a plaintiff exercises due care, but remains ignorant of the facts entitling him to sue because of the defendant's concealment of those facts."); *Freeman v. State*, 788 A.2d 867, 879 (N.J. Super. Ct. App. Div. 2002) (holding that "equitable tolling acknowledges the accrual of the action but tolls the statute of limitations because the plaintiff lacked vital information that was withheld by defendant.").

The following cases Colgate cites are inapposite to the circumstances regarding the fraudulent concealment doctrine at issue here. *See Santana-Castro v. Toledo-Davila*, 579 F.3d 109, 113–115 (1st Cir. 2009) (analyzing the tolling effect of extrajudicial letters in situations where the letter is identical to subsequently filed complaints); *Trenkler v. U.S.*, 268 F.3d 16, 24–25 (1st Cir. 2001) (discussing the rare use of equitable tolling available under 28 U.S.C. §2255 for cases brought under Antiterrorism and Effective Death Penalty Act); *Pro Tech Monitoring, Inc. v. State, Dept. of Corrections*, 72 So.3d 277, 280 (Fla. Dist. Ct. App. 2005) (applying equitable tolling regarding a late filing of a petition to an administrative agency setting); *IPF Recovery Co. v. Ill. Ins. Guar. Fund*, 826 N.E.2d 943 (Ill. App. Ct. 2005) (finding that plaintiff waived application of the doctrine of equitable tolling, and the Court declined to address the same).

of substantiation when, in fact, Plaintiffs' complaint is about Colgate's misrepresentations and omissions regarding the product, including its misrepresentations that the Product is "[c]linically proven to eliminate 99% of germs your family encounters" – which Colgate placed on Softsoap Antibacterial packaging to induce consumer purchases of the Product. *Id.* at 24, 28 n.19. Finally, Colgate makes the altogether specious argument that Plaintiffs' equitable unjust enrichment claim cannot alternatively coexist with the other legal claims stated in the CAC. *Id.* at 32-33. Despite these various arguments, when taken as a whole, the CAC more than adequately states a claim under the consumer protection statutes, for breach of express and implied warranties, and unjust enrichment.

      **1.**    **The Non-Privity Breach of Express Warranty Plaintiffs State a Claim for Breach of Express Warranty.**

In the CAC, the Non-Privity Breach of Express Warranty Plaintiffs sufficiently articulate facts which demonstrate plausible claims for Breach of Express Warranty. CAC ¶¶ 116-123. Under Uniform Commercial Code ("U.C.C.") section 2-313, express warranties by the seller are created by:

> (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
>
> (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
>
> (c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.[15]

---

[15] The relevant statutes from the Non-Privity Breach of Express Warranty States are substantively identical to this portion of the U.C.C. *See* Cal. Comm. Code § 2313; Fla. Stat. Ann. § 672.313; 810 Ill. Comp. Stat. 5/2-313; Nev. Rev. Stat. § 104.2313; N.J. Stat. Ann. § 12A:2-313; and S.C. Code Ann. § 36-2-313.

First, it is undisputed that Colgate made numerous express claims and statements in its advertising, marketing, and promotional materials regarding the extraordinary efficacy of Softsoap Antibacterial. For example, Colgate claims that Softsoap Antibacterial is "clinically proven to eliminate 99% of germs your family encounters;" that it "kills 99% of common germs;" and "offers antibacterial protection." CAC ¶¶ 51-59. In essence, Colgate promised consumers – including Plaintiffs and the other members of the proposed Classes – that Softsoap Antibacterial offered these extraordinary benefits and provided health benefits superior to that of washing with conventional soap and water in a consumer setting. *See, e.g.*, CAC ¶ 2.

Second, the CAC alleges that Colgate's "marketing and advertising constitute express warranties and became part of the basis of the bargain, and are part of the standardized contract between each of the Breach of Express Warranty Plaintiffs and each of the other members of the Non-Privity Breach of Express Warranty States Class, and Colgate." CAC ¶ 117.

Third, the Non-Privity Breach of Express Warranty Plaintiffs sufficiently allege that Softsoap Antibacterial does not conform to Colgate's express warranties. One example, out of the numerous similar allegations in the CAC, *see* CAC ¶¶ 36-42, 48, of Softsoap Antibacterial's nonconformity is the 2007 University of Michigan, Columbia University, and Tufts University study that "determined that soaps containing triclosan in liquid soap do not show a benefit above and beyond conventional soap in a consumer environment." CAC ¶ 42. Simply put, Colgate's warranty that Softsoap Antibacterial was "Clinically proven to eliminate 99% of the germs your family encounters" is expressly false. As Plaintiffs allege, Softsoap Antibacterial has not been "clinically proven" to do any such thing and it does not eliminate 99% of the "germs" – which would include viruses in addition to bacteria – that a family encounters. Colgate, however, has erroneously taken the position that Non-Privity Breach of Express Warranty Plaintiffs fail to

state a claim because the CAC does not "allege how any of the express statements are actually, or even plausibly, false." Def.'s Mem. at 28. Considering the numerous studies, statements by regulatory authorities, and other sources noted in the CAC, it appears that Colgate demands that this Court impose a new Rule 12(b)(6) pleading standard whereby a plaintiff, in her complaint, is required to **prospectively refute –** prior to any benefit of discovery – any evidence the defendant may have regarding the allegedly wrongful conduct.

