UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| IN RE: COLGATE-PALMOLIVE ) | |
| SOFTSOAP ANTIBACTERIAL HAND )| MDL Docket No. 12-md-2320-PB |
| SOAP MARKETING AND SALES ) | |
| PRACTICES LITIGATION ) | All Actions |
| (MDL NO. 2320) ) | |
| _____) | |

**MEMORANDUM IN SUPPORT OF JOINT MOTION
FOR CERTIFICATION OF SETTLEMENT CLASS, PRELIMINARY APPROVAL OF
PROPOSED CLASS ACTION SETTLEMENT, APPROVAL OF NOTICE PLAN AND
NOTICE ADMINISTRATOR AND APPOINTMENT OF LEAD COUNSEL**

## I.   INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 23 and Local Rule 23.1, plaintiffs Tracy

Nieblas, Shari Elstein, Kristina Pearson, Adam Emery and Jeff Dyke, in their individual

capacities and as class representatives ("Plaintiffs"), and Defendant Colgate-Palmolive Company

("Defendant") (collectively, the "Parties"), by and through their respective counsel, submit this

Memorandum in support of their Joint Motion for Certification of Settlement Class, Preliminary

Approval of Proposed Class Action Settlement, Approval of Notice Plan and Notice

Administrator and Appointment of Lead Counsel (the "Joint Motion").  The Parties respectfully

request that the Court enter an Order (1) conditionally certifying a Settlement Class, pursuant to

Fed. R. Civ. P. 23(b)(2), as defined in the proposed Settlement Agreement and Release (the

proposed "Settlement Agreement and Release" is attached to the Joint Motion as Exhibit 1) for

settlement purposes only (the "Class"); (2) granting preliminary approval of the proposed

settlement of this class action on the terms set forth in the Settlement Agreement; (3) approving

the proposed Notice Plan and directing that the Class be provided with notice of the pendency of

1

this action and the settlement in the manner proposed by the parties in the Notice Plan; (4) approving the appointment of the Notice Administrator; (5) approving the designated Class Representatives, Lead Class Counsel and Case Leadership as set forth in Pretrial Order No. 1(doc. 20) and the Settlement Agreement; (6) scheduling a hearing at which the Court will consider final approval of the Settlement, entry of the proposed final judgment and Plaintiffs' Counsels' application for an award of attorneys' fees, costs and expenses.

"[T]he law generally favors and encourages the settlement of class actions." *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981).  In deciding whether to preliminarily approve a settlement agreement, the Court must determine whether it has been negotiated at arm's-length and if it is within the range of what is fair, reasonable and adequate.  *See Manual for Complex Litigation – Fourth (2004)*, §§21.62-63.  "If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness … and appears to fall within the range of possible approval, the court should direct that notice under Rule 23(e) be given to the class members of a formal fairness hearing."  *Id.* § 30.41.  *See also Scott v. First American Title Ins. Co.*, 2008 WL 4820498 *3 (D. N.H. Nov. 5, 2008).

For the reasons that follow, the Parties respectfully request that the Court grant their Joint Motion and: (1) certify a Settlement Class; (2) preliminarily approve the Settlement Agreement; and (3) approve the Notice Plan and Notice and appoint a Notice Administrator.

## II.     THE ALLEGATIONS AND PROCEDURAL POSTURE OF THE LITIGATION.

### a.        The Allegations

Plaintiffs allege that since the product was first marketed on January 1, 1992, Defendant's uniform, extensive and comprehensive nationwide marketing campaign intentionally misrepresented to consumers that washing with Softsoap Antibacterial was more

effective at killing or eliminating germs than washing with other soaps that do not contain

triclosan.  Specifically, Plaintiffs allege Defendant deceptively and unfairly represented to

consumers that using Softsoap Antibacterial provides special health benefits, including but not

limited to, statements that the Product is "dermatologist tested," "clinically proven to eliminate

99% of germs your family encounters," "offers antibacterial protection," "kills 99% of common

germs," "Goodby Germs-Hello World," and is "America's most trusted handsoap."

