UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| IN RE: COLGATE-PALMOLIVE | ) | |
| SOFTSOAP ANTIBACTERIAL HAND | ) | MDL Docket No. 12-md-2320-PB |
| SOAP MARKETING AND SALES | ) | |
| PRACTICES LITIGATION | ) | All Actions |
| (MDL NO. 2320) | ) | |
| _____ | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
ASSENTED-TO MOTION FOR AWARD OF ATTORNEYS' FEES,
EXPENSES AND REPRESENTATIVE PLAINTIFFS' INCENTIVE AWARDS**

**I.      INTRODUCTION**

Pursuant to Federal Rule of Civil Procedure 23 and Local Rule 23.1 and this Court's

Preliminary Approval Order dated June 5, 2015 (Dkt. 93) (the "Preliminary Approval Order"),

plaintiffs Tracy Nieblas, Shari Elstein, Kristina Pearson, Adam Emery, and Jeff Dyke, in their

individual capacities and as class representatives ("Plaintiffs"), by Class Counsel, respectfully

move this Court for entry of an Order awarding Attorneys' Fees and Expenses, including Notice

Administrator fees and Representative Plaintiffs' Incentive Payments, in the aggregate amount of

$2,000,000.  Of this aggregate amount, Class Counsel respectfully request that the Court grant

their request for Representative Plaintiffs incentive payments of $2,500 per class representative,

for a total aggregate incentive payment amount of $12,500.00, Notice Administrator fees in the

amount of $174,496, and Class Counsel attorneys' fees and expenses in the amount of

$1,813,004, payable by Defendant Colgate-Palmolive Company.  Defendant assents to the filing

of this motion and the relief requested herein.

The first putative class action concerning Defendant's antibacterial Softsoap product was

filed against Colgate-Palmolive Company in February 2011.  Ten (10) putative class actions

1

were ultimately filed concerning this issue.[1]  In March 2012, the Judicial Panel on Multidistrict

Litigation transferred these actions to the United States District Court for District of New

Hampshire, for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407.

Once before this Court, the cases were consolidated.  Since the inception of this litigation, Class

Counsel have shouldered all costs and faced great risk in prosecuting these cases on behalf of the

named plaintiffs and other members of the proposed classes.  This litigation presented difficult

issues of law and fact that resolved through settlement only after significant discovery, motion

practice, and extensive, and often spirited, negotiations.

      Class Counsel achieved a favorable resolution for the Settlement Class members as a

result of this litigation.  Defendant removed the ingredient triclosan from the Softsoap

Antibacterial line after the litigation was filed under the terms of the settlement.  Defendant also

agreed to refrain from making three of the five statements challenged as misleading, and agreed

to use the ingredient triclosan in Softsoap Antibacterial ("Softsoap AB" or the "Product") only in

a manner consistent with final FDA regulations.  In addition to this substantial non-monetary

injunctive relief, the Settlement Agreement preserves Settlement Class Members' rights to assert

claims for monetary relief both individually and on a class-wide basis.  Defendant also agreed to

pay Plaintiffs' attorneys' fees, costs, and expenses, including incentive payments and notice

administration costs, up to $2,000,000.  As of the date of this filing, only one class member has

objected to the requested attorneys' fees and costs and no class member has objected to or

criticized the proposed incentive awards to the Class Plaintiffs.  Affidavit of Lucy J. Karl ("Karl

---

[1] Case Nos. 11cv438 (C.D. Cal.), 11cv62242 (S.D. Fla.), 11cv81165 (S.D. Fla.), 11cv6086 (N.D. Ill.),
11cv797 (S.D. Ill.), 11cv1750 (D. Nev.), 11cv427 (D.N.H.), 11cv644 (M.D. Fla.), 11cv 7026 (D.N.J.) and
12cv1493 (D.S.C.).

Aff.") attached hereto as Exhibit A, at ¶ 38.  The parties negotiated the attorneys' fees and costs only after reaching agreement on the substantive settlement terms.  This was an arm's-length settlement forged through numerous settlement conferences, meetings, mediation, conference calls, and written communications.   Class Counsel apply the lodestar method to their fee request in this litigation.  There is no enhancement or "multiplier" of Class Counsel's lodestar, which is notable given the work in this litigation and the work which remains to bring the case to conclusion.  The amount the parties have agreed upon for fees and expenses is substantially less than the time and expenses actually incurred by Class Counsel.  Accordingly, Class Counsel respectfully ask the Court to grant the requested award of attorneys' fees, costs and expenses and the requested Class Plaintiff incentive awards, in the amount of $2,000,000.

## II.      BACKGROUND OF THE LITIGATION AND THE WORK PERFORMED

The Court is well-versed in the history of this deceptive marketing litigation.  Plaintiffs brought this action on behalf of themselves and similarly-situated consumers in California, Florida, Illinois, and Nevada seeking to halt Defendant's alleged dissemination of false and misleading advertising, and to correct the alleged false and misleading perception that Defendant created in the minds of consumers and obtain redress for the Settlement Class.  Between February 4, 2011 and October 28, 2011, putative class actions were filed in California, Florida, Illinois, and Nevada[2] seeking redress  for Defendant's deceptive and misleading marketing of its Softsoap Antibacterial products that contain the active ingredient triclosan ("Softsoap Antibacterial" or the "Product").  By Order dated March 7, 2012, the Judicial Panel on

---

[2] Putative class actions were also filed in New Jersey and South Carolina and were transferred to this Court by the JPML.  These claims were voluntarily dismissed.

