UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

U.S. DISTRICT COURT
DISTRICT OF N.H
FILED

2015 AUG 10 P 1:46

| | | |
|---|---|---|
| IN RE: COLGATE-PALMOLIVE | ) | MDL Docket No. 12-md-2320 |
| SOFTSOAP ANTIBACTERIAL HAND | ) | |
| SOAP MARKETING AND SALES | ) | All Actions |
| PRACTICES LITIGATION (MDL No. 2320) | ) | |
| ——————————————————————— | ) | |

## ANNA ST. JOHN'S
## OBJECTION TO PROPOSED SETTLEMENT

# TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................................ii

TABLE OF AUTHORITIES...........................................................................................iii

INTRODUCTION ...........................................................................................................1

   I.      Anna St. John is a class member and intends to appear at the fairness hearing.......2

   II.     The class cannot be certified as a mandatory 23(b)(2) class. .....................................3

     A.    Monetary claims do not belong in mandatory 23(b)(2) classes. ..................................5

     B.    This class cannot be certified under (b)(2) because of the monetary components at stake. ................................................................................................................................6

        1.     Monetary claims predominate from the perspective of the class...........................7

        2.     Monetary claims predominate from the perspective of the operative complaint and the class's asserted claims. ..............................................................................10

        3.     Monetary claims predominate from the perspective of the release. ....................12

        4.     Predominance is not a matter of class counsel's subjective preferences; they cannot circumvent (b)(2)'s prerequisites by settling for injunctive relief. .....................13

   III.    Even if the class were certifiable, this settlement is not fair.....................................14

     A.    The ensemble of attorneys' fees and incentive award provisions signal a self-dealing settlement. ..............................................................................................................16

     B.    The Children's Health Fund is not a proper *cy pres* recipient. ...................................22

   IV.    Class counsel has failed to comply with Rule 23(h)...................................................25

CONCLUSION................................................................................................................25

# TABLE OF AUTHORITIES

**CASES**

*Abood v. Detroit Bd. of Educ.*, 431 U.S. 209 (1977) ...........................................................24

*Aho v. Americredit Fin. Servs.*, 2011 U.S. Dist. LEXIS 80426 (S.D. Cal. Jul. 25, 2011) ..............13

*Allen v. Bedolla*, 787 F.3d 1218, 2015 U.S. App. LEXIS 9139 (9th Cir. June 2, 2015) ..............17

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)................................................ 1, 4, 25

*Arch v. American Tobacco Co. Inc.*, 175 F.R.D. 469 (E.D. Pa. 1997)................................10

*Bacon v. Honda of Am. Mfg., Inc.*, 205 F.R.D. 466 (S.D. Ohio 2001)............................13

*Barnes v. Am. Tobacco Co.*, 161 F.3d 127 (3d Cir. 1998)...........................................4

*Blackman v. District of Columbia*, 633 F.3d 1088 (D.C. Cir. 2011)..................................4

*Bolin v. Sears, Roebuck & Co.*, 231 F.3d 970 (5th Cir. 2000) ..................................8, 13, 14

*Broussard v. Meineke Disc. Muffler Shops*, 155 F.3d 331 (4th Cir. 1998)..................................21, 22

*Brown v. Kelly*, 609 F.3d 467 (2d Cir. 2010)........................................................8

*Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598 (2001)...18

*Buckley v. Valeo*, 424 U.S. 1 (1976).................................................................24

*Casa Orlando Apts., Ltd. v. Fannie Mae*, 624 F.3d 185 (5th Cir. 2010) ...........................9

*Charrons v. Pinnacle Group N.Y. LLC*, 269 F.R.D. 221 (S.D.N.Y. 2010) .......................8

*Cholakyan v. Mercedes-Benz USA, LLC*, 281 F.R.D. 534 (C.D. Cal. 2012)........................9

*Christ v. Beneficial Corp.*, 547 F.3d 1292 (11th Cir. 2008)........................................10

*Crawford v. Equifax Payment Servs.*, 201 F.3d 877 (7th Cir. 2000) ............................10, 13, 19, 21

*Davis v. E. Baton Rouge Parish Sch. Bd.*, 78 F.3d 920 (5th Cir. 1996)..............................25

*Dennis v. Kellogg Co.*, 697 F.3d 858 (9th Cir. 2012)................................................15, 23

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011) ...................................13

*Felix v. Northstar Location Servs.*, 290 F.R.D. 397 (W.D.N.Y. 2013) ...........................8, 19

*Foley v. Buckley's Great Steaks, Inc.*, No. 14-cv-063-LM, 2015 U.S. Dist. LEXIS 46477 (D.N.H.
    Apr. 9, 2015)................................................................................22

*Galloway v. Kan. City Landsmen*, 2012 U.S. Dist. LEXIS 147148 (W.D. Mo. Oct. 12, 2012)....18

*Haggart v. Endogastric Solutions, Inc.*, 2012 U.S. Dist. LEXIS 89767 (W.D. Pa. Jun. 28, 2012)...8

*Harris v. Quinn*, 134 S. Ct. 2618 (2014) ...........................................................24

*Hecht v. United Collection Bureau*, 691 F.3d 218 (2d Cir. 2012) .................................passim

*Huber v. Taylor*, 2011 U.S. Dist. LEXIS 111704 (W.D. Pa. Sept. 29, 2011) ......................13

*In re Cmty. Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mortg. Litig.*, 418 F.3d 277
    (3d Cir. 2005)................................................................................20

*In re Aqua Dots Prods. Liab. Litig.*, 654 F.3d 748 (7th Cir. 2011) ...............................22

*In re Asbestos Sch. Litig.*, 46 F.3d 1284 (3d Cir. 1994)............................................24

*In re Baby Prods. Antitrust Litig.*, 708 F.3d 163 (3d Cir. 2013) ...................................25

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) ....................15, 16, 17, 20

*In re Cabletron Sys. Sec. Litig.*, 239 F.R.D. 30 (D.N.H. 2006) .........................................16

*In re Classmates.com Consol. Litig.*, No. 09-cv-0045-RAJ, 2012 U.S. Dist. LEXIS 83480 (W.D. Wash. Jun. 15, 2012) ................................................................................................3

*In re Dry Max Pampers Litig.*, 724 F.3d 713 (6th Cir. 2013) ................................... passim

*In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995) .7, 11, 16, 21

*In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1177 (9th Cir. 2013) .................................25

*In re Katrina Canal Breaches Litig.*, 628 F.3d 185 (5th Cir. 2010)...................................19

*In re Mercury Interactive Sec. Litig.*, 618 F.3d 988 (9th Cir. 2010) .................................25

*In re Monumental Life Ins. Co.*, 365 F.3d 408 (5th Cir. 2004) .........................................13

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 522 F.3d 6 (1st Cir. 2008) ......................9

*In re Nexium Antitrust Litig.*, 297 F.R.D. 168 (D. Mass. 2013).......................................10

*In re Oracle Secs. Litig.*, 132 F.R.D. 538 (N.D. Cal. 1990)..............................................19

*In re Telectronics Pacing Sys. Inc.*, 221 F.3d 870 (6th Cir. 2000).....................................14

*In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295 (1st Cir. 1995) ..................................................................................................17

*In re Tyco Int'l, Ltd.*, 535 F. Supp. 2d 249 (D.N.H. 2007) ..............................................17

*In re Visa Check/MasterMoney Antitrust Litig.*, 2011 U.S. Dist. LEXIS 122680 (E.D.N.Y. Oct. 24, 2011)...................................................................................................23

*Janes v. Triborough Bridge & Tunnel Auth.*, 2011 U.S. Dist. LEXIS 115831 (S.D.N.Y. Oct. 4, 2011) ........................................................................................................13

*Kartman v. State Farm Mut. Auto. Ins. Co.*, 634 F.3d 883 (7th Cir. 2011)......................11

*Klier v. Elf Atochem N. Am.*, 658 F.3d 468 (5th Cir. 2011) ...........................................24

*Knox v. Service Employees Int'l Union, Local 100*, 132 S. Ct. 2277 (2012).......................24

*Kottaras v. Whole Foods Mkt., Inc.*, 281 F.R.D. 16 (D.D.C. 2012) ................................10

*Latorraca v. Centennial Techs., Inc.*, 834 F. Supp. 2d 25 (D. Mass. 2011) ......................16

*Levell v. Monsanto Research Corp.*, 191 F.R.D. 543 (S.D. Ohio 2000)............................18

*Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012) ......................................12

*McClintic v. Lithia Motors, Inc.*, 2012 U.S. Dist. LEXIS 3846 (W.D. Wash. Jan. 12, 2012)........18

*McDonough v. Toys "R" Us*, No. 06-cv-00242, 2015 U.S. Dist. LEXIS 7510 (E.D. Pa. Jan. 21, 2015) ...........................................................................................................3

*McManus v. Fleetwood Enters., Inc.*, 320 F.3d 545 (5th Cir. 2003) ..................................8

*Mogel v. UNUM Life Ins. Co. of Am.*, 646 F.Supp.2d. 177 (D. Mass 2009) ....................8

*Monreal v. Potter*, 367 F.3d 1224 (10th Cir. 2004)........................................................10

