**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW HAMPSHIRE**

|  |  |
|---|---|
| In re: Colgate-Palmolive Softsoap Antibacterial Hand Soap Marketing and Sales Practices Litigation (MDL No. 2320) | MDL Docket No. 12-md-2320-PB<br><br>All Actions |

**PLAINTIFFS' AND DEFENDANT'S JOINT**
**MEMORANDUM IN SUPPORT OF JOINT MOTION FOR**
**FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Dated: August 28, 2015

## **TABLE OF CONTENTS**

I.  INTRODUCTION ................................................................................................ 1

II.  SUMMARY OF DEVELOPMENTS FOLLOWING PRELIMINARY
APPROVAL ....................................................................................................... 4

III.  ARGUMENT ................................................................................................... 9

  A.  CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE UNDER FED. R. CIV. P.
23(A), (B)(2), AND APPLICABLE FIRST CIRCUIT JURISPRUDENCE ..................................... 9

    1.  The Settlement Class and Their Counsel Meet All Fed. R. Civ. P. 23(a)
Prerequisites .................................................................................................... 9

    2.  The Settlement Class Should Be Certified Under Fed. R. Civ. P. 23(b)(2)
Because Defendant Acted On Grounds That Apply Generally to the Class Such That
Final Injunctive Relief Is Appropriate ...................................................................... 13

  B.  THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE UNDER FED. R. CIV. P.
23(E)(2) AND APPLICABLE FIRST CIRCUIT STANDARDS AND THUS MERITS FINAL
APPROVAL ................................................................................................................ 17

    1.  The Settlement Should be Finally Approved Under a "Overall Reasonableness"
Standard of Review .............................................................................................. 17

    2.  The Settlement Should be Finally Approved When Evaluated Under Modified
Grinnell Factors ................................................................................................ 19

  C.  CLASS NOTICE WAS ADEQUATE .......................................................................... 28

IV.  CONCLUSION ................................................................................................. 29

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) ............................................................................................... 12, 14

*Andrews v. Bechtel Power Corp.*,
    780 F.2d 124 (1st Cir. 1985) ....................................................................................... 12

*Barnes v. FleetBoston Fin. Corp.*,
    No. 01-10395-NG, 2006 U.S. Dist. LEXIS 71072 (D. Mass. Aug. 22, 2006) ......................... 7

*Bezdek v. Vibram USA*,
    Case No. 12-cv-1013-DPW, 2015 WL 223786 (D. Mass. Jan. 16, 2015) ................... 18, 19, 24

*Carrera v. Bayer Corp.*,
    727 F.3d 300 (3d Cir. 2013) ........................................................................................ 23

*City P'ship Co. v. Atl. Acquisition Ltd. P'ship*,
    100 F.3d 1041 (1st Cir. 2003) ............................................................................. 17, 18, 26

*Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir.1974), *overruled on other grounds by Missouri v.*
    *Jenkins*, 491 U.S. 274 (1989) ............................................................................... 19, 20

*Donovan v. Phillip Morris USA, Inc.*,
    268 F.R.D. 1 (D. Mass. 2010) ..................................................................................... 14

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
    528 U.S. 167 (2000) .................................................................................................... 7

*García–Rubiera v. Calderon*,
    570 F.3d 443 (1st Cir. 2009) ................................................................................. 11, 15

*Hill v. State St. Corp.*,
    Case No. 15-1193, No. 15-1597, 2015 U.S. App. LEXIS 12868 (1st Cir. July
    24, 2015) ................................................................................................................... 2

*In re Am. Med. Sys., Inc.*,
    75 F.3d 1069 (6th Cir. 1996 ........................................................................................ 11

*In re Bos. Scientific Corp. Sec. Litig.*,
    604 F. Supp. 2d 275 (D. Mass. 2009) ..................................................................... 11, 12

*In re Capital One Telephone Consumer Protection Act Litigation*,
    No. 15-1400 (7th Cir. June 10, 2015) ............................................................................ 7

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*,
216 F.R.D. 197 (D. Me. 2003) ..................................................................................20

*In re Lupron Mktg. & Sales Practices Litig.*,
228 F.R.D. 75 (D. Mass. 2007) ................................................................................25

*In re M3Power Razor System Mktg. & Sales Practices Litig.*,
270 F.R.D. 45 (D. Mass. 2010) ..........................................................................10, 26

*In re Neurontin Mktg. & Sales Practices Litig.*,
244 F.R.D. 89 (D. Mass 2007) .................................................................................10

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.*,
522 F.3d 6 (1st Cir. 2008) ..........................................................................................9

*In re New Motor Vehicles Canadian Export Antitrust Litig.*,
269 F.R.D. 80 (D. Me. 2010) ....................................................................................16

*In re New Motor Vehicles Canadian Export Antitrust Litig.*,
MDL Dkt. No. 1532, 2011 U.S. Dist. LEXIS 40843 (D. Me. Apr.13, 2013) ..........24

*In re Nexium Antitrust Litig.*,
777 F. 3d 9 (1st Cir. 2015) ......................................................................................23

*In re Pharm. Indus. Average Wholesale Price Litig.*,
588 F.3d 24 (1st Cir. 2009) .......................................................................................18

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
148 F.3d 283 (3d Cir. 1998 .......................................................................................11

*In re Puerto Rican Cabotage Antitrust Litig.*,
815 F. Supp. 2d 448 (D.P.R. 2011) ...........................................................................24

*In re Relafen Antitrust Litig.*,
221 F.R.D. 260 (D. Mass. 2004) ...............................................................................16

*In re Sonus Networks, Inc., Sec. Litig.*,
Civ. No. 04-10294, 2007 WL 2826622 (D. Mass. Sept. 25, 2007) ..........................10

*In re StockerYale, Inc. Securities Litigation*,
Case No. 1:05-cv-177-SM, 2007 U.S. Dist. LEXIS 94004 (D.N.H. Dec. 18,
2007) ...........................................................................................................................26

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
535 F.Supp.2d 249 (D.N.H. 2007) .................................................................17, 18, 20

*In re Whirlpool Corp. Front- Loading Washer Prods. Liab. Litig.*,
722 F.3d 838 (6th Cir. 2013) .....................................................................................13

*Int'l Union v. GMC*,
    497 F.3d 615 (6th Cir. 2007) ......................................................................................28

*Jermyn v. Best Buy Stores, L.P.*,
    Case No. 08-cv-214, 2012 U.S. Dist. LEXIS 90289 (S.D.N.Y. June 27, 2012) ...................15

*Kenneth R. ex rel. Tri-County CAP, Inc. v. Hassan*,
    293 F.R.D. 254 (D.N.H. 2013) ...................................................................................10

*Knisley v. Network Assocs., Inc.*,
    312 F.3d 1123 (9th Cir. 2002) .....................................................................................2

*Missouri v. Jenkins*,
    491 U.S. 274 (1989).................................................................................................19

*Mullins v. Direct Digital, LLC*,
    No. 15-1776, 2015 U.S. App. LEXIS 10371 (7th Cir. Jul. 28, 2015) ......................................23

*Nat'l Ass'n of Chain Drug Stores v. New England Carpenters Ass'n*,
    582 F.3d 30 (1st Cir. 2009)...............................................................................7, 17, 18

*Robinson v. Metro-North Commuter R.R. Co.*,
    267 F.3d 147 (2d Cir. 2001)........................................................................................15

*Rolland v. Cellucci*,
    191 F.R.D. 3 (D. Mass. 2000)..............................................................................10, 28

