## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| In re: Colgate-Palmolive Softsoap Antibacterial Hand Soap Marketing and Sales Practices Litigation (MDL No. 2320) | MDL Docket No. 12-md-2320-PB<br><br>All Actions |

## PLAINTIFFS' RESPONSES TO OBJECTIONS TO
## CLASS ACTION SETTLEMENT

Dated: September 16, 2015

**INTRODUCTION**

Plaintiffs Tracy Nieblas, Shari Elstein, Kristina Pearson, Adam Emery, and Jeff Dyke, in their individual capacities and as class representatives ("Plaintiffs"), by their respective undersigned counsel, respectfully submit this response to the objections to class action settlement submitted by Michelle Schwanekamp (Dkt. 96), Tyler Cool (Dkt. 99), and Anna St. John (Dkt. 100) (collectively, the "Objectors" and the "Objections").[1]

With respect to objectors generally, the law is clear that "approval should not be denied 'merely because some class members object to it.'" *Enterprise Energy Corp.*, 137 F.R.D. 240, 246 (S.D. Ohio 1991). "An individual who objects, consequently, has a heavy burden of demonstrating that the [settlement] is unreasonable." *Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983). Objectors, alone, carry this burden of demonstrating "that the Settlement is unfair, inadequate or unreasonable." *Enterprise Energy*, 137 F.R.D. at 247. The reasonableness of a class action settlement is evaluated by balancing the advantages it provides against the risks of continuing litigation, and not against the relief originally requested in the complaint or "other possible but perhaps unobtainable variations of the proffered settlement." *See Nat'l Ass'n of Chain Drug Stores v. New England Carpenters Ass'n*, 582 F.3d 30, 44 (1st Cir. 2009) (citations omitted).

The arguments set forth in the Objections do not show how the Settlement is in any way unreasonable and the Objections fail to provide any valid grounds for rejecting or modifying this Settlement or Class Counsel's request for attorney's fees. The Plaintiffs' counterarguments against the Objections are neatly divided into three.

---

[1] Linda D'Agostino is withdrawing her objection (Dkt. 95) because she does not actually object to the Settlement; rather, she objects to Defendant's allegedly deceptive labeling and marketing of Softsoap Antibacterial that this Settlement effectively enjoins. *See* Karl Aff. ¶ 13 (Dkt. 102-2). To the extent Ms. D'Agostino fails to formally withdraw her objection prior to the final fairness hearing, this Court should overrule it for the same reasons that it should overrule the three other Objections.

**First**, despite the Objectors' arguments to the contrary, the Settlement does not release any absent Class members' monetary claims, regardless of whether such claims are denominated as "legal" or "equitable." Because the Settlement does not release absent Class members' monetary claims, or their ability to participate in a class action for such monetary claims, any argument that the settlement is unreasonable or that monetary claims predominate in this Settlement, and that, as a result, certification under Fed. R. Civ. P. 23(b)(2) is inappropriate, is invalid. Absent Class members, including all three Objectors, are completely free to initiate and litigate their own lawsuits, whether class or individual, against Defendant if they wish to attempt to obtain monetary relief. Objecting to this Settlement because it does not secure monetary relief when the Settlement also does not release claims for monetary relief is nothing more than incongruous protest completely divorced from the factual reality of what this Settlement is and what this Settlement does. The Objectors invite this Court to balance the advantage this Settlement provides – an injunction – against a disadvantage – release of monetary claims – the Settlement does not impose. The Objectors' illogical invitation should be refused.

**Second**, certification under Fed. R. Civ. P. 23(b)(2) is appropriate because the relief obtained through this Settlement is an indivisible injunction that applies equally to all members of the Settlement Class that is specifically tied to the marketing and sales practices the Plaintiffs challenged when they initiated this class action lawsuit in 2011. In 2011, before Plaintiffs filed this lawsuit, Defendant Colgate-Palmolive Company ("Defendant" or "Colgate") had been marketing and selling Softsoap Antibacterial (the product at issue in this case) made with the antibacterial chemical agent triclosan, and, according to Plaintiffs, falsely, deceptively, and misleadingly claiming that this Softsoap Antibacterial product was more effective than plain soap and water at eliminating germs and providing health. Plaintiffs, the

litigation Class they sought to represent, and the Settlement Class they have submitted to this Court for final approval, are tied together because they all purchased this particular triclosan-containing product and were all subjected to the same allegedly false, deceptive, and misleading marketing claims.  As such, Objectors' argument that the Settlement Class lacks cohesion is simply untrue – the Settlement Class is cohesive by virtue of their common experience of purchasing allegedly falsely marketed Softsoap Antibacterial.

