**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

<u>In re: Colgate-Palmolive</u>
<u>Softsoap Antibacterial Hand</u>          **Case No. 12-md-2320-PB**
<u>Soap Marketing and Sales</u>            All Cases
<u>Practices Litigation</u>

<u>**MEMORANDUM AND ORDER**</u>

Consumers of Softsoap Antibacterial hand soap filed this class action lawsuit against Colgate-Palmolive Company ("Colgate"), the manufacturer of Softsoap Antibacterial. Plaintiffs claimed that Colgate wrongfully induced class members to purchase Softsoap Antibacterial by making false or misleading marketing claims.  On November 16, 2015, I granted the parties' motion to certify the proposed settlement class and approved the proposed settlement.  Doc. No. 106.  I denied without prejudice, however, class counsels' assented-to motion for fees and expenses, because counsel had not yet provided reasonable notice of their fee motion to the class, as required by Federal Rule of Civil Procedure 23(h)(1).  <u>Id.</u> at 39.  Since that time, counsel have directed additional notice to the class, and renewed their motion for fees and expenses.  Counsel now seek an aggregate award of $2 million for attorneys' fees and expenses, notice administration costs, and incentive payments to the five named plaintiffs.  Doc. No. 113.  For the reasons explained below, I

grant that motion.

## I.  <u>ANALYSIS</u>

### A.  <u>Notice</u>

I first conclude that counsel have given the class legally sufficient notice of their fee motion.  In order to recover an award of fees and expenses, class counsel must comply with Federal Rule of Civil Procedure 23(h)'s notice requirement. Rule 23(h) provides, in relevant part:

> (1) A claim for an award must be made by motion under Rule 54(d)(2), subject to the provisions of this subdivision (h), at a time the court sets. Notice of the motion must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner.
>
> (2) A class member, or a party from whom payment is sought, may object to the motion.

Fed. R. Civ. P. 23(h).

In the November 16, 2015 order, I concluded that counsel had not yet complied with Rule 23(h)(1) because counsel filed their fee motion only one day before the deadline for class member objections, and apparently did not "direct" that motion to the class.  Doc. No. 106 at 38-39.  In response, counsel have posted their assented-to motion for fees (doc. no. 98), the memorandum in support of that motion (doc. no. 98-1), and additional information on both the settlement website and lead counsel's website.  <u>See</u> Doc. No. 113 at 1.  Counsel then gave

potential objectors until December 30, 2015 to file any objections.  As of January 11, 2016, neither the parties nor the settlement administrator received any additional objections. Id.

Under the facts of this case, counsels' actions both cured the prior deficiency, and satisfied Rule 23(h).  First, counsel have now "direct[ed]" the fee motion, and the rationale underlying their request for fees and expenses, to the class via the class website, and given potential objectors approximately six weeks to submit any objection.  Second, notice via the settlement website was reasonable here, given the fact that interested class members were already aware of the website's existence (as evidenced by the fact that previous objectors cited materials posted on the website in their objections).

I therefore conclude that counsel have given the class reasonable notice of the fee motion, and move on to the motion itself.

**B.   Motion for Fees, Expenses, and Incentive Awards**

Counsel seek an aggregate award of $2 million, payable by Colgate, for fees and expenses incurred in prosecuting and resolving this suit.  Doc. No. 113.  Of that $2 million total, counsel ask the court to approve $1,813,004 for attorneys' fees and expenses, $174,496 in Notice Administrator fees, and a $2,500 incentive payment to each of the five class

representatives.  See Doc. No. 98 at 1.  Although Colgate does
not oppose counsels' requests, class members have raised several
objections.[1]  They principally argue that the $2 million sum is
unreasonable given the relief secured by the settlement, and
that the $2,500 incentive awards unfairly favor the named
plaintiffs over other class members.[2]  One objector also
challenges the settlement agreement's *cy pres* provision.  I
address these and other issues below.

    1.  Attorneys' Fees

    In a certified class action, courts have wide discretion to
award reasonable attorneys' fees and costs, as authorized by law
or by the parties' agreement.  See Fed. R. Civ. P. 23(h).  The
First Circuit recognizes two methods for reviewing fee awards.
See Bezdek v. Vibram USA, Inc., No. 15-1207, 2015 WL 9583769, at

---

[1] The settlement agreement here included a so-called "clear-
sailing" term, whereby Colgate agreed not to oppose counsels'
application for fees and expenses in an amount up to $2 million.
Doc. No. 92-2 at 19-20.  Although a clear-sailing term "is not
per se unreasonable," I give "extra scrutiny" to counsels' fee
request here because of the clear-sailing provision.  Bezdek v.
Vibram USA, Inc., No. 15-1207, 2015 WL 9583769, at *5 (1st Cir.
Dec. 31, 2015).