In addition, Colgate argues that Non-Privity Breach of Express Warranty Plaintiffs have focused on Colgate's lack of substantiation. Def.'s Mem. at 28 n.19. This is demonstrably incorrect. Indeed, as the CAC actually alleges, Colgate has promoted Softsoap Antibacterial through its repeated use of claims such as "clinically proven to eliminate 99% of germs" and through its "Goodbye germs. Hello world" advertising and marketing campaign. CAC ¶¶ 51-63. However, the FDA and numerous other scientific journals have stated that there is no evidence that soap containing triclosan is superior to soap without the ingredient, CAC ¶¶ 7, 37, 38, 41, 42, further lending credence to the CAC's allegations.

Remarkably, in an effort to overcome the allegations in the CAC, Colgate continues to refer to any and all of its <u>express</u> statements regarding Softsoap Antibacterial as "<u>implied</u>" statements. Def.'s Mem. at 28. Colgate fails to support this claim, instead merely offering the opinion that Colgate's extensive advertising and marketing campaigns promoting Softsoap Antibacterial only refer to an alleged <u>implied</u> statement of being a superior hand soap product. Again, this is false, because Colgate induced members of the Non-Privity Breach of Express Warranty States Class to rely on express representations concerning the supposed benefits and efficacy of Softsoap Antibacterial. CAC ¶ 118.

Colgate also claims that the Non-Privity Breach of Express Warranty Plaintiffs claims "fail for lack of privity." Def.'s Mem. at 23. Colgate, however, cites **only** to Florida cases in support of its argument on this point. *See id.* However, neither Florida, nor any of the other Non-Privity Breach of Express Warranty States, requires privity for an express warranty claim.[16]

With regard to Florida law, Colgate relies on categorical statements in *Weiss v. Johansen*, 898 So. 2d 1009, 1012 (Fla. Dist. Ct. App. 2005) and other similar Florida district court cases in an attempt to argue that the express warranty claims should be dismissed. Def.'s Mem. at 23. However, Colgate ignores the reported case substantially identical to the case at bar – *Smith v. WM. Wrigley Jr. Co.*, 663 F. Supp. 2d 1336 (S.D. Fla. 2009) – which dealt with the privity requirement and product packaging. In *Wrigley*, purchasers of Eclipse gum were permitted to bring a claim of breach of express warranty, as the court found that the cashier at the local convenience store (with whom plaintiffs would have privity) would be not familiar with the scientific properties of Eclipse chewing gum. *Id.* at 1343. The court further held that it was significant that the express warranty the manufacturer allegedly breached is contained on the

---

[16] Apparently, Colgate concedes that the remaining Non-Privity Breach of Express Warranty States – California, Illinois, Nevada, New Jersey, and South Carolina – do not have privity requirements for breach of express warranty claims. To the extent that Colgate does claim that the remaining Non-Privity Breach of Express Warranty States do require privity for breach of express warranty claims – Colgate provides no support for that contention, and regardless each of the remaining states do not require privity. *See Quatela v. Stryker Corp.*, 820 F. Supp. 2d 1045, 1048 (N.D. Cal. 2010) ("California case law generally has abolished the requirement of privity for express warranty claims.") (citing various cases); *Canadian Pac. Ry. Co. v. Williams-Hayward Protective Coatings, Inc.*, 02 C 8800, 2005 WL 782698, at *15 (N.D. Ill. Apr. 6, 2005) (Illinois courts have concluded that brochures, documents, and advertisements may be the basis of express warranty [absent privity]. In other words, manufacturer documents given directly to the buyer prior to a purchase may give rise to an express warranty because the assertions become part of the basis of the bargain unless clear affirmative proof shows otherwise."); *Hiles Co. v. Johnston Pump Co. of Pasadena, Cal.*, 560 P.2d 154, 157 (Nev. 1977) ("lack of privity between the buyer and manufacturer does not preclude an action against the manufacturer for the recovery of economic losses caused by breach of warranties."); *Alloway v. Gen. Marine Indus., L.P.*, 695 A.2d 264, 275 (N.J. 1997) ("Under the U.C.C. as construed by this Court, moreover, the absence of privity no longer bars a buyer from reaching through the chain of distribution to the manufacturer."); S.C. Code Ann. § 36-2-318 ("A seller's warranty whether express or implied extends to any natural person who may be expected to use, consume or be affected by the goods and whose person or property is damaged by breach of the warranty.").