Consequently, Plaintiffs allege that they and other members of Settlement Class were induced

into purchasing a product that they believed provided them with heightened antibacterial

protection over regular soap and water or other liquid hand soaps that do not contain triclosan.

Plaintiffs allege that, as a result of Defendant's extensive and substantially uniform marketing,

every consumer who purchased the Product was exposed to substantially the same allegedly false

and misleading statements.  Accordingly, Plaintiffs brought this Action on behalf of themselves

and other similarly-situated consumers in their respective states of California, Florida, Illinois,

and Nevada seeking to halt Defendant's alleged dissemination of false and misleading

advertising, and to correct the alleged false and misleading perception that Defendant has created

in the minds of consumers and obtain redress for the Settlement Class.

  b.    **Procedural Background**

Between February 4, 2011 and October 28, 2011, putative class actions were filed in

California, Florida, Illinois, and Nevada[1] seeking redress  for Defendant's deceptive and

misleading marketing of its Softsoap Antibacterial products ("Softsoap Antibacterial" or the

"Product") that contain the active ingredient triclosan.  Triclosan is a chlorophenol that, in

certain circumstances, can function as an antibacterial and antifungal agent.  By Order dated

_____
[1] Putative class actions were also filed in New Jersey and South Carolina and were transferred to this Court by the JPML.  These claims were voluntarily dismissed.

3

March 7, 2012, the Judicial Panel on Multidistrict Litigation ("JPML") transferred these cases to the United States District Court for the District of New Hampshire, *In re Colgate-Palmolive Softsoap Antibacterial Hand Soap Marketing and Sales Practices Litigation*, Case. No. 12-md-2320 (the "MDL").

1.      On June 26, 2012, Plaintiffs in the above referenced actions filed a Consolidated Amended Complaint.  On August 8, 2012, Defendant filed a motion to dismiss the Consolidated Amended Complaint.  The motion to dismiss was argued on February 22, 2013.  On March 18, 2013, the Court denied the motion to dismiss.  On June 20, 2013, Plaintiffs filed a Second Consolidated Amended Complaint.  Defendant filed its Answer to the Second Amended Consolidated Complaint on July 1, 2013.

The parties engaged in substantial discovery, including interrogatories, requests to admit, document production and depositions. Defendant produced approximately 93,780 pages documents for review.  Defendant deposed the five Class Representatives and Plaintiffs' counsel deposed various employees of Defendant.  Plaintiffs' counsel also consulted with experts in the fields of science, marketing, and economics.

## III.    THE MEDIATION AND PROPOSED SETTLEMENT

Since July 2013, the Parties have actively engaged in settlement discussions.  Following preliminary discussions and a meeting among counsel, the Parties sought a stay in the case and engaged in mediation with a retired federal judge, The Honorable James M. Rosenbaum, in November 2013.  The mediation was unsuccessful, and an amended scheduling order was entered in January 2014.  However, in the Spring of 2014, counsel for the Parties restarted settlement discussions.  During this time period the parties spoke, met and corresponded.  As a result of those discussions, negotiations and meetings, and the efforts of Class Counsel in

prosecuting the Action, the Defendant and the Plaintiffs, in their individual capacities and as Class Representatives, Class Counsel, and counsel for the Defendant, have agreed to settle this Action pursuant to the terms of the Settlement Agreement.  On April 28, 2015, Plaintiffs filed a Third Consolidated Amended Complaint to conform the complaint with the terms of the settlement. On May 19, 2015, Plaintiffs filed a Fourth Consolidated Amended Complaint to clarify certain allegations unrelated to the settlement.

Counsel for the Parties negotiated the Settlement Agreement at arm's-length.  In so doing, they considered such factors as: (1) the substantial benefits to the Settlement Class under the terms of the Settlement Agreement; (2) the attendant costs, risks and uncertainty of litigation; (3) the distraction and diversion of personnel and resources as a result of continuing this Action; and (4) the desirability of promptly consummating the Settlement Agreement.