3

Multidistrict Litigation ("JPML") transferred these cases to the United States District Court for the District of New Hampshire, *In re Colgate-Palmolive Softsoap Antibacterial Hand Soap Marketing and Sales Practices Litigation*, Case. No. 12-md-2320 (the "MDL").  On June 26, 2012, Plaintiffs filed their Consolidated Amended Class Action Complaint (Doc. No. 24), asserting statewide classes on behalf of named plaintiffs in California, Florida, Illinois, Nevada, New Jersey, and South Carolina. Following dismissal motion practice, Plaintiffs filed their Second Consolidated Amended Class Action Complaint (Do. No. 63) on June 20, 2013. On April 28, 2015, Plaintiffs filed their Third Consolidated Amended Class Action Complaint, (Doc. No. 88), in view of the fact that certain named plaintiffs, including named plaintiffs from New Jersey and South Carolina had to withdraw from the litigation for personal reasons, leaving plaintiff representatives from California, Florida, Illinois and Nevada.  On May 19, 2015, Plaintiffs filed their operative pleading, the Fourth Consolidated Amended Class Action Complaint. (Doc. No. 91), in which plaintiffs amended the allegations to reflect the operative facts and claims.

Plaintiffs and their counsel committed all the time, paid all the expenses, and faced great risk in in this heavily-contested litigation that involved motion practice, considerable discovery, and complex legal and factual issues.  The Class Plaintiffs agreed to serve as representatives for not less than tens of thousands of individuals who purchased Softsoap Antibacterial.  They participated in all aspects of the case, including reviewing pleadings, responding to discovery requests, preparing for and giving depositions, communicating with counsel, and approving the terms of the settlement agreement.

Before the settlement was reached, the parties engaged in significant discovery and motion practice.  While pursuing their claims, Plaintiffs were opposed by nationally-known and

highly-respected defense counsel.  During the litigation, Class Counsel devoted time, energy, and resources to the following efforts:

- Conducting background factual research and investigation regarding Plaintiffs' claims;

- Conducting substantial legal research regarding the applicable laws of the States of California, Florida, Illinois, New Jersey, Nevada and South Carolina, and the laws of various other states as to the viability of Plaintiffs' claims;

- Researching the applicable theories of law and drafting and filing the initial complaints;

- Preparing and filing the Consolidated Amended Complaints;

- Vigorously and successfully opposing Defendant's Motion to Dismiss the Consolidated Amended Complaint;

- Engaging in extensive discovery, including but not limited to document review, propounding and responding to written discovery; preparing for, taking, and defending depositions;

- Conferring with scientific, economic, and human factors experts;

- Preparing for and participating in mediation with Judge James Rosenbaum;

- Engaging in attenuated settlement negotiations with Defendant, including two in-person meetings, one-day mediation, and extensive telephone conferences and literally hundreds of emails with defense counsel, to develop and refine the terms of the settlement, which ultimately resulted in the execution of the Settlement Agreement;

- Further negotiations regarding the language of various settlement documents including but not limited to the Settlement Agreement, the Joint Motion for Preliminary Approval and proposed Order, the Class Notices, press releases, and various documents used by the Settlement Administrator;

- Communicating with potential Settlement Class members seeking information regarding the Settlement;

- Communicating with two individuals who filed objections with the Court;

- Together with counsel for Colgate, conferring with various States Attorneys' General to respond to and resolve questions raised regarding the terms of the Settlement;

- Preparing the Motion for Final Approval;

- Ongoing communications with the Plaintiffs regarding the status of the Action and the Settlement.

Karl Aff. at ¶ 24.

Although the above list is non-exhaustive and does not detail all of Class Counsel's work, the combined efforts translated into 6145.45 working hours and a total combined current lodestar of $3,188,317, and expenses of $91,946.94 (to date).  Karl Aff. at ¶ 25.

## III.    SETTLEMENT NEGOTIATIONS, SETTLEMENT TERMS, AND PRELIMINARY APPROVAL

The Parties began discussing settlement in July 2013, which commenced with an in-person meeting between members of the Court-appointed leadership and defense counsel. This initial meeting was productive and led to continued telephonic and email discussions, followed by agreement to engage in alternative dispute resolution.  In November 2013, the Parties participated in a one-day mediation before retired federal district court judge, James M. Rosenbaum.  The mediation was unsuccessful, but continued to narrow the settlement parameters.  Without an agreement, the parties continued to engage in discovery.  In the spring of 2014, counsel for the parties restarted negotiations, working hard to narrow the issues for settlement, again including email and telephonic communications and culminating in another in-person meeting, at which time the Parties reached an agreement in principle to resolve the litigation.  In the ensuing months, as a result of the efforts of Class Counsel in prosecuting the Action, the Parties agreed to settle this Action under the terms of the Settlement Agreement and Release, previously submitted and preliminarily approved by the Court (Doc. No. 92-2).

The Settlement Class consists of all persons who purchased the Product in the United States from January 1, 1992 up to and including the Notice Date.  The primary benefits derived from the Settlement Agreement are injunctive in nature.  Defendant has agreed to refrain from making three of the five statements challenged as misleading and agreed to use the ingredient triclosan in its Product only in a manner consistent with final FDA regulations.  Defendant ceased manufacturing and marketing the Product with the ingredient triclosan in 2011.

The injunctive relief provisions of the Settlement Agreement enjoin Defendant as follows:

- Defendant has no present intention to reintroduce triclosan as an ingredient in its Product; however, to the extent Defendant's intentions change in the future, Defendant will use triclosan only in a manner consistent with final FDA regulations.

- Defendant shall not use a claim on Labeling and Marketing of the Product that is based on "99%" efficacy without an accompanying disclosure statement that generally describes the testing methods at a level consistent with those appearing on Labeling and Marketing of the Product as of the date of this Settlement Agreement.

- Defendant shall not use the statement "Goodbye Germs – Hello World" on Labeling and Marketing of the Product.

- The terms and requirements of the Injunctive Relief shall expire on the earliest of the following dates:  five years following the Effective Date; or the date upon which there are changes to any applicable statute, regulation, or other law that Defendant reasonably believes would require a modification to the Labeling and Marketing of the Product required by the Injunctive Relief provisions in order to comply with the applicable statute(s), regulation(s), or law(s).

- Plaintiffs, individually and on behalf of themselves and the other Settlement Class Members, and Class Counsel agree that this Settlement Agreement does not preclude Defendant from making further changes to the Labeling and Marketing of the Product as Defendant sees fit.