*Morrow v. Washington*, 277 F.R.D. 172 (E.D. Tex. 2011) ............................................................. 13

*Murray v. GMAC Mortg. Corp.*, 434 F.3d 948 (7th Cir. 2006) ........................................................21

*Nilsen v. York Cnty.*, 400 F. Supp. 2d 266 (D. Me. 2005) ............................................................. 17

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999)............................................................................... 5

*Pearson v. NBTY, Inc.*, 772 F.3d 778 (7th Cir. 2014) ............................................................. passim

*Phillips Petroleum Co. v. Shutts,* 472 U.S. 797 (1985)....................................................................5

*Physicians Comm. for Responsible Med. v. General Mills, Inc.*, 283 Fed. Appx. 139 (4th Cir. 2008) 11

*Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943 (6th Cir. 2011) ..........................................12

*Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157 (9th Cir. 2013).............................................21

*Randall v. Rolls-Royce Corp.*, 637 F.3d 818 (7th Cir. 2011) ...........................................................13

*Redman v. RadioShack Corp.*, 768 F.3d 622 (7th Cir. 2014) ....................................................20, 25

*Reeb v. Ohio Dep't of Rehab & Corr.*, 435 F.3d 639 (6th Cir. 2006)..........................................6, 10

*Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277 (7th Cir. 2002) ...................................................18

*Richards v. Delta Air Lines, Inc.*, 453 F.3d 525 (D.C. Cir. 2006)............................................ 10, 11

*Richardson v. L'Oreal USA, Inc.*, 991 F. Supp. 2d 181 (D.D.C. 2013) ................................. passim

*Rodriguez v. Nat'l City Bank*, 726 F.3d 372 (3d Cir. 2013).............................................................. 4

*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009)...........................................................23

*Scott v. Blue Springs Ford Sales, Inc.*, 215 S.W.3d 145 (Mo. Ct. App. 2006) ...................................11

*Segal v. Bitar*, 2015 U.S. Dist. LEXIS 76620 (S.D.N.Y. May 26, 2015)........................................11

*Stearns v. Select Comfort Retail Corp.*, 2009 WL 1635931 (N.D. Cal. Jun. 5, 2009).......................11

*Stoneback v. ArtsQuest*, 2013 U.S. Dist. LEXIS 86457 (E.D. Pa. Jun. 19, 2013)...........................9

*Sylvester v. Cigna Corp.*, 369 F. Supp. 2d 34 (D. Me. 2005)...........................................................17

*Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672 (7th Cir. 2001) ....................................................12

*Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311 (4th Cir. 2006).............................................13

*Ticor Title Ins. Co. v. Brown*, 511 U.S. 117 (1994) ........................................................................5

*Trombley v. Bank of Am. Corp.*, 2012 U.S. Dist. LEXIS 63072 (D.R.I. May 4, 2012) .......... 15, 17

*True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052 (C.D. Cal. 2010).........................................19

*United States v. United Foods, Inc.*, 533 U.S. 405 (2001)...............................................................24

*Vought v. Bank of Am.*, 901 F. Supp. 2d 1071 (C.D. Ill. 2012).......................................................18

*Wal-Mart Stores Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ........................................................ passim

*Walsh v. Popular, Inc.*, 839 F. Supp. 2d 476 (D.P.R. 2012) ...........................................................16

*Weinberger v. Great Northern Nekoosa Corp.*, 925 F.2d 518 (1st Cir. 1991) ...............................3, 20

## STATUTES

Fed. R. Civ. P. 23(a).........................................................................................................................4

Fed. R. Civ. P. 23(a)(4) ............................................................................ 21, 22

Fed. R. Civ. P. 23(b)(2) ............................................................................ passim

Fed. R. Civ. P. 23(b)(3) ............................................................ 5, 10, 12, 14

Fed. R. Civ. P. 23(e)(2) ........................................................................... 14

Fed. R. Civ. P. 23(g)(4) ........................................................................... 22

## OTHER AUTHORITIES

Adam Liptak, *When Lawyers Cut Their Clients Out of the Deal*, N.Y. TIMES, Aug. 13, 2013, at A12 ................................................................................................................ 2

Advisory Committee Notes 39 F.R.D. 98 (1966) ................................................ 9

American Law Institute's Principles of the Law of Aggregate Litigation ("*ALI Principles*") (2010) ................................................................................................ 15, 23, 24

Brian T. Fitzpatrick, *The End of Objector Blackmail?*, 62 Vand. L. Rev. 1623 (2009) ................ 3

Brian Wolfman & Alan B. Morrison, *What the Shutts Opt-Out Right Is and What It Ought to Be*, 74 UMKC L. REV. 729 (2006) ................................................................ 9

Elizabeth Chamblee Burch, *Optimal Lead Plaintiffs*, 64 VAND. L. REV. 1109 (2011) ................ 14

Federal Judicial Center, MANUAL FOR COMPLEX LITIGATION § 21.612 (4th ed. 2004) ............ 7

I. Brant, *James Madison: The Nationalist* (1948) ................................................ 24

Linda S. Mullenix, *No Exit: Mandatory Class Actions in the New Millennium and the Blurring of Categorical Imperatives*, 2003 U. CHI. LEGAL F. 177 (2003) ................................ 14

Martin H. Redish *et al.*, *Cy Pres Relief & the Pathologies of the Modern Class Action: A Normative and Empirical Analysis*, 62 FLA. L. REV. 617 (2010) ........................................ 23

Martin H. Redish, WHOLESALE JUSTICE: CONSTITUTIONAL DEMOCRACY AND THE PROBLEM OF THE CLASS ACTION LAWSUIT 11 (2009) ................................................ 14

Ryan P. O'Quinn & Thomas Watterson, *Fair is Fair: Reshaping Alaska's Unfair Trade Practices and Consumer Protection Act*, 28 ALASKA L. REV. 295 (2011) ............................ 12

Samuel Issacharoff, *Preclusion, Due Process, and the Right to Opt Out of Class Actions*, 77 NOTRE DAME L. REV. 1057(2002) ................................................................ 6

Tiffany Kary, *Cancer-Linked Colgate Total Ingredient Suggests FDA Flaws*, Bloomberg Business (Aug. 11, 2014), *available at* http://www.bloomberg.com/news/articles/2014-08-11/in-35-pages-buried-at-fda-worries-over-colgate-s-total ........................................ 18

William D. Henderson, *Clear Sailing Agreements: A Special Form of Collusion in Class Action Settlements*, 77 TUL. L. REV. 813 (2003) ........................................................ 20

# INTRODUCTION

This settlement cannot be approved for multiple reasons. The proposed class is improperly certified; the settlement fails to produce any compensatory value for class members; yet it still earmarks nearly $2 million for class counsel and the named representatives, improperly making them the primary beneficiaries of the settlement, and reverts any remaining funds to an organization that engages in ideologically polarizing political advocacy and appears to have been chosen because of class counsel's conflict of interest.

In structure and design, the proposed settlement is a close cousin of those that were forcefully repudiated by the Sixth Circuit in *In re Dry Max Pampers Litig.* ("*Pampers*"), 724 F.3d 713 (6th Cir. 2013) and by the District Court for the District of Columbia in *Richardson v. L'Oreal USA, Inc.*, 991 F. Supp. 2d 181 (D.D.C. 2013). As in those cases, this settlement's provisions sustain class counsel, the named representatives, and the defendant, but disserve class members by waiving their claims in exchange for valueless labeling changes. *Pampers* rejected the "fictive" premise that former purchasers care about "every square centimeter" of a defendant's prospective labeling. 724 F.3d at 721. This objection does not complain that the settlement should be for a higher dollar value; the problem here is one of allocation: the "economic reality" is that a defendant merely cares about its total liability, and not the fair allocation of damages and relief. *Id.* at 717; *Pearson v. NBTY, Inc.*, 772 F.3d 778, 786 (7th Cir. 2014). Colgate is entitled to settle a case for $2 million, but class counsel cannot allocate the entire economic benefit of the settlement to themselves.

Class counsel owes a fiduciary duty to their client—but the client is not a free-floating abstract entity; rather it is the class of discrete individuals who purchased Softsoap over the last two decades. Rule 23's subsections afford these individuals numerous protections, several of which are flagrantly violated by this settlement. *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 617, 620, 623 (1997). This settlement flouts subsection (b)(2) because the class definition, class claims, and available relief all indicate that monetary claims predominate, precluding (b)(2) certification. *See, e.g., Wal-Mart Stores Inc. v. Dukes,* 131 S. Ct. 2541 (2011). It flouts (a)(4) and (e)(2) by allocating the entirety of the settlement

proceeds to class counsel and the named representatives. *See, e.g., Pampers*, 724 F.3d 713. The reversion of any remaining funds to an organization engaged in political advocacy raises additional fairness and First Amendment concerns. It would be reversible error to approve the certification and settlement.