*Silverman v. Motorola Solutions, Inc.*,
    739 F.3d 956 (7th Cir. 2013) .......................................................................................2

*Smilow v. Southwestern Bell Mobile Sys., Inc.*,
    323 F.3d 32 (1st Cir. 2003)........................................................................................13

*Voss v. Rolland*,
    592 F.3d 242 (1st Cir. 2010).......................................................................................17

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011)..............................................................................10, 13, 14, 15, 24

*Walters v. Reno*,
    145 F.3d 1032 (9th Cir. 1998) ...............................................................................13, 14

*Yaffe v. Powers*,
    454 F.2d 1362 (1st Cir. 1972)......................................................................................14

## STATUTES

Class Action Fairness Act, 28 U.S.C. §1715 ("CAFA") ............................................................5, 6

**OTHER AUTHORITIES**

**Fed. R. Civ. P. 23(a)** ............................................................................................................. passim

4 ALBA CONTE & HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS § 11.41,
   at 108 (4th ed. 2002) ...............................................................................................................24

## I.  __INTRODUCTION__

Pursuant to Federal Rule of Civil Procedure 23 and Local Rule 23.1, plaintiffs Tracy Nieblas, Shari Elstein, Kristina Pearson, Adam Emery, and Jeff Dyke, in their individual capacities and as class representatives ("Plaintiffs"), and Defendant Colgate-Palmolive Company ("Defendant") (collectively, the "Parties"), by their respective undersigned counsel, respectfully submit this Memorandum in support of their Joint Motion for Final Approval of Class Action Settlement.

As discussed in the Parties' Memorandum in Support (Dkt. 92-1, the "Preliminary Approval Memorandum") of their Joint Motion for Certification of Settlement Class, Preliminary Approval of Proposed Class Action Settlement, Approval of Notice Plan and Notice Administrator and Appointment of Lead Counsel (Dkt. 92, the "Joint Preliminary Approval Motion"), this injunctive relief Settlement achieves the goal of revising several of Defendant's advertising statements regarding the claimed superior efficacy of Softsoap Antibacterial liquid hand soap that Plaintiffs alleged to be false and misleading in this litigation, thereby strengthening Settlement Class members' ability to choose a hand soap that meets their needs without being led astray by  allegedly deceptive marketing claims.[1] During the pendency of the litigation, Defendant also discontinued using triclosan in its liquid hand soap products, and has agreed as an element of injunctive relief under the Settlement not to reintroduce that ingredient except as consistent with final FDA regulations prescribing its use in such products.  Significantly, and as a testament to the strength of this Settlement, Defendant has already, consistent with these commitments,

---

[1] The Parties incorporate by reference the facts and arguments set forth in the Preliminary Approval Memorandum establishing that the Settlement Class should be certified and that the Settlement (Dkt. 92-2) should be approved and, to the extent possible, will not repeat those arguments herein.

changed its marketing claims on its current Softsoap Antibacterial and switched from triclosan to a different active  ingredient in its formulation of the Product.

The relief afforded by the Settlement to the Settlement Class is injunctive only. This injunctive relief protects all Settlement Class members from further allegedly false and misleading advertising regarding the claimed benefits of Softsoap Antibacterial.  As such, this injunctive relief is "appropriate respecting the class as a whole," making the proposed Settlement Class well-suited for certification under Fed. R. Civ. P. 23(b)(2). While the Settlement does not provide monetary relief to Settlement Class members, none of those potential monetary claims – regardless of whether such claims are denominated as "legal" or "equitable" – are being released.  *See* Stipulation and Order to Clarify the Parties' Proposed Settlement Agreement and Release (Dkt. 94).  Indeed, the Settlement preserves the rights of Settlement Class members (except for the named Plaintiffs) to file individual or class action lawsuits for any damages they could attempt to prove they suffered as a result of purchasing Softsoap Antibacterial as Defendant previously marketed and advertised it.[2]

---

[2] The $2,000,000 Settlement Fund created in Paragraph 36 of the Settlement exists solely for the purpose of paying for the costs of the Notice Plan and satisfying any award by the Court to Class Counsel of attorneys' fees.  Any difference between the amounts expended on the Notice Plan and that the Court may approve for payment of attorneys' fees and reimbursement of litigation expenses is reserved for *cy pres* distribution to a hygiene-related charitable organization.  Thus, certain objectors' contention that a reduction in the amount of attorneys' fees awarded would inure to the benefit of the Settlement Class Members is incorrect, as this is solely an injunctive relief settlement in exchange for releases of injunctive claims only. The Objectors thus have no standing to contest the amount of the attorneys' fee award because they "take nothing" regardless of the amount of attorneys' fees ultimately approved and awarded to Class Counsel by this Court. *See Hill v. State St. Corp.*, Case No. 15-1193, No. 15-1597, 2015 U.S. App. LEXIS 12868, at *8-9 (1st Cir. July 24, 2015) *citing Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000) ("[A] plaintiff must demonstrate standing separately for each form of relief sought."); *cf. Silverman v. Motorola Solutions, Inc.*, 739 F.3d 956, 957 (7th Cir. 2013) (concluding that an objector who did not file a claim "lack[ed] any interest in the amount of fees, since he would not receive a penny from the fund even if counsel's take should be reduced to zero"); *Knisley v. Network Assocs., Inc.*, 312 F.3d 1123, 1126 (9th Cir. 2002) ("[W]here a class

The Settlement is fair, reasonable, and adequate, and is in the best interests of the Settlement Class because it achieves the goal of reforming Defendant's allegedly deceptive marketing that Plaintiffs in this case set out to confront while, at the same time, preserving the rights of any Settlement Class member to seek monetary relief from Defendant if they so choose.  Every settlement is inherently a compromise between parties in litigation who disagree: neither side gets everything it  wants and each side must make sacrifices.

Here, Plaintiffs and Defendant have, after intense and arm's-length negotiations, including significant discovery and dismissal motion practice, compromised over which marketing claims Defendant will be enjoined from making for a material period of time following final approval.  While every marketing claim Plaintiffs initially challenged is not being enjoined, the most serious allegedly misleading claims regarding broad germ control efficacy are being restricted as a result of this Settlement.  Furthermore, Plaintiffs are achieving relief – an injunction regarding Defendant's use of triclosan in Softsoap Antibacterial – that they could not have achieved through litigation unless Defendant chose to waive a primary jurisdiction defense this Court had already carefully considered. *See* Dkt. 46 (order denying motion to dismiss on primary jurisdiction grounds in part because plaintiffs had amended complaint to remove injunctive relief requests pertaining to triclosan).  Balancing the advantages and disadvantages of the proposed Settlement against the risks and uncertainty of continued litigation, the Court should find that this Settlement is reasonable and merits final approval under Fed. R. Civ. P. 23(e).

---

member refuses to participate in the settlement and appeals only the fee award, . . . . [t]he court must closely scrutinize the terms of the settlement agreement to determine whether modifying the fee award would actually benefit the objecting class member. If not, the appeal would not redress his injuries, and he would lack standing to proceed.").