Furthermore, the prospective injunctive relief obtained by this Settlement benefits all Settlement Class members even though the Settlement Class is defined by reference to past purchases because Settlement Class members continue to be in the market for hand soap and are all likely to purchase hand soap in the future. By enjoining Defendant's use of what the complaint alleged was an ineffectual ingredient, as well as by enjoining what the complaint alleged were false, deceptive, and misleading marketing practices, the Settlement obtains real relief that benefits all Settlement Class members by providing them with more honest marketing and sales practices than they would have had without this Settlement.

**Third**, under recent and binding First Circuit authority, the Objectors lack standing to challenge Class Counsel's request for an award of attorneys fees because they "take nothing at all" regardless of the amount of attorneys fees ultimately awarded in this solely injunctive 23(b)(2) settlement.  *See Hill v. State St. Corp.*, Case No. 15-1193, No. 15-1597, 2015 U.S. App. LEXIS 12868, at *8-9 (1st Cir. July 24, 2015).  The $2,000,000 Settlement Fund created in Paragraph 36 of the Settlement Agreement will pay only two things:  (1) the costs of the Notice Plan; and (2) any award by the Court to Class Counsel for attorneys' fees, other litigation expenses, and class representative incentive awards.  Any difference between the $2,000,000 fund and the amount awarded for payment of all expenses (including the amounts expended on the Notice Plan) and Court-approved attorneys' fees are reserved for *cy pres*

3

distribution to a hygiene-related charitable organization. These funds do not revert to absent members of the Settlement Class nor do they revert to Defendant. Indeed, the expense of attempting to distribute $2,000,000 to tens of millions of absent members of the Settlement Class would make any attempt at such a distribution wildly impracticable, further supporting the proposed *cy pres* solution in the unlikely event there is any difference between the $2,000,000 fund and the amounts awarded by the Court to Class Counsel for fees and expenses.

Moreover, the Objectors point to no substantive reason why Class Counsel should not be awarded the full amount of the $2,000,000 fund they have requested through the Settlement for reimbursement of their litigation expenses and for a reasonable payment of attorneys' fees. Indeed, Class Counsel has more than earned payment of their requested attorneys' fees over the course of litigating this case for more than four years. Class Counsel defeated a motion to dismiss their complaint, conducted extensive documentary discovery, consulted with scientific and economic experts to gain their insights as to strengths and weaknesses of this particular case, defended the Class Representatives at their own depositions, and took the depositions of several of Defendant's employees. Class Counsel's lodestar far exceeds the amount of attorneys' fees they will recover as a result of this Settlement. Moreover, Class Counsel achieved significant, real, and valuable injunctive relief for the Settlement Class. Thus, under any substantive analysis of Class Counsel's request for attorneys' fees and expenses, awarding the full amount requested is justified and proper. *See generally* Memorandum of Law in Support of Plaintiffs' Assented-To Motion for Award of Attorneys' Fees, Expenses and Representative Plaintiffs' Incentive Awards (Dkt. 98-1, "Plaintiffs' Fees Memorandum").

In reality, some, if not all, of these Objectors are not really attacking the Settlement; rather, they are using the Settlement as a stalking horse by which to attack plaintiffs' counsel

and fees in class action cases in general.[2] Objectors' protest against the existence of Rule 23 is an argument they should make to the legislative branch of government and not to this Court. Indeed, the Objectors offer no proposals that would beneficially modify this Settlement, they simply seek to prevent the Parties from settling at all.  For all these reasons, as well as the reasons already set forth in the Parties' Memorandum of Law in Support of Joint Assented-to Motion for Final Approval (Dkt. 102-1) and Plaintiffs' Fees Memorandum, incorporated herein by reference, this Court should overrule the Objections and grant final approval to this class action Settlement and award Class Counsel attorney's fees, costs, and expenses in the amount requested.