[2] Relying largely upon Hill v. State Street Corp., 794 F.3d 227
(1st Cir. 2015), counsel argue that the objectors lack standing
to challenge the potential fee award, because they "take nothing
at all" regardless of the amount ultimately awarded.  Doc. No.
103 at 13-14.  Because I ultimately grant counsels' motion, and
because any fee award must be "reasonable" regardless of whether
there are objections, I need not address counsels' argument
here.  See Fed. R. Civ. P. 23(h).

*5 (1st Cir. Dec. 31, 2015) ("Bezdek II"); In re Thirteen
Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.,
56 F.3d 295, 305 (1st Cir. 1995) (describing two methods).
Under the "percentage of the fund" ("POF") method, "where
attorneys succeed in obtaining a fund that benefits the class .
. . counsel may be awarded a reasonable percentage of the common
fund." Bezdek v. Vibram USA Inc., 79 F. Supp. 3d 324, 349 (D.
Mass. 2015) ("Bezdek I").  Courts within the First Circuit
"generally award fees in the range of 20-30% [of the common
fund], with 25% as the benchmark."  Id. (citation and
alterations omitted).

     The First Circuit also accepts the so-called "lodestar,"
method.  Id. at 350.  Under that approach, the court "determines
the number of hours reasonably expended multiplied by a
reasonable hourly rate for attorneys of similar skill within
that geographic area."  Id. (internal alteration omitted).  The
court may then modify this lodestar figure "by subtracting hours
that are excessive in light of the legal task, not recorded with
sufficient specificity as to the tasks performed, or redundant
to hours of another lawyer without justification for the need
for duplicity."  Id.  Although courts generally favor the POF
method, Thirteen Appeals, 56 F.3d at 306-07, they may use the
lodestar approach either "alone or as a check on the
appropriateness of a POF calculation."  Bezdek I, 79 F. Supp. 3d

at 350.  Regardless of the method used, however, the touchstone
of this inquiry is "reasonableness."  Id. (citing In re
Fidelity/Micron Sec. Litig., 167 F.3d 735, 737-38 (1st Cir.
1999).

Because the settlement agreement here provides purely
injunctive relief, and does not involve a common fund, I assess
counsels' request via the lodestar method.[3]  As of July 31, 2015,
class counsel had invested 6,145.45 work hours in this lawsuit,
for a total combined lodestar of $3,188,317.  Doc. No. 98-2 at
8-9.  Counsel, however, only seek $1,813,004 in fees and
expenses.  Their fee request thus represents less than fifty-
seven percent of counsels' combined lodestar.[4]  Doc. No. 98-1 at
13.

---

[3] Objector St. John urges the court to use a percentage of the
fund-like analysis.  See Doc. No. 100 at 16-17 ("A proportionate
attorney award adheres to the 25% of the fund benchmark followed
by courts of this Circuit.").  Her point – that courts in the
First Circuit prefer the POF method – is well taken.  Her
argument is unpersuasive, however, because the settlement
agreement at issue does not involve a common fund, and,
moreover, First Circuit precedent suggests that courts may use
the lodestar approach "alone," even in common fund cases.
Bezdek I, 79 F. Supp. 3d at 350.

[4] This figure does not reflect any of the work that counsel
completed after July 31, 2015.  That work included, among other
things, counsels' response to objections (doc. no. 103),
preparation and argument at the September 28, 2015 fairness
hearing, providing additional notice to class members, and
addressing objector St. John's appeal to the First Circuit (doc.
no 109).  Accordingly, counsels' fee request likely represents
an even greater discount of their lodestar figure.

To support their request, class counsel have provided detailed attorney affidavits, which provide "the total number of hours expended, customary hourly rate, and years of experience of each attorney from his or her firm who attests to the total lodestar time his or her firm spent litigating this matter, the hourly rates, and experience of the attorneys from their firms who worked on this matter." Doc. No. 98-1 at 11. These affidavits demonstrate that counsel are qualified and experienced consumer class action litigators, took steps to promote efficiency throughout the litigation process, and that their billing rates are consistent with the prevailing level for similar work in their respective geographic areas. Id. at 15.

In addition, I credit counsels' significant efforts during this litigation. See Bezdek I, 79 F. Supp. 3d at 350-51. Those efforts included, (1) successfully opposing Colgate's motion to dismiss, (2) completing extensive discovery, including reviewing more than 93,000 pages of documents, and taking and defending several depositions, (3) participating in mediation with retired U.S. District Court Judge James M. Rosenbaum, and (4) engaging in extensive negotiations and communications leading up to the final settlement agreement. See Doc. No. 98-1 at 5-6.