packaging of Eclipse Gum. *Id.* Accordingly, the court found the plaintiff stated a valid claim for breach of express warranty. *Id.*

Florida purchasers of Softsoap Antibacterial should be allowed to bring their claim of breach of express warranty under Florida law, as the retailers who sold the hand soap knew nothing about the qualities of Softsoap Antibacterial or triclosan. Colgate claimed Softsoap Antibacterial had specific superior qualities on its packaging and in its marketing and Plaintiffs' CAC contains exhaustive allegations regarding the falsity of these claims. *See, e.g.*, CAC ¶¶ 36-42, 48. Plaintiffs' breach of express warranty claims are thus sufficiently pleaded.

Colgate also attempts to characterize its express warranties as mere puffery, and not specific claims of superiority. Def.'s Mem. at 30. Puffery is an exaggeration or overstatement expressed in broad, vague, and commendatory language. *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 945 (3d Cir. 1993). Colgate's statements, by contrast, involve extremely precise terms. The long championed claim offered by the Defendant is that Softsoap Antibacterial is "clinically proven to eliminate 99% of germs." This claim is both specific and measurable by research—and seeks to promote the Softsoap Antibacterial as superior by reference of "clinical" testing. *See also Gillette Co. v. Wilkinson Sword, Inc.,* No. 89 Civ. 3686 (KMW), slip op. at 42-43 (S.D.N.Y. Jan. 9, 1991) (holding that a performance claim which can be comparatively rated is not puffery); *Toro Co. v. Textron, Inc.*, 499 F. Supp. 241, 249-53 n.23 (D. Del. 1980) (holding that claims concerning non-hyperbolic statement could not be characterized as puffery). Colgate's marketing and advertising campaigns are not puffery, rather, they are statements identifying Softsoap Antibacterial as being clinically proven to more effective than washing with regular soap and water, inducing Non-Privity Breach of Express Warranty Plaintiffs and other Class members to rely on such representations of these purported benefits.      Puffing    has    been

described as making generalized or exaggerated statements such that a reasonable consumer would not interpret the statement as a factual claim upon which he or she could rely. *See Cook, Perkiss & Liehe v. Northern Cal. Collection Serv., Inc*., 911 F.2d 242, 246 (9th Cir. 1990). The "common theme that seems to run through the cases consider puffery in a variety of contexts is that consumer reliance will be induced by specific rather than general assertions." *Id.* Misdescriptions of "'specific or absolute characteristics of a product'" are not puffery. *Id.* (quoting *Smith–Victor Corp. v. Sylvania Electric Products, Inc*., 242 F. Supp. 302, 308–309 (N.D.Ill.1965)); *see also In re All Terrain Vehicle Litig*., 771 F. Supp. 1057, 1060 (C.D. Cal. 1991).

Here, Colgate's specific contentions about Softsoap Antibacterial are that Softsoap Antibacterial is "clinically proven to eliminate 99% of germs your family encounters," "kills 99% of common germs," is "dermatologist tested," and "offers antibacterial protection." CAC ¶ 82. Plaintiffs and the other members of the Classes, heard, saw, and relied upon various claims, promotions, commercials, and advertisements for Softsoap in making the decision to purchase the Product. CAC ¶ 81. In reliance on the false, unfair, deceptive and/or unconscionable and unfair promotional, package and advertising claims and omissions, they purchased Softsoap Antibacterial. CAC. ¶ 82. Therefore, Colgate's claims are not generalized statements of puffery, but, rather, specific characteristics by which Plaintiffs and the other members of the Classes were induced to purchase the Products.[17]

Therefore, in accepting as true all of the factual allegations contained in the CAC, Plaintiffs clearly demonstrate more than a mere possibility that Colgate acted unlawfully; rather, Plaintiffs sufficiently pleaded their breach of express warranty claims. *See Nemet Chevrolet, Ltd.*

---

[17] For these same reasons, Colgate's representations are actionable under the relevant statutes in the Consumer Protection States. *See infra.* Part III.C.3.

*v. Consumeraffairs.com, Inc.,* 591 F.3d 250, 256 (4th Cir. 2009) ("Satisfying this 'context-specific' test does not require 'detailed factual allegations.' The Complaint must, however, plead sufficient facts to allow a court, drawing on 'judicial experience and common sense,' to infer 'more than the mere possibility of misconduct.'") (internal citations omitted). As alleged in the CAC, by its conduct, Colgate breached its express warranties to Plaintiffs and the other members of the Non-Privity Breach of Express Warranty States Class, and those claims should be sustained.