The Settlement Class consists of all persons who purchased the Product in the United States from January 1, 1992 up to and including the Notice Date.  The primary benefits derived from the Settlement Agreement are injunctive in nature.  Specifically, Defendant has agreed to refrain from making three of the five statements challenged as misleading, and agreed to use the ingredient triclosan in its Product only in a manner consistent with final FDA regulations. Defendant ceased manufacturing and marketing the Product in 2011.

The injunctive relief provisions of the Settlement Agreement enjoin Defendant as follows:

- Defendant has no present intention to reintroduce triclosan as an ingredient in its Product; however, to the extent Defendant's intentions change in the future, Defendant will use triclosan only in a manner consistent with final FDA regulations.

- Defendant shall not use a claim on Labeling and Marketing of the Product that is based on "99%" efficacy without an accompanying disclosure statement that generally describes the testing methods at a level consistent with those appearing on Labeling and Marketing of the Product as of the date of this Settlement Agreement.

- Defendant shall not use the statement "Goodbye Germs – Hello World" on Labeling and Marketing of the Product.

- The terms and requirements of the Injunctive Relief shall expire on the earliest of the following dates: five years following the Effective Date; or the date upon which there are changes to any applicable statute, regulation or other law that Defendant reasonably believes would require a modification to the Labeling and Marketing of the Product required by the Injunctive Relief provisions in order to comply with the applicable statute, regulation or law.

- Plaintiffs, on behalf of themselves and all Settlement Class Members, and Class Counsel agree that this Settlement Agreement does not preclude Defendant from making further changes to the Labeling and Marketing of the Product as Defendant sees fit.

Members of the Settlement Class release their injunctive, declaratory and equitable claims that relate to the distribution, sale, purchase, labeling, packaging, marketing and/or advertising of the Product.

In consideration of the Settlement, Defendant agrees to pay a total of Two Million Dollars ($2,000,000.00) to satisfy the costs of the Notice Plan and any award of attorneys' fees, costs and expenses, and any incentive awards payable to Plaintiffs. Monies remaining after payment of these costs, fees and expenses shall be paid by Defendant to Children's Health Fund,

6

a 501(c)(3) non-profit organization founded in 1987 to provide health care to the nation's most medically underserved children and adolescents by developing a national network of health care programs; reducing the impact of public health crises on children; and promoting the health and well-being of all children.  *See 2013 Form 990 at*

*www.childrenshealthfund.org/content/financials.*

Given the inherent expenses and risks associated with continuing this litigation, including the possibility that class certification could be denied and the difficulty of proving monetary damages, Plaintiffs believe that the aforementioned Injunctive Relief represents a fair, adequate and reasonable settlement for the Settlement Class because it represents the injunctive relief sought in this Action.

## IV.   THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS.

This Court must consider whether a class can be preliminarily certified under Rules 23(a) and (b).  *See Amchem*, 521 U.S. at 619-21; *Ortiz v. Fibrebaord Corp.*, 527 U.S. 815, 858 (1999). The parties here, in negotiations between them, negotiated a settlement class that can be certified under Rule 23, in light of the applicable standards.

### a.   Plaintiffs have satisfied the requirements of Rule 23(a).

#### i.   Numerosity is satisfied.

A class action may be maintained only if "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1); *Scott v. First Am. Title Ins. Co.*, No. 06-cv-286, 2008 WL 1914296, at *2 (D.N.H. Apr. 28, 2008).  "The exact numbers of class members need not be established, 'particularly where … only declaratory and injunctive relief is sought." *Kenneth R. ex rel. Tri-County CAP, Inc. v. Hassan*, 293 F.R.D. 254, (D.N.H. 2013) (citing *Rolland v. Cellucci*, Civ. No. 98-30208, 1999 WL 34815562, at *3 (D.Mass. Feb. 2, 1999)).