Significantly, by this Settlement, Settlement Class members release only their injunctive, declaratory and non-monetary equitable claims that relate to the distribution, sale, purchase,

labeling, packaging, marketing and/or advertising of the Product.  Monetary claims are not released and can be brought by Settlement Class members either individually or in the aggregate, should they wish to do so.

Pursuant to the terms of the Settlement Agreement, Defendant agrees to pay a total of $2,000,000 to satisfy the costs of the Notice Plan and any award of attorneys' fees, costs and expenses, and any incentive awards payable to Plaintiffs.  The benefits to the Settlement Class are not diminished by this payment.  Only one class member has objected to the amount of attorneys' fees, costs and expenses set forth in the Settlement Agreement .  Karl Aff. ¶ 38.

## IV.    THE COURT SHOULD AWARD THE ATTORNEYS' FEES AND COSTS REIMBURSMENT AGREED UPON BY THE PARTIES

Rule 23(h) of the Federal Rules of Civil Procedure expressly authorizes the Court to award "reasonable attorneys' fees and non-taxable costs…by agreement of the parties[.]"  Courts routinely encourage negotiated and agreed-upon attorneys' fees as part of class action settlements.  *See e.g., DeHoyos v. Allstate Corp.,* 240 F.R.D. 269, 323 (W.D. Texas 2007) (collecting cases).  Courts are especially amenable to awarding negotiated fees and expenses where the amount is reasonable and in addition to and separate from the relief obtained for the class.  *Bailey v. AK Steel Corp.,* No. 1:06-CV-468, 2008 WL 553764 (S.D. Ohio, Feb. 28, 2008). Fees negotiated separate and apart from the class recovery are entitled to a presumption of reasonableness.  *DeHoyos,* 240 F.R.D. at 323.  *See also Snell v. Allianz Life Ins. Co. of N. Am.,* No. 97-2784, 2000 WL 1336640, at *19 (D. Minn. Sept. 8, 2000).   When a defendant agrees to pay fees and costs separate from the class benefit, the court may approve the petition without the

need to examine counsel's contemporaneous time records, [3] conduct an extensive inquiry, or consult a special master.  "The district courts may rely on summaries submitted by attorneys and need not review actual billing records."  *In re Rite Aid Corp. Sec. Litig.,* 396 F.3d 294, 306-07 (3d Cir. 2005).

In this case, the parties' negotiations took place at arm's-length after the substantive terms of the Settlement Agreement had been agreed upon.  Karl Aff. at ¶ 33, 34.  There was no collusion.  *Id.*  Class Counsel has served the best interests of the Settlement Class members in all respects.  The parties vigorously negotiated every detail of the settlement, including attorneys' fees and costs.  The negotiated fees and expenses do not diminish the relief afforded to the Settlement Class under the terms of the Settlement Agreement and are to be paid separate and apart by Defendant.  *Id.*  at ¶ 37.  Moreover, the fee request is materially less that Class Counsel's current lodestar.  *Id.*  All of these factors "weigh strongly in favor of approval" of the fee application.  *McBean v. City of New York*, 233 F.R.D. 377, 392 (S.D.N.Y. 2006).[4]

As Class Counsel undertook this case on a contingency fee basis, they have not received any payment for their work on the case to date.  The Fee Request is also appropriate under the lodestar analysis.

### A.      The Lodestar Approach

Where no common fund exists, courts employ a lodestar analysis to analyze class counsel's fees.  Under the lodestar method, the Court "determines the number of hours

---

[3] Class Counsel's itemized billing records are available for *in camera* review should the Court wish to examine them.

[4] Class counsel have agreed to a binding mediation process should there be any dispute among them regarding division of fees.  Thus, the Court will not be called upon involve itself should a fee dispute arise.

reasonably expended multiplied by a reasonable hourly rate for attorneys of similar skill within that geographic area." *Bezdek v. Vibram USA Inc.,* Nos. 12-10513-DPW and 13-10764-DWW, 2015 WL 223786 *19 (D. Mass. Jan. 16, 2015) *quoting In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.R.D. 295, 306-07 (1st Cir. 1995). The lodestar calculation may then be subject to either a multiplier or discount for special circumstances, plus reasonable disbursements. *Id.* (internal citations omitted). There is a presumption that the lodestar figure represents a reasonable fee. *See Nilsen v. York County,* 400 F. Supp. 2d 266, 272 (D. Maine 2005).

Courts recognize that "[a] financial incentive is necessary to entice capable attorneys, who otherwise could be paid regularly by hourly-rate clients, to devote their time to complex, time-consuming cases for which they may never be paid." *Mashburn v. Nat'l. Healthcare Inc.,* 684 F.Supp. 679, 687 (M.D. Ala. 1988). "To make certain that the public interest is represented by talented and experienced trial counsel, the remuneration should be both fair and rewarding." *Eltman v. Grandma Lee's, Inc.,* No. 82-cv-1912,1986 WL 53400, *89 (ED.N.Y. May 28, 1986) (internal quotation omitted): *see also In re WorldCom, Inc. v. ERISA Litig.*, No. 02-cv-4816, 2004 WL 2338151, at *10 (S.D.N.Y. Oct. 18, 2004) (noting in awarding attorneys' fees that "[l]ead Counsel has performed an important public service in this action…"); *In re Monosodium Glutamate Antitrust Litig.,*No. CIV 11 MDL 1328 PAM, 2003 WL 29276, at *1 (D. Minn. Feb. 6, 2003) ("The theory behind attorneys' fees awards in class actions is not merely to compensate counsel for their time, but t reward counsel for the benefit they brought to the class and take into account the risk undertaken in prosecuting the action.").