## I.    Anna St. John is a class member and intends to appear at the fairness hearing.

Anna St. John is a member of the putative (b)(2) settlement class, preliminarily certified as all persons who purchased Softsoap-branded liquid hand soap that contained the antibacterial ingredient triclosan in the United States from January 1, 1992, up to and including the Notice Date. St. John is a U.S. citizen and resident who purchased Softsoap containing triclosan on multiple occasions from at least 2007 to 2011 at retail locations in northern Virginia. *See* St. John Decl. ¶¶ 3-4. She is therefore a member of the putative class with standing to object. Her address is 2512 Palmer Avenue, New Orleans, LA 70118; her telephone number is 917-327-2392; her email address is annastjohn@gmail.com. *Id.* at ¶ 2. She is an attorney with the public interest law firm Center for Class Action Fairness ("CCAF") and intends to appear *in pro per* at the Fairness Hearing to discuss the points raised in this Objection and to address any responses that the settling parties may make. She requests fifteen minutes to reply to any responses to her objection and answer any questions the Court may have; she does not plan to call any witnesses but reserves the right to cross-examine any witnesses who testify in support of the certification or settlement.

CCAF, established in 2009, represents class members *pro bono* in class actions where class counsel employs unfair class action procedures to benefit themselves at the expense of the class. *See e.g., Pearson*, 772 F.3d at 787 (observing that CCAF's client "flagged fatal weaknesses in the proposed settlement" and demonstrated "why objectors play an essential role in judicial review of proposed settlements of class actions"); *Pampers*, 724 F.3d at 716-17 (describing CCAF's client's objections as "numerous, detailed, and substantive") (reversing settlement approval and certification); *Richardson*, 991 F. Supp. 2d at 205 (describing CCAF's client's objection as "comprehensive and sophisticated" and noting that "[o]ne good objector may be worth many frivolous objectors in ascertaining the fairness of a settlement") (rejecting settlement approval and certification); Adam Liptak, *When Lawyers*

*Cut Their Clients Out of the Deal*, N.Y. TIMES, Aug. 13, 2013, at A12 (calling CCAF's founder and president "[t]he leading critic of abusive class-action settlements"). CCAF has won millions of dollars for class members. *See, e.g., McDonough v. Toys "R" Us*, No. 06-cv-00242, 2015 U.S. Dist. LEXIS 7510, at *141 (E.D. Pa. Jan. 21, 2015) ("CCAF's time was judiciously spent to increase the value of the settlement to class members") (internal quotation omitted); *In re Classmates.com Consol. Litig.*, No. 09-cv-0045-RAJ, 2012 U.S. Dist. LEXIS 83480, at *29 (W.D. Wash. Jun. 15, 2012).

CCAF refuses to engage in *quid pro quo* settlements and does not extort attorneys; it has never received payment for withdrawing an objection. Instead, it is funded entirely through charitable donations and court-awarded attorneys' fees. To preempt any possibility of a false and unjustifiable accusation of objecting in bad faith and seeking to extort class counsel, St. John is willing to stipulate to an injunction prohibiting herself from accepting compensation in exchange for the settlement of this objection. *See* Brian T. Fitzpatrick, *The End of Objector Blackmail?*, 62 VAND. L. REV. 1623 (2009) (suggesting inalienability of objections as solution to objector blackmail problem). St. John brings this objection through CCAF in good faith to protect the interests of the class.

## II.   The class cannot be certified as a mandatory 23(b)(2) class.

"Class-action settlements are different from other settlements." *Pampers*, 724 F.3d at 715. "[I]n class-action settlements the district court cannot rely on the adversarial process to protect the interests of the persons most affected by the litigation—namely, the class. Instead, the law relies upon the fiduciary obligations of the class representatives and, especially, class counsel, to protect those interests. And that means the courts must carefully scrutinize whether those fiduciary obligations have been met." *Id.* at 718 (internal quotation omitted). Thus, through its oversight responsibility, the court itself assumes a derivative fiduciary obligation as a "guarantor of fairness" to class members. *Weinberger v. Great Northern Nekoosa Corp.*, 925 F.2d 518, 525 (1st Cir. 1991); *Pampers*, 724 F.3d at 718.

This judicial duty to vouchsafe the rights of the absent plaintiffs extends to the decision to grant class certification, obliging district courts to conduct a "rigorous analysis" to ensure compliance with the Rule 23 certification prerequisites. *Dukes*, 131 S. Ct. at 2551. A proponent of class certification

"must affirmatively demonstrate his compliance with the Rule." *Id.* Aside from trial manageability concerns, that burden is no lighter when the Court is confronted with a settlement-only class certification. In fact, the specifications of Rule 23(a) and (b)(2) are "designed to protect absentees by blocking unwarranted or overbroad class definitions" and "demand undiluted, even heightened, attention in the settlement context." *Amchem*, 521 U.S. at 620; *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 380 (3d Cir. 2013) (the "policy in favor of voluntary settlement does not alter the 'rigorous analysis' needed to ensure that the Rule 23 requirements are satisfied").

Rule 23(b)(2) allows a class action to be maintained if 23(a)(1)-(4) are satisfied and "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Rule 23(b)(2), however, lacks several vital procedural protections that are afforded to absent class members in a (b)(3) class, paramount among them the statutory rights to exclude oneself and to the "best notice that is practicable." Given this divergence in treatment, courts must be even more vigilant in their enforcement of the specifications of (b)(2). The most potent textual protection is the requirement that "final injunctive relief or corresponding declaratory relief [be] appropriate respecting the class as a whole." Fed R. Civ. P. 23(b)(2); *Dukes,* 131 S. Ct. at 2560 ("[T]he validity of a (b)(2) class depends on whether 'final injunctive relief or corresponding declaratory relief is appropriate respecting the class *as a whole.*'" (quoting Rule 23(b)(2) and adding emphasis)).

Two consequences follow from this textual prescription. First, (b)(2) classes are not suitable for asserting monetary claims, especially claims that accrue on an individual basis. *Dukes*, 131 S. Ct. at 2557 ((b)(2) "does not authorize class certification when each class member would be entitled to an individualized award of monetary damages"). Second, "cohesiveness is a significant touchstone of a (b)(2) class." *Blackman v. District of Columbia*, 633 F.3d 1088, 1094 (D.C. Cir. 2011) (Brown, J., concurring) (citing *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 142-43 & n.18 (3d Cir. 1998)); *accord Reeb v. Ohio Dep't of Rehab. & Corr.*, 435 F.3d 639 (6th Cir. 2006) ("homogeneity of interests" required for

mandatory class treatment). The putative class here lacks a homogeneous interest in prospective injunctive relief and asserts individual monetary claims, each of which precludes (b)(2) certification.

### A.   Monetary claims do not belong in mandatory 23(b)(2) classes.

The Supreme Court, with increasing frequency, has indicated that 23(b)(2) class actions cannot accommodate claims for monetary relief. When *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 812 (1985) declared that absent class members have a due process right to opt out from class actions involving predominantly money damages, the Court left undecided the question of whether due process compelled the opt-out right in actions that did not seek predominantly money damages. *Id.* at 811-12 n.3. Since *Phillips Petroleum,* all indications from the Court point to the conclusion that due process demands the right to opt out in any action containing any claim, even a non-predominant one, for monetary relief. *See Ticor Title Ins. Co. v. Brown,* 511 U.S. 117, 121 (1994) (dismissing certiorari as improvidently granted, noting "at least a substantial possibility" that "in actions seeking [any] monetary damages, classes can be certified only under 23(b)(3), which permits opt out"); *Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 845-46 (1999) (warning that certifying a mandatory class that includes money damages could compromise constitutional rights of absent class members).

Most recently, *Dukes* determined that the "serious possibility that [the inclusion of monetary claims without a right to opt out would violate due process] provides an additional reason not to read Rule 23(b)(2) to include the monetary claims here." 131 S. Ct. at 2559. In so concluding, the Court reasoned that

> [t]he mere "predominance" of a proper (b)(2) injunctive claim does nothing to justify elimination of Rule 23(b)(3)'s procedural protections: It neither establishes the superiority of *class* adjudication over *individual* adjudication nor cures the notice and opt-out problems. We fail to see why the Rule should be read to nullify these protections whenever a plaintiff class, at its option, combines its monetary claims with a request—even a "predominating request"—for an injunction.

*Id.* Both *Dukes* and *Ortiz* were decisions driven by the canon of constitutional avoidance. They imply that any time a class action seeks monetary relief on the basis of individuated aggregated claims, as

opposed to a unitary group claim, one should read Rule 23 as demanding (b)(3) certification. "[S]uch individual claims for money damages will always predominate over requested injunctive or declaratory relief." *Reeb*, 435 F.3d at 641. This standard, much like the "incidental damages" standard,[1] effectively harmonizes the Supreme Court's recurrent constitutional concerns with the idea that (b)(2) certifications should go forward when money damages do not "predominate."

*Dukes,* the Supreme Court's most forceful proclamation to date, strongly implies that whenever monetary claims are at stake, class members must be permitted the opportunity to opt out and proceed on their own. 131 S. Ct. at 2559. And this Court should so hold. But, "at a minimum," it affirmatively commands courts to avoid certifying "claims for individualized relief" within mandatory (b)(2) classes. *Id.* at 2557.