The Parties have diligently contested this litigation for more than four years. By this Settlement, the Parties seek to bring this litigation to a mutually acceptable conclusion. In exchange for a modest release of Settlement Class members' rights to seek further changes to Defendant's Softsoap Antibacterial marketing and sales practices through continued litigation, the Settlement Class is gaining real, immediate, and binding changes to Defendant's marketing and sales practices. In exercising its broad discretion to balance the advantages and disadvantages of any class action settlement that binds class members, this Court should certify the Settlement Class pursuant to Fed. R. Civ. P. 23(b)(2), conclude that the Settlement is fair, reasonable, and adequate pursuant to Fed. R. Civ. P. 23(e)(2), grant the Assented-To Motion of Class Counsel For Attorneys' Fees and Costs (Dkt. 98) by entering an order awarding Attorneys' Fees and Expenses, including Notice Administrator fees and Representative Plaintiffs' Incentive Payments, in the aggregate amount of $2,000,000, and grant all such additional and further relief as just and proper.

## II.   SUMMARY OF DEVELOPMENTS FOLLOWING PRELIMINARY APPROVAL

In the Preliminary Approval Memorandum (Dkt. 92-1), the Parties set forth the relevant factual and procedural history of this litigation up through and including submission of the Settlement to this Court. *See* Preliminary Approval Mem. at 2-7.

Following this Court's Order Granting Preliminary Approval of Class Action Settlement (Dkt. 93, the "Preliminary Approval Order"), the Parties supervised the provision of Notice to potential members of the Settlement Class by the Angeion Group, the Court-appointed Notice Administrator. The Notice Plan provided for, among other things: (i) a press release issued to approximately 6,000 press outlets across the United

4

States; (ii) publication of summary notice in the national edition of *USA Today*; (iii) a multi-platform Internet banner ad campaign targeting a national audience of 'Primary Grocery Shoppers', 'Home & Beauty Shoppers', and 'Hygiene Purchasers'; (iv) an active hyperlink of the Summary Notice on Class Counsel's website; and (v) a Class Settlement website (http://www.softsoapantibacterialclassactionsettlement.com) that contains the Long-Form Notice, other relevant settlement documents, and information regarding the Court approval process for the proposed Settlement here. *See* Settlement (Dkt. 92-2) at 22. The Parties implemented all of the elements set forth in the Notice Plan between June 17 and June 19, 2015.

On June 18, a link to the Summary Notice went live on Class Counsel's website. *See Affidavit of Lucy J. Karl* ("Karl Aff."), attached hereto as Ex. A, at ¶ 5. On June 18, 2015, the Summary Notice was published in *USA Today*. *See Declaration of Steven Weisbrot*, attached hereto as Ex. B, at ¶ 9. On June 19, 2015, the Parties issued a press release discussing the Settlement. *Id.* at ¶ 7. On June 19, 2015, the Notice Administrator began a contextually-targeted Internet banner ad notice campaign that lasted until July 18, 2015. *Id.* at ¶ 8. The banner ad notice campaign resulted in 71,547,476 impressions being published to Internet users. *Id.* On June 17, 2015, the Class Settlement website , which contained the Preliminary Approval Order; the Long-Form Notice; the Summary Notice; the Settlement; and other documents relevant to the Settlement, was activated and went live as well. *Id.* at ¶ 6. As of August 27, 2015, the website had received 44,133 visits and 58,984 page views. *Id.*

The Notice Plan also included a requirement that Defendant issue notice to appropriate government officials in compliance with the Class Action Fairness Act, 28

U.S.C. §1715 ("CAFA").  On June 5, 2015, CAFA notice was served on the relevant federal and state authorities.  *Id.* at ¶ 5.  As a result of the CAFA notice, representatives of the state Attorneys General of California, Tennessee and Texas conferred with the Parties regarding suggestions to clarify the scope of the Settlement release; the Parties followed these suggestions and entered into a Court-approved stipulation clarifying the scope of the Settlement Release on June 30, 2015.  *See* Dkt. 94.  Other than as described in this paragraph, no other state or federal officials commented on the Settlement and the state Attorneys General of California, Tennessee and Texas have not sought any further clarifications or revisions to the Settlement.  No state or federal officials objected to the Settlement, nor have any such officials sought to intervene in this proceeding.  Karl Aff. at ¶¶ 9-11.

As of the date of the Parties' filing of their Joint Motion for Final Approval, four written objections to the Settlement have been  filed on the Court's docket in this action and served on Class Counsel.  *See* Dkt. Nos. 95, 96, 99 and 100.  Only one of these objections was submitted to the Class Administrator.  Weisbrot Aff. at ¶ 10.  Of these four objections, one of them, Ms. Linda D'Agostino's objection (Dkt. 95), is being withdrawn because Ms. D'Agostino does not object to the Settlement.  Rather, Ms. D'Agostino objects to the underlying allegedly deceptive marketing and sales practices the Settlement is intended to address.[3]  The other three objections – by Ms. Michelle

---

[3] Ms. D'Agostino stated that she had purchased the Product numerous times over the years and her objection was that Defendant's marketing was misleading.  She wanted the Court to know that she, as a consumer, had been misled and that she wanted Defendant to stop misleading consumers.  Class Counsel explained the terms of the Settlement to her, including that it is for non-monetary injunctive relief only and no monetary claims are being released.  During the course of that discussion, Ms. D'Agostino indicated that she did not object to the Settlement and would send a letter to the Court withdrawing her objection.  Karl Aff. at ¶ 13.

Schwanekamp (Dkt. 96), Mr. Tyler Cool (Dkt. 99), and Ms. Anna St. John (Dkt. 100)[4]

(the "Objectors" and the "Objections") – remain pending and will be addressed in more

detail by Class Counsel in the form of a separate Memorandum that Class Counsel

intends to file on or before September 14, 2015.  In preliminary response to these

objections, however, the Parties note that Objectors almost entirely rely on two flawed

premises.

      First, the Objectors compare the results achieved through Settlement against the

relief Plaintiffs requested in their original Consolidated Amended Class Action

Complaint and criticize the Settlement for failing to achieve everything Plaintiffs set out

to achieve when they first initiated this litigation.  *See* Schwanekamp Objection at 1;

Cool Objection at 2; St. John Objection at 10.  This is an improper comparison.  Rather,

the reasonableness of a class action settlement is evaluated by comparing the advantages

it provides against the risks of continuing litigation, and not against the relief originally

requested in the complaint.  *See Nat'l Ass'n of Chain Drug Stores v. New England*

*Carpenters Ass'n*, 582 F.3d 30, 44 (1st Cir. 2009) ("Rule 23's reasonableness standard

---

[4] The Parties also note that Ms. St. John's objection is sponsored by the "Center for Class Action Fairness," a partisan, anti-class action group that often objects to proposed class action settlements on supposedly "principled" grounds, but, in reality, is nothing more than another agenda-driven, professional objector identical to those other professionals from whom it has recently admitted to accepting funding. *See* Declaration of Theodore H. Frank in Support of Motion to Intervene, filed as Dkt. No. 60-2 at ¶¶ 12, 19-33, 52, and 69 in *In re Capital One Telephone Consumer Protection Act Litigation*, No. 15-1400 (7th Cir. June 10, 2015), (attached hereto as Ex. C) (founder of Center for Class Action Fairness ("CCAF") admitting that he has been "moonlight[ing]" for one professional objector and has been "retained" by another in exchange for personal payments of approximately $250,000 from such objectors despite founder's prior claims that the CCAF was different from other professional objectors).  While CCAF holds itself out as different from those "professional" objectors who file objections solely "to extract payments for themselves from the parties or counsel by threatening years of delay associated with unmeritorious settlement objections and appeals" and who "can make a living simply by filing frivolous appeals and thereby slowing down the execution of settlements," *Barnes v. FleetBoston Fin. Corp.*, No. 01-10395-NG, 2006 U.S. Dist. LEXIS 71072, *3-4 (D. Mass. Aug. 22, 2006), Mr. Frank's admissions regarding accepting payments from other professional objectors makes CCAF's assertions of standing apart highly questionable.

has been given substance by case law offering laundry lists of factors, most of them intuitively obvious and dependent largely on variables that are hard to quantify; usually, the ultimate decision by the judge involves balancing the advantages and disadvantages of the proposed settlement as against the consequences of going to trial or other possible but perhaps unattainable variations on the proffered settlement.") (citations omitted).