---

[2] Which, if history is an indicator, St. John and her "Center for Class Action Fairness" ("CCAF") cohorts will continue to do once this Court overrules her objection, by appealing that denial to the United States Court of Appeals for the First Circuit – thus tying up this Settlement, and attempting to reduce the net hourly value of Class Counsel's requested fees even further.  Simply stated, and as Class Counsel is prepared to discuss more fully at the September 28, 2015 Fairness Hearing, St. John's Objection is an attack on Rule 23 in general, and plaintiffs' lawyers in particular, masquerading as a "principled" challenge to this Settlement.  *See, e.g.*, St. John Obj. at 3 ("St. John brings this objection through CCAF in good faith to protect the interest of the class.").  As the parties discuss in their Memorandum of Law in Support of Joint Assented to Motion for Final Approval (Dkt 102-1) at footnote 4, CCAF often objects to proposed class action settlements on what it claims are "principled" grounds, but, what in reality are "professional" objections identical to those brought by the other "remoras" from whom it has recently admitted to accepting funding. *See* Declaration of Theodore H. Frank in Support of Motion to Intervene, filed as Dkt. 60-2 at ¶¶ 12, 19-33, 52, and 69 in *In re Capital One Telephone Consumer Protection Act Litigation*, No. 15-1400 (7th Cir. June 10, 2015), (attached to Dkt. 102-1 as Ex. C) (founder of CCAF admitting that he has been "moonlight[ing]" for one professional objector and has been "retained" by another in exchange for personal payments of approximately $250,000 from such objectors, despite his prior claims that the CCAF was different from other professional objectors).  "Professional" objectors are those who file objections solely "to extract payments for themselves from the parties or counsel by threatening years of delay associated with unmeritorious settlement objections and appeals" and who "can make a living simply by filing frivolous appeals and thereby slowing down the execution of settlements," *Barnes v. FleetBoston Fin. Corp.*, No. 01-10395-NG, 2006 U.S. Dist. LEXIS 71072, *3-4 (D. Mass. Aug. 22, 2006); *see also In re UnitedHealth Group Inc. PSLRA Litigation*, 643 F. Supp. 2d 1107, 1108 -1109 (D. Minn. 2009) ("The remoras are loose again . . . These objectors have contributed nothing . . . Objectors' request and their motion ill-befit attorneys admitted to the bar.  Accordingly, the Court holds, as a matter of fact and law, objectors have conferred no benefit whatsoever on the class or on the Court.").

## **ARGUMENT**

### I. Because The Settlement Does Not Compromise Or Release Any Absent Class Member's Potential Claims For Monetary Relief, Including Their Right To Pursue Such Claims In A Class Action, The Settlement Is Reasonable And Monetary Claims Cannot And Do Not Predominate.

Other than for the five named-plaintiffs in their individual capacities, there are absolutely zero monetary claims at stake in this Settlement. The Objectors' contentions that the release in this Settlement is too broad or overreaching or that monetary claims predominate are thus completely inaccurate. Monetary claims remain even after final approval of this Settlement regardless of whether they are denominated as "legal" or "equitable." *See* Stipulation and Order to Clarify the Parties' Proposed Settlement Agreement and Release (Dkt. 94). Indeed, the Settlement preserves the rights of Settlement Class members (except for the named Plaintiffs) to file individual *or* class action lawsuits for any damages they could attempt to prove they suffered as a result of purchasing Softsoap Antibacterial as Defendant previously marketed and advertised it.

Schwanekamp complains that "[t]he Class receives no monetary value from the settlement!" Schwanekamp Obj. at 1. Cool contends that the settlement is inadequate because it does not "disgorge Defendant of its ill-gotten profits," Cool Obj, at 2. Objectors' complaints about this Settlement failing to provide them with direct monetary compensation are not grounds for rejecting the reasonableness of this Settlement because, as explained above and in the final approval memorandum, this Settlement preserves all absent Class members' rights to seek monetary compensation from Defendant. As dictated by this Circuit – as well as by common sense – a settlement is to be evaluated based on balancing the advantages it provides against the disadvantages it entails, rather than fictional disadvantages found nowhere in the settlement agreement itself. *See Nat'l Ass'n of Chain Drug* Store, 582 F.3d at 44.