Finally, I credit the outcome that counsel have secured for the class. The objectors argue that the purely injunctive relief provided under the agreement delivers no value to class

members, and therefore cannot justify a $2 million award.  See,
e.g., Doc. Nos. 96 at 2; 99 at 3; 100 at 19-20.  I disagree.
See Bezdek II, 2015 WL 9583769, at *5 ("The fact that changes in
future . . . marketing will not remedy past harm to consumers
does not make such relief meaningless to those consumers.").  As
described in greater detail in the November 16 Order, the
settlement provides a meaningful benefit to the class.  Pursuant
to that agreement, Colgate promises (1) to use triclosan in
Softsoap Antibacterial only in a manner consistent with final
FDA regulation, and (2) for a period of five years or until
there is a change in applicable law, to circumscribe or stop
using several of its allegedly misleading marketing statements.
Doc. No. 92-2 at 15-16.  "These changes go to the heart of
plaintiffs' allegation that Colgate misled consumers by implying
that Softsoap Antibacterial containing triclosan provided
greater health benefits than washing with regular soap."  Doc.
No. 106 at 28.  Moreover, the agreement preserves unnamed class
members' right to pursue monetary relief based upon Colgate's
same alleged misconduct in the future.  Id. at 32.  The
agreement thus secures the class's preferred benefit, while
requiring class members to give up very little.  I therefore
reject the objectors' assertion that a $2 million payment is
unreasonable given the relief achieved here.

In summary, then, considering the significant time and effort counsel have committed to this lawsuit, the considerable benefit they secured for the class, and the fact that counsels' requested fees represent a significant discount of the lodestar figure, I conclude that counsels' request is reasonable.

2.   Expenses

Counsel also seek reimbursement of expenses incurred in prosecuting and resolving this suit, to be paid from the $2 million aggregate amount.  See Doc. Nos. 98 at 1 (requesting $174,496 in Notice Administrator fees); 98-1 at 23-24 (seeking $91,946.94 in unreimbursed costs).  Those expenses include, among other things, (1) travel costs, (2) court fees, (3) the cost of retaining experts, and (4) expenses related to notifying class members of the settlement.  See Doc. No. 98-2 at 9.  I find that these requests are reasonable.

3.   Incentive Awards

I next address counsels' request for $2,500 incentive awards payable to each of the five class representatives.  The objectors argue that these payments unfairly favor the named plaintiffs, and render the fee request unreasonable.  See Doc. Nos. 99 at 3; 100 at 20-21.  After careful consideration, I disagree.

"Incentive awards serve to promote class action settlements by encouraging named plaintiffs to participate actively in the

litigation in exchange for reimbursement for their pursuits on behalf of the class overall." Bezdek I, 79 F. Supp. 3d at 352. Here, the five named plaintiffs played active and important roles throughout this litigation.  They contributed to initial investigation and fact gathering, responded to written discovery, appeared for depositions, and worked closely with counsel during the settlement process.  Doc. No. 98-2 at 10. Moreover, these $2,500 awards are consistent with awards approved in similar cases, where the named plaintiffs engaged in equivalent litigation-related activities.  See Bezdek I, 79 F. Supp. 3d at 352; In re Compact Disc Minimum Advertised Price Antitrust Litig., 292 F. Supp. 2d 184, 189 (D. Me. 2003). Accordingly, the awards here are reasonable and will be allowed.

    4. *Cy Pres*

    I finally dispose of objector St. John's argument that the settlement agreement's *cy pres* provision renders the settlement unfair.  See Doc. No. 100 at 22-25.  Pursuant to the settlement agreement, "[a]ny amount remaining from the $2 million . . . after an award of attorneys' fees, costs, expenses, incentive awards payable to Plaintiffs, and cost of the Notice Plan, shall be paid by Defendant to Children's Health Fund."  Doc. No. 92-2 at 20-21.  St. John argues that the Children's Health Fund is an inappropriate *cy pres* recipient because (1) the Fund is engaged in political advocacy, (2) there is the appearance of a conflict

of interest with class counsel, and (3) the distribution raises
First Amendment concerns.  Doc. No. 100 at 22-25.

Because I award the full $2 million sought by counsel, I
need not reach the merits of St. John's argument.  As explained
above, counsel requested $1,813,004 in attorneys' fees and
expenses, $174,496 in Notice Administrator fees (which the
notice administrator has already invoiced to the parties, doc.
no. 98-15 at 5), and a total of $12,500 for incentive awards.
These sums, when added together, equal $2 million.  Accordingly,
there will be no *cy pres* distribution, and St. John's argument
is now moot.  See Bezdek I, 79 F. Supp. 3d at 333 n.5.

## II.  CONCLUSION

For the reasons set forth above, I grant counsels'
assented-to motion for fees and expenses (doc. no. 113).  The
clerk shall enter final judgment and close the case.

SO ORDERED.


/s/Paul Barbadoro
Paul Barbadoro
United States District Judge


January 29, 2016

cc:  Counsel of Record


11