### 2.    The Non-Privity Breach of Implied Warranty Plaintiffs State a Claim for Breach of Implied Warranty.

An implied warranty that goods sold are of merchantable quality, under U.C.C. § 2-314, requires "that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." U.C.C. § 2-314. Goods, to be merchantable, must be "fit for the ordinary purposes for which such goods are used" and "conform to the promises or affirmations of fact made on the container or label, if any." *Id.*[18]

Plaintiffs, individually and on behalf of the other members of the Non-Privity Breach of Implied Warranty States Class, adequately plead their claims for breach of implied warranty. As class members, they purchased Softsoap Antibacterial based Colgate's representations that Softsoap Antibacterial was of merchantable quality and fit for the use for which it was intended. CAC ¶ 127. Moreover, Colgate's own labeling states the Product "eliminates 99% of germs." CAC ¶ 53. Furthermore, Colgate has advertised that the soap is "clinically proven to eliminate 99% of germs" and "offers antibacterial protection." CAC ¶ 55.

---

[18] The relevant statutes from the Non-Privity Breach of Implied Warranty States are substantively identical to this section of the U.C.C. *See* Cal. Comm. Code § 2314; Fla. Stat. Ann. § 672.314; Nev. Rev. Stat. § 104.2314; N.J. Stat. Ann. § 12A:2-314; and S.C. Code Ann. § 36-2-314.

Colgate erroneously argues that Plaintiffs allege conclusory statements without further discussion of the facts. Def.'s Mem. at 31. That is incorrect. Indeed, throughout the CAC, Plaintiffs identify and discuss Colgate's nationwide marketing and advertising campaigns for Softsoap Antibacterial conveying deceptive claims that have been extensive and comprehensive. CAC ¶ 53-60. This ongoing media campaign used television, the Internet, point of sale displays, and on Softsoap Antibacterial labels and packaging to repeat Colgate's statement that the soap is, among other things, "clinically proven to eliminate 99% of germs." CAC ¶¶ 54, 55, 56, 59.

Colgate represented, marketed, and sold Softsoap Antibacterial to consumers as a measurably superior liquid hand soap based on "clinically proven" results. These claims are a product of Colgate's deceptive national advertising campaign and cannot be substantiated, because they are not true. CAC ¶ 59. Furthermore, Colgate has not indicated how it has substantiated its claims that Softsoap Antibacterial is "clinically proven to eliminate 99% of germs." CAC ¶ 59. As opposed to superior liquid hand soap backed by proven science, Softsoap Antibacterial was sold without such remarkable features.

Further, Colgate devotes much of its memorandum discussing how Plaintiffs "[i]n every single paragraph . . . of the 'Nature of the Action,' and repeatedly throughout their Complaint, . . . make clear that they take issue with this *implied* claim of superior effectiveness compared to conventional soaps." Def.'s Mem. at 22 (citing CAC ¶¶ 2-12, 26, 51, 52, 53, 58, 62, 63, 64, 78). As Plaintiffs allege in the CAC, however, Colgate's marketing of Softsoap Antibacterial contained the implied warranty that Softsoap is superior to conventional soaps, a warranty that Plaintiffs adequately and clearly allege has been breached.[19] Plaintiffs have provided numerous

---

[19] Moreover, and despite Colgate's erroneous efforts to transform all of Plaintiffs' allegations into "implied warranty" claims, as set forth in the CAC and discussed above, Plaintiffs' have sufficiently pleaded all of the elements necessary to state a claim for breach of express warranty based on state codifications of UCC § 2-313 because Softsoap Antibacterial does not "eliminate 99% of the germs your

studies, statements by regulatory authorities, and other sources, which – at a minimum – plausibly assert that this implied superiority claim is false – thereby stating a claim for breach of implied warranty. *See* CAC ¶¶ 36-42, 48.

For all of these reasons, this Court should deny Colgate's motion to dismiss Plaintiffs' implied warranty claims because the Non-Privity Breach of Implied Warranty States Class "did not receive goods that were more effective than washing with regular soap and water or with other liquid soaps that do not contain triclosan as represented and thus, the goods were unfit for their intended use and not of merchantable quality as promoted, marketed, advertised, packaged, or sold and further failed to conform to promises or affirmations of fact made on the container or labels of Softsoap Antibacterial." CAC ¶ 128.