Rather, the court may draw a reasonable inference as to the class size based on the facts presented to it. *Id.*

Because of the uniformity of Defendant's marketing of the Product, every purchaser of the Product was exposed to substantially the same material misrepresentations since the Product was first marketed on January 1, 1992. Many millions of units were sold. The inability to efficiently identify and serve all Settlement Class Members, the geographic dispersion of Settlement Class Members across the country and the cost of individually litigating the allegations and claims in the Action all weigh in favor of the Court finding that numerosity is satisfied.

ii.      **Commonality is satisfied.**

Plaintiffs and the Settlement Class must share common questions of law or fact. Fed. R. Civ. P. 23(a)(2). "All questions of fact and law need not be common to satisfy the rule." *In re Neurontin Mkg. & Sales Practices Litig.*, 244 F.R.D. 89, 105 (D.Mass 2007). Commonality can be satisfied by a single common legal or factual issue, making it an easily satisfied prerequisite. *In re Sonus Networks, Inc., Sec. Litig.*, Civ. No. 04-10294, 2007 WL 2826622, at *4 (D.Mass. Sept. 25, 2007).

Here, Plaintiffs and the Settlement Class have a significant common issue. Plaintiffs and members of the Settlement Class were consumers of Softsoap Antibacterial. Plaintiffs and members of the Settlement Class were all subject to Defendant's extensive and substantially uniform marketing of Softsoap Antibacterial, which resulted in the common issues of fact and law as set forth in the Action. Accordingly, the Settlement Class satisfies the commonality requirement.

### iii.      Typicality is satisfied.

"Rule 23(a)(3) requires proof that plaintiffs' claims are typical of the class members'

claims." *Young*, 693 F.3d at 542.  Typicality is present when the class representatives' claims

"arise from the same event or practice or course of conduct that gives rise to the claims of other

class members, and ... are based on the same legal theory." *García– Rubiera v. Calderon,* 570

F.3d 443, 460 (1st Cir. 2009) (quoting *In re Am. Med. Sys., Inc.,* 75 F.3d 1069, 1082 (6th Cir.

1996)) (alterations in original).  The typicality inquiry allows the court to "'align the interests of

the class and the class representatives so that the latter will work to benefit the entire class

through the pursuit of their own goals.'" *In re Bos. Scientific Corp. Sec. Litig.,* 604 F. Supp. 2d

275, 282 (D. Mass. 2009) (quoting *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent*

*Actions,* 148 F.3d 283, 311 (3d Cir. 1998)).

Here, Plaintiffs' claims are typical of the Settlement Class Member's claims because they

arise from Defendant's same course of deceptive marketing, advertising and sales of Softsoap

Antibacterial.  Accordingly, Plaintiffs and the Settlement Class Members' claims are aligned

because they arise from the same alleged practices and are based on the same legal theories.

Thus, the typicality requirement is satisfied.

### iv.      Fairness and adequacy is satisfied.

Plaintiffs must "fairly and adequately protect the interests of the class."  Fed. R. Civ. P.

23(a)(4).  This adequacy inquiry "serves to uncover conflicts of interest between named parties

and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625

(1997).  The First Circuit employs a two-part test in analyzing adequacy: (1) the class

representatives' interests must not conflict with the interests of the class; and (2) class counsel is

experienced, qualified and able to vigorously conduct the proposed litigation. *Andrews v.*

*Bechtel Power Corp.,* 780 F.2d 124, 130 (1st Cir. 1985); *In re Bos. Scientific Corp. Sec. Litig.,* 604 F. Supp. 2d at 282.

Here, the Plaintiffs and Settlement Class share common interests because the legal and remedial theories raised by the Plaintiffs are shared with the Class Members.  Plaintiffs, like the Settlement Class Members, relied upon and were deceived by Defendants' false and misleading marketing when they purchased the Product.  Moreover, no conflicts exist between the Plaintiffs and Settlement Class.  In fact, while pursuing their own claims related to the marketing of Softsoap Antibacterial, Plaintiffs have been advocating for the interests of the Settlement Class and the Injunctive Relief will benefit all Settlement Class Members alike.