More than ten law firms have worked on this case for Plaintiffs and the other Settlement Class members.  Many of the law firms commenced the putative class actions litigation and worked independently before consolidation.  Attached in support of Plaintiffs' motion for an award of attorneys' fees, costs, expenses, and incentive payments are the sworn affidavits[5] of Richard J. Arsenault, Esq., Jordan L. Chaikin, Esq., Christopher M. Ellis, Esq., Eric D. Holland, Esq., Fred Taylor Isquith, Esq., Laurence D. King, Esq., Lucy J. Karl, Esq., Adam J. Levitt, Esq., John A. Peca, Esq., Charles E. Schaeffer, Esq.,  David C. Rash, Esq., and James C. Shah, Esq.[6] In each of these affidavits, the affiant attorney details the name, total number of hours expended, customary hourly rate, and years of experience of each attorney from his or her firm who attests to the total lodestar time his or her firm spent litigating this matter, the hourly rates, and experience of the attorneys from their firms who worked on this matter.  The total hours and lodestar reported by each affiant is summarized in the chart set forth in Paragraph 27 of the Karl Affidavit.   Altogether, Class Counsel and their firms have invested more than 6145 hours prosecuting this case.  *See* Karl Affidavit, and Exhibits 2-12 thereto.  Class Counsel's lodestar represents the number of hours expended on the litigation multiplied by each timekeeper's respective hourly rates.  Interim Lead Class Counsel was vigilant throughout to ensure that time spent on the case was necessary and non-duplicative.  Karl Aff. at ¶ 18, 22.  The work performed by Class Counsel was necessary to advance the claims, narrow the issues, and ultimately

---

[5] Matthew Butler has not submitted an affidavit as of the time of this filing.
[6] *See* Karl Affidavit at Exhibits 2-12; Exhibits 2 through 12 are the Affidavits andBiographies of Richard J. Arsenault, Esq. (Exhibit 2), Jordan L. Chaikin (Exhibit 3), Esq., Christopher M. Ellis, Esq. (Exhibit 4), Eric D. Holland, Esq. (Exhibit 5), Fred Taylor Isquith, Esq. (Exhibit 6), Laurence D. King, Esq. (Exhibit 7), Adam J. Levitt, Esq. (Exhibit 8),  John A. Peca, Esq. (Exhibit 9), Charles E. Schaeffer, Esq. (Exhibit 10),  David C. Rash, Esq. (Exhibit 11), and James C. Shah, Esq. (Exhibit 12).

negotiate a successful Settlement Agreement and advocate the merits of the Settlement to this Court.  *Id*.  at ¶ 26.  The hourly rates charged by each firm are justified by the firms' expertise in this type of litigation and the rates charged in their local communities for class action litigation. *See* Karl Affidavit, and Exhibits 2-12 thereto.  A summary of the lodestar at issue is as follows:

| *LAW FIRM NAME* | *HOURS* | *EXPENSES* | *LODESTAR* |
|---|---|---|---|
| Bolen, Robinson &Ellis | 112.30 | 1,340.35 | 51,245.00 |
| Climaco,   Wilcox,   Peca,   Tarantino   & Garofoli, Co., LPA | 718.50 | 9,843.90 | 313,965.00 |
| David C. Rash, P.A. | 198.05 | 2,939.05 | 70,805.00 |
| Grant & Eisenhofer, P.A. | 316.10 | 11,544.74 | 164,970.00 |
| Holland Law Firm, LLC | 1261.25 | 20,406.78 | 621,695.00 |
| Kaplan, Fox & Kilsheimer, LLP | 236.75 | 3,640.31 | 139,246.25 |
| Levin, Fishbein, Sedran & Berman | 1159.50 | 11,077.75 | 748,387.50 |
| Neblett, Beard & Arsenault | 555.10 | 13,637.73 | 327,128.75 |
| Nicholas & Butler, LLP | | | |
| Parker Waichman, LLP | 425.75 | 5,556.62 | 213,446.25 |
| Shaheen & Gordon, P.A. | 601.95 | 3,807.25 | 202,088.75 |
| Shepherd, Finkelman, Miller & Shah, LLC | 310.2 | 2,731.63 | 165,031.50 |
| Wolf Haldenstein Adler Freeman & Herz LLP | 250 | 6,004.05 | 170,308.00 |
| **TOTAL:** | **6,145.45** | **91,946.94** | **3,188,317.00** |

Additional time will be spent drafting and filing Plaintiffs' reply brief responding to any objections to the Settlement, traveling to and appearing at the final fairness hearing, and resolving any appeals that may be filed.  While hopefully there will be no attempts to appeal an order granting final approval of this hard-fought settlement, appeals of class action settlements are not unheard of in the legal climate today.  In addition, they have advanced more than $91,946.94 in expenses.  *Id.*   Throughout the litigation process there has been a real and substantial risk that these investments would not be recovered.  In addition, in light of the timing of this fee request, there is still further work to perform in order to achieve the Court's final approval of the Settlement Agreement.

Class Counsel now seeks a total of just $2,000,000 in attorneys' fees, costs, and incentive awards.  Subtracting out the Notice Administration fees and incentive awards the remaining $1,813,004.00 represents less than 0.57% of their combined lodestar.

### 1.      The Number of Hours Spent Was Reasonable

The amount of time a lawyer decides to devote to various tasks in complex litigation is necessarily the product of highly selective judgment-involving questions of strategy and tactics unique to that case – and is ill-suited to hindsight evaluation.  *Grant v. Martinez,* 973 F.2d 96, 99 (2d Cir. 1992) ("The relevant issue …is not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures.")  Here, the firms serving as Class Counsel have spent approximately 6145.45 hours on this litigation as of July 31, 2015.  Karl Aff. ¶ 25, 27.

Class counsel exercised billing judgment, attempting to reduce the hours billed to reduce redundancies.  Karl Aff. ¶ 22, 23.  Throughout the litigation, Class Counsel took measures to

avoid duplicative work and to promote efficiency. *Id.* Class Counsel made assignments in a coordinated manned to ensure that talents were properly used and that information acquired through discovery was appropriately catalogued and incorporated into litigation strategy and ultimately, settlement strategy. *Id.* Senior attorneys were not used when they were not required, and attorneys did not perform work that paralegals could perform. *Id.* Class Counsel worked cooperatively and collaboratively throughout this litigation, embracing a team approach to ensure efficiency. *Id.* The lodestar, therefore, represents a reasonable number of hours spent by timekeepers with the appropriate levels of experience. Moreover, the lodestar reports time only through July 31, 2015, and does not include the hours of additional time Class Counsel will expend in furtherance of final settlement approval. *Id.* at ¶ 28.