### B.    This class cannot be certified under (b)(2) because of the monetary components at stake.

Although *Dukes* disclaimed the significance of "predominating" injunctive claims, even if the opinion is read most narrowly (to adopt the *Allison* standard and permit non-individualized or incidental monetary relief within a constitutionally-viable (b)(2) class), this settlement does not meet that standard.[2] Thus, it makes sense to evaluate the nature of the money damages claims at stake in this settlement under the minimum threshold test of *Dukes*. Do the monetary claims accrue to the class as a whole (i.e. are incidental) or do they accrue to individual class members (i.e. are predominating)?

---

[1] Incidental damages can be defined as those "'that flow directly from liability to the class *as a whole* on the claims forming the basis of the injunctive or declaratory relief.'" *Dukes,* 131 S. Ct. at 2560 (quoting *Allison v. Citgo Petroleum Corp.,* 151 F.3d 402, 415 (5th Cir. 1998)).

[2] It suffices to say that the claims here are not group-based, but are ones that accrued to individuals under the laws of various states upon the purchase of goods. *See* Samuel Issacharoff, *Preclusion, Due Process, and the Right to Opt Out of Class Actions,* 77 NOTRE DAME L. REV. 1057, 1073 (2002) (noting "an important distinction in the nature of the claim between those that truly inhere in the collective entity of the class and those that are merely an aggregation of what might otherwise be self-sustaining individual causes of action."). For the sake of completeness, however, see the remainder of this section.

The predominance inquiry is made less tractable by the fact that the plaintiffs and defendants seek certification of a settlement-only class. Delaying certification until settlement poses various problems, *see In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 786-800 (3d Cir. 1995) ("*GM Trucks*"), and calls for heightened judicial scrutiny of the certification, *id.* at 807; *accord Pampers*, 724 F.3d at 721; MANUAL FOR COMPLEX LITIG. § 21.612.

If this class was being certified for trial, the (b)(2) analysis would be a comparatively easy matter of two steps: (1) look to the complaint and determine whether any monetary relief sought is incidental; and (2) make sure that the class has the requisite cohesiveness and homogeneity. The second step of the inquiry alternatively can ask whether the injunctive relief predominates from the perspective of the class; indeed, whether "final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." *See* Fed. R. Civ. P. 23(b)(2); *Dukes*, 131 S. Ct. at 2560. But because this is a settlement class, two new factors complicate the analysis: (3) the actual relief obtained in the settlement; and (4) the claims released in the settlement. *See Hecht v. United Collection Bureau*, 691 F.3d 218, 223-24 (2d Cir. 2012) (explaining how to discern "predominance" in a (b)(2) settlement class and focusing on "retrospective" class definition to find certification improper).

This Court should not certify the class if any of the above four factors weigh against (b)(2) certification. Ultimately, the composition of the class, the type of claims class members possess, the allegations of the complaint, and the claims they will release, all lead to the inescapable conclusion that monetary claims predominate. The parties may not end-run this conclusion by settling for non-compensatory injunctive relief.

1.    **Monetary claims predominate from the perspective of the class.**

The fact that monetary claims predominate (and (b)(2) certification is inappropriate) is apparent from the class definition. The class is defined as "all persons who *purchased* the Product in the United States ...." Proposed Settlement Agreement and Release ("Settlement") (Dkt. 92-2) § 18.a (emphasis added). Cohesive classes coalesce behind a common interest that makes appropriate the granting of final injunctive or corresponding declaratory relief. No such interest exists here. In this

case there is a discontinuity between the class definition—former buyers—and the prospective injunctive relief sought in the complaint (Dkt. 91) and obtained in the settlement. Settlement § V. All settlement relief could benefit only future purchasers of Colgate products, but the class comprises past purchasers.

*Hecht* demonstrates how attempting (b)(2) certification is futile: when class members are "victims of a completed harm with no reference to ongoing injury or risk of future injury," when the definition "ensure[s] that every member would be entitled to damages, but not that every member would have standing to seek injunctive relief," (b)(2) certification is improper. 691 F.3d at 223-24. *Hecht* follows a wide consensus of courts that have rejected attempts at shoehorning former customers, ex-employees, or any individuals who suffered a discrete harm in the past and who no longer have an ongoing relationship into 23(b)(2) classes that offer prospective injunctive relief. *See, e.g., Brown v. Kelly*, 609 F.3d 467, 482 (2d Cir. 2010); *McManus v. Fleetwood Enters.*, 320 F.3d 545, 553 (5th Cir. 2003); *Bolin v. Sears, Roebuck & Co.*, 231 F.3d 970, 978 (5th Cir. 2000); *Charrons v. Pinnacle Group N.Y. LLC*, 269 F.R.D. 221, 229 (S.D.N.Y. 2010); *Mogel v. UNUM Life Ins. Co. of Am.*, 646 F. Supp. 2d 177, 184 (D. Mass. 2009).

*Dukes* should eliminate any doubt that may have remained in the wake of these cases:

> [E]ven though the validity of a (b)(2) class depends on whether "final injunctive relief or corresponding declaratory relief is appropriate respecting the class *as a whole*," about half the members of the class approved by the Ninth Circuit have no claim for injunctive or declaratory relief at all. Of course, the alternative (and logical) solution of excising plaintiffs from the class as they leave their employment may have struck the Court of Appeals as wasteful of the District Court's time.

131 S. Ct. at 2560 (internal citation omitted). Thus, post-*Dukes*, courts frequently deny (b)(2) certifications as inconsonant with retrospectively-defined classes. *See e.g., Felix v. Northstar Location Servs.*, 290 F.R.D. 397, 406 (W.D.N.Y. 2013) (denying (b)(2) certification where class was defined as those who had "*received*" telephonic messages in the past (emphasis in original)); *Haggart v. Endogastric Solutions, Inc.*, 2012 U.S. Dist. LEXIS 89767, at *20 (W.D. Pa. Jun. 28, 2012) ("Even more essentially

fatal to his motion for certification under (b)(2) is that Plaintiff only seeks to enjoin Defendant from making representations to future potential EsophyX procedure patients; i.e., to individuals *who are not members of the class as defined.*" (emphasis in original)); *Cholakyan v. Mercedes-Benz USA*, 281 F.R.D. 534, 559 (C.D. Cal. 2012); *Stoneback v. ArtsQuest*, 2013 U.S. Dist. LEXIS 86457, at *37 (E.D. Pa. June 19, 2013) (class of past purchasers of beer steins could not be certified under (b)(2)). Commentators have also recognized the problem of mandatory injunctive relief settlement classes that remit no benefit to the class. *See e.g.*, Brian Wolfman & Alan B. Morrison, *What the Shutts Opt-Out Right Is and What It Ought to Be*, 74 UMKC L. REV. 729, 740 (2006).

Certainly, a 23(b)(2) class is appropriate when the class comprises individuals who maintain an ongoing relationship with the defendant. The prototypical example is a desegregation injunction in a civil rights case. *See* Advisory Committee Notes, 39 F.R.D. 98, 102 (1966). "While (b)(2) classes are not exclusively reserved for civil rights disputes, this class type is especially suited for those plaintiffs." *Casa Orlando Apts., Ltd. v. Fannie Mae*, 624 F.3d 185, 200-201 (5th Cir. 2010). But when the only shared characteristic amongst class members is that they have purchased Softsoap some time in the past 23 years, the requisite homogeneous interests necessary to cohere a class around injunctive relief are not present.

More fatal yet for the (b)(2) certification, Colgate no longer sells Softsoap using triclosan and "has no present intention to reintroduce triclosan as an ingredient in its Product." Settlement ¶ 30(a). Thus, there is no factual predicate for standing to seek injunctive relief or to certify a Rule 23(b)(2) class. Injunctions are "unavailable…where there is no showing of any real or immediate threat that the plaintiff will be wronged again." *Hecht*, 691 F.3d at 223-24 (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)). In equivalent circumstances, the First Circuit held (b)(2) certification to be reversible error. *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 522 F.3d 6, 11-16 (1st Cir. 2008). Even if the product was eventually reintroduced, some class members may again purchase Softsoap, but others may not, and therefore the remedy is not a unitary and indivisible injunction "benefitting all its members at once." *Dukes*, 131 S. Ct. at 2558.

Neither the class, nor the circumstances of the case befit a (b)(2) injunctive certification.

### 2.  Monetary claims predominate from the perspective of the operative complaint and the class's asserted claims.

In determining whether injunctive relief predominates for (b)(2) purposes, analyzing the complaint is customary procedure in courts across the nation. *E.g., Reeb*, 435 F.3d at 642; *Christ v. Beneficial Corp.*, 547 F.3d 1292 (11th Cir. 2008); *Monreal v. Potter*, 367 F.3d 1224, 1236 (10th Cir. 2004). "If recovery of damages is at the heart of the complaint, individual class members must have a chance to opt out of the class and go it alone—or not at all." *Richards v. Delta Air Lines, Inc.*, 453 F.3d 525, 530 (D.C. Cir. 2006); *see also In re Nexium Antitrust Litig.*, 297 F.R.D. 168, 173-74 (D. Mass. 2013) (even if the class is faced with "continuing harms," (b)(2) is not an appropriate vehicle where primary claims are monetary). Even where the court is dealing with a settlement-only class certification, looking to an adversarial complaint is still advisable. *See Hecht*, 691 F.3d at 223 ("The … complaint requested 'the maximum statutory damages' under the FDCPA but failed even to mention injunctive relief."); *Crawford v. Equifax Payment Servs.*, 201 F.3d 877, 881 (7th Cir. 2000) ("Crawford's pleadings sought certification under Rule 23(b)(3), and the switch to Rule 23(b)(2) was a last-minute change.").