Second, the Objectors contend that this Settlement is insufficient because it does not provide direct monetary compensation to Settlement Class Members; indeed, two Objectors argue that this litigation should continue through an attempt to certify a Fed. R. Civ. P. 23(b)(3) class. *See* Schwanekamp Objection at 2; Cool Objection at 2; St. John Objection at 5-9. In making this argument, Objectors ignore the fact that this Settlement *does not compromise any Settlement Class Members'* (except for named-Plaintiffs') *right to seek monetary relief, either in a class action or individually.* If Ms. Schawenkamp, Mr. Cool, Ms. St. John, or any other purchaser of Softsoap Antibacterial wishes to initiate an individual or a class complaint against Defendant in an attempt to recover monetary relief, this Settlement does not stand in their way. In asserting that the Settlement compromises their ability to seek or achieve monetary compensation as a result of Defendant's marketing and sales practices with respect to Softsoap Antibacterial, the Objectors are erecting and attacking an illusion. Monetary claims remain even after final approval of this Settlement. Because this Settlement involves only injunctive relief, and does not involve monetary claims at all, Objectors' argument that monetary claims predominate, and that therefore certification under Fed. R. Civ. P. 23(b)(2) is inappropriate, is false and in contravention of the terms of the Settlement, the relief provided therein, and the claims released thereunder.

Other than as noted above, the Parties are aware of no other factual developments related to this case or this Settlement that should be brought to the attention of the Court.

## III.   <u>ARGUMENT</u>

In deciding whether to grant final approval to a proposed class action settlement, the Court must determine whether to certify the settlement class under Fed. R. Civ. P. 23(a) and 23(b), and whether to approve the settlement under Fed. R. Civ. P. 23(e).

### A.   **Certification of the Settlement Class is Appropriate Under Fed. R. Civ. P. 23(a), (b)(2), and Applicable First Circuit Jurisprudence**

As part of its Preliminary Approval Order, the Court conditionally certified a Settlement Class consisting of all persons who purchased  Softsoap Antibacterial in the United States from January 1, 1992, up to and including the Notice Date.  *See* Preliminary Approval Order at 2.  Final certification of the Settlement Class is appropriate because Plaintiffs have satisfied all applicable Fed. R. Civ. P. 23(a) and (b)(2) requirements.

#### 1.   <u>The Settlement Class and Their Counsel Meet All Fed. R. Civ. P. 23(a) Prerequisites</u>

"Rule 23(a) requires that (1) there be numerosity, (2) there be common questions of law or fact, (3) the class representative's claims be typical of the class, and (4) the representative's representation of the class be adequate."  *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 522 F.3d 6, 18 (1st Cir. 2008).  Each of these Rule 23(a) prerequisites is satisfied in this case.

Defendant marketed millions of units of Softsoap Antibacterial to millions of consumers across the United States.  The Parties' notice program resulted in tens of thousands of page views to the Settlement website.  [cite Weisbrot declaration].  Based

on these facts, the Court may draw a reasonable inference as to the Class size and

conclude the Class is sufficiently numerous here.  *See Kenneth R. ex rel. Tri-County

CAP, Inc. v. Hassan*, 293 F.R.D. 254, 265 (D.N.H. 2013) (noting propriety of drawing

reasonable inference of numerosity).  "The exact numbers of class members need not be

established, 'particularly where … only declaratory and injunctive relief is sought."  *Id.*

(*citing Rolland v. Cellucci*, Civ. No. 98-30208, 1999 WL 34815562, at *3 (D. Mass. Feb.

2, 1999)).  Given the millions of Settlement Class members and their geographic

dispersion across the United States, joinder of each individual Settlement Class member

would be impracticable.  Rule 23(a)(1)'s numerosity requirement is thus easily satisfied

here.

To satisfy the commonality requirement, the claims of the class "must depend

upon a common contention . . . [which] must be of such a nature that it is capable of

classwide resolution—which means that determination of its truth or falsity will resolve

an issue that is central to the validity of each one of the claims in one stroke."  *Wal-Mart

Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550-51, (2011).  The threshold for commonality

is not high.  *In re M3Power Razor System Mktg. & Sales Practices Litig.,* 270 F.R.D. 45,

54 (D. Mass. 2010).  "All questions of fact and law need not be common to satisfy the

rule."  *In re Neurontin Mktg. & Sales Practices Litig.*, 244 F.R.D. 89, 105 (D. Mass

2007).  Commonality can be satisfied by a single common legal or factual issue, making

it an easily satisfied prerequisite.  *In re Sonus Networks, Inc., Sec. Litig.*, Civ. No. 04-

10294, 2007 WL 2826622, at *4 (D. Mass. Sept. 25, 2007).

Among the common contentions in this case were whether Softsoap Antibacterial

was more efficacious than plain soap and whether Colgate's marketing of Softsoap

Antibacterial was false, deceptive, or misleading to reasonable consumers.  These questions are common questions because the answer to each of these questions will be the same for each Settlement Class member; these questions concern Defendant's conduct, matters of scientific fact, and the hypothetical reasonable person who exercises average care, skill, and judgment.  Accordingly, the Settlement Class satisfies Rule 23(a)(2)'s commonality requirement.

Typicality is present when the class representatives' claims "arise from the same event or practice or course of conduct that gives rise to the claims of other class members, and . . . are based on the same legal theory." *García–Rubiera v. Calderon,* 570 F.3d 443, 460 (1st Cir. 2009) (quoting *In re Am. Med. Sys., Inc.,* 75 F.3d 1069, 1082 (6th Cir. 1996)) (alterations in original).  The typicality inquiry allows the court to "'align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals.'" *In re Bos. Scientific Corp. Sec. Litig.,* 604 F. Supp. 2d 275, 282 (D. Mass. 2009) (quoting *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,* 148 F.3d 283, 311 (3d Cir. 1998)).  Here, Plaintiffs' claims are typical of the other Settlement Class members' claims because they arise from the same event: Defendant's marketing of the Product and Class members' purchase of it.  The Class representatives and Class members' legal theories all arise from the same course of Defendant's allegedly deceptive marketing and advertising of the Product during the Class Period.  As Plaintiffs and the other Settlement Class members' claims arise from the same alleged practices and are based on the same legal theories, Rule 23(a)(3)'s typicality requirement is satisfied here.

The adequacy inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).  The First Circuit employs a two-part test in analyzing adequacy: (1) the class representatives' interests must not conflict with the interests of the class; and (2) class counsel chosen by the representative must be experienced, qualified, and able to vigorously conduct the proposed litigation.  *Andrews v. Bechtel Power Corp.,* 780 F.2d 124, 130 (1st Cir. 1985); *In re Bos. Scientific Corp. Sec. Litig.,* 604 F. Supp. 2d at 282.

Here, the interest of Plaintiffs and the other Settlement Class members align because they share the same legal and remedial theories.  Plaintiffs, like the other Settlement Class members, have the same interest in preventing Defendant's false and misleading marketing of the Product.  Moreover, no conflicts exist between Plaintiffs and the other Settlement Class members, and the injunctive relief achieved by the settlement will benefit all Settlement Class members equally.