6

St. John spends pages and pages falsely comparing this Settlement to settlements that released monetary claims of class members or their rights to seek such monetary damages in those other cases. *See generally* St. John Obj. However, each of the cases upon which St. John relies to support her argument involved settlements in which absent class members' monetary claims or rights to pursue such monetary claims through another class action were released. *See In re Dry Max Pampers Litig.*, 724 F.3d 713, 716 (6th Cir. 2013) ("Unnamed plaintiffs are also forced to release their 'equitable' claims against P&G, and are 'permanently barred and enjoined from seeking to use the class action procedural device in any future lawsuit against' P&G."); *Richardson v. L'Oreal USA, Inc.*, 991 F. Supp. 2d 181, 189 (D.D.C. 2013) ("The release contained in the settlement agreement would release L'Oréal from all class actions arising out of the conduct at issue, including damages class actions, but it would not release L'Oréal with respect to individual actions arising out of the conduct at issue."); *Pearson v. NBTY, Inc.*, 772 F.3d 778, 780 (7th Cir. 2014) (settlement provided defendant with "global peace," *i.e.*, a full release of all claims); *McDonough v. Toys "R" Us, Inc.* 80 F. Supp. 3d 626, 2015 U.S. Dist. LEXIS 7510 at *156-158 (E.D. Pa. Jan. 21, 2015) (full release of all class members' claims in antitrust class action); *In re Classmates.com Consol. Litig.*, Case No. C09-45RAJ, 2012 U.S. Dist. LEXIS 83480, at *20 (W.D. Wa. June 15, 2012) (settlement fully extinguished class members' claims); *Blackman v. District of Columbia*, 633 F. 3d 1088, 1089 (adjudicating propriety of fee in 40 years long IDEA class litigation rather than evaluating anything at all about terms of settlement itself); on *Hecht v. United Collection Bureau*, 691 F. 3d 218, 223-24 (involving prior settlement that released monetary claims); *Vought v. Bank of America*, 901 F. Supp. 2d 1071, 1075 (C.D. Ill. 2012) ("the settlement releases BANA from all liability"). Because this Settlement does not release any absent class members' claims for monetary relief, and further preserves all absent Class members' rights to use the class action

7

device in pursuit of such monetary claims, St. John's reliance on this authority in support of her objection to this Settlement is irresponsible and demonstrably incorrect.

In this Settlement, where injunctive relief is achieved and only further claims for injunctive relief over past conduct are released, the compromise reached by this Settlement is substantively reasonable and monetary claims do not predominate.

**II. Certification Of This Settlement Under Fed. R. Civ. P. 23(B)(2) Is Proper Because The Settlement Obtains Real And Valuable Injunctive Relief That Will Apply To The Class As A Whole That Directly Relates To The Marketing And Sales Practices Challenged By The Class.**

St. John also contends that there is a discontinuity between the class definition – former purchasers of Softsoap Antibacterial – and the injunctive relief achieved by the Settlement – a prospective labeling and formulation injunction against Colgate – making certification of this settlement class under Fed. R. Civ. P. 23(b)(2) inappropriate. The facts of this case and this Settlement, however, show St. John's argument on this point to be incorrect as well. The five Class Representatives (and presumably, absent Class members) still purchase hand soap and will, in fact, be "wronged again" if Defendant were allowed to persist in false, deceptive, and misleading marketing of a Softsoap Antibacterial product formulated with triclosan as being more effective than plain soap.

The United States District Court for the District of Columbia rejected this exact same objection (also brought by the CCAF) about the appropriateness of a prospective injunction for a class composed of prior purchasers:

> CCAF raises two reasons that plaintiffs do not have standing to seek injunctive relief here. Those arguments both relate to a purported failure by the named plaintiffs to establish that they are likely to suffer future injury. For several reasons, though, the Court finds that plaintiffs have established the required likelihood of a particularized future injury. . . . Because on this record the Court is able to infer that the named plaintiffs intend to purchase the products in the future, it is unnecessary to reject the proposed settlement simply to order that plaintiffs fortify the indications of that intent. Accordingly, the Court concludes that plaintiffs have standing to seek injunctive relief.