### 3. The Consumer Protection Plaintiffs State A Claim Under the Applicable Consumer Protection Statutes.

The Consumer Protection Plaintiffs allege sufficient facts to allow the Court to plausibly conclude that Colgate made representations and/or omissions that were "likely to mislead the consumer acting reasonably in the circumstances" because Softsoap Antibacterial was advertised, among other claims alleged in the CAC, to "eliminate[] 99% of germs" and to be more effective than other liquid hand soaps. *See, e.g.*, CAC ¶¶ 54, 55, 56, 59. Colgate broadly claims that, because all of its claims concerning Softsoap Antibacterial should be viewed as puffery, Plaintiffs' claims fail as a matter of law. Yet, Colgate fails to offer ***any*** analysis which would indicate how the facts alleged in the CAC are similar – in any way – to the facts of the

---

family encounters" as Colgate warranted, as well as all of the elements necessary to state a claim for breach of the implied warranty of merchantability based on state codifications of UCC § 2-314 because Softsoap Antibacterial is not merchantable as a more effective hand soap as Colgate implied and further because Softsoap Antibacterial does not conform to the "eliminate 99% of the germs your family encounters" statement on the Product's package.

cases it cites. Further, cases interpreting the relevant statutes from the Consumer Protection States demonstrate that Colgate's position is untenable.

For example, in *Tylka v. Gerber Products Co.*, the court held that Gerber's statements, including that its baby food was the "most nutritious," were non-actionable puffery because "it cannot be said that the term [nutritious] reasonably misleads consumers" and was "meaningless sales patter." *Tylka v. Gerber Products Co.*, Case No. 96 C 1647, 1999 WL 495126, 1999 U.S. Dist. LEXIS 10718, at *27-28 (N.D. Ill. July 1, 1999), *vacated on other grounds*, 211 F.3d 445 (7th Cir. 2000). In *Tylka*, the court recognized that the puffing doctrine applies to claims which are either vague or highly subjective. *Id.* Here, as fully explained above in Part III.C.1, Colgate's express and implied representations are specific, precise, measurable, and absolute – far beyond generalized statements that could be considered mere puffery.

Further, the CAC properly alleges a material misrepresentation, as required by *Costa v. Kerzner Intern. Resorts, Inc.*, 2011 WL 2519244 at *2 (S.D. Fla. June 23, 2011). The elements of Florida's Deceptive and Unfair Trade Practices Act "FDUTPA" are: (1) a deceptive or unfair practice; (2) causation; and (3) damages. *Id*. The court, in *Costa*, held that a statement regarding mandatory housekeeping gratuity and a utility fee was not a material misrepresentation, and therefore not a deceptive or unfair practice. *Id*. Furthermore, the court concluded that because the defendant's statement related to fees for housekeeping gratuity and utilities, Plaintiffs could not reasonably expect all of the fees to be for a gratuity. *Costa* does not provide any support for Colgate's contention that its Product claims are not material.

Colgate cites to a factually-distinct Eleventh Circuit case, *Zlotnick v. Premier Sales Group, Inc.*, 480 F.3d 1281 (11th Cir. 2007), which held that a reservation agreement for a condominium was merely an "agreement to agree" and not a binding purchase contract. *Id.* at

1286. *Zlotnick* is a "bait and switch" fact scenario where a condominium was made available to a buyer, but was ultimately taken off the market. Colgate also cites to *Feheley v. LAI Games Sales, Inc.*, No. 08-23060-CIV, 2009 WL 2474061 (S.D. Fla. Aug. 11, 2009). In *Feheley*, a case involving an arcade game, the plaintiff alleged that the defendant "deceive[d] consumers into believing Stacker is a game of skill, rather than a game of chance, because the game awards prizes in rare, allegedly pre-determined intervals." *Id.* at *4. However, believing an arcade game is a game of skill rather than chance is starkly different (in terms of reasonableness) from Plaintiffs' mistaken belief – induced by Colgate's clear and unequivocal statement on every bottle of Softsoap Antibacterial that it "eliminates 99% of germs" – that Softsoap Antibacterial actually eliminates 99% of germs or is more efficacious than washing with conventional soap and water.

To state a claim under the New Jersey Consumer Fraud Act ("NJCFA"), a plaintiff must allege each of three elements: (1) unlawful conduct by the defendants; (2) an ascertainable loss on the part of the plaintiff; and (3) a causal relationship between the defendants' unlawful conduct and the plaintiff's ascertainable loss. *New Jersey Citizen Action v. Schering-Plough Corp.*, 842 A.2d 174, 176 (N.J. App. Div. 2003). Courts should construe the complaint in the light most favorable to plaintiffs, and be mindful of the "hesitation" urged by New Jersey courts when deciding motions to dismiss NJCFA claims. *In re Bayer Corp. Combination Aspirin Products Mktg. & Sales Practices Litig.*, 701 F. Supp. 2d 356, 383 (E.D.N.Y. 2010). Here, Plaintiffs sufficiently allege that Colgate's deceptive advertising was the very reason they purchased Softsoap Antibacterial and are, accordingly, seeking a full or partial refund as allowed under the NJCFA. CAC ¶ 112.