Additionally, Class Counsel are experienced with class actions and have vigorously advocated for the interests of the Settlement Class throughout this Action and during the negotiation of the Settlement Agreement.  Class Counsel have substantial experience certifying, litigating, trying and settling class actions of this kind.  Class Counsel have devoted significant time and resources reviewing documents and conducting depositions.  The settlement discussions, mediation and subsequent negotiations were intense and occurred over several years.  Only after Class Counsel were satisfied that the best recovery had been negotiated for the Settlement Class did the Parties negotiate the payment of attorneys' fees and costs.

Therefore, since there is no conflict among the Plaintiffs and Settlement Class, and because Class Counsel are qualified, experienced and able to pursue this Action, fairness and adequacy have been satisfied.

**b.      Plaintiffs have satisfied Rule 23(b).**

Rule 23(b) describes three types of class actions.  Fed. R. Civ. P. 23(b)(1)-(3).  "In addition to fulfilling the four prerequisites of Rule 23(a), the proposed class must also meet at

least one of the three requirements listed in Rule 23(b)." *In re Whirlpool Corp. Front- Loading Washer Prods. Liab. Litig*., 722 F.3d at 850 (citing *Dukes*, 131 S. Ct. at 2550).

Rule 23(b)(2) allows for the certification of class actions that seek declaratory or injunctive relief where "the party opposing the class has acted or refused to act on grounds generally applicable to the class." Fed. R. Civ. P. 23(b)(2). Unlike Rule 23(b)(3), this prong of Rule 23(b) does not require that common issues of law and fact "predominate," but only that class members "complain of a pattern or practice that is generally applicable to the class as a whole." *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998). Moreover, "[e]ven if some class members have not been injured by the challenged practice, a class may nevertheless be appropriate." *Id*.

Here, Plaintiffs and all members of the Settlement Class assert that they were consumers of Softsoap Antibacterial as marketed by Defendants. Certification of the Settlement Class under Rule 23(b)(2) is proper because the Plaintiffs and  all members of the Class complain of the same pattern or practice by Defendant. *See, e.g.*, *Jermyn v. Best Buy Stores, L.P.*, 2012 WL 2505644 *12 (S.D.N.Y. June 27, 2012); *Redington v. Goodyear Tire & Rubber Co.*, 2008 WL 3981461 (N.D. Ohio Aug. 22, 2008).

## V.   THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT AGREEMENT.

### a.   Preliminary approval of class action settlements.

It is well established that the law favors class action settlements. *See In re Relafen Antitrust* Litigation, 231 F.R.D. 52 (D. Mass. 2005); *In re Lupron Mktg. & Sales Practices Litig.*, 228 F.R.D. 75 (D. Mass. 2005). Pursuant to Rule 23(e), "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's

approval." Fed. R. Civ. P. 23(e). A settlement must be fair, reasonable, and adequate. *Id*. "When

approving a settlement:

> [T]he judge is required to scrutinize the proposed settlement to ensure that it is
> fair to the persons whose interests the court is to protect. Those affected may be
> entitled to notice and an opportunity to be heard. This usually involves a two-
> stage procedure. First, the judge reviews the proposal preliminarily to determine
> whether it is sufficient to warrant public notice and a hearing. If so, the final
> decision on approval is made after the hearing."

*Hochstadt v. Boston Scientific Corp*., 708 F.Supp.2d 95, 106-107 (D. Mass. 2010) (citing

MANUAL FOR COMPLEX LITIGATION (FOURTH) § 13.14 (2004)).  Thus, before making a final

decision on the 'approval' of a settlement, a court must first make a "preliminary determination

on the fairness, reasonableness, and adequacy of the settlement terms." *Id.* at 107. "Ultimately,

the more fully informed examination required for final approval will occur in connection with

the [final fairness hearing]." *In re M3 Power Razor System Mktg. & Sales Practice Litig.*, 270

F.R.D. 45, 62 (D. Mass. 2010).

   A presumption of fairness attaches to a proposed settlement agreement  "when the court

finds that: (1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3)

the proponents of the settlement are experienced in similar litigation; and (4) only a small

fraction of the class objected." *In re Lupron Mktg. & Sales Practices Litig.*, 345 F.Supp.2d 135,

137 (D. Mass. 2004) (citing *In re Gen. Motors Corp. Pick-up Truck Fuel Tanks Products Liab.