### 2. The Hourly Rates Applied Are Reasonable

The Class Counsel firms involved in this MDL litigation are located across the United States and have national class action practices. In their affidavits, class counsel represent that the hourly rates shown are the usual and customary hourly rates charged by their firms in connection with litigation similar to the instant litigation. *See* Karl Aff. and Ex. 2-12 attached thereto. The hourly rates applied here are market rates similar to those charged by firms with expertise in class action and other complex litigation. The hourly rates are reasonable, taking into consideration the experience and skill of such attorneys and market rates for such skill. As might be expected, the lodestar is comprised of a range of hourly rates – from $950 for a senior partner with decades of experience in consumer class actions to $65 for law clerk/paralegals.[7]

---

[7] Another court in this Circuit considered a fee petition in the Massachusetts multi-district litigation case, *In re Lupron,* the court deemed it unnecessary to adjudge the individual reasonableness of each attorney's rate across thirty firms and multiple jurisdictions based on the "reasonable assumption that MDL

Whatever lens through which the Court chooses to view the requested fee award, it is clear that the hourly rates put forward here are reasonable and within the range of what is charged for similar services by lawyers of reasonably comparable skill, experience, and reputation. First, Class Counsel have submitted affidavits attesting to their skill and experience, as well as the reasonableness of their customary rates as consistent with the prevailing level for similar work in their own jurisdiction. *See* Karl Aff. and Ex. 2-12. Affidavits of class counsel concerning prevailing rates in the community and rate determinations in other cases are sufficient evidence of the prevailing market rates in the community. *See e.g., Stokes v. Saga Intern. Holidays, Ltd.,* 376 F.Supp. 28 86, 92 (D. Mass. 2005) ("[T]he burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. A rate determined in this way is normally deemed to be reasonable, and is referred to—for convenience—as the prevailing market rate.") There is a presumption that the lodestar figure represents a reasonable fee. *See Nilsen v. York County,* 400 F. Supp. 2d 266, 272 (D. Maine 2005).

Further, the applicable case law demonstrates that the effective rates sought here are well within the range of awards in complex civil litigation both in New England and across the United States. *Cf. Specialized Technology Resources, Inc. v. JPS Elastomerics Corp.,* No. HS-CV-2007-00200, 2011 WL 1366584 at *10 & *14 (Mass. Super Ct. 2011) (approving hourly rates ranging from $885 to $350 for attorneys and $200 to $105 for paralegal work following a

---

coordinating counsel have every incentive for weeding out inflated or dubious fee requests before making a pro rata distribution of the award." *In re Lupron*, No. MDL 1430, 01-CV-10861-RGS, 2005 WL 2006833 at *6 n.14 (D. Mass. Aug 17, 2005).

G.L. c. 93A trial in Hampshire County Superior Court); *Tuli v. Brigham & Women's Hosp., Inc.* 2009 U.S. Dist. LEXIS 129768 at *5–7 (D. Mass. June 8, 2009) (approving rate for Boston partners in the range of $600 to $700 nearly five years ago)*; The Real Estate Bar Ass'n for Massachusetts, Inc. v. National Real Estate Information Services,* 642 F. Supp. 2d 58, 67-70 (D. Mass. 2009) *vacated on other grounds* 608 F.3d 110 (1st Cir. 2010) (approving hourly rates in a range up to $700 in complex litigation centered in Boston); *Kearney v. Hyundai Motor America*, No. SACV 09–1298–JST (MLGx)*,* 2013 WL 3287996 at *8 (approving hourly rates between $650 and $800 for class counsel in a consumer class action); *see also In re BankAmerica Corp. Sec. Litig.,* 228 F.Supp. 2d 1061, 1065 (E.D. Mo. 2002) (finding "while hourly rates up to $695 are high for the Eastern District of Missouri, they are nonetheless within the range of reasonableness in the realm of nationwide securities class actions"); *In re Vioxx Prods. Liab. Litig.,* 760 F. Supp. 2d 640, 660 (E.D. La. 2010) (attorneys from across the country contributed common benefit work in the MDL; as a result, the Court allowed attorneys to use their actual reported billing rate as opposed to prevailing rate in the Eastern District of Louisiana, where the MDL was located). Moreover, "[t]o compensate for the delay Plaintiffs' Counsel encountered in receiving compensation, it is appropriate t use current fee rates in calculating the lodestar." *Connectivity Systems, Inc. v. National City Bank.,* No. 2:08-cv-1119, 2011 WL 292008, at *13 (S.D. Ohio, Jan. 26, 2011) (internal citations omitted); *accord, Stoneridge Investment Partners v. Charter Communications, Inc.,* 2005 U.S. Dist. LEXIS 14772, at *54-55 (E.D. Mo. June 30, 2005) ("the Supreme Court and other courts have held that the use of current rates is proper, since such rates compensate for inflation and the loss of use of funds.")

Finally, the *National Law Journal* publishes an annual survey of billing rates that has been relied on by courts considering fee requests.  *See, e.g.*, *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 570-71 (2010) (Breyer, J., concurring in part, dissenting in part).  The rates put forward by Plaintiffs' counsel here are entirely consistent with the rates reflected in the NLJ Survey.  *See* 2014 National Law Journal Billing Rates Survey, http://www.nationallawjournal.com/id=1202636785489/Billing-Rates-Across-the-Country (reflecting a range of hourly billing rates up to as high as $1,285 nationally, and a range of hourly rates for a Boston law firm between $900 for the highest billing partner and $320 for the lowest billing associate).   Given Class Counsel's own affidavits, the level of skill and experience required in this complex consumer class action case, the relevant case law and the *National Law Journal*'s survey, Class Counsel's effective hourly billing rates are eminently reasonable.  No special proof of reasonableness of the hourly rate is required; instead, the Court may use its own knowledge of rates charged in similar litigation.