Here, the complaint seeks economic, monetary, and actual damages, consequential, compensatory, and statutory damages, exemplary damages, disgorgement, restitution, actual damages, and pre- and post-judgment interest—all monetary remedies. *See* Complaint § VIII. Although plaintiffs paired their requests for monetary relief with one for injunctive relief, the monetary claims are "non-incidental" under *Dukes* because they arise out of individual purchases. *See Kottaras v. Whole Foods Mkt., Inc.*, 281 F.R.D. 16, 27 (D.D.C. 2012) ("The injury alleged is financial loss due to overcharges resulting from the merger. This is economic harm."). The status of the class and class representatives in relationship to the defendant and the claims alleged in the complaint dictate that, if anything, this class should be certified as a 23(b)(3) class. "[I]ndividualized monetary claims belong in Rule 23(b)(3)." *Dukes*, 131 S. Ct at 2558

The nature of claims at issue and available remedies further demonstrate that monetary claims predominate. Certification under Rule 23(b)(2) is "necessarily improper" when money damages are an adequate remedy. *Kartman v. State Farm Mut. Auto. Ins. Co.*, 634 F.3d 883, 892 (7th Cir. 2011). "The general rule is that injunctive relief will not issue when an adequate remedy at law exists." *Richards*, 453 F.3d at 531 n.6; *Segal v. Bitar*, 2015 U.S. Dist. LEXIS 76620, at *43-*44 (S.D.N.Y. May 26, 2015) (denying (b)(2) settlement certification when money damages were an adequate remedy at law).

The nationwide putative class here alleges consumer protection, breach of express and implied warranty, and unjust enrichment claims. Complaint ¶ 67. Monetary damages are an adequate remedy at law for breach of warranty. *See GM Trucks*, 55 F.3d at 816 ("[T]he measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount." (quoting UCC § 2-714(2))); *Stearns v. Select Comfort Retail Corp.*, 2009 WL 1635931 (N.D. Cal. Jun. 5, 2009) ("A remedy for breach of express warranty should provide the buyer with the 'substantial value of the bargain.'" (citing UCC § 2-719)). As for unjust enrichment, "the standard remedy [is] restitution in money." Restatement (Third) of Restitution and Unjust Enrichment §49 cmt. a (2011). That monetary damages are also an adequate remedy for consumer protection claims is underscored by the fact that, while the statutes vary from state to state, many do not allow private plaintiffs to act as private attorneys general and limit such plaintiffs to monetary relief. *See, e.g., Physicians Comm. for Responsible Med. v. General Mills, Inc.*, 283 Fed. Appx. 139, 142 (4th Cir. 2008) (private parties cannot seek injunctive relief under Virginia consumer protection law); *Scott v. Blue Springs Ford Sales, Inc.*, 215 S.W.3d 145, 161 (Mo. Ct. App. 2006) (private parties cannot obtain injunctive relief to protect the general public under Missouri consumer protection law).

Even if prospective injunctions were permissible remedies for consumer protection, unjust enrichment and breach of warranty claims, monetary claims under those causes of action are not incidental. This is because these claims are "dependent in significant way[s] on the intangible, subjective differences of each class member's circumstances." *Allison*, 151 F.3d at 415. Compensatory

damages and restitution amounts vary with the individual purchase price and quantity. Any potential statutory liquidated damages would vary depending upon the geographical location of the individual purchase. Ryan P. O'Quinn & Thomas Watterson, *Fair is Fair: Reshaping Alaska's Unfair Trade Practices and Consumer Protection Act*, 28 ALASKA L. REV. 295, 305-06 (2011) (cataloguing state by state variation).

Furthermore, "[t]he elements necessary to establish a claim for unjust enrichment also vary materially from state to state." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 591 (9th Cir. 2012). The same heterogeneity can be found in a state-to-state analysis of the law of breach of express warranty claims and consumer protection claims. *See Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 674 (7th Cir. 2001) ("few warranty cases ever have been certified as class actions—let alone as nationwide classes, with the additional choice-of-law problems that complicate such a venture"); *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 946 (6th Cir. 2011) ("Rule 23(b)(3) [is] the only conceivable vehicle for [a nationwide consumer fraud] claim.").

The allegations of the complaint and the type of claims at issue dictate that, if anything, this class should be certified as a 23(b)(3) class.

### 3.    Monetary claims predominate from the perspective of the release.

Next, a thorough (b)(2) analysis entails examining the preclusive effects that the settling parties intend to foist upon absent class members. *Richardson*, 991 F. Supp. 2d at 199 ("*Shutts* is, at bottom, about the preclusive effect of a judgment"). Determining the preclusive effects is easier in the settlement context where the agreement details the scope of the released claims. Here, paragraphs 31-34 of the Settlement Agreement delineate the contours of the release.

In a (b)(2) class settlement, the release should confine itself to future claims for injunctive relief, without encroaching on absent class members' right to bring claims for monetary relief. *Dukes*, 131 S. Ct. at 2559 (expressing concern that monetary claims "would be *precluded* by litigation [class members] had no power to hold themselves apart from"). Paragraph 31 stipulates that class members shall release "all equitable Claims for relief, of whatever type or description" arising out of the same factual predicate as the claims asserted in this action.

This release exceeds the bounds of (b)(2) because as the Supreme Court recently made clear in *Dukes*, the proper division is not between "equitable" and "legal" claims but between "injunctive" and "monetary" ones. 131 S. Ct. at 2560; *see also Randall v. Rolls-Royce Corp.*, 637 F.3d 818, 825–26 (7th Cir. 2011); *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 331 (4th Cir. 2006). A waiver of "equitable" claims bars absent class members from seeking monetary relief in the form of disgorgement or restitution. *See* Complaint ¶ 72 (common questions include whether class members are entitled to "equitable relief … including … restitution"). In the wake of *Dukes*, the consensus is that disgorgement and restitution claims may not be incorporated into a mandatory class. *See, e.g., Morrow v. Washington*, 277 F.R.D. 172, 203 (E.D. Tex. 2011) (equitable restitution and compensatory damage claims are not incidental); *Huber v. Taylor*, 2011 U.S. Dist. LEXIS 111704, at *21 n.16 (W.D. Pa. Sept. 29, 2011) (refusing to certify a (b)(2) class when "disgorgement … is an individual right of each wronged [class member]."); *Aho v. Americredit Fin. Servs.*, 2011 U.S. Dist. LEXIS 80426, at *20 (S.D. Cal. July 25, 2011) ("[R]estitutionary relief…is not incidental"); *Janes v. Triborough Bridge & Tunnel Auth.*, 2011 U.S. Dist. LEXIS 115831, at *16 (S.D.N.Y. Oct. 4, 2011) (similar). Thus, paragraph 31 of the Settlement Agreement errs by purporting to discharge equitable monetary relief.

### 4. Predominance is not a matter of class counsel's subjective preferences; they cannot circumvent (b)(2)'s prerequisites by settling for injunctive relief.

Although it is a necessary precondition to a (b)(2) settlement certification that the class obtain injunctive relief, it is not a sufficient one. As shown by *Hecht, Crawford,* and *Bolin, inter alia*, this Court must also consider the class definition, the injuries alleged, and the claims released. This case is a perfect instantiation of why Rule 23(b)(2) cannot be read as requiring the court to accept the plaintiffs' ranking in importance of the various forms of relief they seek. *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 986-87 (9th Cir. 2011) (citing *Dukes*). Nor can the rule be read to allow the class representatives' subjective intentions to govern the predominance inquiry. *In re Monumental Life Ins. Co.*, 365 F.3d 408, 415 (5th Cir. 2004).

Despite "all the high-minded rhetoric plaintiffs' and defense attorneys may attach to the virtues of opt-outs, all such principles will be abandoned when plaintiffs' and defense interests

converge on the utility of the mandatory classes." Linda S. Mullenix, *No Exit: Mandatory Class Actions in the New Millennium and the Blurring of Categorical Imperatives*, 2003 U. CHI. LEGAL F. 177, 241 (2003). That point of convergence is at the time of settlement, when the defendants seek to broaden the global peace they will attain, and the plaintiffs would prefer not to have to overcome the (b)(3) hurdles of predominance and superiority. *See In re Telectronics Pacing Sys. Inc.*, 221 F.3d 870, 880 (6th Cir. 2000) ("The bootstrapping of a Rule 23(b)(3) class into a [mandatory] class is impermissible and highlights the problem with defining and certifying class actions by reference to a proposed settlement."); *Bolin*, 231 F.3d at 976 (evincing concern that "plaintiffs may attempt to shoehorn damages actions into the Rule 23(b)(2) framework, depriving class members of notice and opt-out protections"); Martin H. Redish, WHOLESALE JUSTICE: CONSTITUTIONAL DEMOCRACY AND THE PROBLEM OF THE CLASS ACTION LAWSUIT 11 (2009) (discussing atttorneys' incentive to argue for mandatory certification); Elizabeth Chamblee Burch, *Optimal Lead Plaintiffs*, 64 VAND. L. REV. 1109, 1119 (2011) ("Settling shifts the game into a peacemaking mode where achieving finality means keeping as many class members as possible in the settlement.").