Additionally, Class Counsel has substantial experience and a successful track record certifying, litigating, trying, and resolving this type of consumer false advertising class action litigation and have vigorously advocated for Settlement Class members' interests throughout this case, including during the course of negotiating the Settlement. Class Counsel has also devoted significant time and resources reviewing documents and conducting depositions.  The settlement discussions, mediation, and subsequent negotiations were intense, often spirited, and occurred over several years.  Only after Class Counsel were satisfied that the best recovery had been negotiated for the Settlement Class did the Parties negotiate the payment of attorneys' fees and costs.[5]

---

[5] Again, none of which has any effect on the benefits going to the Settlement Class.

As there is no conflict among the Plaintiffs and the other Settlement Class members, and, further, because Class Counsel is qualified and experienced and has ably pursued this action, Rule 23(a)(4)'s fairness and adequacy requirements have been satisfied here.

    **2.**    **The Settlement Class Should Be Certified Under Fed. R. Civ. P. 23(b)(2) Because Defendant Acted On Grounds That Apply Generally to the Class Such That Final Injunctive Relief Is Appropriate**

Rule 23(b) describes three types of class actions.  *See* Fed. R. Civ. P. 23(b)(1)-(3). To obtain class certification, the Parties must establish that the class they seek to certify falls within "one of the several elements of Rule 23(b)."  *Smilow v. Southwestern Bell Mobile Sys., Inc.*, 323 F.3d 32, 38 (1st Cir. 2003); *see also In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 850 (6th Cir. 2013) ("In addition to fulfilling the four prerequisites of Rule 23(a), the proposed class must also meet at least one of the three requirements listed in Rule 23(b).")(citing *Dukes*, 131 S. Ct. at 2550). Here, the Parties seek certification under Fed. R. Civ. P. 23(b)(2).

Rule 23(b)(2) allows for the certification of class actions seeking declaratory or injunctive relief where "the party opposing the class has acted or refused to act on grounds generally applicable to the class."  Fed. R. Civ. P. 23(b)(2).  Certification of a class under Rule 23(b)(2) is appropriate where the remedy sought is "an indivisible injunction" that applies to all class members "at once."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2558 (2011).  Unlike Rule 23(b)(3), Rule 23(b)(2) does not require that common issues of law and fact "predominate," but only that class members "complain of a pattern or practice that is generally applicable to the class as a whole."  *Walters v. Reno*,

145 F.3d 1032, 1047 (9th Cir. 1998).  Moreover, "[e]ven if some class members have not

been injured by the challenged practice, a class may nevertheless be appropriate." *Id.*

 The operative pleading in this case seeks injunctive relief and the Settlement

provides for, and releases claims regarding, injunctive relief only.  *See* Fourth

Consolidated Amended Class Action Complaint (Dkt. 91) at ¶¶ 11, 67, 76, 120-124 and

Request for Relief; *see also* Stipulation and Order to Clarify the Parties' Proposed

Settlement Agreement and Release (Dkt. 94).[6]  The injunctive relief Plaintiffs seek here,

and have obtained through this Settlement, need not be tailored to each Settlement Class

member to correct Defendant's allegedly wrongful conduct; rather, the injunctive relief

this Settlement provides generally pertains to Defendant's marketing practices and

applies to all Settlement Class members in the same way, thus making certification of the

settlement class under Fed. R. Civ. P. 23(b)(2) desirable and appropriate.  *See Donovan v.*

*Phillip Morris USA, Inc.*, 268 F.R.D. 1, 22-23 (D. Mass. 2010) (certifying cigarette-

smoker medical monitoring class under Fed. R. Civ. P. 23(b)(2) because claim "alleges

---

[6] While the Complaint also sought monetary damages, no monetary claims of any absent
Settlement Class member are released by this Settlement – absent Settlement Class members are
free to pursue monetary claims at their own option, either individually or as a part of a class.
While the Objectors contend, incorrectly and without regard to the underlying facts involved in
this litigation, that Class Counsel *should have* continued to litigate this case until an order
certifying a Rule 23(b)(3) monetary damages class was achieved, whether through contested
motion practice or settlement, because this Settlement involves injunctive claims only, the
contention that certification of the Settlement Class must be analyzed under the Rule 23(b)(3)
rubric is simply inapposite as monetary claims are not at issue here.  *Cf. Wal-Mart Stores, Inc. v.*
*Dukes*, 131 S. Ct. 2541, 2557, (2011) (holding Rule 23(b)(2) "does not authorize class
certification when each class member would be entitled to an individualized award of monetary
damages"); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614-155 (1997) ("Rule 23(b)(3)
added to the complex-litigation arsenal class actions for damages designed to secure judgments
binding all class members save those who affirmatively elected to be excluded. . . . Framed for
situations in which 'class-action treatment is not as clearly called for' as it is in Rule 23(b)(1) and
(b)(2) situations, Rule 23(b)(3) permits certification where class suit 'may nevertheless be
convenient and desirable.'")(citations omitted); *Yaffe v. Powers,* 454 F.2d 1362, 1366 (1st Cir.
1972) ("the existence of 'predominating' questions and the availability of other methods of
resolution which might be superior to a class action are not criteria of a subdivision (b)(2) class,
but again of a (b)(3) class . . . .") (citations omitted).

group harm" and because relief was "injunctive in nature"); *see also Jermyn v. Best Buy Stores, L.P.*, Case No. 08-cv-214, 2012 U.S. Dist. LEXIS 90289 at *35 (S.D.N.Y. June 27, 2012) (granting final approval to declaratory and injunctive relief settlement under Fed. R. Civ. P. 23(b)(2) involving substantial changes to retailer's price match policy, noting that the approved settlement "provides for only injunctive relief and specifically preserves class members' rights to pursue monetary damages").

In this Settlement, where only final and indivisible injunctive relief is being provided to the Settlement Class as a whole – injunctive relief that requires Defendant to implement marketing practices and formulation changes consistent with the changes Plaintiffs sought through their operative complaint – certification under Rule 23(b)(2) is appropriate. *See Garcia-Rubiera v. Calderon*, 570 F.3d 443, 461 (1st Cir. 2009)(reversing denial of class certification and remanding with direction to certify 23(b)(2) class where damages claims were dismissed but injunctive claims remained); *see also Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 162 (2d Cir. 2001) (Rule 23(b)(2) "is intended for cases where broad, class-wide injunctive or declaratory relief is necessary to redress a group-wide injury."). When the relief at issue in this Settlement is purely injunctive, contrary to the Objectors' contentions, Rule 23(b)(3)'s predominance and superiority inquiries are irrelevant. *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. at 2558 ("When a class seeks an indivisible injunction benefitting all its members at once, there is no reason to undertake a case-specific inquiry into whether class issues predominate or whether class action is a superior method of adjudicating the dispute. Predominance and superiority are self-evident.").