*Richardson v. L'Oreal*, 991 F. Supp.2d at 190-195.[3] Similarly, in *Lilly v. Jamba Juice Co.* the court allowed an injunctive-relief only settlement to proceed despite an argument that a class members who had previously been deceived by a product's labeling "probably *won't* buy it [again]," because "[a] rule that prevents this consumer from seeking an injunction doesn't comport with traditional notions of standing; it prevents the person most likely to be injured in the future from seeking redress." No. 13-CV-02998-JST, 2015 WL 1248027, at *4 (N.D. Cal. Mar. 18, 2015). "To hold otherwise would effectively preclude consumers from ever obtaining prospective relief against mislabeling." *Id.* at *3; *see also Ries v. Arizona Beverages USA LLC,* 287 F.R.D.523, 533 (N.D. Cal. 2012) ("were the Court to accept the suggestion that plaintiffs' mere recognition of the alleged deception operates to defeat standing for an injunction, then injunctive relief would never be available in false advertising cases, a wholly unrealistic result").

The relief achieved by this Settlement – an injunction against reintroduction of a triclosan-based Softsoap Antibacterial product except as consistent with final FDA regulations, as well as an injunction against the marketing claims Plaintiffs alleged were misleading – is in

---

[3] As noted above, one reason the *Richardson* court ultimately rejected the class action settlement in that case was because it purported to release defendant from liability for all class-wide damages claims; here, by contrast, the Settlement does not release damages claims and does not preclude use of the class action procedural device to pursue such claims. *Cf. Richardson v. L'Oreal*, 991 F. Supp.2d at 202 ("In the end, stripping the procedural right to bring a damages class action from absent class members without their knowledge or consent— and effectively precluding their damages claims—is not proper." Another reason the *Richardson* court rejected certification in that case – a lack of cohesion between mass-market purchasers and salon purchasers – is not present under the circumstances of here either – all consumers, regardless of where they purchased Softsoap Antibacterial, have a cohesive interest in truthful marketing about the product's core efficacy – a scientific subject the parties have disputed vigorously, and one that is hardly "self-evident" unlike the "salon-only" misrepresentations at issue in *Richardson*. *Cf . Richardson v. L'Oreal*, 991 F. Supp.2d at 203 ("[W]hether mass-market purchasers were harmed at all is questionable, considering the self-evident nature of the 'salon-only' misrepresentation when the products were purchased outside of salons. Although it is unclear on this record whether salon purchasers have valid claims, mass-market purchasers face a more difficult path to recovery. Accordingly, their interests diverge from the salon purchasers' interests.").

fact a unitary and indivisible injunction benefitting all Class members at once that the named Plaintiffs have standing to pursue because they are all still in the market for hand soaps and have not definitively disclaimed intent to purchase Softsoap ever again, especially as it is now reformulated.

St. John's reliance on *In re New Motor Vehicles Canadian Exp. Antitrust Litigation*, 522 F. 3d 6 (1st Circ. 2008) also misses the mark. In that case, class certification was hotly contested in the context of a complex antitrust scheme alleged by the plaintiffs. The district court issued a sweeping order certifying a nationwide injunctive class under (b)(2). However, due to moving exchange rates that affected the plaintiffs' theories, the First Circuit reversed class certification, finding that Article III standing no longer existed. According to the First Circuit, "[t]he "perfect storm" that allegedly precipitated massive arbitrage opportunities for selling Canadian cars in the US ceased long ago." *Id.* at 14. Thus, the First Circuit concluded that injunctive relief could not and would not provide any relief to the class, unlike the relief provided in the Settlement here and certainly not "equivalent circumstances" as St. John suggests.

St. John also relies on several other cases, each of which is factually distinguishable from this case, and all of which are simply inapposite in evaluating the propriety of the Settlement in *this* litigation.[4] St. John then bootstraps these cases, despite the dramatic