Plaintiffs state consumer protection claims under the California statutes. Claims under the California consumer protection statutes are governed by the "reasonable consumer test," which "show that 'members of the public are likely to be deceived.'" *Williams v. Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (quoting *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995)). The question for the court on a motion to dismiss is not whether the business practice was deceptive, but merely whether it is possible that the plaintiff can prove that a reasonable consumer was likely to be deceived. *Id.* at 939. Colgate compares Plaintiffs' claims to the claims made in *Hill v. Roll Intern. Corp.*, 195 Cal. App. 4th 1295 (Cal Ct. App. 2011), where the plaintiffs claimed that a green drop on the label of Fiji water, misrepresented that "Fiji bottled water was environmentally superior to other waters and endorsed by an environmental organization." *Id.* at 111.[20] In *Hill*, however, the plaintiffs based their claims entirely upon their interpretation of a single symbol. In contrast, here, however – as clearly and repeatedly alleged in the CAC – Plaintiffs take issue with the explicit, boldly-displayed, product claims on every bottle of Softsoap Antibacterial, and the implied claims of superiority based on Colgate's uniform marketing scheme. Plaintiffs further allege that Colgate's marketing claims were deceptive, that they, in fact, were deceived by the claims, that other members of the Classes were likely to be deceived, CAC ¶¶ 2, 110, 108, and, as discussed above, Colgate's claims go far beyond mere puffery. For all of these reasons, Plaintiffs state claims under the California consumer protection statutes.

---

[20] Colgate also cites *Janda v. T-Mobile USA, Inc.*, 378 F. App'x 705 (9th Cir. 2010), which held that the plaintiffs had not "demonstrated above a speculative level" that T-Mobile's method of charging additional fees was deceptive because the agreement "explicitly disclosed the [fees], and . . . the FCC explicitly permits providers to pass these contributions [in the form of fees] along to customers." *Id.* at 707. Again, Colgate offers no analysis as to how this case is factually related to this case, and, nevertheless, Plaintiffs allege that Colgate's express and implied superiority marketing claims are not true. CAC ¶ 59.

Likewise, Plaintiffs' claims satisfy the pleading requirements to state a claim under the Nevada statute. To establish a violation of the Nevada DPTA, a plaintiff must demonstrate that (1) an act of consumer fraud by the defendant (2) caused (3) damages to the plaintiff. *Sobel v. Hertz Corp.*, 698 F. Supp. 2d 1218, 1230 (D. Nev. 2010) (citing *Picus v. Wal-Mart Stores, Inc.,* 256 F.R.D. 651, 657-58 (D. Nev. 2009)). In *Picus*, the court held that "[b]ecause Defendants here allegedly made an affirmative misrepresentation and Plaintiff could prove she sustained damages as a result of Defendants' alleged misrepresentation only by demonstrating she relied upon a "Made in the USA" label, the Court concludes causation includes reliance in this case. 256 F.R.D. at 658. Here, like the plaintiff in *Picus*, Plaintiffs have alleged numerous affirmative misrepresentations and that they have suffered damages as a result. CAC ¶ 113. Plaintiffs also allege they relied on Colgate's misrepresentations when making their Softsoap Antibacterial purchases, CAC ¶ 28, 111.  Plaintiffs, therefore, state a claim under the Nevada statute.

Colgate marketed and sold Softsoap Antibacterial as:  "clinically proven to eliminate 99% of germs your family encounters;" that it "kills 99% of common germs;" and "offers antibacterial protection." CAC ¶¶ 51-59. Unlike the plaintiffs in *Costa*, *Feheley*, *Tylka*, and *Hill* – and like the plaintiffs in *Picus* – Plaintiffs have reasonably relied on Colgate's deceptive marketing of the Softsoap Antibacterial products that they purchased, with the expectation that the Product is in fact superior to competing hand soaps, and contained the specific, measurable, and extraordinary germ-killing efficacy its packaging touted. *See, e.g.*, CAC ¶ 28. Colgate made these deceptive statements through its product packaging and its marketing campaigns, which induced Plaintiffs to purchase the Product, CAC ¶ 5.  Plaintiffs, therefore, state claims under the applicable Consumer Protection States' statutes.