Litig.*, 55 F.3d 768, 785 (3d Cir. 1995)); see also 4 Herbert B. Newberg & Alba Conte, *Newberg

on Class Actions*, §11.41 (4th ed. 2011); *Cf. Hochstadt v. Bos. Scientific Corp.*, 708 F. Supp. 2d at

108 (D. Mass. 2010) (evaluating the experience of counsel in preliminary approval process as a

factor that contributes to the presumption of fairness); *M. Berenson Co. v. Faneuil Hall

Marketplace, Inc.*, 671 F. Supp. 819, 822 (D. Mass. 1987) ("Where, as here, a proposed class

settlement has been reached after meaningful discovery, after arm's length negotiation, conducted by capable counsel, it is presumptively fair."). Here, all of these factors are met and preliminary approval of the settlement is favored.

> **b.     The proposed Settlement Agreement is fair, reasonable and adequate, and is the result of lengthy, arm's-length negotiations conducted in good faith among experienced counsel.**

In this case, experienced attorneys represent the Parties and believe that the Settlement Agreement is a fair and reasonable resolution of the Action.  The Parties have litigated Plaintiffs' claims for nearly four years.  The litigation has included full briefing of Defendant's motion to dismiss, extensive discovery by both Parties, including review of over 93,000 pages of documents produced by Defendant, and depositions of class representatives and Defendant employees.  Plaintiffs' counsel also consulted with experts in the fields of science, marketing, and economics.

Counsel for the Parties have extensive experience in complex litigation and are thoroughly familiar with the factual and legal issues of this Action and the strengths and weaknesses of the Parties' positions.  In short, nothing in the course of negotiations or in the substance of the Settlement Agreement raises any doubts as to its fairness.  Rather, the arm's-length nature of the negotiations, the critical assistance of Judge Rosenbaum during the mediation, as well as the participation of experienced attorneys throughout the litigation strongly support a finding that the Settlement Agreement is sufficiently fair, reasonable and adequate to justify notice to the Settlement Class and the scheduling of a hearing to consider final approval of the proposed Settlement.

Finally, notice to the Settlement Class has not yet been disseminated and therefore Class Members have not had an opportunity to review the Settlement Agreement.  Nonetheless, the

Parties are unaware of any objections to the Settlement Agreement by either the Named Plaintiffs or Settlement Class Members.  To the contrary, the Named Plaintiffs have expressed their approval and support of the Settlement.  Finally, each Settlement Class Member will have the chance to voice objections, should he/she have any, prior to or at the Final Approval Hearing.  For the foregoing reasons, the standards for preliminary approval are met in this case and the Court should grant the present motion.

**VI.   The Court should approve the Notice Plan and Notice and appoint a Notice Administrator.**

In conjunction with preliminarily approving a settlement agreement, a Court must "direct notice in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1).

The notice should be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Int'l Union v. GMC*, 497 F.3d 615, 629-30 (6th Cir. 2007) (internal citations omitted).  *See also In re Gen. Tire & Rubber Co. Sec. Litig*., 726 F.2d 1075, 1086 (6th Cir. 1984) (upholding notice that "described the terms of the settlement, the reasons for [class representatives' decision to settle], the legal effect of the settlement and the rights of the [class members] to voice their objections").

While an opt-out class action under Rule 23(b)(3) must meet stringent notice requirements, *see* Fed. R. Civ. P. 23(c)(2)(B), a district court need not provide any notice before certifying a mandatory class action under Rule 23(b)(2).  *See* Fed. R. Civ. P. 23(c)(2)(A) ("For any class certified under Rule 23(b)(1) or (2), the court *may* direct appropriate notice to the class.") (emphasis added).  *See also Int'l Union v. GMC*, 497 F.3d at 630.