Because Class Counsel's rates are in line with rates of lawyers of reasonably comparable skill, experience, and reputation and the total number of hours expended is reasonable in light of the complexity of the litigation and the work performed, Class Counsel's total lodestar is also reasonable.  By agreeing to cap all costs and fees at $2,000,000, Class Counsel essentially agreed to forego payment under a lodestar approach, despite the fact that its efforts, time expended, and costs incurred far exceed the agreed-upon cap.  Furthermore, additional work needs to be done to conclude the case, which will result in additional costs and fees incurred by Class Counsel, which will further increase the lodestar over this fee request.  Karl Aff. at ¶ 28. Thus, any reduction in Class Counsel's fee request would further decrease the lodestar value of Class

Counsel, and could create a disincentive to undertake contingency fee cases that protect consumers. *See e.g., Wess v. Storey*, Case No. 2:08-cv-623, 2011 WL 1463609, at *11(S.D. Ohio April 14, 2011) (there is a public interest in ensuring that attorneys willing to represent low-income persons in fair debt and consumer protection cases are adequately paid so that they and others like them will continue to take on such cases. Adequate compensatory fee awards in successful class actions promote private enforcement of compliance within important areas of federal law), *citing Bateman Eichler, Hill Richards, Inc. v. Berner,* 472 U.S. 299, 310 (1985).

**B.      Class Counsel's Fee Request is Reasonable**

As this Court has recognized, "providing adequate compensation encourages capable plaintiffs' attorneys to aggressively litigate complex, risky cases like this one rather than settling lower and earlier than would be in the best interests of the class members they represent." *In re Tyco Int'l, Ltd. MDL,* 535 F.Supp. 2d 249, 265 (D.N.H. 2007) "[A]ttorneys who take on class action matters enabling litigants to pool their claims provide a huge service to the judicial process and should be rewarded for their effects." *In re Sketchers Toning Shoe Prods. Lib. Litig.*, 2013 WL 2010702 at *9 (W.D. Ky. 2013) (internal citations omitted). Courts recognize that "most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.,* 80 F.Supp.2d 164, 174 (S.D.N.Y. 2000). This case involves complex factual, scientific and legal issues. Plaintiffs asserted a number of causes of action under various states' laws. Had the litigation continued, numerous factual and legal issues would have been litigated, resulting in substantial additional litigation expenses and possible delay in recovery, had the Court's rulings been appealed.

18

Regardless of the calculation method employed by the Court, in determining an appropriate attorneys' fee award, "the touchstone of the inquiry is reasonableness." *Bezdek,* 2015 WL 223786, at *20. Although the First Circuit has not articulated a specific list of criteria to consider in determining reasonableness, courts in this Circuit generally consider such factors as whether the efforts of the attorneys conferred a benefit to the class, the duration and intensity of the litigation, the results achieved, and the skill of the attorneys involved. *Id.*; *see also In re TJX Cos. Retail Sec. Breach Litig.*, 584 F.Supp. 3d 395, 401 (D. Mass. 2008); *In re Relafen Antitrust. Litig.*, 231 F.R.D. 52, 79 (D. Mass. 2005); *In re Lupron Marketing and Sales Practices Litig.,* 228 F.R.D. 75, 98 (D. Mass. 2005). Other criteria courts have considered in this context include the risks of contingency fee litigation and the societal benefits of pursuing class actions.

Class Counsel's fee request meets these criteria. Class Counsel's diligent efforts clearly benefitted the Settlement Class members. Defendant removed the ingredient at the center of Plaintiffs' complaint – triclosan – from the Product during the course of the litigation and ceased making the efficacy claims Plaintiffs alleged were misleading. The Settlement Agreement provides injunctive relief ensuring that Defendant will alter its marketing practices and procedures and has no present intent to bring the Product back to market with triclosan. To the extent that intent changes, Defendant will use the ingredient triclosan only in a manner consistent with FDA regulations. Moreover, the Settlement Agreement preserves any monetary damage claim that any Settlement Class members (except Plaintiffs) may have and allows them to bring individual suits or a class action suit in an effort to recover those damages.

19

Class Counsel expended substantial time developing the facts and researching the law. They engaged in motion practice, extensive discovery and depositions, and mediation, during which the parties were afforded the opportunity to clearly reflect upon the strengths and vulnerabilities of their respective positions. Class Counsel are all highly-skilled attorneys with substantial experience litigating class actions, including consumer class actions. Class Counsel aggressively and diligently pursued this litigation, determining that this Settlement Agreement was in the best interests of the Settlement Class. Only after the substantive terms of the settlement were agreed upon did the parties negotiate the cap for Notice costs, and attorneys' fees, and costs. The Class Plaintiffs all agreed to the terms of the Settlement Agreement. Lastly, the fee request is less than the lodestar. All of these factors support the reasonableness of the fee request.

Finally, it is axiomatic that settlement "[b]enefits may include different forms of injunctive relief, or relief that may mix injunctive and damages elements." Manual for Complex Litigation, 5th Ed., §21.71 p. 336; *see also Blanchard v. Bergeron*, 489 U.S. 87, 95 (1989), (cautioning against an undesirable emphasis on monetary damages that might shortchange efforts to seek effective injunctive or declaratory relief). In *Meyenburg v. Exxon Mobil*, No. 3:05-CV-15-DGW, 2006 WL 5062697 (S.D. Ill.), objectors argued that the injunctive relief obtained had no value specifically when calculating attorney fees. The court stated that "[a] settlement is to be viewed in its entirety in evaluating the fairness" and further that "regardless of the dollar value of this component to the settlement, it involves significant and costly changes to Exxon Mobil's marketing practices, which directly addresses the core challenge to those practices made by the class." *Id*. at 8. Thus, the court determined "that the argument that the injunctive relief as no

20

value is without merit." *Id.*  As in *Meyenburg*, significant and costly changes to Softsoap

Antibacterial's chemical composition as well as to Colgate-Palmolive's marketing practices were

effectuated by this Settlement and the Settlement addresses the core challenge of this litigation,

thereby conferring a valuable benefit to consumers, including Plaintiffs and the other Settlement

Class members.