Putative class members have become the "sacrificial pawn." *See* Mullenix, *supra*, at 241. The incentives no longer align the settling parties with protecting the interests of unnamed parties. The Court is the last line of defense and must conduct an independent evaluation of whether monetary relief predominates. It does.

**III.     Even if the class were certifiable, this settlement is not fair.**

This Court should reject the settlement on the various grounds that demonstrate that the underlying class cannot be certified as requested. These arguments bleed into the corollary 23(e)(2) question of whether the settlement is "fair, reasonable and adequate." For instance, if final injunctive relief is not appropriate respecting the class as a whole, any settlement that offers only injunctive relief will be *per se* inadequate. Nonetheless, there are several independent reasons why this Court should reject the settlement under 23(e) even if it accepts that the class itself is viable.

The burden of proving settlement fairness lies squarely with the proponents. *Pampers*, 724 F.3d at 719 (compiling cases and authorities); *accord* American Law Institute's Principles of the Law of Aggregate Litigation ("*ALI Principles*") § 3.05(c) (2010) ("In reviewing a proposed settlement, a court should not apply any presumption that the settlement is fair and reasonable."). The burden is heightened when the parties seek approval of a pre-certification settlement. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946-947 (9th Cir. 2011) (citing cases); *accord Trombley v. Bank of Am. Corp.*, 2012 U.S. Dist. LEXIS 63072, at *10 (D.R.I. May 4, 2012).

Courts "'must be particularly vigilant'" not only for explicit collusion, but also for more "'subtle signs that class counsel have allowed pursuit of their own self-interests … to infect the negotiations.'" *Pampers*, 724 F.3d at 718 (quoting *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012)); *accord Pearson*, 772 F.3d at 787 (district courts must be "vigilant and realistic" in their review, nixing "selfish deal[s]" when they "disserve" the class). Although it is *necessary* that a settlement is at "arm's length" without express collusion between the settling parties, it is not *sufficient*. "While the Rule 23(a) adequacy of representation inquiry is designed to foreclose class certification in the face of 'actual fraud, overreaching or collusion,' the Rule 23(e) reasonableness inquiry is designed precisely to capture instances of unfairness not apparent on the face of the negotiations." *Bluetooth*, 654 F.3d at 948 (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 960 (9th Cir. 2003)).

In order to approve a settlement, courts must scrutinize the agreement to ensure it is not a lawyers' bargain at the expense of class members. *Trombley*, 2012 U.S. Dist. LEXIS 63072, at *8. Mutual self-interest of class counsel and defendants leads to the most common settlement defects—those of allocation. This is because "the adversarial process—or 'hard-fought' negotiations—extends only to the amount the defendant will pay, not the manner in which that amount is *allocated* between the class representatives, class counsel, and unnamed class members." *Pampers*, 724 F.3d at 717 (emphasis in original). "[A]n economically rational defendant will be indifferent to the allocation of dollars between class members and class counsel … [c]aring only about his total liability." *Pearson*, 772 F.3d at 786.

Not unexpectedly, then, the foremost 23(e)(2) deficiency here relates to the issue of allocation: class counsel and the named representatives are seizing the entirety of the available cash proceeds and, to the extent any cash remains, giving it to an improper *cy pres* recipient, thus leaving class members with zero recovery.

### A.     The ensemble of attorneys' fees and incentive award provisions signal a self-dealing settlement.

The settlement agreement permits class counsel to seek, unopposed, an award of fees and costs of $2,000,000, Settlement Agmt ¶ 37, including incentive awards of $2,500 for each class representative, *id.* ¶ 38. Putative class members are entitled only to injunctive labeling relief on a product no longer being sold. *Id.* ¶30. As in *Pampers*, the signs of an unfair deal that affords preferential treatment to class counsel are "not particularly subtle." 724 F.3d at 718.

Courts across the country are opening their eyes to the hallmarks of self-centered lawyer-driven settlements. The first red flag is "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded." *Bluetooth*, 654 F.3d at 947; *Richardson*, 991 F. Supp. 2d at 204; *GM Trucks*, 55 F.3d at 803 ("non-cash relief … is recognized as a prime indicator of suspect settlements"); *Pearson*, 772 F.3d at 782 ("especially in consumer class actions … the presumption should we suggest be that attorneys' fees awarded to class counsel should not exceed a third or at most a half of the total amount of money going to class members and their counsel"). Here, the putative (b)(2) class receives meaningless injunctive relief while the settlement agreement permits class counsel to seek, unopposed, an award of fees and costs of $2,000,000.

A proportionate attorney award adheres to the 25% of the fund benchmark followed by courts of this Circuit.[3] An award that vastly exceeds this benchmark is disproportionate and renders the

---

[3] *Latorraca v. Centennial Techs., Inc.*, 834 F. Supp. 2d 25, 27 (D. Mass. 2011) ("Courts in this circuit generally award attorneys' fees in the range of 20-30%, with 25% as 'the benchmark.'") (reducing 30% fee request to 25%); *Walsh v. Popular, Inc.*, 839 F. Supp. 2d 476, 484-85 (D.P.R. 2012) (reducing fees from 33.3% to 23%); *In re Cabletron Sys. Sec. Litig.*, 239 F.R.D. 30, 42 (D.N.H. 2006) ("[C]onsiderable authority (both statistical and judicial) exists to support a finding that the prevalent

settlement unfair. *See, e.g., Pampers*, 724 F.3d 713 (vacating settlement where fees cannibalized $2.7 million of the $3.1 million constructive common fund value); *Bluetooth*, 654 F.3d at 945 (vacating approval where fees amounted to more than 83% of the constructive common fund); *Pearson*, 772 F.3d at 781 (69% fee is "outlandish"); *Allen v. Bedolla*, 787 F.3d 1218, 2015 U.S. App. LEXIS 9139, at *15 n.4 (9th Cir. June 2, 2015) (following *Bluetooth* and reversing settlement approval where class counsel negotiated a $1.1 million fee award and class members were to receive less than $375,000); *Trombley*, 2012 U.S. Dist. LEXIS 63072, at *8 (finding attorney award that consumed 66% of the settlement to be "excessive" and grounds for denying final approval); *Sylvester v. Cigna Corp.*, 369 F. Supp. 2d 34, 46 (D. Me. 2005) (rejecting settlement that proposed giving class counsel $1.2 million and class members only $400,000). To reach the appropriate ratio here, the class benefit would have to be valued at $6 million.

But, as a matter of law, the injunctive relief that this settlement offers is not worth $6 million. For either a period of five years from the effective date or until there is a change in the applicable law, whichever occurs earlier, Colgate will agree to follow the law, Settlement Agmt ¶ 30 (d), and forbear from making certain contested representations on a product it is no longer selling, *id.* ¶ 30 (a)-(c). This "relief" is illusory; simply put, class counsel is not entitled to credit for obtaining labeling alterations on a product that is no longer sold. Agreeing to changes on non-existent bottles is even more "substantively empty" than the semantic labeling alterations made in *Pearson*. 772 F.3d at 785. The theory is even more "fictive" than that renounced in *Pampers*. 724 F.3d at 721.

---

percentage attorney fee awards range from a low of around 20 percent (for the combined group of all non-fee shifting, class actions) to a high of between 25 to 30 percent for securities cases."); *Nilsen v. York Cnty.*, 400 F. Supp. 2d 266, 283 (D. Me. 2005) (reducing class counsel's requested award from 30% to 25%). *See generally In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 307 (1st Cir. 1995) (extolling advantages of the percentage of recovery fee methodology); *In re Tyco Int'l, Ltd.*, 535 F. Supp. 2d 249, 265 (D.N.H. 2007) (preferred method is percentage of recovery with lodestar crosscheck).

If class counsel wishes to take credit for Colgate's voluntary removal of triclosan from the market in 2011—before this MDL was even initiated in 2012,[4] they run headlong into the problem that pre-settlement changes do not count as a compensable class benefit that can justify either settlement approval or a fee award. *See Vought v. Bank of Am.*, 901 F. Supp. 2d 1071, 1090 (C.D. Ill. 2012) (voluntary remedial measures independent of the settlement "should not be considered part of the benefit for forfeiting the right to sue"); *cf. also Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 605 (2001) (repudiating theory that obtaining voluntary concessions after inception of case makes plaintiff "prevailing party"). This is true even if those changes (unlike here) had been duplicated and formalized in the terms of a settlement. *E.g., Pampers*, 724 F.3d at 719; *Staton*, 327 F.3d at 961; *see also Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 286 (7th Cir. 2002) (it is "the *incremental* benefits" that matter, "not the total benefits" (emphasis in original)). Any benefit to class members from Colgate's voluntary pre-settlement actions accrues to the class whether or not the class releases their claims; such benefit therefore cannot be consideration justifying either a settlement or a misallocation of settlement benefits to class counsel at the class's expense.[5] *Cf. Principles of the Law of Aggregate Litig.* § 3.13, Illustration 2 (2010).