Moreover, the Rule 23(b)(2) injunction provided for by this Settlement is necessary to protect the Settlement Class because, without an injunction (certain Objectors' unsupported claims notwithstanding) there is no assurance that Defendant will maintain the changes to its marketing practices achieved by this Settlement.  In addition, without this Settlement, there is nothing (aside from the threat of future litigation dependent on the content of Defendant's marketing) that would prevent Defendant from switching its formulation of Softsoap Antibacterial back to a triclosan base.  While the FDA's tentative monograph  designates triclosan as a category IIISE drug for use in antimicrobial hand soaps (meaning there is insufficient evidence to find triclosan safe or effective), because that monograph has remained in "tentative" status now for more than forty years, there is no direct barrier to Defendant's renewed use of triclosan in Softsoap absent the injunction provided for by this Settlement.  At its core, this Rule 23(b)(2) Settlement is necessary to protect the Settlement Class from the real risk that Defendant's challenged marketing and sales practices would recur without it.  *Contra In re New Motor Vehicles Canadian Export Antitrust Litig.*, 269 F.R.D. 80, 84-87 (D. Me. 2010) (concluding that a 23(b)(3) class should be certified but rejecting 23(b)(2) injunctive settlement class where changes in exchange rates made threat of future arbitrage practices challenged in lawsuit unrealistic); *In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 275 (D  Mass. 2004) (rejecting certification of Rule 23(b)(2) class because, where patent that enabled defendant to commit alleged antitrust violations had been declared invalid since the time suit was filed, "it is difficult to imagine how [defendant's] violation might recur" making injunctive relief inappropriate).

In sum, because this Settlement provides for injunctive relief that will protect the Settlement Class as a whole from real risks of future allegedly deceptive marketing and trade practices, without compromising, in any way, Settlement Class members' potential claims for monetary relief, certification under Fed. R. Civ. P. 23(b)(2) is appropriate.

### B. The Settlement is Fair, Reasonable, and Adequate Under Fed. R. Civ. P. 23(e)(2) and Applicable First Circuit Standards and Thus Merits Final Approval

Fed. R. Civ. P. 23(e) requires that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."  Fed. R. Civ. P. 23(e)(2) requires that if settlement proposal "would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate."  "District courts may only approve class action settlements that are fair, reasonable, and adequate." *Voss v. Rolland*, 592 F.3d 242, 251 (1st Cir. 2010) citing *City P'ship Co. v. Atl. Acquisition Ltd.*, 100 F.3d 1041, 1043 (1st Cir. 2003).

### 1. The Settlement Should be Finally Approved Under a "Overall Reasonableness" Standard of Review

The First Circuit has not adopted a formal checklist protocol for assessing a proposed settlement's reasonableness.  Rather, in the First Circuit, satisfaction of Rule 23(e)'s "fair, reasonable, and adequate" criteria is established based on a "wide-ranging review of the overall reasonableness of the settlement that relies on neither a fixed checklist of factors nor any specific litmus test." *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F.Supp.2d 249, 259 (D.N.H. 2007) (internal citations omitted); *see also Nat'l Ass'n of Chain Drug Stores v. New England Carpenters Ass'n*, 582 F.3d 30, 44 (1st Cir. 2009) ("The district judge must approve the settlement in a class action and, to do so, must allow a hearing and make a finding that the settlement 'is fair, reasonable, and adequate,'

*Fed. R. Civ. P. 23(e)(2)*, or (in shorthand), 'reasonable.'").   "[T]he district court enjoys considerable range in approving or disapproving a class action settlement, given the generality of the standard and the need to balance benefits and costs." *Nat'l Ass'n of Chain Drug Stores*, 582 F.3d at 45.

    This Court has long recognized that "there is a presumption in favor of settlement if the parties negotiated it at arm's-length, after conducting meaningful discovery" and that "public policy generally favors settlement-particularly in class actions as massive as the case at bar."   *In re Tyco*, 535 F.Supp.2d at 259 (internal citations omitted); *see also City P'ship Co.*, 100 F.3d at 1043 ("When sufficient discovery has been provided and the parties have bargained at arms-length, there is a presumption in favor of the settlement.")(citations omitted).   Although there is a presumption in favor of approving post-discovery arm's-length settlements like the Settlement here, the Court must still review the Settlement for reasonableness to fulfill its role as "a fiduciary of absent class members, protecting them from an unjust or unfair settlement."   *Bezdek v. Vibram USA*, Case No. 12-cv-1013-DPW, 2015 WL 223786 at *13 (D. Mass. Jan. 16, 2015).   In reviewing the reasonableness of the Settlement, the Court should keep in mind the difficulty of achieving any settlement in hard-fought litigation as well as the underlying circumstances of the case. *See In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 36 (1st Cir. 2009) ("The district court's approval reflected another important concern: facilitating a settlement in a hard-fought, complex class action.   Achieving settlement in such cases is not easy.   District judges must realistically evaluate settlements based on the circumstances of the case.") (citation omitted)

In exercising its fiduciary role in evaluating the Settlement here under a general reasonableness rubric, the Court should ultimately conclude that the Settlement overall is fair, reasonable, and adequate because it secures important and meaningful injunctive benefits for the Settlement Class that go to the core marketing issues challenged in this litigation, while also preserving all absent Settlement Class members' rights to seek monetary compensation relating to their purchases of Softsoap Antibacterial if they so choose. The Settlement achieves a great deal for Settlement Class members while asking them to sacrifice very little. Given the balance of advantages provided by this Settlement (meaningful marketing practices changes combined with formulation changes that could not have been achieved even had Plaintiffs prevailed completely on the merits following trial for five years, without intervening regulatory changes) weighed against the limited set of disadvantages (Settlement Class members' release of claims for further injunctive or declaratory relief and the discontinuation of this action, and only this action, short of certification of a damages class), the Court should grant final approval to this Settlement under a general reasonableness analysis.

## 2. The Settlement Should be Finally Approved When Evaluated Under Modified *Grinnell* Factors

Although the First Circuit has not promulgated a list of specific factors used to consider the efficacy of a proposed settlement, one list of factors often employed by district courts in this circuit in conducting a final review of a proposed settlement is the list of factors provided by the Second Circuit in *Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir.1974), *overruled on other grounds by Missouri v. Jenkins*, 491 U.S. 274 (1989). *See Bezdek v. Vibram USA,* 2015 WL 223786 at *13 (D. Mass. Jan. 16, 2015) (citations omitted). The *Grinnell* factors include: "(1) the complexity, expense, and

likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage

of the proceedings and the amount of discovery completed; (4) the risks of establishing

liability; (5) the risks of establishing damages; (6) the risks of maintaining the class

action through the trial; (7) the ability of the defendants to withstand a greater judgment;

(8) the range of reasonableness of the settlement fund in light of the best possible

recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in

light of all the attendant risks of litigation." *Grinnell*, 495 F.2d at 463.  In this injunctive

relief Settlement, only the first six *Grinnell* factors are arguably relevant.

  As such, should the Court wish to evaluate this Settlement using a multi-factor

approach, the Court should embrace a list of modified *Grinnell* factors as it has

previously.  *See In re Tyco*, 535 F. Supp. 2d at 259 ("Although I have the discretion to

use the Grinnell list of factors verbatim, I find that a more concise list of the

considerations at play, modeled on those used in *Compact Disc*, best fits the facts of this

case."); *see also In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216

F.R.D. 197, 206 (D. Me. 2003)("the appellate courts consider some or all of the following

factors: (1) comparison of the proposed settlement with the likely result of litigation; (2)

reaction of the class to the settlement; (3) stage of the litigation and the amount of

discovery completed; (4) quality of counsel; (5) conduct of the negotiations; and (6)

prospects of the case, including risk, complexity, expense and duration.").  These six

modified *Grinnell* factors are addressed factor by factor below.

### a.  *Comparison of the Proposed Settlement with the Likely Result of Litigation*

  The proposed Settlement here provides injunctive relief above and beyond what

could be achieved through litigation alone.  Through the Settlement, Plaintiffs have

required Defendant to "use triclosan in a manner consistent with final FDA regulations."