---

[4] *See, e.g.*, *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011)(where there was a mix of employees, former employees, and recently departed employees who were employees at the time of the class definition); *Brown v. Kelley*, 609 F. 3d 467 (2d Circ. 2010)(rejecting Rule 23(b)(2) certification on technical, definitional grounds); *McManus v. Fleetwood Ent.,* 320 F. 3d 545 (5th Cir. 2003)(in action for allegedly defective motor homes, plaintiffs sought both Rule 23(b)(2) and (b)(3) certification, which the district court granted, but Fifth Circuit reversed); *Bolin v. Sears Roebuck & Company*, 231 F. 3d 970 (5th Cir. 2000)(class certification opinion noting that "claims for injunctive relief [were] intermingle[d] with claims for damages" and finding that district court abused its discretion in certifying class, which was not a settlement class); *Charrons v. Pinnacle Group NY, LLC*, 269 F.R.D. 221 (S.D.N.Y. 2010)("carving out" a proper class from plaintiffs' "overbroad" proposed class and excising

10

distinctions, to grasp for the conclusion that "[t]hus, post-*Dukes*, courts frequently deny (b)(2) certifications as inconsonant with retrospectively defined classes." St. John Obj. at 8. St. John's conclusion does not follow from the authority she cites.

Cool contends that FDA regulations prohibited Defendant from using triclosan in its hand soap products, including Softsoap Antibacterial, making the injunction against Defendant's reintroduction of triclosan achieved by this settlement worthless. *See* Cool Obj. at 1-2. Schwanekamp makes a similar argument, *see* Schwanekamp Obj. at 2 ("[f]rom its website, it appears the Defendant has already made these changes based on other events rather than this litigation."), as does St. John. *See* St. John Obj. at 17 (characterizing injunction as "Colgate will agree to follow the law"). All three Objectors, however, ignore the reality of the situation. Before Plaintiffs initiated these cases, Colgate used triclosan in Softsoap Antibacterial. After Plaintiffs brought their suits, Colgate stopped using triclosan in Softsoap Antibacterial. The Parties could waste time and money litigating over whether it was Plaintiffs' suits that caused the change or whether Defendant was predestined to make this change even if they had never been sued. Instead of litigating to resolve who is right on this fact, the Parties settled, achieving and guaranteeing one of the goals – removal of triclosan from hand soap – that Plaintiffs had set out to achieve in the first place.

While Plaintiffs agree the FDA *should* bar companies like Colgate from using triclosan in hand soaps because that drug is neither safe nor effective when used in consumer hand soaps, the reality is that the FDA's monograph on over-the-counter antimicrobial products (including hand soaps) remains a "tentative" monograph as opposed to a binding regulation that effectively prohibits use of triclosan. *See*, *e.g.*, FDA, Dep't Health and Human Services,

---

former tenants in rent control litigation); *Mogel v. UNUM Life Ins. Co.*, 646 F. Supp. 2d 177 (D. Mass. 2009)(pointing out, unlike in this case, predominance of monetary component in class certification context).

11

*Safety and Effectiveness of Consumer Antiseptics; Topical Antimicrobial Drug Products for Over-the-Counter Human se; Proposed Amendment of the Tentative Final Monograph; Reopening of Administrative Record*, 78 Fed. Reg. 76444, 76450 (Dec. 17, 2013) (reopening administrative record to require different type of effectiveness study – one that measures clinical outcome instead of surrogate endpoint – as support for "generally recognized as effective" status of antimicrobial ingredients, including triclosan)*; see also* Memorandum and Order on Motion to Dismiss (Dkt. 46) at 24-25 ("As I have noted, the FDA began investigating triclosan products in 1972.  Since then, it has issued two TFMs and reopened the administrative record on multiple occasions.  Several years ago, the agency decided to split its original monograph on triclosan products into three separate monographs.  Since then, the agency has missed multiple self-imposed deadlines for publishing the TFM, most recently in February 2013.") (citation omitted).The regulatory situation was exactly the same when Defendant was using triclosan in Softsoap Antibacterial as it is now.  From Plaintiffs' perspective, the FDA's tentative rulemaking standing alone was not persuasive enough, prior to this lawsuit, to prevent Defendant from using triclosan in hand soaps.

      Thus, the Settlement's imposition of a legally binding injunction against any attempt by Defendant to reintroduce triclosan into Softsoap Antibacterial is a meaningful and worthwhile change to the prior status quo.  The injunctive relief Plaintiffs have achieved is both worthwhile and valuable, Objectors contentions to the contrary notwithstanding.  For these reasons, certification of an injunctive 23(b)(2) settlement class is reasonable and appropriate here.