Moreover, Plaintiffs seek to recover ascertainable losses, or "out of pocket loss," a theory that other courts have accepted in state consumer protection actions to put defrauded consumers in the position they would have been had they received that which they bargained for. CAC ¶ 85; s*ee, e.g.*, *Bayer Aspirin*, 701 F. Supp. 2d at 383 (discussing *Smith, Allen, Mendenhall, Emons & Selby, Inc. v. Thomson Corp.*, 862 N.E.2d 1006 (Ill. App. 2006) and *Cayuga Harvester, Inc. v. Allis-Chalmers Corp.*, 95 A.D.2d 5, 465 N.Y.S. 2d 606 (4th Dept. 1983). Thus, the Consumer Protection Plaintiffs sufficiently allege their claims under each of the applicable consumer protection statutes and related state law, and Colgate's vague, unsupported, claims to the contrary should be rejected.

### 4.    The Unjust Enrichment Plaintiffs Sufficiently Plead Their Unjust Enrichment Claims.

#### a.   Plaintiffs' Breach of Warranty Claims Do Not Void Their Unjust Enrichment Claims.

Colgate makes the specious argument that Plaintiffs' equitable unjust enrichment claim cannot coexist in a pleading that also contains a legal claim for breach of warranty. The Federal Rules plainly allow a party to plead "as many separate claims or defenses as it has, regardless of consistency." Fed R. Civ. P. 8(d)(3). Furthermore, "it is inappropriate to dismiss equitable remedies at the pleading stage" on the basis that "plaintiffs have an adequate remedy at law." *In re: Celexa & Lexapro Mktg. & Sales Practices Litig.*, 751 F. Supp. 2d 277, 297 (D. Mass. 2010) ("Under the Federal Rules of Civil Procedure, plaintiffs have the prerogative to plead alternative and even conflicting theories of recovery. For those reasons, Forest's motion to dismiss the unjust enrichment claims will be denied.") (internal citations omitted); *see also Lucey v. Prudential Ins. Co. of Am.*, 783 F. Supp. 2d 207, 214 (D. Mass. 2011) ("Plaintiffs have clearly alleged this count as an alternative legal theory should their breach of contract count ultimately

fail. Accordingly, the court will, for now, deny Defendant's motion to dismiss [the unjust enrichment] Count 4."); *In re Light Cigarettes Mktg. Sales Practices Litig.*, 751 F. Supp. 2d 183, 191 - 193 (D. Me. 2010) ("Although an adequate remedy at law might prevent plaintiffs from eventually prevailing on equitable claims, nothing prevents the plaintiffs from pleading both types of causes of action. . . . At this stage, the Plaintiffs may assert multiple and duplicative legal and  [**31] equitable claims for relief.") (internal citations omitted). In addition, the factual premises of Plaintiffs' breach of warranty claims and unjust enrichment claim are sufficiently different: the former turn entirely on the statements on Colgate's packaging, the latter on the unjustness of Colgate retaining benefits based on misrepresentations in their marketing campaign, including labeling, as a whole.  All of the cases cited by Colgate in support of its argument for dismissal of Plaintiffs' unjust enrichment claim on an "adequate remedy at law basis" are procedurally or factually distinct.[21]

### b.  Plaintiffs Will Voluntarily Dismiss their New Jersey Unjust Enrichment Claim.

Plaintiffs will voluntarily dismiss their New Jersey unjust enrichment claim from the Unjust Enrichment States Class.

---

[21] *See Prignano v. Prignano*, 934 N.E.2d 89, 108 (Ill. App. Ct. 2d Dist. 2010) (dismissing unjust enrichment claim <u>after</u> trial court entered judgment in favor of breach of contract claim); *Shaw v. Hyatt Int'l Corp.*, 461 F.3d 899, 902 (7th Cir. Ill. 2006) (factually distinct because unjust enrichment claim based exclusively on express contract, rather than warranty based on labeling, between hotel guest and hotel); *Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170, 1174 (M.D. Fla. 2005) (factually distinct  as based on missapropriation of trade secrets rather than misrepresentations on consumer product); *Martinez v. Weyerhaeuser Mortg. Co.*, 959 F. Supp. 1511, 1519 (S.D. Fla. 1996) (TILA claim, rather than breach of warranty claim, precluded unjust enrichment remedy); *Guinn v. Hoskins Chevrolet*, 836 N.E.2d 681, 704 (Ill. App. Ct. 1st Dist. 2005) (retail installment contract governed relationship between parties and remedy available under TILA; distinct from affirmations on consumer product packaging); *Bosland v. Warnock Dodge, Inc.*, 933 A.2d 942, 944 (App.Div. 2007) ("Retail Buyer's Order that itemized the fees and costs" in plaintiffs purchase of automobile, rather than affirmations on product packaging, fully governed relationship); *see also Chatham v. Sears, Roebuck & Co. (In re Sears, Roebuck & Co.)*, MDL-1703, Case No. 05 C 4742, No. 05 C 2623, 2006 U.S. Dist. LEXIS 92169 (N.D. Ill. Dec. 18, 2006) (noting *Shaw* inapplicable where unjust enrichment claim based on misrepresentation in consumer product labeling rather than express contract).