14

Furthermore, notice of the Settlement Agreement need not be sent to each individual member of the Settlement Class.  *See Johnson v. Midland Credit Management Inc.*, 2012 WL 5996391 (N.D. Ohio Nov. 29, 2012) (citing *Saltzman v. Pella Corp.*, 257 F.R.D. 471, 476 (N.D. Ill. 2009) (citing *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 536-37 (3d Cir. 2004) (Where class members were consumers of a prescription drug, and names and addresses of these consumers were confidential and not available to parties, notice by publication combined with call center and website was sufficient notice to identify class members)); *Macarz v. Transworld Sys., Inc.*, 201 F.R.D. 54, 59 (D.Conn. 2001) (notice by publication used where circumstances "make it impracticable to gain the names and addresses of class members and notify them individually of the action's pendency"); *Mirfaishi v. Fleet Mortg. Corp.*, 356 F.3d 781, 786 (7th Cir. 2004) (internet notice of settlement was acceptable substitute for individual notice where Defendant had no record of part of a class of customers)).

In this case, the Notice Plan within the Settlement Agreement will employ the following different methods for circulating information to the Settlement Class Members:

- A press release agreed to by the Parties issued to approximately 6,000 U.S. press outlets within 15 days of the Court's Order granting Preliminary Approval;

- Publication of an advertisement agreed to by the parties in the national edition of USA Today, starting within 15 days of the Court's Order granting Preliminary Approval;

- A multi-platform Internet banner ad campaign targeting a national audience of "Primary Grocery Shoppers," "Home & Beauty Shoppers," and "Hygiene Purchasers," estimated to provide 68,636,364 impressions, starting within 15 days of the Court's Order granting Preliminary Approval;

- An active hyperlink to a copy of the Summary Notice published on Class Counsel's websites within 21 days of the Court's Order granting the Joint Motion; and

- A Class Settlement Website established within 21 days of Preliminary Approval that contains the Preliminary Approval Order, the Long-Form Notice, the Settlement Agreement and other relevant information regarding the approval process.

Furthermore, the Parties jointly recommend the Summary Notice and Long-Form Notice, in substantially the forms attached as Exhibits B and C to the Settlement Agreement, to the Court for its approval.  The Summary Notice and Long-Form Notice are designed to provide comprehensive and easily understandable notice of the terms of the Settlement Agreement.  They apprise the Class of the terms of the settlement, including the equitable benefits derived and the claims being released, as well as their options with respect to the settlement.

Ultimately, the Notice Plan and Notice are "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

Finally, the Parties jointly propose that the Court appoint Angeion Group as Notice Administrator.  Angeion Group will facilitate the notice process by assisting the Parties in the implementation of the Notice Plan.

## VII.    CONCLUSION.

For the foregoing reasons, the Parties respectfully request that the Court grant their Joint

Motion and thereby: (1) certify a Settlement Class; (2) preliminarily approve the Settlement

Agreement; and (3) approve the Notice Plan and Notice and appoint a Notice Administrator.

Respectfully submitted,

Dated: May 29, 2015

/s/ Lucy J. Karl
Lucy J. Karl
NH Bar No. 5547
**SHAHEEN & GORDON, P.A.**
107 Storrs Street, P.O. Box 2703
Concord, New Hampshire 03302
Telephone: (603) 225-7262
Facsimile: (603) 225-5112
lkarl@shaheengordon.com

*Plaintiffs' Interim Lead Counsel*

Dated: May 29, 2015

Respectfully submitted,

/s/ Shon Morgan
Shon Morgan
**QUINN EMANUEL URQUHART &
SULLIVAN LLP**
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100
shonmorgan@quinnemanuel.com

/s/ Michele E. Kenney
Michele E. Kenney
NH Bar No. 19333
**Pierce Atwood, LLP**
One New Hampshire Avenue, Suite 350
Portsmouth, New Hampshire 03801
Telephone: (603) 433-6300
Facsimile: (603) 433-6372
danderson@pierceatwood.com
*Attorneys for Defendant Colgate-Palmolive
Company*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on May 29, 2015, she caused this document to be electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of filing to registered counsel of record for each party.

/s/ Lucy J. Karl
Lucy J. Karl (NH Bar # 5547)