### 1.   Class Counsel Provided Years of Work With No Guarantee of Payment

The litigation of contingent fee cases is fraught with substantial risks, and those risks

often increase as the case develops.  *See Jones v. Diamond*, 636 F.2d 1364, 1382 (5th Cir.

1981) ("Lawyers who are to be compensated only in the event of victory expect and are

entitled to be paid more when successful than those who are assured of compensation

regardless of result"), *overruled* on other grounds by *Int'l Woodworkers of Am., AFL-CIO v.

Champion Int'l Corp.*, 790 F.2d 1174 (5th Cir. 1986); *In re Lucent Techs., Inc. Sec. Litig.*,

327 F. Supp. 2d 426, 438 (D. N.J. 2004) ("Furthermore, courts have recognized that the risk

of non-payment is heightened in a case of this nature where counsel accepts a case on a

contingent basis") (citing *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 199 (3d Cir.

2000)).

Class Counsel has litigated this action on a contingent basis for four years and placed

their own resources at risk in prosecuting these cases on behalf of their clients and the other

Settlement Class members.  The litigation addressed difficult issues that were resolved through

settlement only after considerable discovery, motion practice, and negotiations.   Success and

recovery were never guaranteed as Defendant has not conceded liability.   Class Counsel

opposed a team of skilled defense attorneys from one of the largest law firms in the country. Despite these obstacles, Class Counsel secured a favorable recovery and fair resolution for the Settlement Class members, negotiating a settlement that requires Defendant to materially change its marketing practices.  The risks undertaken by Class Counsel in vigorously pursuing this action over the course of a number of years is another significant factor supporting the reasonableness of the Fee Request.

<b>2.      Class Counsel Provided High-Quality Work.</b>

Class Counsel provided extensive class action litigation and settlement experience for the benefit of their clients and the other Settlement Class members.  In pursuing this litigation vigorously for more than four years, class counsel have protected and advanced the interests of the class, while handling complex issues. The Court is well-positioned to judge the quality of Class Counsel's work but the result achieved is the clearest reflection of counsel's skill and expertise.  *See In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 261 (D. Del. 2002) (class counsel "showed their effectiveness through the favorable cash settlement they were able to obtain").  As recognized in *Edmonds v. U.S.*, the "prosecution and management of a complex national class action requires unique legal skills and abilities." 658 F. Supp. 1126, 1137 (D. S.C. 1987).

In determining the skill required to perform the legal service properly, the quality of opposing counsel is also relevant.  *See, e.g., In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 194-95 (E.D. Pa. 2000); *In re Warner Commc'n Sec. Litig.*, 618 F. Supp. 735, 749  (S.D. N.Y. 1985) ("The quality of opposing counsel is also important in evaluating the quality of plaintiffs' counsels' work"); *Arenson v. Bd. of Trade of City of Chicago*, 372 F.

22

Supp. 1349, 1354 (N.D. Ill. 1974).   Here, Defendants were represented by experienced and able counsel with ample resources.  This factor thus also weighs in favor of approving Class Counsel's fee request here.

3.      There is no Lodestar Multiplier.

Although Class Counsel does not seek a lodestar multiplier[8], in light of the lodestar and the agreed-to cap on attorneys' fees, expenses and incentive awards, Class Counsel will effectively receive a negative lodestar of 0.568% in this case even if the Court grants the total amount of the fee request, which lodestar will turn increasingly negative in light of the additional work necessary to bring this litigation to final conclusion.

C.      **Class Counsel Should be Awarded Their Costs and Expenses.**

To date, Class Counsel has incurred a total of $91,946.94 in unreimbursed costs and expenses in this litigation.  Karl Aff.  at ¶ 30).  These costs and expenses reflect money spent on the following activities: travel  expenses, court filing fees, computer research, document hosting platform, experts, external and internal reproduction of documents  produced  in  the case, telephone, postage, and delivery costs, making court appearances, and paying for transcripts.  *Id.*

The costs and expenses that Class Counsel has incurred to date in this litigation were reasonable and appropriate for litigation of this size and duration.  Class Counsel took steps to

---

[8] One reason for rewarding attorneys with a multiplier is explained as follows:

> It unquestionably is true that without able lawyers handling these matters not only do some of them go unprosecuted, but the big difference in my experience is in the amount obtained and you don't get the highest recovery when you are paying at the low end of the scale of fee recovery in contingent actions, it seems to me, that I as the protector of the class can fairy say, and honestly say, that I believe it is in the best interest of this class and of future classes yet unknown to pay this kind of money for these kind of benefits.

Newberg, Attorney Fee Awards, §1.04 at 6 (1986).

23

coordinate their work and to avoid duplicative costs. *Id. at* ¶ 22.   Class Counsel, therefore, respectfully requests an order awarding reimbursement of their costs and expenses, which will come from the $2,000,000 settlement fund amount upon which the Parties have agreed.

## V.   INCENTIVE PAYMENTS TO CLASS PLAINTIFF REPRESENTATIVES ARE REASONABLE

Courts recognize that named plaintiffs are "an essential ingredient of any class action" and that "an incentive award can be appropriate to encourage or induce an individual to participate in the suit." *Scovil v. FedEx Ground Package System, Inc.,* No. 1:10-CV-515-DBH, 2014 WL 1057079 *6 (D. Maine, Mar. 14, 2014).   Incentive awards are viewed favorably because they encourage "named plaintiffs to participate actively in class action litigation in exchange for reimbursement for their pursuits on behalf of the class overall."   *Bezdek at *21-22.* Plaintiffs have actively pursued this litigation from the outset.   Their initiative, time, and effort were essential to the successful prosecution of the case.   They worked with Class Counsel to investigate and develop their respective cases and continued to work with Class Counsel after the JPML transferred these cases to this Court for coordinated or consolidated pretrial purposes. They participated in discovery by responding to interrogatories and document requests, supplementing them as necessary.   In addition, all of the plaintiffs prepared for and submitted to depositions by Defendant.   Plaintiffs conferred with Class Counsel during the ligation and settlement negotiations and they all support the terms of the Settlement Agreement.   Karl Aff. at ¶ 35, and Ex. 2-12 attached thereto.   They performed a valuable service for the other Settlement Class members and the public as a whole and should be monetarily recognized for that service.