Beyond the particulars of Softsoap and triclosan, there is a more fundamental problem with counting prospective labeling relief as class relief. "The fairness of the settlement must be evaluated

---

[4] "Colgate has removed Softsoap Antibacterial from the market." Plaintiff's Memorandum of Law in Opp. to Def's Motion to Dismiss (Dkt. 31) at 12; *see also* Tiffany Kary, *Cancer-Linked Colgate Total Ingredient Suggests FDA Flaws*, Bloomberg Business (Aug. 11, 2014), *available at* http://www.bloomberg.com/news/articles/2014-08-11/in-35-pages-buried-at-fda-worries-over-colgate-s-total (reporting that "Colgate removed triclosan from its Softsoap liquid handsoaps and Palmolive antibacterial dish liquid in 2011").

[5] The defendant's prospective agreement to comply with the law (in this case FDA regulation—*see* Settlement Agmt ¶ 30(a)) is correctly described as "meaningless" and "valueless." *McClintic v. Lithia Motors, Inc.*, 2012 U.S. Dist. LEXIS 3846, at *12 (W.D. Wash. Jan. 12, 2012); *see also Levell v. Monsanto Research Corp.*, 191 F.R.D. 543, 544-45 (S.D. Ohio 2000) ("[A] defendant's promise to do that which the law already requires is not a valuable benefit."); *Galloway v. Kan. City Landsmen*, 2012 U.S. Dist. LEXIS 147148, at *18 (W.D. Mo. Oct. 12, 2012) (If defendant doesn't comply with the law "a new lawsuit could be filed and the plaintiff could easily prove a willful violation.").

primarily on how it *compensates class members*—not on whether it provides relief to other people, much less on whether it interferes with defendant's marketing plans." *Pampers*, 724 F.3d at 720 (internal quotation omitted). Simply, "[n]o changes to future advertising by [defendants] will benefit those who already were misled." *True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1077 (C.D. Cal. 2010). "Future purchasers are not members of the class, defined as it is as consumers who have purchased [the product]." *Pearson*, 772 F.3d at 786; *see also Crawford v. Equifax Payment Servs.*, 201 F.3d 877, 880 (7th Cir. 2000) (defendant's injunctive agreement not to use the abusive debt collection letter that was at issue is a "gain" of "nothing" for class members). These are proper recognitions of the principle that the class is composed of people who have done business with the defendants *in the past*, while the prospective injunctive relief can only benefit those who do business with defendants *in the future*. *See Felix*, 290 F.R.D. at 408 (prospective injunctive relief promise of no value to class members who only dealt with defendant in past transaction).[6]

To date, as far as St. John is aware, there has been no attempt to quantify the injunctive relief even though the burden of proving the quantum of benefit lies with the proponents of the settlement. *Pampers*, 724 F.3d at 719. They must demonstrably show that the settlement "secures some adequate advantage for the class." *In re Katrina Canal Breaches Litig.*, 628 F.3d 185, 195 (5th Cir. 2010) (quoting 4 Newberg § 11:46 at 142-43). But at least there has been no disingenuous attempt to estimate the value of inestimable injunctions, which does nothing to serve the interest of the class and everything to serve the interest of class counsel. *See In re Oracle Secs. Litig.*, 132 F.R.D. 538, 544-45 (N.D. Cal. 1990) (referring to injunctive relief "expert valued at some fictitious figure" coupled with "arrangements to pay plaintiffs' lawyers their fees" to be the "classic manifestation" of the class-action agency problem).

---

[6] Note that this is ***not*** an argument that injunctive relief is ***never*** a benefit to the class. There are settlements where class members receive appropriate injunctive relief that redresses their past injuries. *See, e.g., Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) (class members received "a redesigned improved replacement latch to be installed free of charge.").

Illusory non-class injunctive relief simply does not justify a $2,000,000 Rule 23(h) award to class counsel.[7]  The first warning sign of a lawyer-driven deal is apparent.

A second telltale indication of preferential treatment is the presence of a "clear-sailing" agreement (whereby defendant consents not to challenge the award of fees to plaintiffs' counsel). This is also present here. Settlement Agmt ¶ 37. Clear sailing is inappropriate because it "exacerbate[s] the potential conflict of interest between the plaintiff class and class counsel." *Weinberger*, 925 F.2d at 524. It indicates that the class attorneys have negotiated "red-carpet treatment" to protect their fee award while urging class settlement "at a low figure or less than optimal basis." *Pampers*, 724 F.3d at 718 (quoting *Weinberger*, 925 F.2d at 524); *accord Redman*, 768 F.3d at 637.[8]  A clear-sailing provision "by its nature deprives the court of the advantages of the adversary process" and "suggest[s], strongly" that the associated fee request should "be placed under the microscope of judicial scrutiny." *Weinberger*, 925 F.2d at 525; *accord Bluetooth*, 654 F.3d at 949; *Redman*, 768 F.3d at 637 ("at least in a case…involving a non-cash settlement award to the class, such a clause should be subjected to intense critical scrutiny…."); William D. Henderson, *Clear Sailing Agreements: A Special Form of Collusion in Class Action Settlements*, 77 TUL. L. REV. 813, 816 (2003) (courts should "adopt a per se rule that rejects all settlements that include clear sailing provisions.").

Apart from the attorneys' fees award, the settlement assures each of the named plaintiffs an incentive award of $2,500. Settlement Agmt ¶ 38. In a settlement where absent class members receive nothing, this is unacceptable: "[T]he fact that one class member receives $2,000 and the other 200,000+ nothing is quite enough to demonstrate that the terms should not [be] approved under Rule

---

[7]  Class counsel may suggest that the expenses of administration should be counted as a benefit to the class. Any such suggestion is error. *Pearson*, 778 F.3d at 781 (citing *Redman v. Radioshack Corp.*, 768 F.3d 622, 630 (7th Cir. 2014)); *In re Volkswagen & Audi Warranty Extension Litig.*, 2015 U.S. Dist. LEXIS 16646, at *40 (D. Mass. Feb. 10, 2015).

[8]  Although class benefits and fees were negotiated separately, *see* Memo. in Support of Prelim. Approval (Dkt. 100-1) at 10, that does nothing to allay any conflict unless "fee negotiations [are] postponed until the settlement was judicially approved." *In re Cmty. Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mortg. Litig.*, 418 F.3d 277, 308 (3d Cir. 2005); *Pearson*, 772 F.3d at 786-87.

23(e)." *Crawford*, 201 F.3d at 882. This is because there is no "overlap" between the deals obtained by the named representatives and the unnamed class members. *Pampers*, 724 F.3d at 722. Rather the payment to named plaintiffs makes them alone more than whole and "provide[s] a *disincentive* for the class members to care about the adequacy of relief afforded unnamed class members." *Id.*

The Seventh Circuit referred to this phenomenon as "leverag[ing]" "the class device…for one person's benefit." *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 952 (7th Cir. 2006). In *Murray*, the incentive payment "of $3,000 … [was] three times the statutory maximum, while others don't get even the $100 that the Act specifies as the minimum…. Such a settlement is untenable." *Id.* Given the $2,500 for each representative, nearly $2,000,000 for the attorneys, and $0 for absent class members, this settlement is unfair. *See Richardson*, 991 F. Supp. 2d at 205 ("Set against the recovery obtained on behalf of the absent class members, incentive awards of $1,000 are unfair.").

Moreover, this manner of settlement calls into the adequacy of class representatives under Rule 23(a)(4). *See GM Trucks*, 55 F.3d at 801 (providing that intra-class conflicts can sometimes be discerned from "the very terms of th[e] settlement"). "The premise of a class action is that litigation by representative parties adjudicates the rights of all class members, so basic due process requires that named plaintiffs possess undivided loyalties to absent class members." *Broussard v. Meineke Discount Muffler Shops*, 155 F.3d 331, 338 (4th Cir. 1998). When incentive awards "significantly exceed[] in amount what absent class members could expect upon settlement approval," it "create[s] a patent divergence of interests between the named representatives and the class." *Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157, 1161 (9th Cir. 2013). "There is a serious question whether class representatives could be expected to fairly evaluate whether awards ranging from $26 to $750 is a fair settlement value when they would receive $5,000 incentive awards." *Id* at 1165. As the disparity here is starker—$2,500 per representative, $0 per class member—the question becomes proportionally more serious. In such situations there is a well-founded fear that named representatives will be "more concerned with maximizing [their own gain] than with judging the adequacy of the settlement as it applies to class members at large." *Id.* (quoting *Staton*, 327 F.3d at 977) (alternation in original).

Here, we have a settlement where the class representatives will each get $2,500, the attorneys will get nearly $2,000,000, but class members get nothing except empty promises. The main beneficiaries of this settlement are the attorneys; combined with the questionable clear-sailing and the illusory relief, there is a tremendous question of Rule 23(a)(4) adequacy: were the class representatives and counsel in this case acting in the best interests of the class, or in the best interests of themselves? *See Pampers, supra.* If the latter, then the plaintiffs cannot satisfy the 23(a)(4) and (g)(4) adequacy inquiries. *See In re Aqua Dots Prods. Liab. Litig.*, 654 F.3d 748, 752 (7th Cir. 2011) ("A representative who proposes that high transaction costs (notice and attorneys' fees) be incurred at the class members' expense to obtain a refund that already is on offer is not adequately protecting the class members' interests."); *Foley v. Buckley's Great Steaks, Inc.*, No. 14-cv-063-LM, 2015 U.S. Dist. LEXIS 46477 (D.N.H. Apr. 9, 2015) (denying settlement class certification where the terms of agreement suggested a "lawyer-driven" case). Certification cannot lie if there is anything less than "undivided loyalties." *Broussard*, 155 F.3d at 338. At a minimum, the allocation defects mean that the settlement must be rejected as unfair.