Settlement ¶ 30(a).  Given that the FDA has yet to promulgate final regulations despite

having engaged in rulemaking regarding triclosan since the 1970s, the effect of this

restriction is significant.  *See* Memorandum and Order on Motion to Dismiss (Dkt. 46) at

24-25 ("As I have noted, the FDA began investigating triclosan products in 1972.  Since

then, it has issued two TFMs and reopened the administrative record on multiple

occasions.  Several years ago, the agency decided to split its original monograph on

triclosan products into three separate monographs.  Since then, the agency has missed

multiple self-imposed deadlines for publishing the TFM, most recently in February

2013.") (citation omitted).  The Settlement also circumscribes Defendant's use of 99%

efficacy and bars use of "Goodbye Germs – Hello World" marketing claims for five years

or until there is a change in statute or regulation that requires Defendant to handle these

claims differently.  Settlement  ¶ 30(b) and (c).  These marketing changes are significant

because it was Defendant's broad reference to extraordinary efficacy against "germs"[7]

that Plaintiffs challenged as the most significantly misleading because these marketing

claims most directly implied that washing with Softsoap Antibacterial provided greater

health benefits than washing with plain soap.  *See* Complaint at ¶¶ 46-47.  And as noted

repeatedly above, while the Settlement does not provide compensation for any potential

---

[7] Plaintiffs' fundamental issue over Defendant's use of the term "germs" in Softsoap
Antibacterial advertising is Plaintiffs' belief that "germs" implies both bacteria *and* viruses, and
that triclosan is merely an antibacterial agent without antiviral efficacy.  Given the predominance
of viruses (like the virus that causes the common cold) as one of the primary culprits in disease
transmission to be combatted through hand washing, Plaintiffs alleged that the implication of
superior germ control efficacy is misleading in that it implies superior effectiveness against viral
pathogens, when, at best, triclosan's effectiveness is limited to only certain kinds of bacteria.
Simply put, because of what triclosan is and how it works, according to Plaintiffs, hand washing
with a triclosan soap is no more beneficial or efficacious than washing with plain soap and water.

monetary claims, the Settlement does not release absent Settlement Class members' monetary claims either.

Compared to significant and immediate relief provided for by the Settlement, the likely result of further litigation is only uncertainty and delay. Absent settlement, this litigation will require the Parties to fully brief and argue a class certification motion, as well as the Rule 23(f) petition that the losing party to that motion would inevitably file. The Parties would also have to engage in substantial additional discovery, including extensive expert discovery. This would most likely be followed by motions for summary judgment and trial. All of these efforts would extend the litigation out for several years and result in additional fees, costs, and risks to all Parties.

With respect to the merits of Plaintiffs' liability case, both Plaintiffs and Defendant each contend that they would ultimately prevail on the merits of their claims or defenses respectively. Given the Parties' continued dispute over the merits, the only likely result of continued litigation is continued uncertainty.

For their part, Plaintiffs contend that there is ample documentary evidence that Colgate promoted the superior health efficacy benefits of the Product, that these benefits are, as a matter of scientific fact, incapable of being provided by the Product, and that Defendant's marketing was misleading to a reasonable purchaser of the Product. Conversely, however, Defendant would contend that its marketing did not convey the allegedly misleading messaging that Plaintiffs alleged it did and that, even if Softsoap Antibacterial messaging was as Plaintiffs alleged, Softsoap Antibacterial as it was previously formulated did, in fact, provide the claimed benefits.

With respect to the merits of Plaintiffs' damages case, the Parties again believe a substantial dispute exists as to the fact and extent of any damages. Colgate has maintained throughout the litigation that Softsoap Antibacterial was priced at the same or lower price than similar varieties of Softsoap while Plaintiffs have maintained that the challenged claims have caused Softsoap Antibacterial to carry a price premium, thus raising doubt as to whether any price premium damages theory could prevail at trial.

Additionally, there is circuit court authority on both sides of the issue of how the ascertainability requirement applies. *Compare In re Nexium Antitrust Litig.,* 777 F. 3d 9, 19 (1st Cir. 2015) and *Mullins v. Direct Digital, LLC,* No. 15-1776, 2015 U.S. App. LEXIS 10371 (7th Cir. Jul. 28, 2015) with *Carrera v. Bayer Corp.*, 727 F.3d 300 (3d Cir. 2013).

In light of these challenges, and the significant risk to the Parties of continued litigation over both Defendant's underlying liability and the amount of economic damages, if any, at issue in this case, the proposed Settlement preserves Settlement Class members' rights to separately seek damages through their own individual or aggregate actions. This compromise concerning damages – Colgate is not paying any, but neither are Settlement Class members giving up their right to seek any – adequately balances the risks of continued litigation while, at the same time, protecting the ability of absent class members to seek economic recovery at their own option.

Moreover, and as discussed above, pursuing this litigation through trial would also require the Parties to conduct extensive additional discovery. Plaintiffs would have to engage in extensive expert discovery to establish the materiality of the challenged advertising and to prove monetary damages. These added costs, combined with the

inherent risks of pursuing the claims "demonstrate palpable uncertainty that a more favorable result could be obtained through litigation."  *See Bezdek,* 2015 WL 223786 at *14.

In view of the palpable uncertainty of continued litigation against the certain injunctive relief provided for by this Settlement, combined with the preservation of Settlement Class members' monetary relief claims, evaluation of the first modified *Grinnell* factor leads to the conclusion that the Court should grant final approval to this Settlement.

### b.   *Reaction of the Settlement Class*

Settlement Class members' reaction to the Settlement has been exceedingly positive – a consideration for the Court when evaluating the efficacy of a proposed settlement, though also of limited weight where claims are modest.  *See In re New Motor Vehicles Canadian Export Antitrust Litig.*, MDL Dkt. No. 1532, 2011 U.S. Dist. LEXIS 40843 at *25 (D. Me. Apr.13, 2013)("Class reaction to proposed settlements of modest claims is often muted, and I do not give it great weight."); *see also In re Puerto Rican Cabotage Antitrust Litig.*, 815 F. Supp. 2d 448, 473 (D.P.R. 2011) *citing Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 118 (2d Cir. 2005) ("'If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.'") (quoting 4 ALBA CONTE & HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS § 11.41, at 108 (4th ed. 2002)).  Indeed, since the time that Class Notice was disseminated, approximately 10 Settlement Class members have contacted Class Counsel by email or telephone with questions about the Settlement.  Class Counsel comprehensively answered those questions and also directed those callers to the

dedicated class action website,[8] where substantial additional information about the litigation is available.  Karl Aff. at ¶ 12.

As noted above, there have been four objections to this Settlement, one of which is being withdrawn.  Of the remaining three objections, one is the product of a known professional objector interest group, the Center for Class Action Fairness.  As explained above, these three remaining objections rely on flawed premises – to wit, evaluating the relief achieved by the Settlement against the claims as originally asserted in the complaint instead of against the risks of continued litigation and criticizing the Settlement for compromising potential monetary claims when, in fact, the Settlement preserves all monetary claims.  Given the relative paucity of the number of objectors (leaving aside for a moment the paucity of the substance of their objections) compared against the millions of Settlement Class members and the tens of thousands of impressions generated by the notice program here, analysis of this reaction  weighs in favor of final approval. *See In re Lupron Mktg. & Sales Practices Litig.*, 228 F.R.D. 75, 96 (D. Mass. 2007) ("Absent polling data, which is not available to the court, this factor can be analyzed only by comparing the number of objectors and opt outs with the number of claimants, and by assessing the extent to which notice effectively reached absent class members.").