### III. Objectors Lack Standing To Challenge Class Counsel's Request For Attorneys' Fees Because They "Take Nothing At All" Regardless Of The Amount Of Attorneys' Fees Ultimately Awarded And Class Counsel's Request For Fees And Expenses Is Substantively Reasonable.

The Objectors have no standing to contest the amount of the attorneys' fee award because they "take nothing at all," regardless of the amount of attorneys' fees ultimately approved and awarded to Class Counsel by this Court. *See Hill v. State St. Corp.*, Case No. 15-1193, No. 15-1597, 2015 U.S. App. LEXIS 12868, at *8-9 (1st Cir. July 24, 2015) ("That leaves objectors' complaint about the attorneys' fee award . . . Because objectors take nothing at all under the allocation formula, and because they do not appeal that formula, no decrease in the portion of the $60 million settlement amount that is paid to counsel will in any way benefit objectors. This is another way of saying that they have no standing to complain about the fee award.")

*Hill* involved the settlement of a securities class action. The parties in *Hill* agreed that "some class members would be deemed uninjured, and that others who were injured in amounts less than $10.00 would be paid nothing[.]" *Hill*, 2015 U.S. LEXIS 12868 at *1. The objectors to the *Hill* settlement declined to challenge the allocation formula, but, instead, challenged the propriety of the attorney's fee award, complaining that it was improper when some class members received nothing. The First Circuit rejected that objection, definitively holding that the objectors in *Hill* lacked standing to challenge the fee award because any change in the fees awarded would make no difference to them. *Hill*, 2015 U.S. LEXIS 12868 at *1 and *8-9. *Citing Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000) ("[A] plaintiff must demonstrate standing separately for each form of relief sought."); *cf. Silverman v. Motorola Solutions, Inc.*, 739 F.3d 956, 957 (7th Cir. 2013) (concluding that an objector who did not file a claim "lack[ed] any interest in the amount of fees, since he would not receive a penny from the fund even if counsel's take should be reduced

13

to zero"); *Knisley v. Network Assocs., Inc.*, 312 F.3d 1123, 1126 (9th Cir. 2002) ("[W]here a class member refuses to participate in the settlement and appeals only the fee award, . . . . [t]he court must closely scrutinize the terms of the settlement agreement to determine whether modifying the fee award would actually benefit the objecting class member. If not, the appeal would not redress his injuries, and he would lack standing to proceed.").

St. John asserts that her "objection does not complain that the settlement should be for a higher dollar value," *see* St. John Obj. at 1, yet, throughout her objection, she seeks to impose an entirely different kind of settlement upon the Class – distribution of a common fund, presumably for a full release of all monetary claims – rather than the limited and reasonable injunctive-relief only settlement, without any corresponding release of monetary claims, whether asserted individually or on behalf of a future class, the Parties achieved here. To create this fictional common fund, St. John attack's Class Counsel's request for attorney's fees. However, for the same reasons the objectors in *Hill* lacked standing to challenge the fee award, the Objectors here also lack standing to challenge the amount of attorney's fees awarded to Class Counsel – the fee award here is not a piece of a common fund that would go to the Class.

St. John also attacks the proposed *cy pres* recipient – the Children's Health Fund – whose motto is "Every Child in Every Neighborhood Deserves a Doctor."[5] This national network provides pediatric care through 25 programs and affiliates, all of which are affiliated with a major teaching hospital or community health center. *Id*. In all, more than 350,000 children have received health care services through these programs. *Id.* St. John's opposition to the selection of the Children's Health Fund as a *cy pres* recipient here is that: (a) it engages in "ideologically politically polarizing activity"; (b) "there is a conflict of interest" based on the Children's Health Fund's past endorsement of Senator Shaheen and the fact that a named

---

[5] www.childrenshealthfund.org (last visited September 4, 2015).

14

partner of Shaheen & Gordon is married to Senator Shaheen; and (c) making a *cy pres* award to the Children's Health Fund is "compelled speech that violates the First Amendment." St. John Obj. at 23. All of these points in opposition are meritless. In the unlikely event there is any *cy pres* distribution (as Class Counsel have more than earned their full fee and reimbursement of their litigation expenses, as they already explained in their motion for an award of attorneys' fees), the Children's Health Fund is a perfectly reasonable *cy pres* recipient. Mere insinuation of conflict is insufficient to scuttle this settlement and should be rejected by the Court here.