**5.      Plaintiffs' Injunctive Claim May be Pleaded in the Alternative and
Should Not be Dismissed.**

Finally, Colgate seeks dismissal of Count V of the CAC, in which Plaintiffs request

injunctive relief, based on Colgate's earlier arguments that Plaintiffs fail to state any cause of

action and that equitable remedies are improper where legal remedies are available.  *See* Def.'s

Mem. at 34-35. However, as demonstrated throughout this memorandum, Plaintiffs' CAC <u>does</u>

state valid causes of action that withstand this motion to dismiss, and, as shown immediately

above, Plaintiffs can seek equitable and legal remedies concurrently. Accordingly, the Injunctive

Relief Count V should not be dismissed.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that this Court deny

Colgate's motion to dismiss.

Dated: September 21, 2012

Respectfully submitted,

<u>/s/ Lucy J. Karl</u>
Lucy J. Karl
NH Bar No. 5547
**SHAHEEN & GORDON, P.A.**
107 Storrs Street
Concord, New Hampshire 03302
Telephone: (603) 225-7262
Facsimile: (603) 225-5112
lkarl@shaheengordon.com

***Plaintiffs' Interim Lead Counsel***

*Plaintiffs' Executive Committee*

Richard J. Arsenault
Douglas E. Rushton
**NEBLETT, BEARD &
ARSENAULT**
2220 Bonaventure Court
P.O. Box 1190
Alexandria, Louisiana 71309
Telephone: (800) 256-1050
Facsimile: (318)561-2591
rarsenault@nbalawfirm.com

Adam J. Levitt
Edmund S. Aronowitz
**WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLC**
55 West Monroe Street, Suite 1111
Chicago, Illinois 60603
Telephone: (312) 984-0000
Facsimile: (312) 984-0001
levitt@whafh.com

John R. Climaco
John A. Peca
Timothy W. Clary
**CLIMACO, WILCOX, PECA,
TARANTINO & GAROFOLI
CO., L.P.A.**
55 Public Square, Suite 1950
Cleveland, Ohio 44113
Telephone: (216) 621-8484
Facsimile: (216) 771-1632
jrclim@climacolaw.com

Charles E. Schaffer
Brian F. Fox
**LEVIN, FISHBEIN, SEDRAN &
BERMAN**
510 Walnut Street, Suite 500
Philadelphia, Pennsylvania 19106
Telephone: (215) 592-1500
Facsimile: (215) 592-4663
cschaffer@lfsblaw.com

Eric D. Holland
R. Seth Crompton
**HOLLAND GROVES SCHNELLER
& STOLZE, LLC**
300 North Tucker Boulevard, Ste. 801
St. Louis, Missouri 63101
Telephone: (314) 241-8111
Facsimile: (314) 241-5554
eholland@allfela.com

*Plaintiffs' Steering Committee*

Matthew B. Butler
**NICHOLAS & BUTLER, LLP**
225 Broadway, 19th Floor
San Diego, California 92101
Telephone: (619) 325-0492
Facsimile: (619) 325-0496
mbutler@nblaw.org

David C. Rash
**ALTERS LAW FIRM, P.A.**
4141 Northeast 2nd Avenue
Miami, Florida 33137
Telephone: (305) 571-8550
Facsimile: (305) 571-8558
david@alterslaw.com

Laurence D. King
**KAPLAN FOX &**
**KILSHEIMER LLP**
350 Sansome Street, Suite 400
San Francisco, California 94104
Telephone: (415) 772-4700
Facsimile: (415) 329-4707
lking@kaplanfox.com

James C. Shah
**SHEPHERD, FINKELMAN,**
**MILLER & SHAH, LLC**
35 East State Street
Media, Pennsylvania 19063
Telephone: (610) 891-9880
Facsimile: (610) 891-9883
jshah@sfmslaw.com

Jordan L. Chaikin
**PARKER & WAICHMAN LLP**
3301 Bonita Beach Road, Suite 101
Bonita Springs, Florida 34134
Telephone: (239) 390-1000
Facsimile: (239) 390-0055
jchaikin@yourlawyer.com

## CERTIFICATE OF SERVICE

The undersigned certifies that, on September 21, 2012, she caused this document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of filing to counsel of record for each party.

Dated: September 21, 2012

By:    /s/ Lucy J. Karl
Lucy J. Karl
NH Bar #5547