Incentive awards are appropriate in light of the efforts made by the Class Plaintiffs to protect the interests of the other Settlement Class members, the time and effort the Class Plaintiffs expended pursuing this matter, and the substantial benefit the Class Plaintiffs helped achieve for the other Settlement Class members.  Incentive awards of $2,500 to each Class Plaintiff are well-deserved, reasonable, and equivalent to awards approved by other courts in this circuit.  *See generally, Scovil*, No. 1:10-CV-515-DBH, 2014 WL 1057079 at *6 (citing a 2006 study of incentive awards during 1993-2002 found the median incentive payment to be $4,537, with the average being $15,992)*; Bezdek* at *21-22.  No Settlement Class member has objected to these proposed incentive awards.  Based on the foregoing, Class Counsel respectfully request that the Court approve incentive awards of $2,500 for each of the five Class Plaintiffs.

## VI.   THE NOTICE ADMINISTRATORS FEES ARE REASONABLE

Angeion Group, LLC ("Angeion") is a class action notice and claims administration company that implements claims administration and notice solutions.  Declaration of Steven Weisbrot  attached as Exhibit B ("Weisbrot Dec.) at ¶3.  The Parties retained Angeion to provide settlement and notice administration services in accordance with CAFA requirements and the Notice Plan set forth in the Settlement Agreement.  *Id.* at 4.  Angeion has invoiced the parties for fees and costs totaling $174,496.00.  *Id.* at ¶11.  Angeion represents that, in light of its experience in matters of this type, this amount is reasonable in light of the services provided and the media purchased.  *Id.*

## VII.   CONCLUSION

Plaintiffs respectfully request that the Court grant their motion awarding attorneys' fees, expenses and representative plaintiffs' incentive awards in the aggregate amount of $2,000,000.

Dated: August 3, 2015

Respectfully submitted,

/s/ Lucy J. Karl
Lucy J. Karl
NH Bar No. 5547
**SHAHEEN & GORDON, P.A.**
107 Storrs Street
Concord, New Hampshire 03302
Telephone: (603) 225-7276
Facsimile: (603) 225-5112
lkarl@shaheengordon.com

*Plaintiffs' Interim Lead Counsel*

*Plaintiffs' Executive Committee*

Richard J. Arsenault
Douglas E. Rushton
**NEBLETT, BEARD & ARSENAULT**
2220 Bonaventure Court
P.O. Box 1190
Alexandria, Louisiana71309
Telephone: (216) 621-8484
Facsimile: (216)771-1632
rarsenault@nbalawfirm.com

John A. Peca
**CLIMACO, WILCOX, PECA,
TARANTINO & GAROFOLI CO.,
L.P.A.**
55 Public Square, Suite 1950
Cleveland, Ohio44113
Telephone: (216) 621-8484
Facsimile: (216) 771-1632
jrclim@climacolaw.com

Adam J. Levitt
Edmund S. Aronowitz
**WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLC**
55 West Monroe Street, Suite 1111
Chicago, Illinois60603
Telephone: (312) 984-0000
Facsimile: (312) 984-0001
levitt@whafh.com

Charles E. Schaffer
Brian F. Fox
**LEVIN, FISHBEIN, SEDRAN &
BERMAN**
510 Walnut Street, Suite 500
Philadelphia, Pennsylvania19106
Telephone: (215) 592-1500
Facsimile: (215) 592-4663
cschaffer@lfsblaw.com

26

Eric D. Holland
R. Seth Crompton
**HOLLANDGROVES SCHNELLER
& STOLZE, LLC**
300 North Tucker Boulevard, Ste. 801
St. Louis, Missouri63101
Telephone: (314) 241-8111
Facsimile: (314) 241-5554
eholland@allfela.com

*Plaintiffs' Steering Committee*

Matthew B. Butler
**NICHOLAS & BUTLER, LLP**
225 Broadway, 19th Floor
San Diego, California92101
Telephone: (619) 325-0492
Facsimile: (619) 325-0496
mbutler@nblaw.org

Laurence D. King
**KAPLAN FOX & KILSHEIMER LLP**
350 Sansome Street, Suite 400
San Francisco, California94104
Telephone: (415) 772-4700
Facsimile: (415) 329-4707
lking@kaplanfox.com

Jordan L. Chaikin
**PARKER & WAICHMAN LLP**
3301 Bonita Beach Road
Suite 103
BonitaSprings, Florida  34134
Telephone: (239) 390-1000
Facsimile: (239) 390-0055
jchaikin@yourlawyer.com

David C. Rash
**DAVID C. RASH, P.A.**
1655 North Commerce Parkway
Weston, Florida 33326
Telephone: (954) 515-0072
Facsimile: (954) 515-0073
david@dcrashlaw.com

James C. Shah
**SHEPHERD, FINKELMAN,
MILLER & SHAH, LLC**
35 East State Street
Media, Pennsylvania19063
Telephone: (610) 891-9880
Facsimile: (610) 891-9883
jshah@sfmslaw.com

27

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on August 3, 2015, she caused this document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of filing to counsel of record for each party.

Undersigned counsel further certifies that she caused this document to be served via First Class Mail, Postage Prepaid to the following:

Anna St. John
2512 Palmer Avenue
New Orleans, LA  70118

Michelle Schwanekamp
5764 Chestnut Ridge Drive
Cincinnati, OH  45230-3591

Linda D'Agostino
15 West Pine Way
Unit 14
Plainville, CT  06062


Dated: August 3, 2015                          By:      /s/ Lucy J. Karl
                                                        Lucy J. Karl
                                                        NH Bar #5547

28