**B.      The Children's Health Fund is not a proper *cy pres* recipient.**

Any portion of the $2 million attorney request that the Court declines to award will be distributed to the Children's Health Fund as *cy pres*. Settlement Agmt ¶ 41. In a circumstance where the fee overage is too small to feasibly distribute to class members,[9] a reversion to *cy pres* is likely preferable to a reversion to defendants. *See Pearson*, 772 F.3d at 787 (a "kicker clause" (i.e. a fee reversion to defendants) calls for "at the very least … a strong presumption of … invalidity"). Assuming *arguendo*, however, that this circumstance obtains here, the selected recipient is impermissible for three related reasons: (1) the Children's Health Fund engages in ideologically polarizing political activity; (2) there is a conflict of interest arising from the Children's Health Fund's

---

[9] A reasonable fee here is $500,000 of the $2 million constructive common fund, meaning the overage is $1.5 million. There should be no dispute that it is feasible to distribute such sums to class members. *See, e.g., Trombley*, 2013 U.S. Dist. LEXIS 130550 (costs of $218,000 to distribute and administer $4 million fund through a claims-made settlement).

past endorsement of New Hampshire Senator Jeanne Shaheen, wife of the named partner of lead class counsel firm Shaheen & Gordon, P.A.; and (3) a donation of class funds to the Children's Health Fund is compelled speech that violates class members' First Amendment rights.

"Cy pres distributions present a particular danger" that "incentives favoring pursuit of self-interest rather than the class's interests in fact influenced the outcome of the negotiations." *Dennis*, 858 F.3d at 867. "The responsibility of class counsel to absent class members whose control over their attorneys is limited does not permit even the appearance of divided loyalties of counsel." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 968 (9th Cir. 2009) (internal quotation omitted). Thus, "[a] *cy pres* remedy should not be ordered if the court or any party has any significant prior affiliation with the intended recipient that would raise substantial questions about whether the award was made on the merits." *ALI Principles* § 3.07 cmt. (b). Such *cy pres* awards can "increase the likelihood and absolute amount of attorneys' fees awarded without directly, or even indirectly, benefitting the plaintiff." Martin H. Redish *et al.*, *Cy Pres Relief & the Pathologies of the Modern Class Action: A Normative and Empirical Analysis*, 62 FLA. L. REV. 617, 661 (2010).

Children's Health Fund has previously given Senator Shaheen its 100% approval rating (https://votesmart.org/interest-group/1791/rating/5028#.VbaLRfmvyJc); the fact that her husband's firm has now designated them as a *cy pres* recipient in a settlement of unrelated consumer fraud claims projects the appearance of logrolling. Beyond the conflict of interest, Children's Health Fund's engagement in political advocacy (http://www.childrenshealthfund.org/advocacy-and-research/policy-priorities), makes them an unsuitable recipient. Support for controversial legislation like the Affordable Care Act, and favorable ratings for many more Democratic than Republican officeholders,[10] means that Children's Health Fund's mission while assuredly well-intentioned is too polarizing to make them an acceptable non-partisan *cy pres* recipient. *Cf. In re Visa Check/MasterMoney Antitrust Litig.*, 2011 U.S. Dist. LEXIS 122680, at *30-*31 (E.D.N.Y. Oct. 24, 2011) (eschewing

---

[10]     *See*           https://votesmart.org/interest-group/1791/the-childrens-health-fund#.VbaZSPmvyJc

recipient that served "narrowly tailored interests [that] would have the effect of inequitably concentrating its benefit on a subset of the class as opposed to the class as a whole.").

Designating Children's Health Fund also raises First Amendment concerns. Making a charitable donation is First Amendment-protected expressive and associational activity. *Buckley v. Valeo*, 424 U.S. 1, 21 (1976) (*per curiam*). Concomitantly, and more relevant here, individuals have a right to refrain from making such a donation, a right to not be compelled to engage in expressive and associational activity. *See, e.g., Knox v. Service Employees Int'l Union, Local 100*, 132 S. Ct. 2277, 2288 (2012). "[C]ompelled funding of the speech of other private speakers or groups presents the same dangers as compelled speech." *Harris v. Quinn*, 134 S. Ct. 2618, 2639 (2014) (internal quotation omitted); *see also United States v. United Foods, Inc.*, 533 U.S. 405, 411 (2001) ("First Amendment values are at serious risk if the government can compel a particular citizen, or a discrete group of citizens, to pay special subsidies for speech on the side that it favors.").

In articulating this right, the Supreme Court has acknowledged Thomas Jefferson's view that "to compel a man to furnish contributions of money for the propagation of opinions which he disbelieves[] is sinful and tyrannical." *Abood v. Detroit Bd. of Educ.*, 431 U.S. 209, 234 n.31 (1977) (quoting I. Brant, *James Madison: The Nationalist* 354 (1948) (internal quotation marks omitted).

These principles render class action *cy pres* awards (at least those awards like this one that will be used for lobbying or other First Amendment activity) unconstitutional. Three premises support this conclusion. First, "[t]he settlement-fund proceeds, having been generated by the value of the class members' claims, belong solely to the class members." *Klier v. Elf Atochem N. Am.*, 658 F.3d 468, 474 (5th Cir. 2011) (citing *ALI Principles* § 3.07 cmt. (b)). Second, a third-party charitable donation is an expression of support, association, and endorsement of that third-party's message. *E.g., Buckley*, 424 U.S. at 21; *In re Asbestos Sch. Litig.*, 46 F.3d 1284, 1294 (3d Cir. 1994) (Alito, J.).

Third, absent class members are being compelled and coerced into participating in the donation. Because the proposed settlement compels speech subsidies, it should not be approved unless it satisfies strict scrutiny. *See Knox*, 132 S. Ct. at 2292 & n.3 . It does not. Although reaching a

satisfactory private class settlement is a laudable goal, it does not rise to the level of a critical or "compelling" government interest, and does not justify an infringement on absent class members' rights. *Davis v. E. Baton Rouge Parish Sch. Bd.*, 78 F.3d 920, 929 n.8 (5th Cir. 1996); *cf. Amchem*, 521 U.S. at 620-21.

The improper *cy pres* designee thus provides several additional independent reasons for rejecting the settlement.

## IV.     Class counsel has failed to comply with Rule 23(h).

Rule 23(h)(1), on its face, requires notice "directed to class members in a reasonable manner" of a motion for fees and expenses. Here, class counsel failed to make any motion until the day before the objection deadline. A Rule 23(h) award is inappropriate in the absence of giving class members a fair opportunity to object to the fee request. *In re Mercury Interactive Sec. Litig.*, 618 F.3d 988 (9th Cir. 2010); *Redman v. RadioShack Corp.*, 768 F.3d 622, 637-38 (7th Cir. 2014). Moreover, the fact that class counsel's fee request is "materially less than" lodestar cannot justify an unfair allocation of the settlement fund. *See Redman*, 768 F.3d at 635 ("hours can't be given controlling weight in determining what share of the class action settlement pot should go to class counsel"); *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 180 n.14 (3d Cir. 2013) (lodestar multiplier of 0.37 not "outcome determinative"); *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1177 (9th Cir. 2013) (same with multiplier of 0.32).

## CONCLUSION

As proposed, the settlement is unlawful. It presupposes a certification that, consistent with Rule 23 and the Constitution, must not be granted. Class Counsel is handsomely compensated for alleged wrongs committed against class members, while absent class members obtain negligible to no relief. To approve such a settlement would condone abuse of the class action mechanism of class counsel's selfish ends.

Dated:  August 4, 2015

Respectfully submitted,

_/s/ Anna St. John_

Anna St. John
CENTER FOR CLASS ACTION FAIRNESS
1718 M Street NW, No. 236
Washington, DC 20036
Telephone:  (917) 327-2392
Email:  annastjohn@gmail.com

*In Pro Per*

## CERTIFICATE OF SERVICE

The undersigned certifies that, on August 4, 2015, in accordance with the Class Notice and

Preliminary Approval Order, she caused the foregoing Objection to Proposed Settlement and

accompanying Declaration of Anna St. John to be mailed via USPS first-class mail to the following

recipients:

Angeion Group
Attn: Soft Soap Objections
1801 Market Street, Suite 660
Philadelphia, PA 19103

Lucy J. Karl
SHAHEEN & GORDON, P.A.
P.O. Box 2703
Concord, New Hampshire 03302-2703

Office of the Clerk
United States District Court for the District of New Hampshire
55 Pleasant Street
Room 110
Concord, NH 03301

Shon Morgan
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017


Dated: August 4, 2015

By:     */s/ Anna St. John*
        Anna St. John