### c.  *Stage of Proceedings and Amount of Discovery Completed*

As set forth above and in Plaintiffs' Memorandum of Law in Support of Plaintiffs' Assented-To Motion for Award of Attorneys' Fees, Expenses, and Representative Plaintiffs' Incentive Awards (Dkt. No. 98), following the JPML's transfer of this litigation to the District of New Hampshire in March 2012, the parties engaged in

---

[8] http://www.softsoapantibacterialclassactionsettlement.com.

initial discovery and fully briefed and argued Defendant's Motion to Dismiss the

Consolidated Amended Complaint (Dkt. 26).  Following the Court's denial of

Defendant's dismissal motion on March 18, 2013 (Dkt. 46), the parties engaged in

extensive factual discovery, including Plaintiffs' review of more than 93,000 pages of

documents that Defendant produced, Plaintiffs' depositions of Defendant's employees,

Defendant's depositions of the Class Plaintiffs, as well as additional written discovery by

both sides.  In addition, Class Counsel conferred with scientific, economic, and human

factors experts.  The Parties engaged in further discovery after mediation.  This extensive

work provided the parties with adequate information as to their respective positions,

including the strengths and weaknesses of their claims and defenses, to enable them to act

intelligently in negotiating this Settlement. *See M3Power Razor*, 270 F.R.D. at 63

(holding "sufficient discovery has been undertaken to provide the parties with adequate

information about their respective litigation positions" where over 100,000 pages were

produced and one defendant witness was deposed); *In re StockerYale, Inc. Securities

Litigation,* Case No. 1:05-cv-177-SM, 2007 U.S. Dist. LEXIS 94004 at *9 (D.N.H. Dec.

18, 2007) (holding due to "document discovery and its extensive own investigation" that

"class counsel adequately appreciated the merits of the case before negotiating" and that

the third modified *Grinnell* factor favored approval of the settlement).  Thus, the stage of

the proceedings and discovery completed factor supports approval of the Settlement.

### d.  The Settlement Negotiation Process

Where a class settlement was negotiated at arm's length, after the parties engaged

in sufficient discovery, the settlement is entitled to a presumption of reasonableness. *City

P'ship Co.*, 100 F.3d 1041, 1043 (1st Cir. 2003) (citations omitted).  In this case, and as

discussed above, the Parties conducted the Settlement negotiations here at arm's-length, on an informed basis, through experienced counsel.  The proposed Settlement is the result of many hours of negotiations among the parties that commenced in June 2013, including mediation before Judge Rosenbaum in November 2013.  Although the mediation proved unsuccessful, the parties further framed the issues and engaged in further discovery.  During the extensive discovery process, the parties evaluated the relative merits of their respective positions and assessed the strength of the Class Plaintiffs' claims and relief sought.  Also factoring into their respective evaluations was Defendant's conduct since the claims were first filed.  Specifically, Defendant removed triclosan from the Product in 2011 and changed its marketing from "eliminates 99.9% of all germs" to "washes away bacteria" and variations on that statement.  The parties re-commenced settlement discussions in 2014, and ultimately reached the Settlement presently before this Court on final approval.  Furthermore, the negotiation process did not turn to a discussion of attorneys' fees until after the substantive terms of the Settlement were agreed upon.  Thus, the quality and extent of the negotiation process here suggests that final approval should be granted.

### e.  *Risk, Complexity, Expense, and Likely Duration of Litigation*

The Parties face the usual risks of uncertain and contested litigation – either side could win or lose, and given the gross sales of millions of units of Softsoap Antibacterial, the stakes could be enormous. Class actions concerning widely-sold consumer products raise complex issues of fact and law, especially where, as here, the substantive laws of multiple states are at issue.  And as already noted above, litigation would likely continue for a significant period of time, given the need for the parties to complete discovery and

proffer economic and scientific experts, with all the corresponding expense such continued litigation involves.  Thus, evaluation of this factor further weighs in favor of final approval of the Settlement.

### f.   Quality and Experience of Counsel and Their Recommendations

When experienced counsel on both sides recommend approval of the Settlement, their recommendations are entitled to deference.  *See Rolland v. Cellucci,* 191 F.R.D. 3, 10 (D. Mass. 2000)("When the parties' attorneys are experienced and knowledgeable about the facts and claims, their representations to the court that the settlement provides class relief which is fair, reasonable and adequate should be given significant weight."). Here, the Parties' respective counsel are well versed in consumer class action litigation, and due to their extensive pre-settlement discovery and negotiation, extremely knowledgeable of the facts and issues involved in this case. Counsel for the Parties believe the Settlement to be fair, reasonable, and adequate and in the best interests of the Settlement Class, and recommend final approval.  Accordingly, evaluation of the recommendations of experienced counsel suggests final approval should be granted here.

### C.  Class Notice Was Adequate

While an opt-out class action under Rule 23(b)(3) must meet stringent notice requirements, see Fed. R. Civ. P. 23(c)(2)(B), a district court need not provide any notice before certifying a mandatory class action under Rule 23(b)(2).  *See* Fed. R. Civ. P. 23(c)(2)(A) ("For any class certified under Rule 23(b)(1) or (2), the court may direct appropriate notice to the class.") (emphasis added).  *See also Int'l Union v. GMC*, 497 F.3d 615, 630 (6th Cir. 2007).

As discussed above, the Settlement Class has been provided with ample and sufficient notice of the Settlement through implementation of the Notice Plan and given an appropriate opportunity to voice objections. *See infra* at Section II. Accordingly, class notice was adequate.

IV.     **CONCLUSION**

For all of the foregoing reasons, the Parties respectfully request that the Court finally approve the Settlement in the form and manner set forth in the Proposed Order submitted contemporaneously herewith, which includes:  (a) granting final approval to the Settlement; (b) certifying the settlement class; (c) finding that Class Notice was reasonable and constituted the most practicable notice under the circumstances; (d) entering an order awarding Attorneys' Fees and Expenses, including Notice Administrator fees and Representative Plaintiffs' Incentive Payments, in the aggregate amount of $2,000,000; and (e) dismissing this Action with prejudice.

                                    Respectfully submitted,

Dated: August 28, 2015              /s/ Lucy J. Karl
                                    Lucy J. Karl
                                    NH Bar No. 5547
                                    **SHAHEEN & GORDON, P.A.**
                                    107 Storrs Street, P.O. Box 2703
                                    Concord, New Hampshire 03302
                                    Telephone: (603) 225-7262
                                    Facsimile: (603) 225-5112
                                    lkarl@shaheengordon.com

                                    *Plaintiffs' Interim Lead Counsel*

Dated: August 28, 2015

Respectfully submitted,

/s/ Shon Morgan
Shon Morgan
**QUINN EMANUEL URQUHART &
SULLIVAN LLP**
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100
shonmorgan@quinnemanuel.com

/s/ Michele E. Kenney
Michele E. Kenney
NH Bar No. 19333
**Pierce Atwood, LLP**
One New Hampshire Avenue, Suite 350
Portsmouth, New Hampshire 03801
Telephone: (603) 433-6300
Facsimile: (603) 433-6372
danderson@pierceatwood.com
*Attorneys for Defendant Colgate-Palmolive
Company*

## CERTIFICATE OF SERVICE

The undersigned certifies that on August 28, 2015, she caused this document to be electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of filing to registered counsel of record for each party.

/s/ Lucy J. Karl
Lucy J. Karl (NH Bar # 5547)