## CONCLUSION

For all of the foregoing reasons, the Parties respectfully request that the Court overrule all Objections, grant final approval to this class action Settlement, and award attorneys fees and expenses in the amount requested by Class Counsel.

Dated: September 16, 2015

                                      Respectfully submitted,

                                      /s/ Lucy J. Karl

                                      Lucy J. Karl
                                      NH Bar No. 5547
                                      **SHAHEEN & GORDON, P.A.**
                                      107 Storrs Street
                                      Concord, New Hampshire   03302
                                      Telephone:  (603) 225-7262
                                      Facsimile:  (603) 225-5112
                                      lkarl@shaheengordon.com

                                      ***Plaintiffs' Interim Lead Counsel***

**Plaintiffs' Executive Subcommittee**

Richard J. Arsenault
**NEBLETT, BEARD & ARSENAULT**
2220 Bonaventure Court
P.O. Box 1190
Alexandria, Louisiana 71309
Telephone: (800) 256-1050
Facsimile: (318) 561-2592
rarsenault@nbalawfirm.com

Adam J. Levitt
**GRANT & EISENHOFER P.A.**
30 North LaSalle Street, Suite 2350
Chicago, Illinois  60602
Telephone: (312) 214-0000
Facsimile: (312) 214-0001
alevitt@gelaw.com

John R. Climaco
**CLIMACO, WILCOX, PECA, TARANTINO & GAROFOLI CO., L.P.A.**
55 Public Square, Suite 1950
Cleveland, Ohio 44113
Telephone: (216) 621-8484
Facsimile: (216) 771-1632
jrclim@climacolaw.com

Charles E. Schaffer
**LEVIN, FISHBEIN, SEDRAN & BERMAN**
510 Walnut Street, Suite 500
Philadelphia, Pennsylvania 19106
Telephone: (215) 592-1500
Facsimile: (215) 592-4663
cschaffer@lfsblaw.com

Eric D. Holland
**HOLLAND GROVES SCHNELLER & STOLZE, LLC**
300 North Tucker Boulevard, Suite 801
St. Louis, Missouri 63101
Telephone: (314) 241-8111
Facsimile: (314) 241-5554 eholland@allfela.com

**Plaintiffs' Steering Committee**

Daniel E. Becnel, Jr.
**BECNEL LAW FIRM, LLC**
P.O. Drawer H
106 West Seventh Street
Reserve, Louisiana 70084
Telephone: (985) 536-1186
Facsimile: (985) 536-6445
dbecnel@becnellaw.com

Christopher M. Ellis
**BOLEN ROBINSON & ELLIS, LLP**
202 South Franklin, 2nd Floor
Decatur, Illinois 62523
Telephone: (217) 429-4296
Facsimile: (217) 329-0034
cellis@brelaw.com

Jordan L. Chaikin
**PARKER & WAICHMAN LLP**
27300 Riverview Center Blvd
Suite 103
Bonita Springs, Florida 34134
Telephone: (239) 390-1000
Facsimile: (239) 390-0055
jchaikin@yourlawyer.com

David C. Rash
**DAVID C. RASH, P.A.**
1655 North Commerce Parkway
Weston, Florida 33326
Telephone: (954) 515-0072
Facsimile: (954) 515-0073
david@dcrashlaw.com

James C. Shah
**SHEPHERD, FINKELMAN, MILLER & SHAH, LLC**
35 East State Street
Media, Pennsylvania 19063
Telephone: (610) 891-9880
Facsimile: (610) 891-9883
jshah@sfmslaw.com

**CERTIFICATE OF SERVICE**

The undersigned certifies that on September 16, 2015, she caused this document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of filing to counsel of record for each party.

Undersigned counsel further certifies that she caused this document to be served via First Class Mail, Postage Prepaid to the following:

Michelle Schwanekamp
5764 Chestnut Ridge Drive
Cincinnati, OH  45230-3591

Linda D'Agostino
15 West Pine Way
Unit 14
Plainville, CT  06062

Tyler Cool
8426 Foothills Highway
Boulder, CO 80302


Dated: September 16, 2015

By: /s/ Lucy J. Karl
Lucy J. Karl
NH Bar No. 5547